EXHIBIT I

# BP AMOCO MASTER TRUST

# FOR EMPLOYEE SAVINGS PLANS

(As Amended and Restated Effective as of April 6, 2000)

# TABLE OF CONTENTS

1. DEFINITIONS ...................................................................................................... 2

    1.1 Administrative Named Fiduciary ........................................................ 2
    1.2 Administrative Services Agreement .................................................. 2
    1.3 Administrator ..................................................................................... 2
    1.4 Applicable Named Fiduciary .............................................................. 2
    1.5 Business Day ..................................................................................... 3
    1.6 Chief Financial Officer ...................................................................... 3
    1.7 Code .................................................................................................. 3
    1.8 Company ............................................................................................ 3
    1.9 Company Managed Account .............................................................. 3
    1.10 Designated Officer .......................................................................... 3
    1.11 Effective Date .................................................................................. 3
    1.12 Employer .......................................................................................... 3
    1.13 ERISA .............................................................................................. 3
    1.14 Fiduciary .......................................................................................... 4
    1.15 Investment Committee or Committee .............................................. 4
    1.16 Investment Account ......................................................................... 4
    1.17 Investment Fund .............................................................................. 4
    1.18 Investment Manager ........................................................................ 4
    1.19 Mutual Fund Window ....................................................................... 4
    1.20 NAV ................................................................................................. 4
    1.21 Operating Agreement ...................................................................... 4
    1.22 Participant ........................................................................................ 4
    1.23 Plan Sponsor ................................................................................... 4
    1.24 Plan or Plans ................................................................................... 5
    1.25 Recordkeeper .................................................................................. 5
    1.26 Senior Vice President ...................................................................... 5
    1.27 Trust ................................................................................................ 5
    1.28 Trust Fund ....................................................................................... 5

2. TRUST FUND ................................................................................................... 5

    2.1 Receipt of Assets ............................................................................. 5
    2.2 Accounting for a Plan's Undivided Interest in the Trust Fund .......... 6
    2.3 Engagement of Recordkeeper .......................................................... 6

3. DISBURSEMENTS FROM THE TRUST FUND ............................................... 7

4. INVESTMENT FUNDS ..................................................................................... 8

    4.1 In General ......................................................................................... 8
    4.2 Participant Directed Brokerage Accounts ........................................ 9
    4.3 Company Managed Accounts .......................................................... 10
    4.4 Trustee Investment Responsibilities. .............................................. 10
    4.5 Investment Accounts ...................................................................... 11

TABLE OF CONTENTS
(continued)

PAGE

5. VALUATION OF TRUST FUND .................................................................................. 12

    5.1 Valuation of Trust Fund ..................................................................................... 12
    5.2 Duties of the Trustee with Respect to Valuation. ........................................... 12
    5.3 Calculation of the NAV for an Investment Fund............................................. 14
    5.4 Suspension of Valuations .................................................................................. 14

6. POWERS OF THE TRUSTEE..................................................................................... 15

    6.1 Investment Powers of the Trustee .................................................................. 15
    6.2 Discretionary Administrative Powers of the Trustee ..................................... 24

7. LIABILITY AND INDEMNIFICATION......................................................................... 25

    7.1 Standard of Care by Trustee. .......................................................................... 25
    7.2 No Trustee Duty Regarding Contributions ..................................................... 26
    7.3 Indemnification.................................................................................................. 26

8. SECURITIES OR OTHER PROPERTY ...................................................................... 27

9. SECURITY CODES..................................................................................................... 28

10. TAXES AND TRUSTEE COMPENSATION ............................................................. 28

    10.1 Taxes Imposed on Trust Fund....................................................................... 28
    10.2 Trustee Compensation and Other Expenses................................................ 29

11. ACCOUNTS OF THE TRUSTEE.............................................................................. 29

12. RELIANCE ON COMMUNICATIONS....................................................................... 31

13. RESIGNATION AND REMOVAL OF TRUSTEE ...................................................... 32

14. ADDITIONAL TRUSTEE .......................................................................................... 33

15. ACTIONS BY THE COMPANY................................................................................. 33

16. TRUST GOVERNANCE ............................................................................................ 34

    16.1 Authority of Applicable Named Fiduciary...................................................... 34
    16.2 Authority of Investment Committee and Chief Financial Officer.................. 34
    16.3 Fiduciary to Direct Trustee............................................................................. 34
    16.4 Company to Direct Trustee............................................................................. 34

TABLE OF CONTENTS
(continued)

|  | PAGE |
|---|---|
| 17. AMENDMENT | 35 |
| 18. TERMINATION | 35 |
| 19. PARTICIPATION OF OTHER EMPLOYERS | 35 |
| 19.1 Adoption by Other Employers; Withdrawals | 35 |
| 19.2 Powers and Authorities of Other Employers to be Exercised Exclusively by Company | 37 |
| 20. MISCELLANEOUS | 38 |
| 20.1 Governing Law | 38 |
| 20.2 Status of Plans | 38 |
| 20.3 No Reversion to Employer | 39 |
| 20.4 Non-Alienation of Benefits | 40 |
| 20.5 Duration of Trust | 40 |
| 20.6 No Guarantees | 40 |
| 20.7 Duty to Furnish Information | 40 |
| 20.8 Withholding | 41 |
| 20.9 Parties Bound | 41 |
| 20.10 Necessary Parties to Disputes | 41 |
| 20.11 Unclaimed Benefit Payments | 41 |
| 20.12 Severability | 42 |
| 20.13 References | 42 |
| 20.14 Headings | 42 |
| 20.15 No Liability for Acts of Predecessor and Successor Trustees | 42 |
| 20.16 Construction | 42 |
| 20.17 Notices | 43 |
| 20.18 Counterparts | 43 |
| EXHIBIT A | 44 |
| EXHIBIT B | 45 |
| EXHIBIT C | 52 |

## BP AMOCO MASTER TRUST
## FOR EMPLOYEE SAVINGS PLANS

This Agreement is effective the 6th day of April, 2000 between BP AMOCO CORPORATION, a Corporation organized under the laws of Indiana (the "Company"), and STATE STREET BANK & TRUST COMPANY, a Trust Company organized under the laws of the Commonwealth of Massachusetts (the "Trustee").

### RECITALS:

WHEREAS, the Company sponsors a number of savings plans qualified under Section 401(a) of the Internal Revenue Code of 1986, as amended, for the benefit of its eligible employees and the eligible employees of certain of its subsidiaries and affiliates;

WHEREAS, effective as of November 1, 1990, the Company established the Amoco Employee Savings Plan Trust Agreement (the "Trust") to serve as a funding vehicle for one of the aforementioned savings plans;

WHEREAS, the Trust is a U.S. domestic trust;

WHEREAS, the Company and the Trustee now consider it desirable to amend and restate the Trust in its entirety, effective April 6, 2000;

WHEREAS, effective as of the close of business on April 6, 2000, the Trustee is appointed Successor Trustee to a trust agreement, effective February 1, 1999 (the "BP America Trust") by and between BP America Inc. and Fidelity Management Trust Company; and

WHEREAS, effective April 6, 2000, the BP America Trust is merged into the Trust, and the Trust is amended and restated as set forth below.

### AGREEMENT:

NOW, THEREFORE, IT IS HEREBY AGREED by the Company and the Trustee that, in consideration of their mutual undertakings, the Trust and the BP America Trust are hereby amended and restated in the form of this Agreement effective April 6, 2000. It is further agreed as follows:

1.    DEFINITIONS

1.1    "Administrative Named Fiduciary" means a person or entity, who: (a) has authority to control and manage the operation and administration of the Plan or the Trust, within the meaning of Section 402(a)(1) of ERISA; (b) has discretionary authority or discretionary responsibility to administer the Plan or the Trust, within the meaning of Section 3(21)(A)(ii) of ERISA; or (c) exercises  discretionary authority or discretionary control respecting management of the Plan or the Trust within the meaning of Section 3(21)(A)(i) of ERISA (other than trustee responsibilities within the meaning of Section 405(c)(3) of ERISA), and  includes the Administrator and any other person (A) named in any of the Plans or the Trust, or (B) identified by a Designated Officer to be such an Administrative Named Fiduciary.

1.2    "Administrative Services Agreement" means an agreement with a service provider  to provide services to the Plan.

1.3    "Administrator" means the Senior Vice President, or if an Applicable Named Fiduciary has been identified with respect to the authority involved in the provision of the Plan under consideration, then reference to the Administrator in that context refers to such Applicable Named Fiduciary. References in this Trust to the Administrator will be deemed a reference to any person (other than a Fiduciary) to whom ministerial responsibilities involved in the provisions of the Plan have been delegated by the Administrator, including the Recordkeeper.

1.4    "Applicable Named Fiduciary" means: (a) with respect to any authority, control or discretion in the operation, administration or management of the Plan or the Trust, the Administrator or the Administrative Named Fiduciary who is charged with, or who exercises responsibility for, such matter; or (b) with respect to the authority or control respecting management or disposition of the Trust Fund (including trustee responsibilities within the meaning of Section 405(c)(3) of ERISA), (1) the Investment Committee, (2) the Chief Financial Officer but only with respect to (i) managing Plan and Trust receipts and disbursements, (ii) preparing Plan and Trust reports and returns, and (iii) managing the investment of the Managed Account pursuant to the guidelines of the Investment Committee; and (c) any other person (1) named in the Trust or (2)

identified by a Designated Officer to be an Applicable Named Fiduciary with respect to specified authority or control.

1.5 "Business Day" means a day when the New York Stock Exchange is open for business.

1.6 "Chief Financial Officer" means the Chief Financial Officer of the Company or, upon the resignation or removal of such Chief Financial Officer, any successor officer to the Chief Financial Officer who performs substantially similar duties with respect to administration of employee benefits (whether assigned a different title by the Company or not), or, in the absence of such a successor, the person to whom such Chief Financial Officer would report.

1.7 "Code" means the Internal Revenue Code of 1986, as amended and any regulations issued thereunder.

1.8 "Company" means BP Amoco Corporation.

1.9 "Company Managed Account" means a Company Managed Account as described pursuant to Section 4.3.

1.10 "Designated Officer" means the Senior Vice President, and any other officer of the Company, and the Group Vice President, Human Resources of BP Amoco p.l.c. and any other officer of BP Amoco p.l.c. to whom (but only to the extent specifically provided) authority to act on behalf of the Company has been granted by the Board of Directors of the Company or one of its committees.

1.11 "Effective Date" means April 6, 2000, the date the amendment and restatement of this Trust Agreement is effective.

1.12 "Employer" means the Company or any corporation (or other trade or business) which is a member of a controlled group of corporations of which the Company is a member as determined under Section 414(b) or (c) of the Code, and which corporation is a participating employer as of the Effective Date, or as thereafter may be changed in accordance with the provisions of Section 19.1.

1.13 "ERISA" means the Employee Retirement Income Security Act of 1974, as amended and any regulations issued thereunder.

1.14 "Fiduciary" means: (a) any individual or entity which a Designated Officer identifies to be an Administrative Named Fiduciary with respect to such individual's or entity's authority to control and manage the operation and administration of the Plan; (b) any individual or entity which an Administrative Named Fiduciary, acting on behalf of the Plan, designates to be a Fiduciary; or (c) any other individual or entity who performs a fiduciary function under the Plan as defined in Section 3(21) of ERISA.

1.15 "Investment Committee" or "Committee" means the Investment Committee designated by the Company for the Trust, or if none, the Chief Financial Officer.

1.16 "Investment Account" means an account described in Section 4.5.

1.17 "Investment Fund" means a separate account established and maintained in the Trust Fund for an investment option made available under a Plan.

1.18 "Investment Manager" means an investment manager appointed by the Applicable Named Fiduciary to manage assets under the Plan (within the meaning of Sections 3(38) and 402(c)(3) of ERISA. If any Investment Manager has authority to invest in assets which will be held outside the jurisdiction of the district courts of the United States, it must be an entity described in 29 C.F.R. 2550.404b-1(a)(2)(ii).

1.19 "Mutual Fund Window" means an arrangement sponsored and maintained by the Recordkeeper pursuant to an Administrative Services Agreement between the Recordkeeper and the Administrator to provide for the purchase, sale and holding as a part of the Trust Fund, of shares of investment companies registered under the Investment Company Act of 1940.

1.20 "NAV" means the net asset value of an Investment Fund.

1.21 "Operating Agreement" means an agreement between the Trustee, the Company and the Recordkeeper, as may be amended, pursuant to which certain Plan and Trust administrative functions and duties are governed.

1.22 "Participant" means any individual, including an alternate payee under a "qualified domestic relations order" or a beneficiary in whose name an account is held under a Plan.

1.23 "Plan Sponsor" means BP Amoco Corporation.

1.24 "Plan" or "Plans" means individually and collectively, the tax-qualified employee benefit plan or plans of the Company or the tax-qualified employee benefit plan or plans of any Employer using the trust as the funding vehicle for such plan or plans as the case may be. Each Plan which is funded through the Trust is listed in Exhibit A.

1.25 "Recordkeeper" means the entity which provides recordkeeping and administrative services to a Plan pursuant to an Administrative Services Agreement.

1.26 "Senior Vice President" means the Senior Vice President - Human Resources of the Company or, upon the resignation or removal of such Senior Vice President, any successor officer to the Senior Vice President who performs substantially similar duties with respect to administration of employee benefits (whether assigned a different title by the Company or not), or, in the absence of such a successor, the General Counsel of the Company.

1.27 "Trust" means the BP Amoco Master Trust for Employee Savings Plans.

1.28 "Trust Fund" means all Plan assets held by the Trustee in the Trust pursuant to the provisions of this Trust Agreement.

## 2. TRUST FUND

2.1 Receipt of Assets. The Trustee will receive and accept for the purposes hereof all sums of money and other property paid to it or merged into the Trust (and all related Plan liabilities, payables and receivables), by, or at the direction of the Company, or, pursuant to Article 19 herein, by, or at the direction of, the Company or any Employer and will hold, invest, reinvest, manage, administer and distribute such monies and other property and the increments, proceeds, earnings and income thereof (and all related Plan liabilities, payables and receivables) pursuant to the terms of this Trust Agreement and for the exclusive benefit of Participants. The Trustee need not inquire into the source of any money or property transferred to it nor into the authority or right of the transferor of such money or property to transfer such money or property to the Trustee.

i:\law\leeb\plandocs\master savings trust\mstrtrst.doc

5

2.2     Accounting for a Plan's Undivided Interest in the Trust Fund. All transfers to, withdrawals from, and other transactions regarding the Trust Fund must be conducted in such a way that the proportionate interest in the Trust Fund of each Plan and the fair market value of that interest may be determined at any time. Whenever the assets of more than one Plan are commingled in the Trust Fund or in any Investment Fund, the undivided interest therein of that Plan will be debited or credited (as the case may be): (a) for the entire amount of every contribution received on behalf of that Plan, every benefit payment, or other expense attributable solely to that Plan, and every other transaction relating only to that Plan; and (b) for its proportionate share of every item of collected or accrued income, gain or loss, and general expense; and other transactions attributable to the Trust Fund or that Investment Fund as a whole. As of each date when the fair market value of the investments held in the Trust Fund or an Investment Fund are determined as provided for in Article 5, the Trustee will adjust the value of each Plan's interest therein to reflect the net increase or decrease in such values since the last such date. For all of the foregoing purposes, fractions of a cent may be disregarded.

2.3     Engagement of Recordkeeper. The Administrator has engaged the Recordkeeper, on behalf of the Plan, to perform certain services set forth in the Administrative Services Agreement, the Operating Agreement, and including but not limited to, maintaining Participant accounts for all contributions, loans and loan repayments, rollovers, and other deposits made for the purpose of determining how such deposits are to be allocated to a Plan's investment options, for determining requirements for disbursements from or transfers among investment options in accordance with the terms of the Plan, for maintaining Participant records for the purpose of voting or tendering shares in an investment option as described in Section 4.1 herein, for distributing information about the investment options provided for under the Plan, and for distributing Participant statements at periodic intervals.

3.   DISBURSEMENTS FROM THE TRUST FUND

Subject to the terms of the Operating Agreement, the Trustee will from time to time on the directions of the Administrator make payments out of the Trust Fund to such persons, in such manner, in such amounts and for such purposes, as may be specified by the Administrator. Such directions may require payment from the Trust assets of any administration expenses of the Plan, including expenses and obligations (i) associated with the administration and operation of the Plan and the Trust, (ii) arising under an Administrative Services Agreement or this Trust Agreement, and (iii) arising in connection with the management and investment of Plan assets.   The Administrator may direct the Trustee to reimburse the Company for any noninterest bearing amounts advanced by the Company on behalf of a Plan and the Trustee may rely that any amount directed by the Administrator to be paid as a reimbursement to the Company does not include interest.

The Administrator is responsible for insuring that any payment directed under this Article conforms to the provisions of the Plans, this Trust Agreement, and the provisions of ERISA. Each direction of the Administrator is to be in writing (or electronically as may be permitted in the Funds Transfer Operating Agreement ("FTOP") and Operating Agreement) and will be deemed to include a certification that any payment or other distribution directed thereby is one which the Administrator is authorized to direct. Payments by the Trustee not made by the Recordkeeper as payment agent may be made by the Trustee by its check to the order of the payee. Payments or other distributions hereunder may be mailed to the payee at the address last furnished to the Trustee by the Recordkeeper or Administrator or if no such address has been so furnished, to the payee in care of the Recordkeeper. The Trustee will not incur any liability or other damage on account of any payments or other distributions made by it in accordance with a proper direction of the Administrator unless it would be unreasonable for the Trustee to not question such direction.

4.   INVESTMENT FUNDS

    4.1   In General.

        (a)   The Investment Committee, from time to time, may direct the Trustee to establish one or more Investment Funds within the Trust Fund for a Plan, which may be invested in:

            (1)   shares of investment companies registered under the Investment Company Act of 1940 through a Mutual Fund Window;

            (2)   collective funds maintained by a bank or trust company;

            (3)   securities which constitute "qualifying employer securities" or "qualifying employer real property" within the meaning of Section 407 of ERISA, to the extent specifically authorized by a Plan and to the extent that the Trustee (other than solely as a directed trustee) and Investment Manager, or an Applicable Named Fiduciary, whichever is applicable, has determined that such investment is not prohibited by Sections 406 or 407 of ERISA;

            (4)   Participant Directed Brokerage Accounts;

            (5)   pools of insurance contracts;

            (6)   funds managed by a registered investment manager, bank or insurance company;

            (7)   accounts managed by an Applicable Named Fiduciary for the Plan; or

            (8)   other investment options available from time to time under a Plan or such other funds as may be described by the Company. The Investment Funds of the Trust Agreement are described on Exhibit "B", which may be amended.

        (b)   The Trustee is not responsible for any loss of any kind which may result by reason of the manner of division of the Trust Fund into Investment Funds, or for the investment management of these

accounts, except as provided for in Section 4.4 respecting a Trustee Managed Investment Account, if any. The Trustee will transfer to each such Investment Fund such portion of the assets of the Trust Fund as the Investment Committee directs.  The Trustee is not responsible for any liability arising on account of its following any direction of the Investment Committee and the Trustee has no duty to review investment guidelines, objectives and restrictions established by the Investment Committee on behalf of the Plans.

(c)     All interest, dividends and other income received with respect to, and any proceeds received from the sale or other disposition of, securities or other property held in an Investment Fund is to be credited to and reinvested in such Investment Fund. All expenses of the Trust Fund which are allocable to a particular Investment Fund will be so allocated and charged. Subject to the provisions of the Plans, the Investment Committee may direct the Trustee to eliminate an Investment Fund or Funds, and the Trustee will thereupon dispose of the assets of such Investment Fund and reinvest the proceeds thereof in accordance with the directions of the Investment Committee.

4.2     Participant Directed Brokerage Accounts. The Trustee will, if so directed by the Applicable Named Fiduciary, segregate all or a portion of the Trust Fund held by it into one or more separate investment accounts to be known as Participant Directed Brokerage Accounts. Whenever a Participant is directing the investment and reinvestment of a Participant Directed Brokerage Account, the Participant will have the powers and duties which an Investment Manager would have under this Trust Agreement if an Investment Manager were then serving and the Trustee will be protected to the same extent as it would be protected under this Trust Agreement as to directions or the absence of directions of an Investment Manager. A Participant will be entitled to give orders directly to the broker for the purchases and sale of securities.

The broker will provide confirmation of each order to the Administrator which will maintain records in such form as to satisfy reporting requirements of the Plan.

    4.3   Company Managed Accounts.

        (a)   The Trustee will, if so directed in writing by the Applicable Named Fiduciary, segregate all or a portion of the Trust Fund held by it into one or more separate investment accounts to be known as Company Managed Investment Accounts. The Applicable Named Fiduciary, by written notice to the Trustee, may at any time relinquish its powers under this Section 4.3 and direct that a Company Managed Investment Account no longer be maintained. Whenever the Applicable Named Fiduciary is directing the investment and reinvestment of an Investment Account or a Company Managed Investment Account, the Applicable Named Fiduciary will have the powers and duties which an Investment Manager would have under this Trust Agreement if an Investment Manager were then serving and the Trustee will be protected to the same extent as it would be protected under this Trust Agreement as to directions or the absence of directions of an Investment Manager.

        (b)   During any time when there is no Investment Manager with respect to an Investment Fund (such as before an investment management agreement takes effect or after it terminates), the Applicable Named Fiduciary shall direct the investment and reinvestment of such Investment Account.

    4.4   Trustee Investment Responsibilities.

        (a)   The Trustee has no duty or responsibility to direct the investment and reinvestment of the Trust Fund, any Investment Fund or any Investment Account unless expressly agreed to in writing between the Trustee and the Applicable Named Fiduciary. In the event that the Trustee enters into such an agreement, it will have the powers

and duties of an Investment Manager under this Trust Agreement with regard to such Investment Account.

(b)    Subject to such directions as the Applicable Named Fiduciary provides (which may be a standing letter of direction), the Trustee will conduct a daily cash sweep of all U.S. dollar denominated excess cash contained in the Trust (including excess cash in Investment Accounts managed by Investment Managers, until such time as the Investment Manager provides a separate cash sweep direction to the Trustee) to a State Street maintained collective investment fund for assets of employee benefit plans qualified under Section 401(a) of the Code ("State Street STIF").

4.5    Investment Accounts.

(a)    The Applicable Named Fiduciary, from time to time and in accordance with the provisions of the Plans, may appoint one or more independent Investment Managers, pursuant to a written investment management agreement describing the powers and duties of the Investment Manager, to direct the investment and reinvestment of all or a portion of the Trust Fund or an Investment Fund. The Applicable Named Fiduciary will furnish the Trustee with written notice of the appointment of each Investment Manager hereunder, and of the termination of any such appointment. Such notice will specify the assets which will constitute the Investment Account of such Investment Manager. The Trustee will be fully protected in relying upon the effectiveness of such appointment and the Investment Manager's continuing satisfaction of the requirements set forth above until it receives written notice from the Applicable Named Fiduciary to the contrary. The Trustee will conclusively presume that each Investment Manager, under its investment management agreement, is entitled to act, in directing the investment and reinvestment of the Investment Account for

which it is responsible, in its sole and independent discretion and without limitation, except for any limitations which from time to time the Applicable Named Fiduciary and the Trustee agree (in writing) will modify the scope of such authority.

(b)     Except as provided by ERISA or as provided in the Operating Agreement, the Trustee has no liability: (1) for the acts or omissions of any Investment Manager (except to the extent the Trustee itself is serving as Investment Manager); (2) for following directions, including investment directions of an Investment Manager (other than the Trustee) or the Applicable Named Fiduciary, which are given in accordance with this Trust Agreement; (3) for failing to act in the absence of Investment Manager direction (except to the extent the Trustee itself is serving as Investment Manager); or (4) for any loss of any kind which may result by reason of the manner of division of the Trust Fund or Investment Fund into Investment Accounts.

5.     VALUATION OF TRUST FUND

5.1     Valuation of Trust Fund.  The Trustee will value the Trust Fund and each Investment Fund as of the close of business at the end of each Business Day. The Trustee must determine the fair market value of assets of the Trust Fund based upon the standards described in Section 5.2.

5.2     Duties of the Trustee with Respect to Valuation.

(a)     Values will be determined by the Trustee on the basis of the following valuation rules:

(1)     Securities must be valued at their market values based on information and financial publications of general circulation, statistical and valuation services, records of security exchanges, appraisals by qualified persons, transactions and bona fide offers in assets of the type in question and

other information customarily used in the valuation of assets ("Pricing Sources"), or (i) if market values are not available, or (ii) with respect to Securities the underlying assets of which are not custodied by the Trustee, at their fair values as provided to the Trustee by the party with authority to trade such securities. An Investment Manager must certify, at the request of the Trustee, the value of any securities or other property held in any Investment Account managed by such Investment Manager which for reasons specified in Section 5.2(a)(1)(i) or (ii) cannot be valued reliably independently, and such certification will be regarded as a direction with regard to such valuation.

(2) An investment purchased and awaiting payment against delivery will be included for valuation purposes as a security held. Investments sold but not delivered pending receipt of proceeds will be valued at the net sales price.

(3) For purposes of valuation with respect to (1) and (2) above, all securities and cash or cash equivalents will be quoted in the local currency and then converted into U.S. dollars using the appropriate exchange rate obtained by the Trustee.

(b) The Trustee may rely on the prices provided by Pricing Sources, an Investment Manager or the Applicable Named Fiduciary as a certification as to value in performing any valuations or calculations required of the Trustee by this Trust Agreement, and will have no liability for any incorrect data provided to it by Pricing Sources, an Investment Manager or the Applicable Named Fiduciary except as may arise from Trustee's lack of reasonable care in selecting Pricing Sources.

5.3     Calculation of the NAV for an Investment Fund.

    (a)     The Trustee, upon the Applicable Named Fiduciary's direction, may calculate the NAV of an Investment Fund in accordance with the following rules:

        (1)     The NAV of the Investment Fund will equal the value of the assets of the Investment Fund, including accrued income or other accounts receivable, less the accrued liabilities incurred by the Investment Fund.

        (2)     For an investment purchased and awaiting payment against delivery the accounts payable will be adjusted to reflect the purchase price, including brokers' commissions and other expenses incurred in the purchase thereof, but not disbursed as of the valuation date.

    (b)     The items carried as accrued liabilities are to be identified from time to time by the Trustee or the Administrator. The Trustee will develop procedures for determining how an identified accrued liability will impact the NAV of an Investment Fund, which determination may be approved or changed by the Administrator. At the end of each month the Trustee and the Administrator will review trust expense accruals to determine if any changes are required.

    5.4     Suspension of Valuations.     Notwithstanding anything to the contrary in this Agreement, the Trustee, at the direction of the Applicable Named Fiduciary, or upon consultation and approval of the Applicable Named Fiduciary, may suspend the valuation of an Investment Fund for the whole or any part of any period when (a) any market or exchange on which a significant portion of the investments of the Investment Fund are quoted is closed (other than for ordinary holidays) or during which dealings therein are restricted or suspended; (b) there has been a breakdown in the means of communication, or in any software and/or hardware systems, normally employed in determining the price or value of any of the investments of the Investment Fund, or of

current prices on any market or exchange on which a significant portion of the investments of the Investment Fund are quoted; or (c) when for any reason the prices or values of any investments owned by the Investment Fund cannot reasonably be promptly and accurately ascertained. The Trustee will use reasonable efforts to rectify any problems affecting its ability to value assets and will begin valuations as soon as practicable after such problems are resolved.

6.    POWERS OF THE TRUSTEE

    6.1    Investment Powers of the Trustee.

        (a)    The Trustee has and can exercise the following powers and authority: (i) over Investment Accounts for which it has express investment management discretion as provided in Section 4.4, (ii) upon direction of the Investment Manager of an Investment Account, (iii) upon direction of a Participant with respect to: (A) a Participant Directed Brokerage Account or (B) for voting and tendering of qualified employer securities, (iv) upon direction of the Applicable Named Fiduciary for a Company Managed Account, or (v) upon direction of the Applicable Named Fiduciary with respect to: (A) purchases and sales of interests in Investment Funds on behalf of Participants or (B) lending to Participants in the Plans:

           (1)    To purchase, receive, or subscribe for any securities or other property and to retain in trust such securities or other property.

           (2)    To acquire and hold qualifying employer securities and qualifying employer real property, as such investments are defined in Section 407(d) of ERISA.

           (3)    To sell for cash or on credit, to grant options, convert, redeem, exchange for other securities or other property, to enter into standby agreements for future investment, either

15

with or without a standby fee, or otherwise to dispose of any securities or other property at any time held by it.

(4)   Upon direction from the Administrator or Applicable Named Fiduciary, to settle, compromise or submit to arbitration any claims, debts, or damages, due or owing to or from the Trust, to commence or defend suits or legal proceedings and to represent the Trust in all suits or legal proceedings in any court of law or before any other body or tribunal.

(5)   To trade in financial options and futures, including index options and options on futures and to execute in connection therewith such account agreements and other agreements including contracts for the exchange of interest rates, or investment performance, currencies or other notional principal contracts in such form and upon such terms as the Investment Manager or the Applicable Named Fiduciary may direct.

(6)   Subject to Section 6.1(a)(7), to exercise all voting rights, tender or exchange rights, any conversion privileges, subscription rights and other rights and powers available in connection with any securities (except for securities issued by the Company or an affiliate) or other property at any time held by it; to oppose or to consent to the reorganization, consolidation, merger, or readjustment of the finances of any corporation, company or association, or to the sale, mortgage, pledge or lease of the property of any corporation, company or association any of the securities which may at any time be held by it and to do any act with reference thereto, including the exercise of options, the making of agreements or subscriptions and the payment of expenses, assessments or subscriptions, which may be

deemed as necessary or advisable by the Investment Manager or Applicable Named Fiduciary in connection therewith, and to hold and retain any securities or other property which it may so acquire; and to deposit any property with any protective, reorganization or similar committee, and to pay and agree to pay part of the expenses and compensation of any such committee and any assessments levied with respect to property so deposited.

(7)     To exercise all voting or tender or exchange offer rights with respect to all qualifying employer securities held by it except that portion, if any, for which it has received voting or tender or exchange offer instructions from Participants in the Plans as provided in this paragraph. Each Participant may direct the Trustee, confidentially, how to vote or whether or not to tender or exchange the qualifying employer securities representing his proportionate interest in the assets of the Plans. The Administrator will furnish the Trustee with the name and address of each Participant and the number of shares held for the Participant's account as near as practicable to the record date fixed for the determination of Participants entitled to vote, tender or exchange, and will provide the Trustee with all other information and assistance which the Trustee may reasonably request. Shares for which the Trustee has not received timely voting or tender or exchange instructions may be voted or tendered by the Trustee in its sole discretion.

(8)     To lend to Participants in the Plans such amounts and upon such terms and conditions as the Administrator may direct. Any such direction will be deemed to include a certification

17

by the Administrator that such lending is in accordance with
the provisions of ERISA and the Plans.

(9)     To borrow money in such amounts and upon such terms
and conditions as may be deemed advisable or proper by
the Applicable Named Fiduciary or Investment Manager to
carry out the purposes of the trust and to pledge any
securities or other property for the repayment of any such
loan.

(10)    To invest all or a portion of the Trust Fund in contracts
issued by insurance companies, including contracts under
which the insurance company holds Plan assets in a
separate account or commingled separate account
managed by the insurance company. The Trustee is entitled
to rely upon any written directions of the Applicable Named
Fiduciary or the Investment Manager under this Section 6.1,
and the Trustee is not responsible for the terms of any
insurance contract that it is directed to purchase and hold or
for the selection of the issuer thereof or for performing any
functions under such contract (other than the execution of
any documents incidental thereto on the instructions of the
Applicable Named Fiduciary or the Investment Manager).

(11)    To manage, administer, operate, lease for any number of
years, develop, improve, repair, alter, demolish, mortgage,
pledge, grant options with respect to, or otherwise deal with
any real property or interest therein at any time held by it,
and to hold any such real property in its own name or in the
name of a nominee, with or without the addition of words
indicating that such property is held in a fiduciary capacity,
all upon such terms and conditions as may be deemed

advisable by the Investment Manager or Applicable Named Fiduciary.

(12)   To renew, extend or participate in the renewal or extension of any mortgage, upon such terms as may be deemed advisable by the Applicable Named Fiduciary or Investment Manager, and to agree to a reduction in the rate of interest on any mortgage or of any guarantee pertaining thereto in any manner and to any extent that may be deemed advisable by the Applicable Named Fiduciary or Investment Manager for the protection of the Trust Fund or the preservation of the value of the investment; to waive any default, whether in the performance of any covenant or condition of any mortgage or in the performance of any guarantee, or to enforce any such default in such manner and to such extent as may be deemed advisable by the Applicable Named Fiduciary or Investment Manager; to exercise and enforce any and all rights of foreclosure, to bid on property on foreclosure, to take a deed in lieu of foreclosure with or without paying consideration therefor, and in connection therewith to release the obligation on the bond secured by such mortgage, and to exercise and enforce in any action, suit or proceeding at law or in equity any rights or remedies in respect to any such mortgage or guarantee.

(13)   To hold part or all of the Trust Fund uninvested.

(14)   To employ suitable agents and counsel and to pay their reasonable and proper expenses and compensation.

(15)   To appoint ancillary trustees or custodians to hold any portion of the assets of the trust and to pay their reasonable expenses and compensation.

(16)  To purchase and sell foreign exchange and contracts for foreign exchange, including transactions entered into with State Street Bank and Trust Company, its agents or subcustodians; provided that the price and associated expenses obtained are at least as favorable to the Trust as if such transaction was conducted with an unrelated party.

(17)  To form corporations and to create trusts to hold title to any securities or other property, all upon such terms and conditions as may be deemed advisable by the Applicable Named Fiduciary or Investment Manager.

(18)  To register any securities held by it hereunder in its own name, in the name of its nominee, in the name of its agent, or in the name of its agent's nominee with or without the addition of words indicating that such securities are held in a fiduciary capacity, and to hold any securities in bearer form and to deposit any securities or other property in a depository or clearing corporation.

(19)  To make, execute and deliver, as Trustee, any and all deeds, leases, mortgages, conveyances, waivers, releases, or other instruments in writing necessary or desirable for the accomplishment of any of the foregoing powers.

(20)  To invest at any bank, including State Street Bank and Trust Company, (i) in any type of interest bearing investments (including, but not limited to savings accounts, money market accounts, certificates of deposit and repurchase agreements) and (ii) in noninterest bearing accounts (including but not limited to checking accounts); provided that the earnings rate and associated expenses obtained are at least as favorable to the Trust as if the same transaction was conducted with an unrelated party.

(21) To invest in collective investment funds and common and group trust funds maintained by State Street Bank and Trust Company or by other banks or trust companies supervised by a federal or state agency exclusively for the investment of the assets of employee benefit plans qualified under Section 401(a) of the Code, notwithstanding that the bank or trust company is the Trustee, an Investment Manager, or is otherwise a "party in interest" as defined in Section 3(14) of ERISA. The instruments establishing such funds, as amended, are deemed a part of this Trust Agreement and incorporated by reference herein. The combining of money and other assets of this Trust with money and other assets and accounts in such fund or funds is specifically authorized. The Trustee acknowledges that it is a fiduciary with respect to any such collective investment fund which is maintained by State Street Bank and Trust Company and will maintain (through periodic buy/sell transactions) the proportions of any such State Street collective investment fund within ranges presented by the Investment Manager in standing instructions.

(22) To invest in open-end and closed-end investment companies, regardless of the purposes for which such funds were created, including those managed, serviced or advised by the Trustee, an affiliate of the Trustee, and any partnership, limited or unlimited, joint venture and other forms of joint enterprise created for any lawful purpose.

(b) Except as otherwise provided in this Trust Agreement, the Investment Manager of an Investment Account, or the Applicable Named Fiduciary in the case of a Company Managed Account, has the power and authority, to be exercised in its sole discretion at any

time and from time to time, to issue orders for the purchase or sale of securities directly to a broker. Written notification of the issuance of each such order will be given promptly to the Trustee by the Investment Manager or the Applicable Named Fiduciary and the confirmation of each such order will be confirmed to the Trustee by the broker. Unless otherwise directed by the Applicable Named Fiduciary or Investment Manager, such notification will be authority for the Trustee to pay for securities purchased or to deliver securities sold as the case may be. Upon the direction of the Investment Manager or the Applicable Named Fiduciary, the Trustee will execute and deliver appropriate trading authorizations, but no such authorization will be deemed to increase the liability or responsibility of the Trustee under this Trust Agreement.

(c)    The Trustee will transmit promptly to the Investment Manager (or the Applicable Named Fiduciary), as the case may be, all notices of conversion, redemption, tender, exchange, subscription, class action, claim in insolvency proceedings, proxies or other rights or powers relating to any of the securities in the Trust Fund, which notices are received by the Trustee from its agents or custodians, from issuers of the securities in question and from the party (or its agents) extending such rights. The Trustee has no obligation to determine the existence of any conversion, redemption, tender, exchange, subscription, class action, claim in insolvency proceedings or other right or power relating to any of the securities in the Trust Fund of which notice was given prior to the purchase of such securities by the Trust Fund, and has no obligation to exercise any such right or power unless the Trustee is informed of the existence of the right or power.

(d)    Provided that the Trustee has promptly transmitted materials to the appropriate parties, the Trustee is not to be liable for any untimely

exercise or assertion of such rights or powers described in Section
6.1(c) above in connection with securities or other property of the
Trust Fund at any time held by it unless: (i) it or its agents or
custodians are in actual possession of such securities or property,
and (ii) if the Trustee is not treated as an Investment Manager for
such securities, it receives directions to exercise any such rights or
powers from the Applicable Named Fiduciary or the Investment
Manager, as the case may be, and both (i) and (ii) occur at least
one Business Day prior to the date on which such rights or powers
are to be exercised with respect to securities held in the United
States and three Business Days for all other securities.

(e)     If the Trustee is directed by the Applicable Named Fiduciary or an
        Investment Manager to purchase securities issued by any foreign
        government or agency thereof, or by any corporation or other entity
        domiciled outside of the United States: i) the Trustee shall provide
        market information to the Applicable Named Fiduciary or the Trust's
        Investment Managers consistent with industry standards for
        professional global custodians; ii) the Trustee will receive for and
        credit to the Trust Fund any money or assets, including dividends
        and interest, due and payable from or on account of the securities
        and other investments and /or assets in the Trust Fund, based
        upon tax status information supplied by the Administrator; iii) the
        Trustee shall, in the ordinary course of business, take all necessary
        administrative steps for the timely collection of interest, repayments
        and dividends, and for exercising or cashing in rights and warrants
        as instructed, obtaining new coupon or dividend sheets and
        effecting conversion transactions; however, the Trustee will not
        attempt to enforce such collections by legal process unless
        directed in writing to do so by the Applicable Named Fiduciary or
        Investment Manager, and unless arrangements are made to

Trustee's reasonable satisfaction with respect to reimbursement of expenses for any such legal process;  (iv)  the Trustee will submit to the relevant tax authorities documents received from the Administrator with regard to the Trust's tax status and will use reasonable efforts to assist the Applicable Named Fiduciary or Investment Managers in claiming any refund or withholding of tax to which the Trust Fund has been subject. Except with respect to the foregoing activities conducted in the ordinary course of business, the Trustee will have no responsibility to determine what foreign laws or regulations (including, without limitation, any laws or regulations affecting receipt by the Trust of dividends, interest or other distributions) might apply to such securities or other investments or to the Trust.

(f)     All Investment Company Shares are to be registered in the name of the Trustee or its nominee. Investment Company Shares will be voted by the Recordkeeper in accordance with the terms of the Operating Agreement and Administrative Services Agreement.

6.2     Discretionary Administrative Powers of the Trustee.

(a)     Notwithstanding the appointment of an Investment Manager, the Trustee will have the following powers and authority, to be exercised in its sole discretion, with respect to the Trust Fund:

(1)     To employ suitable agents, custodians and counsel and, subject to Section 10.2, to pay their reasonable expenses and compensation.

(2)     To register any securities held by it hereunder in its own name, in the name of its nominee, in the name of its agent, or in the name of its agent's nominee with or without the addition of words indicating that such securities are held in a fiduciary capacity, and to hold any securities in bearer form

and to deposit any securities or other property in a depository or clearing corporation.

(3)     To make, execute and deliver, as Trustee, any and all deeds, leases, mortgages, conveyances, waivers, releases or other instruments in writing necessary or desirable for the accomplishment of any of the foregoing powers.

(4)     Generally to do all ministerial acts, whether or not expressly authorized, which the Trustee may deem necessary or desirable in carrying out its duties under this Trust Agreement.

(b)     Notwithstanding anything in the Plans or this Trust Agreement to the contrary, the Trustee may not be required by the Applicable Named Fiduciary, the Administrator, Recordkeeper or any Investment Manager to engage in any action, nor make any investment which constitutes a prohibited transaction or is otherwise contrary to the provisions of ERISA or which is otherwise contrary to law or to the terms of the Plans or this Trust Agreement.

## 7.     LIABILITY AND INDEMNIFICATION

7.1     Standard of Care by Trustee.  The Trustee at all times will discharge its assigned duties and responsibilities under this Trust Agreement with reasonable care, and solely in the interest of Participants in the following manner:

(1)     for exclusive purpose of providing benefits to Participants and defraying reasonable expenses of administering the Plan;

(2)     to the extent it exercises discretion (as defined in "ERISA"), with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in

25

the conduct of an enterprise of a like character and with like aims; and

(3) in accordance with the provisions of the Plan and this Trust Agreement insofar as they are consistent with the provisions of ERISA.

7.2 <u>No Trustee Duty Regarding Contributions</u>. The Trustee is not under any duty to require payment of any contributions to the Trust Fund or determine that a contribution is in compliance with a Participant investment direction, or to see that any payment made to it is computed in accordance with the provisions of the Plans, or otherwise be responsible for the adequacy of the Trust Fund to meet and discharge any liabilities under the Plans. The Company is responsible for ensuring timely payment of employer contributions to the Trust Fund.

7.3 <u>Indemnification</u>

(a) Subject to subsection (b) below and to the extent permitted by applicable law, the Company will indemnify and save harmless the Trustee for and from any loss or expense (including reasonable attorneys' fees) arising:

(1) out of an authorized action hereunder taken in good faith by the Trustee on any matter as to which this Trust Agreement provides that the Trustee is directed, protected, not liable, or not responsible

(2) out of a Plan not qualifying as an ERISA 404(c) plan or the inability of a Participant to exercise independent control over his account within the meaning of 29 C.F.R. Section 2550.404c-1, or

(3) by reason of any breach of any statutory or other duty owed to the Plans by the Company, any Employer, the Applicable Named Fiduciary, the Administrator, the Recordkeeper or any Investment Manager or any delegate of any of them

(and for the purposes of this sentence the Trustee is not to be considered to be such a delegate).

(b)     The Trustee will indemnify and save harmless the Plans, the Applicable Named Fiduciary, Investment Managers, Administrator, Company and Employers for and from any loss or expense (including reasonable attorney's fees) arising out of the Trustee's negligence, intentional misconduct, or breach of fiduciary duty.

(c)     Indemnification hereunder is contingent upon the party seeking indemnification promptly notifying the other of the claim, fully cooperating in defense of the claim, and not unilaterally settling the claim without the indemnifying party's written consent (which consent will not be unreasonably withheld).

(d)     This Section 7.3 will survive the termination of this Agreement or the resignation or removal of the Trustee for any reason.

8.     SECURITIES OR OTHER PROPERTY

The words "securities or other property", used in this Trust Agreement, refers to any property, real or personal, or part interest therein, wherever situated, including, without limitation, governmental, corporate or personal obligations, trust and participation certificates, partnership interests, annuity or investment contracts issued by an insurance company, leaseholds, fee titles, mortgages and other interests in realty, preferred and common stocks, certificates of deposit, financial options and futures or any other form of option, evidences of indebtedness or ownership in foreign corporations or other enterprises or indebtedness of foreign governments, and any other evidences of indebtedness or ownership, including securities or other property of the Company, even though the same may not be legal investment for trustees under any law other than ERISA.

9.   SECURITY CODES

If the Trustee has issued to the Company, or to any Investment Manager appointed by the Applicable Named Fiduciary, with the agreement of the Company or Investment Manager, as appropriate, security codes or passwords in order that the Trustee may verify that certain transmissions of information, including directions or instructions, have been originated by the Company or the Investment Manager, as the case may be, the Trustee will be kept indemnified by and be without liability to the Company for any action taken or omitted by it in reliance upon receipt by the Trustee of transmissions of information with the proper security code or password, including communications purporting to be directions or instructions, which the Trustee reasonably believes to be from the Company or Investment Manager to whom such security code has been issued. The Trustee will not accept communications without the security code.

10.   TAXES AND TRUSTEE COMPENSATION

   10.1   Taxes Imposed on Trust Fund.

      (a)   The Trustee will promptly notify the Applicable Named Fiduciary in writing of any taxes that may be assessed against the Trust or Trust Fund assets. In the event that the Applicable Named Fiduciary determines that any of the taxes are not lawfully assessed, it may elect to direct the Trustee to contest such assessment at the expense of the Trust, or the Applicable Named Fiduciary may itself contest the assessment on behalf of the Trust. Upon resolution of any such contest, the Applicable Named Fiduciary will direct the Trustee to pay any required amounts from the Trust Fund, but in the absence of such direction the Trustee may pay from the Trust Fund the amount still demanded by the assessing tax authority.

      (b)   Until advised to the contrary by the Administrator, the Trustee will assume that the Trust is exempt from Federal, State and local

income taxes, and will act in accordance with that assumption. The Administrator will timely file all Federal, State and local tax and information returns relating to the Plans and Trust.

10.2   Trustee Compensation and Other Expenses.

The Trustee is entitled to such reasonable compensation as is agreed upon by the Company and the Trustee in writing as attached hereto as Exhibit D.   Such compensation and all reasonable and proper expenses of administration of the Trust which are authorized by the Company,  including counsel fees incurred for the benefit of the Trust by the Trustee, may be withdrawn by the Trustee out of the Trust Fund unless paid by the Company, but such compensation and expenses will be paid by the Company if the same cannot by operation of law be withdrawn from the Trust Fund. The Company may not unreasonably withhold authorization for reasonable and proper expenses of administration of the Trust.  If the Trustee has advanced cash or securities for any proper purpose under the Trust any such advances will remain a charge on the Trust Fund until so paid by the Company or withdrawn by the Trustee.

11.   ACCOUNTS OF THE TRUSTEE

    (a)   The Trustee will maintain or cause to be maintained suitable records, data and information relating to its functions hereunder. The Trustee will keep accurate and detailed accounts of all investments, receipts, disbursements, and other transactions hereunder, and such other records as the Applicable Named Fiduciary may from time to time direct, as agreed to by the Trustee. Its books and records relating thereto are to be open to inspection and audit at all reasonable times by the Company or its duly authorized representatives and each Investment Manager. To the extent any audit by the Company or its authorized representatives and each Investment Manager is not commercially reasonable, the Trustee will be entitled to reasonable compensation and reimbursement of its reasonable expenses incurred in connection

with such audits or inspections and such entitlement will survive the termination of this Trust Agreement.

(b)  Within 60 days after the close of each fiscal year of the Trust and at more frequent intervals if agreed to by the parties hereto, and within 60 days after the removal or resignation of the Trustee as provided hereunder, the Trustee will render to the Applicable Named Fiduciary a written statement and account showing in reasonable summary the investments, receipts, disbursements, and other transactions engaged in during the preceding fiscal year or period, and setting forth the assets and liabilities of the Trust. Accounts maintained by the Applicable Named Fiduciary or Recordkeeper, such as the Mutual Fund Window or Participant Directed Brokerage Accounts, may be incorporated into Trustee reports. Unless the Applicable Named Fiduciary files with the Trustee written exceptions or objections to any such statement and account within 6 months after receipt thereof and except as otherwise required or provided by applicable law, the Applicable Named Fiduciary will be deemed to have approved such statement and account, to the extent permitted by law, and in such case or upon written approval by the Applicable Named Fiduciary of any such statement and account, the Trustee will be released and discharged with respect to all matters and things embraced in such statement and account as though it had been settled by a decree of a court of competent jurisdiction in an action or proceeding in which the Company, all other necessary parties and all persons having any beneficial interest in the Trust Fund were parties.

(c)  The Applicable Named Fiduciary will direct the accounts of the Trust to be audited at least annually and upon resignation or removal of the Trustee, such audits to be conducted by the Company's internal auditors or by an independent qualified public

accountant selected by the Applicable Named Fiduciary in its discretion. The Company will furnish a copy of each such audit report to the Trustee.

(d)     The Applicable Named Fiduciary, the Administrator, each Investment Manager, and the Trustee must file such descriptions and reports and make such other publications, disclosures, registrations and other filings as are required of them respectively by ERISA or in accordance with applicable Federal, state or local law. The Trustee and the Company must timely provide such information as the other may reasonably request to make these filings.

(e)     Nothing contained in this Trust Agreement or in the Plans deprives the Trustee of the right to have a judicial settlement of its account. In any proceeding for a judicial settlement of the Trustee's accounts or for instructions in connection with the Trust, the only necessary party thereto in addition to the Trustee is the Company, and no participant or other person having or claiming any interest in the Trust Fund is entitled to any notice or service of process (except as required by law). Any judgment, decision or award entered in any such proceeding or action will be conclusive upon all interested persons.

## 12. RELIANCE ON COMMUNICATIONS

(a)     The Trustee may rely upon a certification of the Applicable Named Fiduciary (or its delegate), the Administrator or the Recordkeeper with respect to any instruction, direction or approval of such party and may rely upon a certification of the Company as to the membership of the Board, Committee or the identity of an Applicable Named Fiduciary as they then exist, and may continue

to rely upon such certification until a subsequent certification is filed with the Trustee.

(b)  The Trustee is fully protected in acting upon any instrument, certificate, or paper of the Company, its Board of Directors, the Administrator (or any member of the Board or Committee) and Applicable Named Fiduciary or the Recordkeeper, believed by it to be genuine and to be signed or presented by any authorized person, and the Trustee is under no duty to make any investigation or inquiry as to any statement contained in any such writing but may accept the same as fully authorized by the Company, the Board, Committee, Applicable Named Fiduciary or the Recordkeeper, if applicable, as the case may be.

(c)  The Trustee will be further protected in relying upon a certification from any Investment Manager appointed by the Applicable Named Fiduciary as to the person or persons authorized to give instructions or directions on behalf of such Investment Manager and may continue to rely upon such certification until a subsequent certification is filed with Trustee.

13.  RESIGNATION AND REMOVAL OF TRUSTEE

Any Trustee acting hereunder may resign at any time by giving 90 days prior written notice to the Applicable Named Fiduciary, which notice may be waived by the Applicable Named Fiduciary. The Applicable Named Fiduciary may remove the Trustee at any time upon 30 days prior written notice to the Trustee, which notice may be waived by the Trustee. In case of the resignation or removal of the Trustee, the Applicable Named Fiduciary must appoint a successor trustee. Any successor trustee will have the same powers and duties as those conferred upon the Trustee named in this Trust Agreement. The removal of a Trustee and the appointment of a new Trustee will be by a written instrument delivered to the Trustee. Upon the appointment of a

successor trustee, the resigning or removed Trustee must transfer or deliver the Trust Fund to such successor trustee.

## 14.    ADDITIONAL TRUSTEE

The Applicable Named Fiduciary reserves the right at any time and from time to time to appoint an additional trustee or trustees, with such powers and duties, consistent with the Plans, as the Applicable Named Fiduciary may determine. In the event of such an appointment or appointments, the Trustee, upon direction of the Applicable Named Fiduciary, will assign, transfer and pay over to any such additional trustee the portion of the Trust Fund determined by the Applicable Named Fiduciary to be held by the Trustee for particular Participants designated by the Applicable Named Fiduciary, and the Trustee will thereafter act as Trustee hereunder and under the Plan only in respect to those Participants' accounts allocated to the Trustee by the Applicable Named Fiduciary. The Trustee will receive and hold as a part of the Trust Fund such cash and other property as may, from time to time, be delivered to it by any such additional trustee.

## 15.    ACTIONS BY THE COMPANY

Whenever the Company has authority to take action under this Trust in a settlor capacity, the following person (or persons) has the authority to act on behalf of the Company:

> (a)    the following action(s) may be taken by resolution of the Company's Board of Directors or its delegate: (i) amending and terminating this Trust, or (ii) all other actions which could be taken by or on behalf of the Company; and
>
> (b)    for all other actions which could be taken by or on behalf of the Company under this Trust, other than the designation of members of the Investment Committee, a Designated Officer.

16.    TRUST GOVERNANCE

16.1    Authority of Applicable Named Fiduciary.    Each Applicable Named Fiduciary has such authority and control or discretion with respect to this Trust as is described in this Trust.  The Administrator, as an Applicable Named Fiduciary, has the authority to execute Administrative Services Agreements which are binding on this Trust to the extent that the Administrator has the authority under this Trust, and subject to applicable law, to direct the Trustee to pay from the Trust assets to the Recordkeeper payments in satisfaction of obligations and expenses incurred by this Trust under such Administrative Services Agreements, and all of the rights and benefits under all Administrative Services Agreements inure to this Trust, without limitation.

16.2    Authority of Investment Committee and Chief Financial Officer.    The Investment Committee and Chief Financial Officer have the authority and discretion to manage and control the Trust assets as provided to each in this Trust.

16.3    Fiduciary to Direct Trustee.    Each Applicable Named Fiduciary, the Investment Committee and Chief Financial Officer, on their own behalf and on behalf of the Plan or this Trust with respect to which the person is a Fiduciary, is to furnish the Trustee the name of each person upon whose statement of the decision or direction of such Fiduciary the Trustee is authorized to rely.  Until notified of a change in the identity of such person or persons, the Trustee may act upon the assumption that there has been no change.

16.4    Company to Direct Trustee.    The Company is to furnish the Trustee the name of each person upon whose statement of the decision or direction of the Company the Trustee is authorized to rely.  Until notified of a change in the identity of such person or persons, the Trustee may act upon the assumption that there has been no change.  With respect to each Plan, the Company will notify the Trustee in writing as to the identity of such Plan's Administrator, and any other Applicable Named Fiduciary with respect to such Plan and the scope of authority of each whenever the term "Applicable Named Fiduciary" is used in this Trust, and the Trustee may rely on such notification.

17.   AMENDMENT

This Trust Agreement may be amended by agreement between the Trustee and the Company at any time or from time to time and in any manner, and the provisions of any such amendment may be applicable to the Trust Fund as constituted at the time of the amendment as well as to the part of the Trust Fund subsequently acquired.

18.   TERMINATION

This Trust Agreement and the trust created hereby may be terminated at any time by the Company, and upon such termination or upon the dissolution or liquidation of the Company, in the event that a successor to the Company by operation of law or by the acquisition of its business interests does not elect to continue the Plans and the trust, the Trust Fund will be paid out by the Trustee when directed by the Administrator. Notwithstanding the foregoing, the Trustee is not required to pay out any assets of the Trust Fund upon termination of the Trust until the Trustee has received written certification from the Administrator that all provisions of law with respect to such termination have been complied with. The Trustee must rely conclusively on such written certification, and is under no obligation to investigate or otherwise determine its propriety.

19.   PARTICIPATION OF OTHER EMPLOYERS

19.1   Adoption by Other Employers; Withdrawals.

(a)   The Trust is maintained by the Company for use as the funding vehicle for the Plans which it maintains for various groups of employees and for use as the funding vehicle for the Plans of any Employer.

(1)   Any Employer designated by the Company as being authorized and as having adopted this Trust with the consent of the Administrator as a funding vehicle for its own Plans may, at any time thereafter, become a party to this Trust Agreement; and

(2)     Any Employer which is a party to this Trust Agreement which has adopted one or more other Plans and as being authorized to use this Trust as the funding medium for such other Plan or Plans may, at any time thereafter, use this Trust for the purposes of such other Plan or Plans with the consent of the Administrator.

(b)     Thereafter, the Trustee will receive and hold as a part of the Trust Fund, subject to the provisions of this Trust Agreement, any deposits made to it under such Plans by or at the direction of such Employer. Should this paragraph become operative:

(1)     In the event of the withdrawal of a Plan from the trust or in the event of the Company's or an Employer's election to terminate or to fund separately the benefits provided under any of its Plans, the Company will cause a valuation to be made of the share of the Trust Fund which is held for the benefit of persons having an interest therein under such Plans. The Trustee will thereupon segregate and dispose of such share in accordance with the written directions of the Company.

(2)     If the Administrator or any Employer receives notice that one or more of its Plans is no longer qualified under the provisions of Section 401 of the Code or the corresponding provisions of any future Federal revenue act, the Administrator will immediately cause a valuation to be made of the share of the Trust Fund which is held for the benefit of such persons having an interest under such disqualified Plan or Plans. The Trustee will thereupon segregate, withdraw from the Trust Fund, and dispose of such share in accordance with the terms of the disqualified Plan or Plans. The Administrator may direct the Trustee to dispose of such

share by the transfer and delivery of such share to itself as trustee of a separate trust, the terms and conditions of which will be identical with those of this Trust Agreement, except that either the Company or the Employer maintaining such disqualified Plan or Plans and the Trustee will be the only parties thereto.

(3)    In the event that any group of employees covered by a Plan is withdrawn from such Plan, the Administrator will, if required by the terms of such Plan, cause a valuation to be made of the share of the Trust Fund which is held for the benefit of such group of employees. The Trustee will thereupon segregate and dispose of such share in accordance with the direction of the Administrator accompanied by its certification to the Trustee that such segregation and disposition is in accordance with the terms of such Plan and the requirements of the law.

(c)    The Trustee will have no duty to see that the valuation of any share in accordance with the provisions of this Section 19.1 is caused to be made by the Administrator, nor to segregate and dispose of any such share in the absence of the written direction of the Administrator to do so.

19.2    Powers and Authorities of Other Employers to be Exercised Exclusively by Company. Each Employer, other than the Company, which is, or becomes a party to this Trust Agreement, hereby irrevocably gives and grants to the Company full and exclusive power and authority to exercise all of the powers conferred upon it by the terms of this Trust Agreement and to take or refrain from taking any and all action which such Employer might otherwise take or refrain from taking with respect to this Trust Agreement, including the sole and exclusive power to exercise, enforce or waive any rights whatsoever which such Employer might otherwise have with respect to the Trust Fund, and each such Employer, by becoming a party to this Trust Agreement,

irrevocably appoints the Company its agent for such purposes. The Trustee will have no obligation to account to any such Employer or to follow the instructions of or otherwise deal with any such Employer, the intention being that the Trustee will deal solely with the Company as if the Trustee and the Company were the only parties in this Trust Agreement.

20.    MISCELLANEOUS

20.1    Governing Law. To the extent not inconsistent with ERISA, as heretofore or hereafter amended, the provisions of this Trust Agreement are governed by and construed in accordance with the laws of the Commonwealth of Massachusetts. The Company hereby submits to the jurisdiction of the State and Federal Courts located in the Commonwealth of Massachusetts including any appellate courts thereof.

20.2    Status of Plans. The Company is responsible for verifying that while any assets of a Plan are held in the Trust Fund, the Plan:

(a)    is "qualified" with the meaning of Section 401(a) of the Code and, as a defined contribution plan either (A) the Plan provides that each Participant is a "named fiduciary" (as described in Section 402(a)(2) of the provisions of ERISA) who is duly authorized under the Plan to provide investment direction to the Administrator, acting as agent for such Participant, for conveyance to the Trustee, or (B) the Plan is duly qualified as an "ERISA Section 404(c) Plan" described in 29 C.F.R. Section 2550.404c under which each Participant is authorized to provide investment direction to the Administrator, acting as agent for such Participant, for conveyance to the Trustee;

(b)    is permitted by the United States Treasury Department to pool its funds in a group trust;

(c)    permits its assets to be commingled for investment purposes with the assets of other such plans by investing such assets in this Trust

Fund whether or not its assets will in fact be held in a separate investment fund; and

(d)    does not prohibit the Administrator from appointing the Recordkeeper to perform services as described herein, and provides that the Administrator is the fiduciary responsible for carrying out Participant investment directions.

20.3   No Reversion to Employer. Except as provided herein, no portion of the principal or the income of the Trust Fund can revert to or be recoverable by the Company or any Employer or ever be used for or diverted to any purpose other than for the exclusive benefit of participants in the Plans and persons claiming under or through them pursuant to the Plans, provided, however, that:

(a)    all contributions are conditioned upon the deductibility of the contributions under Section 404(a) of the Code, and, to the extent determined to be nondeductible, the Trustee will, upon written request of the affected Company, return such amount as may be permitted by law to such Company, as appropriate, within 1 year after the determination of nondeductibility or within such other period as is permitted by applicable law; and

(b)    if a contribution or any portion thereof is made by the Company by a mistake of fact, the Trustee will, upon written request of the Company, return such amounts as may be permitted by law to the Company, as appropriate, within one year after the date of payment to the Trustee or within such other period as is permitted by applicable law; and

(c)    if a contribution is conditioned upon the qualification of the Plans and Trust under Sections 401 and 501 of the Code, the contributions of the Company to the Trust for all Plans years, with the gains and losses thereon, will be returned by the Trustee to the Company, as appropriate, within 1 year in the event that the Commissioner of Internal Revenue fails to rule that the Plans and

Trust were as of such date qualified and tax-exempt (within the meaning of Sections 401 and 501 of the Code); and

(d)     in the event that a Plan whose assets are held in the Trust Fund is terminated, assets of such Plan may be returned to the Employer if all Plan liabilities to participants and beneficiaries of such Plan have been satisfied; and

(e)     assets may be returned to the Employer to the extent that the law permits such transfer.

The Trustee is under no obligation to return any part of the Trust Fund as provided in this Section 20.3 until the Trustee has received a written certification from the Administrator that such return is in compliance with this Section 20.3, the Plans and the requirements of applicable law. The Trustee may rely conclusively on such written certification and will be under no obligation to investigate or otherwise determine its propriety.

20.4   Non-Alienation of Benefits. Except as provided as pursuant to a Qualified Domestic Relations Order under Section 414(p), no benefit to which a Participant is or may become entitled under a Plan will at any time be subject in any manner to alienation or encumbrance, nor be resorted to, appropriated or seized in any proceeding at law, in equity or otherwise. No Participant or other person entitled to receive a benefit under a Plan will, except as specifically provided in such Plan, have power in any manner to transfer, assign, alienate or in any way encumber such benefit under such Plan, or any part thereof, and any attempt to do so will be void.

20.5   Duration of Trust. Unless sooner terminated, the trust created under this Trust Agreement will continue for the maximum period of time which the laws of the Commonwealth of Massachusetts shall permit.

20.6   No Guarantees. Neither the Company, nor any Employer, nor the Trustee guarantees the Trust Fund from loss or depreciation, nor the payment of any amount which may become due to any person under the Plans or this Trust Agreement.

20.7   Duty to Furnish Information. Both the Company and the Trustee will furnish to the other any documents, reports, returns, statements, or other information

that the other reasonably deems necessary to perform its duties imposed under the Plans or this Trust Agreement or otherwise imposed by law.

20.8 Withholding. The Administrator will withhold any tax which by law is required to be withheld from any payment under the Plans, unless the Trustee has agreed in writing to do so. The Administrator will provide all information reasonably requested by the Trustee to enable the Trustee to so withhold.

20.9 Parties Bound. This Trust Agreement is binding upon the parties hereto, all participants in the Plans and persons claiming under or through them pursuant to the Plans, and, as the case may be, the heirs, executors, administrators, successors, and assigns of each of them.

In the event of the merger or consolidation of the Company or any Employer or other circumstances whereby a successor person, firm or company continues to carry on all or a substantial part of its business, and such successor will elect to carry on the provisions of the Plan or Plans applicable to such business, as therein provided, such successor will be substituted hereunder for the Company or such Employer, as the case may be, upon the filing in writing of its election so to do with the Trustee. The Trustee may, but need not, rely on the certification of an officer of the Company, and a certified copy of a resolution of the Board of Directors of such successor, reciting the facts, circumstances and consummation of such succession and the election of such successor to continue the said Plan or Plans as conclusive evidence thereof, without requiring any additional evidence.

20.10 Necessary Parties to Disputes. Necessary parties to any accounting, litigation or other proceedings include only the Trustee, the Administrator and the Company and any appropriate Employers and the settlement or judgment in any such case in which the Company, the Administrator, the appropriate Employers and the Trustee are duly served or cited will be binding upon all participants in the Plans and their beneficiaries and estates, and upon all persons claiming by, through or under them.

20.11 Unclaimed Benefit Payments. If any check or share certificate in payment of a benefit hereunder which has been mailed by regular US mail to the last address of

the payee furnished the Trustee by the Administrator is returned unclaimed, the Trustee will notify the Administrator and will discontinue further payments to such payee until it receives the further instruction of the Administrator.

20.12 Severability. If any provisions of this Trust Agreement are held by a court of competent jurisdiction to be invalid or unenforceable, the remaining provisions of this Trust Agreement will continue to be fully effective.

20.13 References. Unless the context clearly indicates to the contrary, a reference to a statute, regulation, document or provision will be construed as referring to any subsequently enacted, adopted or executed counterpart.

20.14 Headings. Headings and subheadings in this Trust Agreement are inserted for convenience of reference only and are not to be considered in the construction of its provisions.

20.15 No Liability for Acts of Predecessor and Successor Trustees. The Trustee has no liability for the acts or omissions of any predecessors or successors in office.

20.16 Construction.

    (a)    General. Unless the contrary is plainly required by the context, wherever any words are used herein in the masculine gender, they will be construed as though they were also used in the feminine gender, and vice versa; wherever any words are used herein in the singular form, they will be construed as though they were also used in the plural form, and vice versa; and wherever the words "herein," "hereof," "hereunder," and words of similar import are used, they will be construed to refer to the Trust in its entirety and not only to the portion of the Trust in which they appear.

    (b)    Other Agreements. Certain aspects of the relations between the Recordkeeper, the Company and the Trustee are governed by the Operating Agreement. In the case of any conflict between the Operating Agreement and the Trust Agreement, with respect to matters specifically covered by the Operating Agreement the provisions of the Operating Agreement will control. The provisions

of this Trust Agreement will govern interpretation of any matters not specifically covered by the Operating Agreement.

20.17 <u>Notices</u>.   Notices to the parties must be in writing to the current "Designated Representative" identified on the contact list referenced in the Operating Agreement.

20.18 <u>Counterparts</u>. This Trust Agreement may be executed in one or more counterparts, each of which constitute an original.

IN WITNESS WHEREOF, the parties hereto have caused this instrument to be executed by their duly authorized officers as of the day and year first above written.

BP AMOCO CORPORATION

BY: _____

TITLE: _Senior Vice President  HR_

STATE STREET BANK AND TRUST COMPANY

BY: _____

TITLE: _Vice President_

## EXHIBIT A

Plans participating in the Trust as of April 6, 2000:

BP Amoco Employee Savings Plan

BP Amoco Partnership Savings Plan

BP Amoco DirectSave Plan

BP America Savings and Investment Plan

EXHIBIT B

Investment Funds

## CORE INVESTMENT OPTIONS

Short-Term
> Money Market Fund

Bond
> Bond Index Fund
> Bond Index Fund - Long Duration
> Bond Index Fund - Short Duration
> Income Fund (Frozen)
> U.S. Savings Bonds (Frozen)

Hybrid
> Balanced Index Fund – Aggressive
> Balanced Index Fund – Conservative
> Balanced Index Fund – Moderate

Large Cap
> Equity Index Fund
> Equity Index Fund – Growth
> Equity Index Fund – Value

Mid Cap
> Mid-Cap Equity Index Fund

Small Cap
> Small-Cap Equity Index Fund
> Small-Cap Equity Index Fund – Growth
> Small-Cap Equity Index Fund – Value

International
> International Equity Index Fund
> International Equity Index Fund – Europe
> International Equity Index Fund – Far East

Company Stock
> BP Amoco Stock Fund

## MUTUAL FUND WINDOW INVESTMENT OPTIONS

Short-Term
> Fidelity Retirement Money Market Portfolio

Bond Funds
Intermediate-Term Government
Fidelity Government Income Fund
Strong Government Securities Fund
T. Rowe Price U.S. Treasury Intermediate Bond Fund
USAA GNMA Trust

Long-Term Government
PIMCO Long-Term U.S. Government Fund

Short-Term Bond
Harbor Short Duration Fund
Fidelity Institutional Short-Intermediate Government Fund
PIMCO Low Duration Fund

Intermediate-Term Bond
Dodge & Cox Income Fund
Fidelity Investment Grade Bond Fund
Harbor Bond Fund
INVESCO Select Income Fund
MAS Fixed Income Portfolio
PIMCO Total Return Fund
PIMCO Total Return Fund III

Long-Term Bond
USAA Income Fund

Multi-Sector Bond
Dreyfus Core Bond Fund
Janus Flexible Income Fund
T. Rowe Price Spectrum Income Fund

High Yield Bond
Fidelity Capital & Income Fund
Fidelity High Income Fund
INVESCO High Yield Fund
MAS High Yield Portfolio
PIMCO High Yield Fund

Convertible Bond
Fidelity Convertible Securities Fund

Emerging Markets Bond
Fidelity New Markets Income Fund

International Bond
>>> Payden & Rygel Global Fixed Income Fund
>>> PIMCO Foreign Bond Fund

## Hybrid Funds

Domestic Hybrid
>>> Calvert Social Investment Fund Balanced Portfolio
>>> Columbia Balanced Fund, Inc.
>>> Dreyfus Founders Balanced Fund F
>>> Dreyfus Premier Balanced Fund
>>> Fidelity Balanced Fund
>>> Fidelity Puritan® Fund
>>> INVESCO Total Return Fund
>>> Janus Balanced Fund
>>> MAS Balanced Portfolio
>>> Vanguard Asset Allocation Fund
>>> Vanguard Wellesley Income Fund
>>> Vanguard Wellington Fund

## Large Cap U.S. Stock Funds

Large Cap Value
>>> American Century Equity Growth Fund
>>> American Century Income & Growth Fund
>>> American Mutual Fund
>>> Clipper Fund
>>> Dreyfus Aggressive Value Fund
>>> Fidelity Equity-Income Fund
>>> Fidelity Equity-Income II Fund
>>> Fundamental Investors
>>> INVESCO Value Equity Fund
>>> Investment Company of America
>>> Legg Mason Value Trust, Inc.
>>> MAS Equity Portfolio
>>> T. Rowe Price Equity Income Fund, Inc.
>>> Vanguard Equity Income Fund
>>> Vanguard Growth and Income Fund
>>> Vanguard Windsor Fund
>>> Vanguard Windsor II Fund
>>> Warburg Pincus Value Fund
>>> Washington Mutual Investors Fund

Large Cap Blend
>>> AIM Blue Chip Fund
>>> Domini Social Equity Fund

Dreyfus Appreciation Fund, Inc.
Dreyfus Disciplined Stock Fund
Fidelity Blue Chip Growth Fund
Fidelity Disciplined Equity Fund
Fidelity Dividend Growth Fund
Fidelity Fifty$^{sm}$
Fidelity Fund
Fidelity *TechnoQuant*® Growth Fund
INVESCO Equity Income Fund
Morgan Stanley Dean Witter Institutional Fund, Inc. – Equity Growth
   Portfolio Class A
PIMCO StocksPLUS Fund
T. Rowe Price Blue Chip Growth Fund
T. Rowe Price Dividend Growth Fund
T. Rowe Price Growth Stock Fund
USAA Growth Fund
Vanguard PRIMECAP Fund
Warburg Pincus Capital Appreciation Fund

Large Cap Growth
   Alger Capital Appreciation Retirement Portfolio
   Columbia Growth Fund
   Dreyfus Founders Growth Fund F
   Dreyfus Premier Third Century Fund, Inc.
   Dreyfus Premier Worldwide Growth Fund, Inc.
   Fidelity Growth Company Fund
   Fidelity Large Cap Stock Fund
   Fidelity Retirement Growth Fund
   Harbor Capital Appreciation Fund
   INVESCO Blue Chip Growth Fund
   Janus Fund
   Janus Growth and Income Fund
   Janus Twenty Fund
   Merrill Lynch Fundamental Growth Fund, Inc.
   Papp America – Abroad Fund
   Putnam Investors Fund A
   Scudder Large Company Growth Fund
   Strong Total Return Fund, Inc.
   Vanguard U.S. Growth Fund

Medium Cap U.S. Stock Funds
   Medium Cap Value
      American Century Equity Income Fund
      American Century Value Fund
      Fidelity Value Fund

Strong Opportunity Fund
Strong Schafer Value Fund
T. Rowe Price Value Fund

Medium Cap Blend
Ariel Appreciation Fund
Fidelity Capital Appreciation Fund
Fidelity Trend Fund
Legg Mason Special Investment Trust, Inc.
Montgomery Select 50 Fund®
Neuberger Berman Socially Responsive Trust

Medium Cap Growth
Alger MidCap Growth Retirement Portfolio
Alger Small Cap Retirement Portfolio
Baron Asset Fund
Fidelity Aggressive Growth Fund
Fidelity Export and Multinational Fund
Fidelity Mid-Cap Stock Fund
Fidelity OTC Portfolio
INVESCO Dynamics Fund
MAS Mid Cap Growth Portfolio
Strong Growth Fund
T. Rowe Price Mid-Cap Growth Fund
Warburg Pincus Emerging Growth Fund

Small Cap U.S. Stock Funds
Small Cap Value
Franklin Balance Sheet Investment Fund Class A
PIMCO Small-Cap Value Fund
Warburg Pincus Small Company Value Fund

Small Cap Blend
Acorn Fund
Fidelity Small Cap Selector
MAS Small Cap Value Portfolio
Neuberger Berman Genesis Trust
PIMCO Micro-Cap Growth Fund
T. Rowe Price Small-Cap Stock Fund

Small Cap Growth
Baron Growth Fund
Delaware Trend Fund
Dreyfus Founders Discovery Fund F
Franklin Small Cap Growth Fund-A

         INVESCO Small Company Growth Fund
         Managers Special Equity Fund
         Morgan Stanley Dean Witter Institutional Fund, Inc. – Small Company
         Growth      Portfolio Class B

Specialty U.S. Stock Funds
    Specialty-Health Care
        INVESCO Health Sciences Fund
        T. Rowe Price Health Sciences

    Specialty-Real Estate
        Cohen & Steers Realty Shares
        Fidelity Real Estate Investment Portfolio

    Specialty Technology
        Morgan Stanley Dean Witter Institutional Fund, Inc. – Technology Portfolio
         Class A
        PBGH Technology & Communications Fund
        PIMCO Innovation Institutional Fund

    Specialty-Utilities
        Fidelity Utilities Fund
        INVESCO Utilities Fund

International Stock Funds
    Foreign Stock
        American Century International Growth Fund
        Deutsche International Equity Fund
        Fidelity Aggressive International Fund.
        Fidelity Diversified International Fund
        Fidelity International Growth & Income Fund
        Fidelity Overseas Fund
        GAM International Fund A
        J.P. Morgan Institutional International Equity Fund
        Lazard International Equity Portfolio
        Managers International Equity Fund
        Putnam International Growth Fund A
        Templeton Foreign Fund A
        Warburg Pincus International Equity Fund

    Europe Stock
        Fidelity Europe Capital Appreciation Fund
        Fidelity Europe Fund

---

· Formerly known as Fidelity International Value Fund

INVESCO European Fund
Merrill Lynch EuroFund
Putnam Europe Growth Fund A
T. Rowe Price European Stock Fund

International Hybrid
AIM Global Growth & Income Fund
Fidelity Global Balanced Fund

Latin America Stock
Fidelity Latin America Fund
Scudder Latin America Fund
T. Rowe Price Latin America Fund

Diversified Pacific Asia Stock
Fidelity Pacific Basin Fund
Fidelity Southeast Asia Fund
Merrill Lynch Pacific Fund, Inc.
Putnam Asia Pacific Growth Fund A

Japan Stock
Fidelity Japan Fund

Diversified Emerging Markets Stock
Fidelity Emerging Markets Fund
Lazard Emerging Markets Portfolio
Templeton Developing Markets Trust A
Templeton Institutional Funds, Inc. – Emerging Markets Series

World Stock
Capital World Growth and Income Fund
Janus Worldwide Fund
Mutual Discovery Fund Class A
New Perspective Fund
Putnam Global Growth Fund A
Templeton Growth Fund, Inc. A
Templeton World Fund A

<u>Hybrid Asset Allocation Funds</u>
Fidelity Freedom Income® Fund
Fidelity Fredome 2000® Fund
Fidelity Freedom 2010® Fund
Fidelity Freedom 2020® Fund
Fidelity Freedom 2030® Fund

EXHIBIT ∉ D  dt 4/6/2000

Trustee Fees

## I. TRUSTEE/CUSTODIAN CHARGES

.50 Basis Points on the month end Net Asset Value

## II. PORTFOLIO ACCOUNTING

Core Fund Portfolios:                        $ 7,500 per portfolio/year

AE01 - BP Amoco Stock Fund               AE19 - Equity Index Fund --Value

AE02 - Money Market Fund                 AE20 - Small-Cap Equity Index Fund -- Value

AE04 - U.S. Savings Bonds                AE21 - Small-Cap Equity Index Fund -- Growth

AE10 - Equity Index Fund                 AE22 - International Equity Index Fund -- Europe

AE11 - Bond Index Fund                   AE23 - International Equity Index Fund -- Far East

AE12 - Balanced Index Fund – Moderate    AE24 - Bond Index Fund -- Short Duration

AE13 - Mid-Cap Equity Index Fund         AE25 - Bond Index Fund -- Long Duration

AE14 - International Equity Index Fund    AE26 - Balanced Index Fund -- Conservative

AE16 - Small-Cap Equity Index Fund       AE27 - Balanced Index Fund -- Aggressive

AE18 - Equity Index Fund -- Growth       AE28 - Income Fund


Participant Directed Window Portfolios:   $45,000 per portfolio/year

AE33-BP Amoco Employee Savings Plan       AE35-BP Amoco DirectSave Plan
AE34-BP Amoco Partnership Savings Plan    AE38-BP America SIP

Stable Value Fund Portfolios:             $ 5,000 per portfolio/year

AE29 - PIMCO                              AE32 - J.P. Morgan
AE30 - Loomis                            AE39 - BP Amoco
AE31 - Dwight

Loan Fund: (AE17)                         $ 5,000 per portfolio/year

Cash Fund: (AE06, AE36)                   $ 5,000 per portfolio/year

## III. PORTFOLIO ACTIVITY

$15 per Depository Trade (DTC, FED, PTC)
$15 per Physical Trade
$15 per Time Deposit

## III. OTHER FEES

Short Term Investment Fund
An administrative/management fee of 18 basis points will be netted out of the yield.
This fee applies to any of the above portfolios that invest in STIF.

Plan Accounting
$1000 per plan annually for each investment option

Out-of-pockets
        Out-of-pockets such as courier, telex, registration and communications charges
are borne by the client.

4/5/00

### FIRST AMENDMENT

### BP AMOCO MASTER TRUST FOR EMPLOYEE SAVINGS PLANS

#### (As Amended and Restated Effective as of April 6, 2000)

WHEREAS, BP Amoco Corporation (the "Company") maintains the BP Amoco Employee Savings Plans ("Plans") which Plans are funded through the BP Amoco Master Trust for Employee Savings Plans ("Trust");

WHEREAS, amendment of the Trust is now considered desirable;

WHEREAS, pursuant to Section 17 of the Trust, the Trust can be amended upon the agreement of the Company and the Trustee;

WHEREAS, pursuant to Section 15 of the Trust, a Designated Officer, such as the Senior Vice President, Human Resources of the Company, has the authority to amend the Plan on behalf of the Company.

NOW, THEREFORE, the Trustee and the Company hereby amend the Trust, effective as of the dates indicated herein, as follows:

1. By amending Section 1.10 in its entirety, effective July 1, 2000, to read as follows:

"1.10 Designated Officer means the Senior Vice President, the Chief Financial Officer, the Director, Trust Investments and any other officer of the Company, and the Group Vice President, Human Resources of BP Amoco p.l.c. and any other officer of BP Amoco p.l.c. to whom (but only to the extent specifically provided) authority to act on behalf of the Company has been granted by the Board of Directors of the Company or one of its committees."

2.  By amending Section 6.1(a)(7) effective July 20, 2000 by adding the following to the end thereof:

"Notwithstanding the foregoing, and to the extent permitted by law, shares of Vastar Resources, Inc. Common Stock ("Vastar Stock") held by the Trustee for which the Trustee has not received timely voting or tender instructions will be voted or tendered by the Trustee in the same proportion as shares of Vastar Stock voted or tendered by the Trustee pursuant to Participants' written instructions."

3.  By amending Exhibits A, B and C effective July 20, 2000 to read as follows:

"EXHIBIT A

Plans participating in the Trust as of July 20, 2000:

BP Amoco Employee Savings Plan

BP Amoco Partnership Savings Plan

BP Amoco DirectSave Plan

BP America Savings and Investment Plan

Vastar Resources Inc. Capital Accumulation Plan

ARCO Capital Accumulation Plan

CH-Twenty Capital Accumulation Plan

EXHIBIT B

Investment Funds

**CORE INVESTMENT OPTIONS**

Short-Term
        Money Market Fund

Bond
>
> Bond Index Fund
> Bond Index Fund - Long Duration
> Bond Index Fund - Short Duration
> Income Fund (Frozen)
> U.S. Savings Bonds (Frozen) (Removed as of August 1, 2000)

Hybrid
>
> Balanced Index Fund – Aggressive
> Balanced Index Fund – Conservative
> Balanced Index Fund – Moderate

Large Cap
>
> Equity Index Fund
> Equity Index Fund – Growth
> Equity Index Fund – Value

Mid Cap
>
> Mid-Cap Equity Index Fund

Small Cap
>
> Small-Cap Equity Index Fund
> Small-Cap Equity Index Fund – Growth
> Small-Cap Equity Index Fund – Value

International
>
> International Equity Index Fund
> International Equity Index Fund – Europe
> International Equity Index Fund – Far East

Company Stock
>
> BP Amoco Stock Fund
> Vastar Stock

## MUTUAL FUND WINDOW INVESTMENT OPTIONS

Short-Term
>
> Fidelity Retirement Money Market Portfolio

Bond Funds
>
> Intermediate-Term Government
> > Fidelity Government Income Fund
> > Strong Government Securities Fund
> > T. Rowe Price U.S. Treasury Intermediate Bond Fund
> > USAA GNMA Trust

Long-Term Government
> PIMCO Long-Term U.S. Government Fund

Short-Term Bond
> Harbor Short Duration Fund
> Fidelity Institutional Short-Intermediate Government Fund
> PIMCO Low Duration Fund

Intermediate-Term Bond
> Dodge & Cox Income Fund
> Fidelity Investment Grade Bond Fund
> Harbor Bond Fund
> INVESCO Select Income Fund
> MAS Fixed Income Portfolio
> PIMCO Total Return Fund
> PIMCO Total Return Fund III

Long-Term Bond
> USAA Income Fund

Multi-Sector Bond
> Dreyfus Core Bond Fund
> Janus Flexible Income Fund
> T. Rowe Price Spectrum Income Fund

High Yield Bond
> Fidelity Capital & Income Fund
> Fidelity High Income Fund
> INVESCO High Yield Fund
> MAS High Yield Portfolio
> PIMCO High Yield Fund

Convertible Bond
> Fidelity Convertible Securities Fund

Emerging Markets Bond
> Fidelity New Markets Income Fund

International Bond
> Payden & Rygel Global Fixed Income Fund
> PIMCO Foreign Bond Fund

## Hybrid Funds

### Domestic Hybrid

Calvert Social Investment Fund Balanced Portfolio
Columbia Balanced Fund, Inc.
Dreyfus Founders Balanced Fund F
Dreyfus Premier Balanced Fund
Fidelity Balanced Fund
Fidelity Puritan® Fund
INVESCO Total Return Fund
Janus Balanced Fund
MAS Balanced Portfolio
Vanguard Asset Allocation Fund
Vanguard Wellesley Income Fund
Vanguard Wellington Fund

## Large Cap U.S. Stock Funds

### Large Cap Value

American Century Equity Growth Fund
American Century Income & Growth Fund
American Mutual Fund
Clipper Fund
Dreyfus Aggressive Value Fund
Fidelity Equity-Income Fund
Fidelity Equity-Income II Fund
Fundamental Investors
INVESCO Value Equity Fund
Investment Company of America
Legg Mason Value Trust, Inc.
MAS Equity Portfolio
T. Rowe Price Equity Income Fund, Inc.
Vanguard Equity Income Fund
Vanguard Growth and Income Fund
Vanguard Windsor Fund
Vanguard Windsor II Fund
Warburg Pincus Value Fund
Washington Mutual Investors Fund

### Large Cap Blend

AIM Blue Chip Fund
Domini Social Equity Fund
Dreyfus Appreciation Fund, Inc.
Dreyfus Disciplined Stock Fund
Fidelity Blue Chip Growth Fund

5

Fidelity Disciplined Equity Fund
Fidelity Dividend Growth Fund
Fidelity Fifty℠
Fidelity Fund
Fidelity *TechnoQuant*® Growth Fund
INVESCO Equity Income Fund
Morgan Stanley Dean Witter Institutional Fund, Inc. –
  Equity Growth Portfolio Class A
PIMCO StocksPLUS Fund
T. Rowe Price Blue Chip Growth Fund
T. Rowe Price Dividend Growth Fund
T. Rowe Price Growth Stock Fund
USAA Growth Fund
Vanguard PRIMECAP Fund
Warburg Pincus Capital Appreciation Fund

Large Cap Growth
Alger Capital Appreciation Retirement Portfolio
Columbia Growth Fund
Dreyfus Founders Growth Fund F
Dreyfus Premier Third Century Fund, Inc.
Dreyfus Premier Worldwide Growth Fund, Inc.
Fidelity Growth Company Fund
Fidelity Large Cap Stock Fund
Fidelity Retirement Growth Fund
Harbor Capital Appreciation Fund
INVESCO Blue Chip Growth Fund
Janus Fund
Janus Growth and Income Fund
Janus Twenty Fund
Merrill Lynch Fundamental Growth Fund, Inc.
Papp America – Abroad Fund
Putnam Investors Fund A
Scudder Large Company Growth Fund
Strong Large Cap Growth Fund
Vanguard U.S. Growth Fund

Medium Cap U.S. Stock Funds
Medium Cap Value
American Century Equity Income Fund
American Century Value Fund
Fidelity Value Fund
Strong Opportunity Fund

6

Strong Schafer Value Fund
T. Rowe Price Value Fund

Medium Cap Blend
Ariel Appreciation Fund
Fidelity Capital Appreciation Fund
Fidelity Trend Fund
Legg Mason Special Investment Trust, Inc.
Montgomery Global 20 Fund® – Class R
Neuberger Berman Socially Responsive Trust

Medium Cap Growth
Alger MidCap Growth Retirement Portfolio
Alger Small Cap Retirement Portfolio
Baron Asset Fund
Fidelity Aggressive Growth Fund
Fidelity Export and Multinational Fund
Fidelity Mid-Cap Stock Fund
Fidelity OTC Portfolio
INVESCO Dynamics Fund
MAS Mid Cap Growth Portfolio
Strong Growth Fund
T. Rowe Price Mid-Cap Growth Fund
Warburg Pincus Emerging Growth Fund

Small Cap U.S. Stock Funds
Small Cap Value
Franklin Balance Sheet Investment Fund Class A
PIMCO Small-Cap Value Fund
Warburg Pincus Small Company Value Fund

Small Cap Blend
Acorn Fund
Fidelity Small Cap Selector
MAS Small Cap Value Portfolio
Neuberger Berman Genesis Trust
PIMCO Micro-Cap Growth Fund
T. Rowe Price Small-Cap Stock Fund

Small Cap Growth
Baron Growth Fund
Delaware Trend Fund
Dreyfus Founders Discovery Fund F

Franklin Small Cap Growth Fund I – Class A
INVESCO Small Company Growth Fund
Managers Special Equity Fund
Morgan Stanley Dean Witter Institutional Fund, Inc. –
   Small Company Growth    Portfolio Class B

Specialty U.S. Stock Funds
   Specialty-Health Care
      INVESCO Health Sciences Fund
      T. Rowe Price Health Sciences

   Specialty-Real Estate
      Cohen & Steers Realty Shares
      Fidelity Real Estate Investment Portfolio

   Specialty Technology
      Morgan Stanley Dean Witter Institutional Fund, Inc. –
      Technology Portfolio Class A
      MunderNetNet
      PBGH Technology & Communications Fund
      PIMCO Innovation Institutional Fund

   Specialty-Utilities
      Fidelity Utilities Fund
      INVESCO Utilities Fund

International Stock Funds
   Foreign Stock
      American Century International Growth Fund
      Deutsche International Equity Fund
      Fidelity Aggressive International Fund.
      Fidelity Diversified International Fund
      Fidelity International Growth & Income Fund
      Fidelity Overseas Fund
      GAM International Fund A
      J.P. Morgan Institutional International Equity Fund
      Lazard International Equity Portfolio
      Managers International Equity Fund
      Putnam International Growth Fund A
      Templeton Foreign Fund A
      Warburg Pincus International Equity Fund

---

Formerly known as Fidelity International Value Fund

Europe Stock
>Fidelity Europe Capital Appreciation Fund
>Fidelity Europe Fund
>INVESCO European Fund
>Merrill Lynch EuroFund
>Putnam Europe Growth Fund A
>T. Rowe Price European Stock Fund

International Hybrid
>AIM Global Growth A Fund (Renamed as of June 9, 2000)
>Fidelity Global Balanced Fund

Latin America Stock
>Fidelity Latin America Fund
>Scudder Latin America Fund
>T. Rowe Price Latin America Fund

Diversified Pacific Asia Stock
>Fidelity Pacific Basin Fund
>Fidelity Southeast Asia Fund
>Merrill Lynch Pacific Fund, Inc.
>Putnam Asia Pacific Growth Fund A

Japan Stock
>Fidelity Japan Fund

Diversified Emerging Markets Stock
>Fidelity Emerging Markets Fund
>Lazard Emerging Markets Portfolio
>Templeton Developing Markets Trust A
>Templeton Institutional Funds, Inc. – Emerging Markets Series

World Stock
>Capital World Growth and Income Fund
>Janus Worldwide Fund
>Mutual Discovery Fund Class A
>New Perspective Fund
>Putnam Global Growth Fund A
>Templeton Growth Fund, Inc. A
>Templeton World Fund A

Hybrid Asset Allocation Funds

    Fidelity Freedom Income® Fund
    Fidelity Fredome 2000® Fund
    Fidelity Freedom 2010® Fund
    Fidelity Freedom 2020® Fund
    Fidelity Freedom 2030® Fund


EXHIBIT C

Trustee Fees

## I. TRUSTEE/CUSTODIAN CHARGES

.50 Basis Points on the month end Net Asset Value


## II. PORTFOLIO ACCOUNTING

| Core Fund Portfolios: | $ 7,500 per portfolio/year |
|---|---|
| AE01 - BP Amoco Stock Fund | AE19 - Equity Index Fund --Value |
| AE02 - Money Market Fund | AE20 - Small-Cap Equity Index Fund -- Value |
| AE04 - U.S. Savings Bonds | AE21 - Small-Cap Equity Index Fund -- Growth |
| AE10 - Equity Index Fund | AE22 - International Equity Index Fund -- Europe |
| AE11 - Bond Index Fund | AE23 - International Equity Index Fund -- Far East |
| AE12 - Balanced Index Fund – Moderate | AE24 - Bond Index Fund -- Short Duration |
| AE13 - Mid-Cap Equity Index Fund | AE25 - Bond Index Fund -- Long Duration |
| AE14 - International Equity Index Fund | AE26 - Balanced Index Fund -- Conservative |
| AE16 - Small-Cap Equity Index Fund | AE27 - Balanced Index Fund -- Aggressive |
| AE18 - Equity Index Fund -- Growth | AE28 - Income Fund |
| AE40 – Vastar Resources Stock | AE44 – Vastar Resources Stock (CH-Twenty CAP) (Fee waived) |
| AE45 – Vastar Resources Stock (ARCO CAP) | |

10

| Participant Directed Window Portfolios: | $45,000 per portfolio/year |
|---|---|

| AE33-BP Amoco Employee Savings Plan | AE35-BP Amoco DirectSave Plan |
|---|---|
| AE34-BP Amoco Partnership Savings Plan | AE38-BP America SIP |
| AE41-Vastar Resources Inc. CAP | AE42-CH-Twenty CAP |
| AE43-ARCO CAP | |

| Stable Value Fund Portfolios: | $ 5,000 per portfolio/year |
|---|---|

| AE29 - PIMCO | AE32 - J.P. Morgan |
|---|---|
| AE30 - Loomis | AE39 - Dwight |
| AE31 - Dwight | |

| Loan Fund: (AE17) | $ 5,000 per portfolio/year |
|---|---|

| Cash Fund: (AE06, AE36, AE46) | $ 5,000 per portfolio/year |
|---|---|

## III.  PORTFOLIO ACTIVITY

$15 per Depository Trade (DTC, FED, PTC)
$15 per Physical Trade
$15 per Time Deposit

## IV.  OTHER FEES

Short Term Investment Fund
An administrative/management fee of 18 basis points will be netted out of the yield.  This fee applies to any of the above portfolios that invest in STIF.

Plan Accounting
$1000 per plan annually for each investment option

Out-of-pockets
        Out-of-pockets such as courier, telex, registration and communications charges are borne by the client."

In all other respects the Trust, as amended, will continue in full force and effect.

\*   \*   \*   \*   \*

Dated this ____15th____ day of July, 2000.

BP AMOCO CORPORATION

By: _____

Title: ____Senior Vice President - Human Resources____

By: _____

Title: ____Manager, Trust Investments, The Americas____

STATE STREET BANK AND TRUST COMPANY

By: _____

Title: ____Vice President____

## SECOND AMENDMENT

### OF

### BP MASTER TRUST FOR SAVINGS PLANS

#### (As Amended and Restated Effective as of April 6, 2000)

WHEREAS, BP Corporation North America Inc. (until May 1, 2001, formerly known as BP Amoco Corporation) (the "Company") maintains the BP Employee Savings Plans which are funded through the BP Master Trust for Employee Savings Plans ("Trust");

WHEREAS, the Trust has previously been amended and further amendment of the Trust is now considered desirable;

WHEREAS, pursuant to Section 17 of the Trust, the Trust can be amended upon the agreement of the Company and the Trustee;

WHEREAS, pursuant to Section 15 of the Trust, a Designated Officer has the authority to amend the Trust on behalf of the Company;

NOW, THEREFORE, the Trustee and the Company hereby amends the Trust, effective as of the dates specified, as follows:

1.      Effective May 1, 2001, by substituting the following for Section 1.8 of the Trust:

"1.8 'Company' means BP Corporation North America Inc., an Indiana corporation, or any successor corporation by merger, consolidation, purchase or otherwise, which elects to adopt the Trust."

2.      Effective May 1, 2001, by substituting the following for Section 1.10 of the Trust:

"1.10 'Designated Officer' means the Senior Vice President, the Chief Financial Officer, the Director, Trust Investments and any other officer of the Company, and the Group Vice President, Human Resources of BP p.l.c. and any other officer of BP p.l.c., to whom (but only to the extent specifically provided), authority to act on behalf of the Company has been granted by the Board of Directors or one of its committees."

3.  .   Effective May 1, 2001, by substituting the following for Section 1.23 of the Trust:

"1.23 'Plan Sponsor' means BP Corporation North America Inc."

4.    Effective October 1, 2000, by amending Exhibit A to read as follows:

"EXHIBIT A

Plans participating in the Trust as of October 1, 2000:

> BP Employee Savings Plan
> BP Partnership Savings Plan
> BP DirectSave Plan
> BP America Savings and Investment Plan
> Vastar Resources Inc. Capital Accumulation Plan
> ARCO Capital Accumulation Plan
> CH-Twenty Capital Accumulation Plan"

5.    Effective May 1, 2001, by substituting "BP Stock Fund" for "BP Amoco Stock Fund" in Exhibits B and C.

\*    \*    \*    \*    \*

Dated this ___14th___ day of ___May___, 2001.

BP CORPORATION NORTH AMERICA INC.

By: _____

Title: __Director, Trust Investments, The Americas__

STATE STREET BANK AND TRUST COMPANY

By: _____

Title: _____

4/27/01

c:\docume~1\basilejm\locals~1\temp\mstr\trstamend20401.doc

## THIRD AMENDMENT

## OF

## BP MASTER TRUST FOR SAVINGS PLANS

### (As Amended and Restated Effective as of April 6, 2000)

WHEREAS,  BP Corporation North America Inc. (the "Company") maintains the BP Employee Savings Plans which are funded through the BP Master Trust for Employee Savings Plans ("Trust");

WHEREAS,  the Trust has previously been amended and further amendment of the Trust is now considered desirable;

WHEREAS,  pursuant to Section 17 of the Trust, the Trust can be amended upon the agreement of the Company and the Trustee;

WHEREAS,  pursuant to Section 15 of the Trust, a  Designated Officer has the authority to amend the Trust on behalf of the Company;

NOW, THEREFORE,  the Trustee and the Company hereby amends the Trust, effective as of the date specified, as follows:

Effective as of the close of business on December 31, 2001, by amending Exhibit A to read as follows:

"EXHIBIT A

Plans participating in the Trust as of January 1, 2002:
BP Employee Savings Plan
BP Partnership Savings Plan
BP DirectSave Plan

BP Savings and Investment Plan
BP Capital Accumulation Plan"

\*    \*    \*    \*    \*

Dated this *15th* day of *January*, 200~~2~~

BP CORPORATION NORTH AMERICA INC.

By: _____

Title: _____

STATE STREET BANK AND TRUST COMPANY

By: _____

Title: *Vice President*  *Decemb 17, 2001*

## FOURTH AMENDMENT

## BP MASTER TRUST FOR EMPLOYEE SAVINGS PLANS

### (As Amended and Restated Effective as of April 6, 2000)

WHEREAS,  BP Corporation North America Inc. (the "Company") maintains several tax-qualified  savings plans, which plans are funded through the BP Master Trust for Employee Savings Plans (the "Trust");

WHEREAS,  the Trust was last amended on January 15, 2002, and further amendment of the Trust is now considered desirable;

WHEREAS,  pursuant to Section 17 of the Trust, the Trust can be amended upon the agreement of the Company and the Trustee;  and

WHEREAS,  pursuant to Section 15 of the Trust, a Designated Officer of the Company has the authority to amend the Plan on behalf of the Company;

NOW, THEREFORE,  the Company and the Trustee hereby amend the Trust, effective as of  February 1, 2002, by substituting the following for Exhibits B and C of the Trust:

### "EXHIBIT B

Investment Funds

### CORE INVESTMENT OPTIONS

Short-Term
      Short-Term Investments Fund

Bond
      Bond Index Fund
      Bond Index Fund - Long Duration

Bond Index Fund - Short Duration
Income Fund (Frozen except for BP SIP)*

Hybrid
Balanced Index Fund – Aggressive
Balanced Index Fund – Conservative
Balanced Index Fund – Moderate

Large Cap
Equity Index Fund
Equity Index Fund – Growth
Equity Index Fund – Value

Mid Cap
Mid-Cap Equity Index Fund

Small Cap
Small-Cap Equity Index Fund
Small-Cap Equity Index Fund – Growth
Small-Cap Equity Index Fund – Value

International
International Equity Index Fund
International Equity Index Fund – Europe
International Equity Index Fund – Far East

Company Stock
BP Stock Fund*

## MUTUAL FUND WINDOW INVESTMENT OPTIONS

Short-Term
Fidelity Retirement Money Market Portfolio

Bond Funds
Intermediate-Term Government
Fidelity Government Income Fund
Strong Government Securities Fund
T. Rowe Price U.S. Treasury Intermediate Bond Fund
USAA GNMA Trust

Long-Term Government
PIMCO Long-Term U.S. Government Fund

---

Investment option for BP SIP

Fourth Amendment
BP Master Trust for Employee Savings Plans
J:\leeb\plandocs\master savings trust\mstrtrst.amend4.doc

Short-Term Bond
 Harbor Short Duration Fund
 Fidelity Institutional Short-Intermediate Government Fund
 PIMCO Low Duration Fund

Intermediate-Term Bond
 Dodge & Cox Income Fund
 Fidelity Investment Grade Bond Fund
 Harbor Bond Fund
 INVESCO Select Income Fund
 Morgan Stanley Institutional Fixed Income Portfolio
 PIMCO Total Return Fund
 PIMCO Total Return Fund III

Long-Term Bond
 USAA Income Fund

Multi-Sector Bond
 Dreyfus Core Bond Fund
 Janus Flexible Income Fund
 T. Rowe Price Spectrum Income Fund

High Yield Bond
 Fidelity Capital & Income Fund
 Fidelity High Income Fund
 INVESCO High Yield Fund
 Morgan Stanley Institutional High Yield Portfolio
 PIMCO High Yield Fund

Convertible Bond
 Fidelity Convertible Securities Fund

Emerging Markets Bond
 Fidelity New Markets Income Fund

International Bond
 Payden Global Fixed Income Fund
 PIMCO Foreign Bond Fund

Hybrid Funds
Domestic Hybrid
 Calvert Social Investment Fund Balanced Portfolio
 Columbia Balanced Fund, Inc.
 Dreyfus Founders Balanced Fund F
 Dreyfus Premier Balanced Fund

3

Fidelity Balanced Fund
Fidelity Puritan® Fund
INVESCO Total Return Fund
Janus Balanced Fund
Morgan Stanley Institutional Balanced Portfolio
Vanguard Asset Allocation Fund
Vanguard Wellesley Income Fund
Vanguard Wellington Fund

Large Cap U.S. Stock Funds
Large Cap Value
American Century Equity Growth Fund
American Century Income & Growth Fund
American Funds American Mutual Fund
American Funds Investment Company of America
American Funds Washington Mutual Investors Fund
Clipper Fund
CS Warburg Pincus Value Fund
Dreyfus Aggressive Value Fund
Fidelity Equity-Income Fund
Fidelity Equity-Income II Fund
Fundamental Investors
INVESCO Value Equity Fund
Legg Mason Value Trust, Inc.
Morgan Stanley Institutional Equity Portfolio
T. Rowe Price Equity Income Fund, Inc.
Vanguard Equity Income Fund
Vanguard Growth and Income Fund*
Vanguard Windsor Fund*
Vanguard Windsor II Fund

Large Cap Blend
AIM Blue Chip Fund
CS Warburg Pincus Capital Appreciation Fund
Domini Social Equity Fund
Dreyfus Appreciation Fund, Inc.
Dreyfus Disciplined Stock Fund
Fidelity Blue Chip Growth Fund
Fidelity Disciplined Equity Fund
Fidelity Dividend Growth Fund
Fidelity Fifty℠

---

* Investment option for BP SIP

Fidelity Fund
Fidelity *TechnoQuant*® Growth Fund
INVESCO Equity Income Fund
Morgan Stanley Dean Witter Institutional Fund, Inc. –
  Equity Growth Portfolio Class A
PIMCO StocksPLUS Fund
T. Rowe Price Blue Chip Growth Fund
T. Rowe Price Dividend Growth Fund
T. Rowe Price Growth Stock Fund
USAA Growth Fund
Vanguard PRIMECAP Fund

Large Cap Growth
Alger Capital Appreciation Retirement Portfolio
Columbia Growth Fund
Dreyfus Founders Growth Fund F
Dreyfus Premier Third Century Fund, Inc.
Dreyfus Premier Worldwide Growth Fund, Inc.
Fidelity Growth Company Fund
Fidelity Large Cap Stock Fund
Fidelity Retirement Growth Fund
Harbor Capital Appreciation Fund
INVESCO Blue Chip Growth Fund
Janus Fund
Janus Growth and Income Fund
Janus Twenty Fund
Merrill Lynch Fundamental Growth Fund, Inc.
Papp America – Abroad Fund
Putnam Investors Fund A
Scudder Large Company Growth Fund
Strong Large Cap Growth Fund
Vanguard U.S. Growth Fund

Medium Cap U.S. Stock Funds
Medium Cap Value
American Century Equity Income Fund
American Century Value Fund
Fidelity Value Fund
Strong Opportunity Fund
Strong Multi-Cap Value Fund
T. Rowe Price Value Fund

Medium Cap Blend
Ariel Appreciation Fund
Fidelity Capital Appreciation Fund

5

Fidelity Trend Fund
Legg Mason Special Investment Trust, Inc.
Montgomery Global 20 Fund® – Class R
Neuberger Berman Socially Responsive Trust

Medium Cap Growth
Alger MidCap Growth Retirement Portfolio
Alger Small Cap Retirement Portfolio
Baron Asset Fund
CS Warburg Pincus Emerging Growth Fund
Fidelity Aggressive Growth Fund
Fidelity Export and Multinational Fund
Fidelity Mid-Cap Stock Fund
Fidelity OTC Portfolio
INVESCO Dynamics Fund
MAS Mid Cap Growth Portfolio
Strong Growth Fund
T. Rowe Price Mid-Cap Growth Fund

Small Cap U.S. Stock Funds
Small Cap Value
CS Warburg Pincus Small Company Value Fund
Franklin Balance Sheet Investment Fund Class A
PIMCO Small-Cap Value Fund

Small Cap Blend
Fidelity Small Cap Selector
Liberty Acorn Fund
Morgan Stanley Institutional Small Cap Value Portfolio
Neuberger Berman Genesis Trust
PIMCO Micro-Cap Growth Fund
T. Rowe Price Small-Cap Stock Fund

Small Cap Growth
Baron Growth Fund
Delaware Trend Fund
Dreyfus Founders Discovery Fund F
Franklin Small Cap Growth Fund I – Class A
INVESCO Small Company Growth Fund
Managers Special Equity Fund
Morgan Stanley Dean Witter Institutional Fund, Inc. –
Small Company Growth      Portfolio Class B

Specialty U.S. Stock Funds
    Specialty-Health Care
        INVESCO Health Sciences Fund
        T. Rowe Price Health Sciences

    Specialty-Real Estate
        Cohen & Steers Realty Shares
        Fidelity Real Estate Investment Portfolio

    Specialty Technology
        Morgan Stanley Dean Witter Institutional Fund, Inc. –
        Technology Portfolio Class A
        MunderNetNet
        PBGH Technology & Communications Fund
        PIMCO Innovation Institutional Fund

    Specialty-Utilities
        Fidelity Utilities Fund
        INVESCO Utilities Fund

International Stock Funds
    Foreign Stock
        American Century International Growth Fund
        CS Warburg Pincus International Equity Fund
        Deutsche International Equity Fund
        Fidelity Aggressive International Fund
        Fidelity Diversified International Fund
        Fidelity International Growth & Income Fund
        Fidelity Overseas Fund
        GAM International Fund A
        J.P. Morgan Institutional International Equity Fund
        Lazard International Equity Portfolio
        Managers International Equity Fund
        Putnam International Growth Fund A
        Templeton Foreign Fund A

    Europe Stock
        Fidelity Europe Capital Appreciation Fund
        Fidelity Europe Fund
        INVESCO European Fund
        Merrill Lynch EuroFund
        Putnam Europe Growth Fund A
        T. Rowe Price European Stock Fund

International Hybrid
 AIM Global Growth A Fund
 Fidelity Global Balanced Fund

Latin America Stock
 Fidelity Latin America Fund
 Scudder Latin America Fund
 T. Rowe Price Latin America Fund

Diversified Pacific Asia Stock
 Fidelity Pacific Basin Fund
 Fidelity Southeast Asia Fund
 Merrill Lynch Pacific Fund, Inc.
 Putnam Asia Pacific Growth Fund A

Japan Stock
 Fidelity Japan Fund

Diversified Emerging Markets Stock
 Fidelity Emerging Markets Fund
 Lazard Emerging Markets Portfolio
 Templeton Developing Markets Trust A
 Templeton Institutional Funds, Inc. – Emerging Markets Series

World Stock
 American Funds Capital World Growth and Income Fund
 American Funds New Perspective Fund
 Janus Worldwide Fund
 Mutual Discovery Fund Class A
 Putnam Global Growth Fund A
 Templeton Growth Fund, Inc. A
 Templeton World Fund A

Hybrid Asset Allocation Funds
 Fidelity Freedom Income® Fund
 Fidelity Fredome 2000® Fund
 Fidelity Freedom 2010® Fund
 Fidelity Freedom 2020® Fund
 Fidelity Freedom 2030® Fund

8

EXHIBIT C

Trustee Fees

## I. TRUSTEE/CUSTODIAN CHARGES

.50 Basis Points on the month end Net Asset Value

## II. PORTFOLIO ACCOUNTING

| Core Fund Portfolios: | $ 7,500 per portfolio/year |
|---|---|
| AE01 - BP Stock Fund | AE20 - Small-Cap Equity Index Fund -- Value |
| AE02 – Short-Term Investments Fund | AE21 - Small-Cap Equity Index Fund -- Growth |
| AE10 - Equity Index Fund | AE22 - International Equity Index Fund – Europe |
| AE11 - Bond Index Fund | AE23 - International Equity Index Fund – Far East |
| AE12 - Balanced Index Fund – Moderate | AE24 - Bond Index Fund -- Short Duration |
| AE13 - Mid-Cap Equity Index Fund | AE25 - Bond Index Fund -- Long Duration |
| AE14 - International Equity Index Fund | AE26 - Balanced Index Fund -- Conservative |
| AE16 - Small-Cap Equity Index Fund | AE27 - Balanced Index Fund – Aggressive |
| AE18 - Equity Index Fund -- Growth | AE28 - Income Fund |
| AE19 - Equity Index Fund --Value | |

| Participant Directed Window Portfolios: | $45,000 per portfolio/year |
|---|---|
| AE33-BP Employee Savings Plan AE34-BP Partnership Savings Plan AE43-BP CAP | AE35-BP DirectSave Plan AE38-BP SIP |
| Stable Value Fund Portfolios: | $ 5,000 per portfolio/year |
| AE30 - Loomis | AE32 - J.P. Morgan |
| Loan Fund: (AE17) | $ 5,000 per portfolio/year |
| Cash Fund: (AE36, AE46) | $ 5,000 per portfolio/year |

Fourth Amendment
BP Master Trust for Employee Savings Plans
\\dallas\data\docs\master savings trust\mstr\rst.amend4.doc

## III. **PORTFOLIO ACTIVITY**

$15 per Depository Trade (DTC, FED, PTC)
$15 per Physical Trade
$15 per Time Deposit

## IV. **OTHER FEES**

Short Term Investment Fund ("STIF")
An administrative/management fee of 9 basis points for that portion of the Short-Term Investments Fund (AE02) invested in the STIF will be netted out of the yield. For all other accounts that invest in the STIF, an administrative/management fee of 18 basis points will be netted out of the yield.

Plan Accounting
$1000 per plan annually for each investment option

Out-of-pockets
        Out-of-pockets such as courier, telex, registration and communications charges are borne by the client."

*        *        *        *        *

IN WITNESS WHEREOF, the Company and the Trustee have caused this amendment to be executed this _2/st_ day of _March_, 2002.


BP  CORPORATION NORTH AMERICA INC.

By:   _____

Title:   Vice President and Chief Financial Officer


STATE STREET BANK AND TRUST COMPANY

By:   _____

Title:   Vice President   _____

4-3-02

Fourth Amendment
BP Master Trust for Employee Savings Plans
f:\ped\h and ill\master savings trust\mst\trst1 amend4.doc

<u>**FIFTH AMENDMENT**</u>

<u>**OF**</u>

<u>**BP MASTER TRUST FOR EMPLOYEE SAVINGS PLANS**</u>

**(As Amended and Restated Effective as of April 6, 2000)**

WHEREAS,  BP Corporation North America Inc. (the "Company") maintains several tax-qualified  savings plans, which plans are funded through the BP Master Trust for Employee Savings Plans (the "Trust");

WHEREAS,  the Trust was last amended on February 1, 2002, and further amendment of the Trust is now considered desirable;

WHEREAS,  pursuant to Section 17 of the Trust, the Trust can be amended upon the agreement of the Company and the Trustee;  and

WHEREAS,  pursuant to Section 15 of the Trust, a Designated Officer of the Company has the authority to amend the Plan on behalf of the Company;

WHEREAS, in all other respects, the Trust, as amended, will continue in full force and effect.

NOW, THEREFORE,  the Company and the Trustee hereby amend the Trust as follows:

1. Effective as of  July 1, 2002, by substituting the following for Exhibit A of the Trust:

"EXHIBIT A

The Plans participating in the Trust as of July 1, 2002:

BP Employee Savings Plan
BP Partnership Savings Plan
BP DirectSave Plan
BP Capital Accumulation Plan"

2. Effective as of June 1, 2002, by substituting the following for Exhibit B of the Trust:

"EXHIBIT B

Investment Funds

**CORE INVESTMENT OPTIONS**

<u>Short-Term</u>
Short-Term Investments Fund

<u>Bond</u>
Bond Index Fund
Bond Index Fund - Long Duration
Bond Index Fund - Short Duration
Income Fund (Frozen except for BP SIP)*

<u>Hybrid</u>
Balanced Index Fund – Aggressive
Balanced Index Fund – Conservative
Balanced Index Fund – Moderate

<u>Large Cap</u>
Equity Index Fund
Equity Index Fund – Growth
Equity Index Fund – Value

<u>Mid Cap</u>
Mid-Cap Equity Index Fund

Small Cap
    Small-Cap Equity Index Fund
    Small-Cap Equity Index Fund – Growth
    Small-Cap Equity Index Fund – Value


International
    International Equity Index Fund
    International Equity Index Fund – Europe
    International Equity Index Fund – Far East

Company Stock
    BP Stock Fund*


## MUTUAL FUND WINDOW INVESTMENT OPTIONS

Short-Term
    Fidelity Retirement Money Market Portfolio
    Fidelity Spartan U.S. Treasury Money Market Fund

Bond Funds
    Intermediate-Term Government
        Fidelity Government Income Fund
        Strong Government Securities Fund
        T. Rowe Price U.S. Treasury Intermediate Bond Fund
        USAA GNMA Trust

    Long-Term Government
        PIMCO Long-Term U.S. Government Fund


    Short-Term Bond
        Harbor Short Duration Fund
        Fidelity Institutional Short-Intermediate Government Fund
        PIMCO Low Duration Fund

    Intermediate-Term Bond
        Dodge & Cox Income Fund
        Fidelity Investment Grade Bond Fund
        Harbor Bond Fund

---

* Investment option for the BP Savings Investment Plan (BP SIP); the BP SIP is being merged into the BP Employee Savings Plan (BP ESP) as of July 1, 2002.

Fifth Amendment
BP Master Trust for Employee Savings Plans
I:\laeb\9g603\401(k)\Amendments – Drafts \ MstrTrst.amend5.doc

2

INVESCO Select Income Fund
Morgan Stanley Institutional Fixed Income Portfolio
PIMCO Total Return Fund
PIMCO Total Return Fund III

Long-Term Bond
USAA Income Fund

Multi-Sector Bond
Dreyfus Core Bond Fund
Janus Flexible Income Fund
T. Rowe Price Spectrum Income Fund

High Yield Bond
Fidelity Capital & Income Fund
Fidelity High Income Fund
INVESCO High Yield Fund
Morgan Stanley Institutional High Yield Portfolio
PIMCO High Yield Fund

Convertible Bond
Fidelity Convertible Securities Fund
Calamos Convertible Fund – Class A

Emerging Markets Bond
Fidelity New Markets Income Fund

International Bond
Payden Global Fixed Income Fund
PIMCO Foreign Bond Fund

Hybrid Funds
Domestic Hybrid
Calvert Social Investment Fund Balanced Portfolio
Columbia Balanced Fund, Inc.
Dreyfus Founders Balanced Fund F
Dreyfus Premier Balanced Fund
Fidelity Balanced Fund
Fidelity Puritan* Fund
INVESCO Total Return Fund
Janus Balanced Fund
Morgan Stanley Institutional Balanced Portfolio

> Vanguard Asset Allocation Fund
> Vanguard Wellesley Income Fund
> Vanguard Wellington Fund

### Large Cap U.S. Stock Funds
Large Cap Value
> American Century Equity Growth Fund
> American Century Income & Growth Fund
> American Funds American Mutual Fund
> American Funds Investment Company of America
> American Funds Washington Mutual Investors Fund
> Clipper Fund
> Credit Suisse  Large Cap Value Fund
> Dreyfus Aggressive Value Fund
> Fidelity Equity-Income Fund
> Fidelity Equity-Income II Fund
> Fundamental Investors
> INVESCO Value Equity Fund
> Legg Mason Value Trust, Inc.
> Morgan Stanley Institutional Equity Portfolio
> T. Rowe Price Equity Income Fund, Inc.
> Vanguard Equity Income Fund
> Vanguard Growth and Income Fund*
> Vanguard Windsor Fund*
> Vanguard Windsor II Fund

Large Cap Blend
> AIM Blue Chip Fund
> Credit Suisse Capital Appreciation Fund
> Domini Social Equity Fund
> Dreyfus Appreciation Fund, Inc.
> Dreyfus Disciplined Stock Fund
> Fidelity Blue Chip Growth Fund
> Fidelity Disciplined Equity Fund
> Fidelity Dividend Growth Fund
> Fidelity Fifty$^{sm}$
> Fidelity Fund
> Fidelity *TechnoQuant*® Growth Fund
> INVESCO Equity Income Fund

---

Investment option for the BP SIP; the BP SIP is being merged into the BP ESP as of July 1, 2002.

Fifth Amendment
BP Master Trust for Employee Savings Plans
I:\eeb\lge03\401(k)\Amendments – Drafts \ MstrTrst_amend5.doc

5

Morgan Stanley Dean Witter Institutional Fund, Inc. –
 Equity Growth Portfolio Class A
PIMCO StocksPLUS Fund
T. Rowe Price Blue Chip Growth Fund
T. Rowe Price Dividend Growth Fund
T. Rowe Price Growth Stock Fund
USAA Growth Fund
Vanguard PRIMECAP Fund

Large Cap Growth
Alger Capital Appreciation Retirement Portfolio
Columbia Growth Fund
Dreyfus Founders Growth Fund F
Dreyfus Premier Third Century Fund, Inc.
Dreyfus Premier Worldwide Growth Fund, Inc.
Fidelity Growth Company Fund
Fidelity Large Cap Stock Fund
Fidelity Retirement Growth Fund
Harbor Capital Appreciation Fund
INVESCO Blue Chip Growth Fund
Janus Fund
Janus Growth and Income Fund
Janus Twenty Fund
Merrill Lynch Fundamental Growth Fund, Inc.
Papp America – Abroad Fund
Putnam Investors Fund A
Scudder Large Company Growth Fund
Strong Large Cap Growth Fund
Vanguard U.S. Growth Fund

Medium Cap U.S. Stock Funds
Medium Cap Value
American Century Equity Income Fund
American Century Value Fund
Fidelity Value Fund
Strong Opportunity Fund
Strong Multi-Cap Value Fund
T. Rowe Price Value Fund

Medium Cap Blend
Ariel Appreciation Fund
Fidelity Capital Appreciation Fund

Fidelity Trend Fund
Legg Mason Special Investment Trust, Inc.
Montgomery Global 20 Fund$^{®}$ – Class R
Neuberger Berman Socially Responsive Trust

Medium Cap Growth
Alger MidCap Growth Retirement Portfolio
Alger Small Cap Retirement Portfolio
Baron Asset Fund
Credit Suisse Emerging Growth Fund
Fidelity Aggressive Growth Fund
Fidelity Export and Multinational Fund
Fidelity Mid-Cap Stock Fund
Fidelity OTC Portfolio
INVESCO Dynamics Fund
MAS Mid Cap Growth Portfolio
Strong Growth Fund
T. Rowe Price Mid-Cap Growth Fund

Small Cap U.S. Stock Funds
Small Cap Value
Credit Suisse Small Cap Value Fund
Franklin Balance Sheet Investment Fund Class A
PIMCO Small-Cap Value Fund

Small Cap Blend
Fidelity Small Cap Selector
Liberty Acorn Fund
Morgan Stanley Institutional Small Cap Value Portfolio
Neuberger Berman Genesis Trust
PIMCO Micro-Cap Growth Fund
T. Rowe Price Small-Cap Stock Fund

Small Cap Growth
Baron Growth Fund
Delaware Trend Fund
Dreyfus Founders Discovery Fund F
Franklin Small Cap Growth Fund I – Class A
INVESCO Small Company Growth Fund
Managers Special Equity Fund
Morgan Stanley Dean Witter Institutional Fund, Inc. –

Small Company Growth     Portfolio Class B


Specialty U.S. Stock Funds
    Specialty-Health Care
        INVESCO Health Sciences Fund
        T. Rowe Price Health Sciences

    Specialty-Natural Resources
        T. Rowe Price New Era Fund

    Specialty-Real Estate
        Cohen & Steers Realty Shares
        Fidelity Real Estate Investment Portfolio

    Specialty Technology
        Morgan Stanley Dean Witter Institutional Fund, Inc. –
        Technology Portfolio Class A
        MunderNetNet
        PBGH Technology & Communications Fund
        PIMCO Innovation Institutional Fund

    Specialty-Utilities
        Fidelity Utilities Fund
        INVESCO Utilities Fund

International Stock Funds
    Foreign Stock
        American Century International Growth Fund
        Credit Suisse International Equity Fund
        Deutsche International Equity Fund
        Fidelity Aggressive International Fund
        Fidelity Diversified International Fund
        Fidelity International Growth & Income Fund
        Fidelity Overseas Fund
        GAM International Fund A
        J.P. Morgan Institutional International Equity Fund
        Lazard International Equity Portfolio
        Managers International Equity Fund
        Putnam International Growth Fund A
        Templeton Foreign Fund A

    Europe Stock

Fifth Amendment
BP Master Trust for Employee Savings Plans
I:\ecb\lge03\401(k)\Amendments – Drafts \ MstrTrst.amend5.doc

8

Fidelity Europe Capital Appreciation Fund
Fidelity Europe Fund
INVESCO European Fund
Merrill Lynch EuroFund
Putnam Europe Growth Fund A
T. Rowe Price European Stock Fund

International Hybrid
AIM Global Growth A Fund
Fidelity Global Balanced Fund

Latin America Stock
Fidelity Latin America Fund
Scudder Latin America Fund
T. Rowe Price Latin America Fund

Diversified Pacific Asia Stock
Fidelity Pacific Basin Fund
Fidelity Southeast Asia Fund
Merrill Lynch Pacific Fund, Inc.
Putnam Asia Pacific Growth Fund A

Pacific/Asia Ex Japan Stock
AIM Asian Growth Fund A
Scudder Pacific Opportunities Fund – Class S

Japan Stock
Fidelity Japan Fund
The Japan Fund, Inc. - Class S

Diversified Emerging Markets Stock
Fidelity Emerging Markets Fund
Lazard Emerging Markets Portfolio
Templeton Developing Markets Trust A
Templeton Institutional Funds, Inc. – Emerging Markets Series

World Stock
American Funds Capital World Growth and Income Fund
American Funds New Perspective Fund
Janus Worldwide Fund
Mutual Discovery Fund Class A
Putnam Global Growth Fund A
Templeton Growth Fund, Inc. A

Fifth Amendment
BP Master Trust for Employee Savings Plans
I:\leeb\lge03\401(k)\Amendments – Drafts \ MstrTrstamend5.doc

9

Templeton World Fund A

<u>Hybrid Asset Allocation Funds</u>
Fidelity Freedom Income® Fund
Fidelity Freedom 2000® Fund
Fidelity Freedom 2010® Fund
Fidelity Freedom 2020® Fund
Fidelity Freedom 2030® Fund"

\*     \*     \*     \*     \*

IN WITNESS WHEREOF, the Company and the Trustee have caused this amendment to be executed this _31st_ day of _May_, 2002.

BP CORPORATION NORTH AMERICA INC.

By: _____

Title:  <u>Sr. Vice President, Human Resources</u>

STATE STREET BANK AND TRUST COMPANY

By: _____

Title:  <u>Vice President</u>

Fifth Amendment
BP Master Trust for Employee Savings Plans
l:\\eeb\\lge03\\401(k)\\Amendments -- Drafts \ MstrTrst.amend5.doc

10

## SIXTH AMENDMENT

## OF

## BP MASTER TRUST FOR EMPLOYEE SAVINGS PLANS

### (As Amended and Restated Effective as of April 6, 2000)

WHEREAS, BP Corporation North America Inc. (the "Company") maintains several tax-qualified savings plans, which plans are funded through the BP Master Trust for Employee Savings Plans (the "Trust");

WHEREAS, the Trust was last amended on May 30, 2002, and further amendment of the Trust is now considered desirable;

WHEREAS, pursuant to Section 17 of the Trust, the Trust can be amended upon the agreement of the Company and the Trustee; and

WHEREAS, pursuant to Section 15 of the Trust, a Designated Officer of the Company has the authority to amend the Trust on behalf of the Company;

WHEREAS, in all other respects, the Trust, as amended, will continue in full force and effect.

NOW, THEREFORE, the Company and the Trustee hereby amend the Trust as follows:

1. Effective as of November 1, 2002, by substituting the following for Exhibit A of the Trust:

"EXHIBIT A

The Plans participating in the Trust as of November 1, 2002:

BP Employee Savings Plan
BP Partnership Savings Plan
BP DirectSave Plan
BP Capital Accumulation Plan
Amoco Fabrics and Fibers Company Salaried 401(k) Savings Plan
Amoco Fabrics and Fibers Company Hourly 401(k) Savings Plan"


2.  Effective December 31, 2002, by amending Exhibit A to add the Burmah Castrol Group U.S.A. Thrift Plan.


\*        \*        \*        \*        \*


IN WITNESS WHEREOF, the Company and the Trustee have caused this amendment to be executed this _23ᴺᵉ_ day of _Øctober_ , 2002.


BP CORPORATION NORTH AMERICA INC.

By: _____

Title:  Sr. Vice President, Human Resources


STATE STREET BANK AND TRUST COMPANY

By: _____

Title:  Vice President


10-15-02

Sixth Amendment
BP Master Trust for Employee Savings Plans
1:\\eeb\\ge03\\401(k)\\Amendments – Drafts \\ MstrTrst.amend6.doc

2

## SEVENTH AMENDMENT

## OF

## BP MASTER TRUST FOR EMPLOYEE SAVINGS PLANS

### (As Amended and Restated Effective as of April 6, 2000)

WHEREAS,  BP Corporation North America Inc. (the "Company") maintains several tax-qualified savings plans, which plans are funded through the BP Master Trust for Employee Savings Plans (the "Trust");

WHEREAS,  the Trust was last amended on October 23, 2002, and further amendment of the Trust is now considered desirable;

WHEREAS,  pursuant to Section 17 of the Trust, the Trust can be amended upon the agreement of the Company and the Trustee;

WHEREAS,  pursuant to Section 15 of the Trust, a Designated Officer of the Company has the authority to amend the Trust on behalf of the Company; and

WHEREAS, in all other respects, the Trust, as amended, will continue in full force and effect.

NOW, THEREFORE,  the Company and the Trustee hereby amend the Trust as follows:

1. Effective December 31, 2003, by deleting the name "Burmah Castrol Group U.S.A. Thrift Plan" from Exhibit A.

2. Effective September 30, 2003, by substituting the following for Exhibit B of the Trust:

"EXHIBIT B

Investment Funds

## CORE INVESTMENT OPTIONS

Short-Term
        Short-Term Investments Fund

Bond
        Bond Index Fund
        Bond Index Fund - Long Duration
        Bond Index Fund - Short Duration
        Income Fund (frozen – closed to new investments)

Hybrid
        Balanced Index Fund – Aggressive
        Balanced Index Fund – Conservative
        Balanced Index Fund – Moderate

Large Cap
        Equity Index Fund
        Equity Index Fund – Growth
        Equity Index Fund – Value

Mid Cap
        Mid-Cap Equity Index Fund

Small Cap
        Small-Cap Equity Index Fund
        Small-Cap Equity Index Fund – Growth
        Small-Cap Equity Index Fund – Value

International
        International Equity Index Fund
        International Equity Index Fund – Europe
        International Equity Index Fund – Pacific

Company Stock
        BP Stock Fund

## MUTUAL FUND WINDOW INVESTMENT OPTIONS

Short-Term
        Fidelity Retirement Money Market Portfolio
        Fidelity Spartan U.S. Treasury Money Market Fund

Bond Funds
        Intermediate-Term Government
                Fidelity Government Income Fund

2

> Strong Government Securities Fund
> T. Rowe Price U.S. Treasury Intermediate Bond Fund
> USAA GNMA Trust

Long-Term Government
> PIMCO Long-Term U.S. Government Fund

Short-Term Bond
> Harbor Short Duration Fund
> Fidelity Institutional Short-Intermediate Government Fund
> PIMCO Low Duration Fund

Intermediate-Term Bond
> Dodge & Cox Income Fund
> Dreyfus Premier Core Bond Fund
> Fidelity Investment Grade Bond Fund
> Harbor Bond Fund
> INVESCO Select Income Fund
> Janus Flexible Income Fund
> MSIF Trust Core Plus Fixed Income Portfolio
> PIMCO Total Return Fund
> PIMCO Total Return Fund III
> T. Rowe Price Spectrum Income Fund
> USAA Income Fund

High Yield Bond
> Fidelity Capital & Income Fund
> Fidelity High Income Fund
> INVESCO High Yield Fund
> MSIF Trust High Yield Portfolio
> PIMCO High Yield Fund

Convertible Bond
> Fidelity Convertible Securities Fund
> Calamos Convertible Fund – Class A (closed to
> new investments 4/30/03)

Emerging Markets Bond
> Fidelity New Markets Income Fund

International Bond
> Payden & Rygel Global Fixed Income Fund
> PIMCO Foreign Bond Fund

Hybrid Funds

3

Domestic Hybrid

    Calvert Social Investment Fund Balanced Portfolio
    Columbia Balanced Fund, Inc.
    Dreyfus Founders Balanced Fund
    Dreyfus Premier Balanced Fund
    Fidelity Balanced Fund
    Fidelity Puritan® Fund
    INVESCO Total Return Fund
    Janus Balanced Fund
    MSIF Trust Balanced Portfolio
    Vanguard Asset Allocation Fund
    Vanguard Wellesley Income Fund
    Vanguard Wellington Fund

## Large Cap U.S. Stock Funds

Large Cap Value

    American Century Income & Growth Fund
    American Fundamental Investors Fund
    American Mutual Fund
    American Investment Company of America
    American Washington Mutual Investors Fund
    Clipper Fund
    Credit Suisse Large Cap Value Fund
    Dreyfus Premier Strategic Value Fund
    Fidelity Equity-Income Fund
    Fidelity Equity-Income II Fund
    INVESCO Value Equity Fund
    T. Rowe Price Dividend Growth Fund
    T. Rowe Price Equity Income Fund, Inc.
    T. Rowe Price Value Fund
    Vanguard Equity Income Fund
    Vanguard Windsor Fund
    Vanguard Windsor II Fund

Large Cap Blend

    Credit Suisse Capital Appreciation Fund
    Domini Social Equity Fund
    Dreyfus Appreciation Fund, Inc.
    Dreyfus Disciplined Stock Fund
    Fidelity Disciplined Equity Fund
    Fidelity Dividend Growth Fund
    Fidelity Export and Multinational Fund
    Fidelity Fiftyˢᵐ
    Fidelity Fund
    Fidelity Trend Fund

        INVESCO Core Equity Income Fund
        Legg Mason Value Trust, Inc.
        Neuberger Berman Socially Responsive Trust
        PIMCO StocksPLUS Fund
        MSIF Trust Equity Portfolio
        Putnam Investors Fund A
        Vanguard Growth and Income Fund
        Vanguard PRIMECAP Fund

Large Cap Growth
        AIM Blue Chip Fund
        Alger Capital Appreciation Institutional Portfolio
        American Century Equity Growth Fund
        Columbia Growth Fund
        Dreyfus Founders Growth Fund F
        Dreyfus Premier Third Century Fund, Inc.
        Fidelity Capital Appreciation Fund
        Fidelity Blue Chip Growth Fund
        Fidelity Growth Company Fund
        Fidelity Large Cap Stock Fund
        Fidelity Independence Fund
        Fidelity OTC Portfolio
        Fidelity Focused Stock Fund
        Harbor Capital Appreciation Fund
        INVESCO Growth Fund
        Janus Fund
        Janus Growth and Income Fund
        Janus Twenty Fund
        Merrill Lynch Fundamental Growth Fund, Inc.
        Morgan Stanley Dean Witter Institutional Fund, Inc. –
            Equity Growth Portfolio Class A
        Papp America – Abroad Fund
        Scudder Large Company Growth Fund
        Strong Growth Fund
        Strong Large Cap Growth Fund
        T. Rowe Price Blue Chip Growth Fund
        T. Rowe Price Growth Stock Fund
        USAA Growth Fund
        Vanguard U.S. Growth Fund

Medium Cap U.S. Stock Funds
    Medium Cap Value
        American Century Equity Income Fund
        American Century Value Fund
        Fidelity Value Fund

Strong Multi-Cap Value Fund

Medium Cap Blend
Ariel Appreciation Fund
Legg Mason Special Investment Trust, Inc.
Montgomery Global 20 Fund® – Class R (eliminated 6/19/03)
Strong Opportunity Fund

Medium Cap Growth
Alger MidCap Growth Institutional Portfolio
Baron Asset Fund
Credit Suisse Emerging Growth Fund
Delaware Trend Fund
Fidelity Aggressive Growth Fund
Fidelity Mid-Cap Stock Fund
INVESCO Dynamics Fund
MSIF Trust Mid Cap Growth
T. Rowe Price Mid-Cap Growth Fund

Small Cap U.S. Stock Funds
Small Cap Value
Franklin Balance Sheet Investment Fund Class A
PIMCO NFJ Small-Cap Value Fund

Small Cap Blend
Credit Suisse Small Cap Value Fund
Morgan Stanley Institutional Small Cap Core Portfolio
Neuberger Berman Genesis Trust
T. Rowe Price Small-Cap Stock Fund

Small Cap Growth
Alger Small Cap Institutional Portfolio
Baron Growth Fund
Dreyfus Founders Discovery Fund F
Fidelity Small Cap Independence
Franklin Small Mid Cap Growth Fund I – Class A
INVESCO Small Company Growth Fund
Liberty Acorn Fund
Managers Special Equity Fund
Morgan Stanley Dean Witter Institutional Fund, Inc. –
Small Company Growth-Portfolio Class B
PIMCO Emerging Companies Fund

Specialty U.S. Stock Funds
Specialty-Health Care

6

INVESCO Health Sciences Fund
T. Rowe Price Health Sciences Fund

Specialty-Natural Resources
T. Rowe Price New Era Fund

Specialty-Real Estate
Cohen & Steers Realty Shares
Fidelity Real Estate Investment Portfolio

Specialty Technology
Morgan Stanley Institutional Fund, Inc. –
Technology Portfolio Class A
Munder NetNet
PBGH Technology & Communications Fund
PIMCO PEA Innovation Institutional Fund

Specialty-Utilities
Fidelity Utilities Fund
INVESCO Utilities Fund

International Stock Funds
Foreign Stock
American Century International Growth Fund
Credit Suisse International Focus Fund
Fidelity Aggressive International Fund
Fidelity Diversified International Fund
Fidelity Emerging Markets Fund
Fidelity Global Balanced Fund
Fidelity International Growth & Income Fund
Fidelity Overseas Fund
GAM International Fund A
J.P. Morgan Fleming International Value Fund
Lazard Emerging Markets Portfolio
Lazard International Equity Portfolio
Managers International Equity Fund
Putnam International Equity Fund A
Scudder International Equity Fund
Templeton Developing Markets Trust A
Templeton Foreign Fund A
Templeton Institutional Funds, Inc. – Emerging Markets Series

Europe Stock
Fidelity Europe Capital Appreciation Fund
Fidelity Europe Fund

INVESCO European Fund
Merrill Lynch EuroFund
Putnam Europe Equity Fund A
T. Rowe Price European Stock Fund

Latin America Stock
Fidelity Latin America Fund
Scudder Latin America Fund
T. Rowe Price Latin America Fund

Diversified Pacific Asia Stock
Fidelity Pacific Basin Fund
Fidelity Southeast Asia Fund
Merrill Lynch Pacific Fund, Inc.

Pacific/Asia Ex Japan Stock
AIM Asian Pacific Growth Fund A
Scudder Pacific Opportunities Fund – Class S

Japan Stock
Fidelity Japan Fund
The Japan Fund, Inc. - Class S

World Stock
AIM Global Growth A Fund
American Funds Capital World Growth and Income Fund
American Funds New Perspective Fund
Dreyfus Premier Worldwide Growth Fund, Inc.
Janus Worldwide Fund
Mutual Discovery Fund Class A
Putnam Global Equity Fund A
Templeton Growth Fund, Inc. A
Templeton World Fund A

Hybrid Asset Allocation Funds
Fidelity Freedom Income® Fund
Fidelity Freedom 2000® Fund
Fidelity Freedom 2010® Fund
Fidelity Freedom 2020® Fund
Fidelity Freedom 2030® Fund"

\*     \*     \*     \*     \*

IN WITNESS WHEREOF, the Company and the Trustee have caused this amendment to be executed this 23rd day of December, 2003.

BP CORPORATION NORTH AMERICA INC.

By: _____

Title:   Senior Vice President, Human Resources

STATE STREET BANK AND TRUST COMPANY

By: _____

Title:   Vice President

## EIGHTH AMENDMENT

## OF

## BP MASTER TRUST FOR EMPLOYEE SAVINGS PLANS

### (As Amended and Restated Effective as of April 6, 2000)

WHEREAS, BP Corporation North America Inc. (the "Company") maintains several tax-qualified savings plans, which plans are funded through the BP Master Trust for Employee Savings Plans (the "Trust");

WHEREAS, the Trust was last amended on October 23, 2002, and further amendment of the Trust is now considered desirable to permit the participation of the BP Employee Savings Plan of Puerto Rico;

WHEREAS, pursuant to Section 17 of the Trust, the Trust can be amended upon the agreement of the Company and the Trustee; and

WHEREAS, pursuant to Section 15 of the Trust, a Designated Officer of the Company has the authority to amend the Trust on behalf of the Company;

WHEREAS, in all other respects, the Trust, as amended, will continue in full force and effect.

NOW, THEREFORE, the Company and the Trustee hereby amend the Trust, effective April 1, 2004, as follows:

1.    By add the following new clause after the second WHEREAS clause:

> "WHEREAS, the Company desires to provide for the commingling of assets of Plans which are maintained in Puerto Rico and funded by trusts maintained in Puerto Rico

with the assets of the remaining Plans by permitting such Puerto Rican Trusts to invest in this Trust;"

2.     By restating Section 1.24 in its entirety as follows:

"1.24   "Plan" or "Plans" means individually and collectively, the Plans listed in Exhibit A to this Trust, each of which is a defined contribution plan maintained by the Company or an Employer and is either (i) qualified or deemed to be qualified under Section 401(a) of the Code and funded by this Trust or (ii) qualified or deemed to be qualified under Section 1165(a) of the Puerto Rico Internal Revenue Code of 1994, as amended (hereinafter referred to as the "PR Code") and funded by a trust which is qualified under Section 1165(a) of the PR Code and permitted by its terms to invest in this Trust in accordance with Section 19.1."

3.     By adding a new Section 19.1(a)(3):

"(3)   The trustee of any trust which (i) is exempt from taxation under Section 1165(a) of the PR Code, (ii) has been established by an Employer for the purpose of funding one or more plans qualified under Section 1165(a) of the PR Code and maintained for the benefit of the employees of such Employer who are residents of and/or perform services entirely in Puerto Rico, and (iii) has been certified to the Trustee by the Company as being authorized to invest in the assets of this Trust, shall be permitted to invest in the Trust Fund by filing with the Trustee a duly executed instrument evidencing its election to do so."

4.     By restating Exhibit A in its entirety as follows:

"EXHIBIT A

The Plans participating in the Trust as of March 8, 2004:

BP Employee Savings Plan
BP Partnership Savings Plan
BP DirectSave Plan
BP Capital Accumulation Plan
Amoco Fabrics and Fibers Company Salaried 401(k) Savings Plan
Amoco Fabrics and Fibers Company Hourly 401(k) Savings Plan
BP Employee Savings Plan of Puerto Rico"

5.     By adding the following at the end thereof:

"Investment Funds for the BP Employee Savings Plan of Puerto Rico

Short-Term
Short-Term Investment Fund

2

Bond
Bond Index Fund

Hybrid
Balanced Index Fund – Moderate
Balanced Index Fund – Conservative
Balanced Index Fund – Aggressive

Large-Cap
Equity Index Fund

Mid-Cap
Mid-Cap Equity Index Fund

Small-Cap
Small-Cap Equity Index Fund

International
International Equity Index Fund"

In all other respects the Trust, as amended, will continue in full force and effect.

*       *       *       *       *

IN WITNESS WHEREOF, the Company and the Trustee have caused this amendment to be executed this _26th_ day of _March_, 2004.

BP CORPORATION NORTH AMERICA INC.

By: _____

Title:  Sr. Vice President, Human Resources

STATE STREET BANK AND TRUST COMPANY

By: _____

Title:  Vice President

3

# NINTH AMENDMENT
## OF
## BP MASTER TRUST FOR EMPLOYEE SAVINGS PLANS
### (As Amended and Restated Effective as of April 6, 2000)

WHEREAS, BP Corporation North America Inc. (the "Company") maintains several tax-qualified savings plans, which plans are funded through the BP Master Trust for Employee Savings Plans (the "Trust");

WHEREAS, effective January 31, 2000, the Company approved amendments to each employee benefit plan and trust maintained by the Company establishing a comprehensive administrative and fiduciary structure to replace the prior structures and to identify designated officers or committees of the Company with authority to act on behalf of the Company with respect to the employee plans and trusts;

WHEREAS, effective September 10, 2004, the Company approved amendments to all employee benefit plans and trusts maintained by the Company in order to revise the comprehensive administrative and fiduciary structure applicable to such plans and trusts;

WHEREAS, further amendment of the Trust is now considered desirable in order to incorporate the administrative and fiduciary structure into the body of the Trust document and to effect certain additional changes;

WHEREAS, pursuant to Section 17 of the Trust, the Trust can be amended upon the agreement of the Company and the Trustee;

WHEREAS, pursuant to Section 15 of the Trust, a Designated Officer of the Company or his delegate has the authority to amend the Trust on behalf of the Company; and

WHEREAS, in all other respects, the Trust, as amended, will continue in full force and effect.

NOW, THEREFORE, the Company and the Trustee hereby amend the Trust, in the following particulars:

1. Effective September 10, 2004, by substituting the following for Section 1.1 of the Trust:

> "1.1 'Administrative Named Fiduciary' means a Named Fiduciary with respect to: (i) the authority to control and manage the operation and administration of the Plan or Trust, within the meaning of Section 402(a)(1) of ERISA; (ii) the discretionary authority or discretionary responsibility in the administration of the Plan or Trust, within the meaning of Section 3(21)(A)(iii) of ERISA; or (iii) the exercise of discretionary authority or discretionary control respecting management of the Plan or Trust or the exercise of any authority or control respecting management or disposition of any assets of the Plan or Trust, within the meaning of Section 3(21)(A)(i) of ERISA."

2. Effective September 10, 2004, by substituting the following for Section 1.3 of the Trust:

> "1.3 'Administrator' means the individual identified as Administrator by the Appointing Officer, or if an Applicable Administrative Named Fiduciary has been identified with respect to the authority involved in the provision of the Plan or Trust under consideration, then reference to the Administrator in that context refers to such Applicable Administrative Named Fiduciary. References in the Plan or Trust to the Administrator will be deemed a reference to any person (other than a fiduciary) to whom ministerial responsibilities involved in the provisions of the Plan or Trust have been delegated by the Administrator, including under a Benefit Agreement."

3. Effective September 10, 2004, by adding the following new Sections 1.3.1 through Sections 1.3.4 to the Trust immediately after Section 1.3 of the Trust as a part thereof:

> "1.3.1 'Applicable Administrative Named Fiduciary' means, with respect to any Authority or Discretion regarding the Plan or Trust which is not within the Authority or Discretion of an Investment Named Fiduciary, the Administrative Named Fiduciary to whom the Appointing Officer has allocated such Authority or Discretion for such matters, and if not allocated, the

2

Administrator acting as the Applicable Administrative Named Fiduciary. References in the Plan or Trust to the Administrator acting as an Applicable Administrative Named Fiduciary are deemed to refer to another Named Fiduciary to whom the relevant Authority or Discretion has been identified or allocated pursuant to the procedures of the Plan or, if applicable, to refer to a fiduciary to whom Authority or Discretion has been delegated pursuant to the procedures in the Plan.

1.3.2 'Applicable Investment Named Fiduciary' means, with respect to any Authority or Discretion regarding the Trust, the Investment Named Fiduciary to whom the Appointing Officer has allocated such Authority or Discretion for such matters, and if not allocated, the Investment Committee acting as the Applicable Investment Named Fiduciary. References in the Plan or Trust to the Investment Committee acting as an Applicable Investment Named Fiduciary are deemed to refer to another Named Fiduciary to whom the relevant Authority or Discretion has been identified or allocated pursuant to the procedures of the Plan or Trust or, if applicable, to refer to a fiduciary to whom Authority or Discretion has been delegated pursuant to the procedures in the Plan.

1.3.3 'Appointing Officer' means the Company officer who has the authority to: (i) designate and remove a Named Fiduciary with respect to the Plan or Trust, including the Administrator and members of the Investment Committee, and (ii) identify a person or entity as a Named Fiduciary. The President, BP Corporation North America Inc. serves as Appointing Officer, provided, however, upon resignation or removal of the President, the most senior ranking officer of the Company will serve as Appointing Officer.

1.3.4 'Authority' or 'Discretion' means (i) the authority, control or discretion with respect to the Plan or Trust which is identified or allocated to a Named Fiduciary under the terms of the Plan or Trust or a procedure in the Plan or Trust, or (ii) the exercise of such authority, control or discretion by a Named Fiduciary."

4. Effective September 10, 2004, by adding the following new Section 1.4.1 immediately after Section 1.4 of the Trust as a part thereof:

"1.4.1 'Benefit Agreement' means an administrative services agreement, third party administrator agreement, or other type of agreement to render services to, or on behalf of, the Plan or Trust, including agreements with the Plan or Trust, an Employer or a Named Fiduciary."

5. Effective September 10, 2004, by substituting the following for Section 1.10 of the Trust:

3

"1.10 'Designated Officer' means the Appointing Officer, the Company's Senior Vice President, Human Resources and any other officer of the Company, and the Group Chief Executive of BP p.l.c. and any other officer of BP p.l.c. to whom (but only to the extent specifically provided) authority to act on behalf of the Company has been granted by the Board of Directors."

6. Effective September 10, 2004, by substituting the following for Section 1.15 of the Trust:

"1.15 'Investment Committee' or 'Committee' means the Investment Committee, the members of which are designated by the Appointing Officer for the Trust, provided, however, that with respect to any plan which is a defined contribution plan with participant directed investments, the Investment Committee means the Savings Plan Investment Oversight Committee. In the event that there is no functioning Investment Committee, the Appointing Officer will serve as the Investment Committee."

7. Effective September 10, 2004, by adding the following new Section 1.18.1 immediately after Section 1.18 of the Trust as a part thereof:

"1.18.1 'Investment Named Fiduciary' means a Named Fiduciary with respect to: (i) the authority to control and manage the operation and administration of the Trust; (ii) Trustee responsibilities within the meaning of Section 405(c)(3) of ERISA that have been specifically made subject to the direction or Authority or Discretion of an Applicable Investment Named Fiduciary set forth in the terms of the Trust document; (iii) the exercise of discretionary authority or discretionary control respecting management of the Plan or the Trust or the exercise of any authority or control respecting management or disposition of any assets of the Trust, within the meaning of Section 3(21)(A)(i) of ERISA; (iv) the discretion to designate an Investment Manager, as described in Section 402(c)(3); or (v) the discretion to appoint or remove a Trustee under the Trust."

8. Effective September 10, 2004, by adding the following new Section 1.19.1 immediately after Section 1.19 of the Trust as a part thereof:

"1.19.1 Named Fiduciary means a named fiduciary within the meaning of ERISA, including without limitation, Sections 402, 403 or 405 of ERISA."

9. Effective September 10, 2004, by substituting the following for Section 15 of the Trust:

4

"15. ACTIONS BY THE COMPANY.

Whenever the Company or an Employer has the authority to take action under this Trust, the Company's Board of Directors and each Designated Officer has the authority to act on behalf of the Company or Employer. This Article 15 replaces and supersedes any provisions dealing with Trust governance contained herein or the power and authority of the Company or its Designated Officers or Committees with respect to the Trust."

10. Effective September 10, 2004, by substituting the following for Section 16 of the Trust:

"16. TRUST GOVERNANCE

16.1 Authority. BP Corporation North America Inc., through the authority vested in its Board of Directors, has amended the Trust, thereby:

(a) enabling the Appointing Officer to have the Authority or Discretion to act, to the extent provided in the Plan or Trust, on behalf of the Plan or Trust, but not on behalf of the Company; and

(b) establishing the Investment Committee and enabling the Investment Committee to have the power and authority to act, to the extent provided in the Trust, on behalf of the Trust, but not on behalf of the Company.

16.2 Designated Officer Acting on Behalf of the Company. A Designated Officer acting on behalf of the Company has all powers necessary or incidental to act as an Employer and all powers necessary or incidental to carrying out the duties and rights assigned by the Trust to the Designated Officer acting on behalf of the Company or as may be granted to him, from time to time, by the Board of Directors of BP Corporation North America Inc. By way of illustration and not limitation, these powers will include the power to:

(a) amend the Trust in any manner;

(b) only with respect to the Appointing Officer, identify any person or entity as a Named Fiduciary, and allocate to each such Named Fiduciary its duties and responsibilities, in the manner provided herein;

(c) determine what expenses, if any, relating to the operation and administration of the Trust and the investment of Trust assets, will be paid from Employer assets, subject to applicable law;

5

(d) establish such policies and make such delegations or designations as may be necessary or incidental to the Designated Officer's authority and control over the Trust acting on behalf of the Company;

(e) retain, monitor and terminate such service providers and advisors as are considered appropriate to perform Employer activities with respect to the Trust and to delegate any of his duties, as appropriate, to such service providers and advisors; to determine appropriate fees for such service providers and advisors; and to ensure that appropriate contracts (under terms acceptable to the Designated Officer acting on behalf of the Company) are signed and in place with such service providers and advisors;

(f) consult with legal counsel, independent consulting or evaluation firms, accountants, actuaries, or other advisors, as necessary, to perform his functions;

(g) add a corporation or business entity as an Employer and remove such corporation or entity as an Employer, on such terms and in such manner as the Designated Officer acting on behalf of the Company in his discretion determines; and

(h) take any other actions he deems necessary, incidental or desirable to the performance of his duties as Designated Officer acting on behalf of the Company, including the power to delegate that power to any person.

16.3  Appointing Officer Acting as an Applicable Administrative Named Fiduciary.  The Appointing Officer, acting as the Applicable Administrative Named Fiduciary, has all the Authority or Discretion of an Administrative Named Fiduciary, including but not limited to, the Authority or Discretion to:

(a) allocate Authority or Discretion as a Named Fiduciary to another Named Fiduciary pursuant to procedures in the Plan or Trust;

(b) select the person serving as Administrator, voting members of the Investment Committee, and any Named Fiduciary with respect to the Plan or Trust; and

(c) remove the person serving as Administrator, voting members of the Investment Committee, and any Named Fiduciary with respect to the Plan or Trust.

16.4.  Investment Committee Acting as Applicable Investment Named Fiduciary.

(a) The Investment Committee, acting as an Applicable Investment Named Fiduciary and subject to subparagraphs (b) and (c) below, has all the

Authority or Discretion of an Investment Named Fiduciary, to the extent consistent with the Trust, including without limitation, the Authority or Discretion to:

(1) appoint, monitor, and remove the Trustee;

(2) select, direct, monitor and terminate external investment managers (including insurance carriers acting as such);

(3) develop investment strategies and policies;

(4) develop plan funding strategies;

(5) direct the Trustee as to the investment and reinvestment of the assets of the Trust;

(6) require that the Trustee be subject to the direction of the Investment Committee with respect to the Authority or Discretion for which the Investment Committee acting as an Applicable Investment Named Fiduciary has investment responsibility;

(7) review the performance of internal investment managers;

(8) enter into Benefit Agreements with insurers and third parties to provide pension benefits through annuity contracts and take all other actions it deems necessary and prudent with respect to such contracts; and

(9) take all other actions already described in the Trust or which are necessary and proper acts or desirable for the Investment Committee to fulfill its duties and obligations under the Trust.

(b) Notwithstanding subparagraph (a) above, and subject to subparagraph (c) below, with respect to each defined contribution plan with participant directed investments, the Investment Committee is the Savings Plan Investment Oversight Committee having all Authority or Discretion of an Investment Named Fiduciary to the extent consistent with the Trust, including without limitation, the authority to the following responsibilities:

(1) appoint, monitor, and remove the Trustee;

(2) select, direct, monitor, and terminate external investment managers;

(3) develop investment strategies and policies;

(4) direct the Trustee as to the investment and reinvestment of the assets of the Trust;

(5) require that the Trustee be subject to the direction of the Investment Committee with respect to the Authority or Discretion for which the Investment Committee acting as an Applicable Investment Named Fiduciary has investment responsibility;

(6) review the performance of internal investment managers; and

(7) enter into Benefit Agreements with insurers and third parties to provide plan benefits through annuity contracts and take all other actions it deems necessary and prudent with respect to such contracts.

(c) The Investment Committee is not an Applicable Investment Named Fiduciary whenever it acts on behalf of the Company and, notwithstanding any other term or provision of the Plan, Trust or any Benefit Agreement, the Investment Committee ceases to be a Applicable Investment Named Fiduciary with respect to some specified portion of the Authority or Discretion, to the extent such Authority or Discretion has been identified or allocated to another Applicable Investment Named Fiduciary pursuant to the procedure in the Plan or Trust.

16.5 Compensation. The Investment Committee, acting as a Named Fiduciary serves without compensation for their services as such.

16.6 Trust Expenses. All expenses of the Plan or Trust may be paid by the Trust as directed by the Administrator acting as an Applicable Administrative Named Fiduciary, except to the extent paid by an Employer. If paid by an Employer, such Employer may, if authorized by the Designated Officer acting on behalf of the Company, seek reimbursement of such expenses from the Trust. The Administrator acting as an Applicable Administrative Named Fiduciary may direct the Trustee to pay from the Trust any administration expenses of the Plan or Trust, including expenses and obligations (i) associated with the administration and operation of the Plan or Trust, (ii) arising under a Benefit Agreement, or (iii) arising in connection with the management and investment of Trust assets.

16.7 Fiduciary Capacity. Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan or Trust.

16.8 Employer's Agent. The Designated Officer acting on behalf of the Company acts as agent for each Employer.