Please acknowledge and agree on behalf of the Master Trust, as trustee and in your capacity as investment manager of the BP Stock Fund to the Procedures above by executing all copies of this letter and returning two fully executed copies to the Company. You should keep one fully executed copy of the letter for your files.

Very truly yours,

BP CORPORATION NORTH
    AMERICA INC.

STATE STREET BANK & TRUST
    COMPANY, as Investment
    Manager and Trustee

By:_____

By: _Susan C Daniel_

Title:_____

Title: _vice President_

i:\law\lawdept\klewinje\oldhome\savplan\company loan - procedures for requesting loans1.doc

EXHIBIT A

## LOAN REQUEST

Date:
From:     Jeannine Doyle, State Street Company Stock Management
To:       Candy Roberts, BP Corporation North America, Inc. - Trust Investments
cc:       Jen Ferrari, State Street Bank & Trust Company, Trust Administration
Subject:  Loan request under Revolving Loan Agreement dated as of November 15, 2004
          ("Revolving Loan Agreement") between BP Corporation North America Inc., an
          Indiana corporation (the "Company") and BP Master Trust for Employee Savings
          Plans ("Master Trust")

Reference is made to that certain letter dated as of November 15, 2004 from the Company to
State Street Bank & Trust Company ("State Street") describing the procedures for requesting and
making loans under the Revolving Loan Agreement (the "Procedures Letter"). All capitalized
terms used herein and not otherwise defined have the same meanings as set forth in the
Procedures Letter. State Street certifies that additional liquidity is required for the BP Stock
Fund according to the Standards described in the Procedures Letter.

State Street, as investment manager under the Investment Manager Agreement and on behalf of
the Master Trust, requests today a revolving loan under the Revolving Loan Agreement in the
amount of $_____.

STATE STREET BANK & TRUST COMPANY

By: _____
Title: _____

Receipt Acknowledged by BP Corporation North America Inc.

Revolving Loan (check one and initial)

☐ Approved          ☐ Denied

By: _____
Title: _____

EXHIBIT B

## BP – COMPANY LOAN - TRUST ACCOUNTING ENTRIES

MEMORNADUM

To:        Jen Ferrari, State Street Master Trust
           (fax 781 302 6106, phone 781 302 6115

           Michelle Robbins, State Street Master Trust
           (fax 781 302 6106, phone 781 302 6130

From:      Jeannine Doyle

Date:

Subject:   BP Stock Fund (AE01) - Revolving Loan under Revolving Loan Agreement dated
as of November 15, 2004 between BP Corporation North America Inc. and BP Master Trust for
Employee Savings Plans

Due to excessive participant activity, the liquidity position in Fund AE01 was completely
depleted today.  In order to provide liquidity, a total of $_____ will be wired
into State Street Bank and Trust Company from BP Corporation North America Inc.  The wire
will be sent to the Clearing Account DDA#02819605.

Please transfer via the OMP system $_____
To:        AE01                    DDA# 01495860

In addition, a payable for this amount must be included in the net asset value for Fund AE01
until the loan is repaid.  Please be sure to post the necessary General Ledger entries to reflect the
loan from BP Corporation North America Inc.

Please call me at 617 657 7467 if you have any questions.



EXHIBIT C

## BP – COMPANY LOAN REPAYMENT - TRUST ACCOUNTING ENTRIES

MEMORANDUM

To:         Jen Ferrari, State Street Master Trust
            (fax 617 786 2027, phone 781 302 6115)

            Michelle Robbins, State Street Master Trust
            (fax 617 786 2030, phone 781 302 6130)

From:       Jeannine Doyle

Date:

Subject:    BP Stock Fund (AE01) - Revolving Loan under Revolving LoanAgreement dated
as of November 15, 2004 between BP Corporation North America Inc. and BP Master Trust for
Employee Savings Plans

Participant activity and/or trade settlement proceeds today allow the repayment of the loan(s)
from BP Corporation, North America.

Please wire $_____ to BP Corporation, North America to repay the loan (there is
no interest to repay as loans from the Company are non-interest bearing).  Wire instructions are
as follows:

Bank One
Chicago, IL
ABA #071000013
Account #: 5137152
Account Name:  BP Corporation North America Inc.

The wire transaction must be completed by 6:00 PM ET today.

Please be sure to post the necessary General Ledger entries and entries to the NAV calculation to
reflect the loan repayment (loan payable is relieved).

I can be reached at 617 657 7467 if you have any questions.

# Amendment No. 7 to
# Investment Manager Agreement

This Amendment No. 7 dated April 1, 2005 (this "Amendment") to that certain Investment Manager Agreement dated as of the 5th day of April, 2000 (the "Agreement") between BP Corporation North America Inc., an Indiana corporation and formerly known as BP Amoco Corporation (hereinafter "Company") and State Street Bank and Trust Company (hereinafter "Investment Manager").

In consideration of the mutual covenants contained herein and in the Agreement, the parties hereto agree as follows:

1.      Exhibit F-1 (Computation of Investment Management Fee) is replaced in its entirety with Amended Exhibit F-1 (attached).

2.      All other provisions of the Agreement remain unchanged and in full force and effect.

IN WITNESS WHEREOF, the parties hereby execute this Amendment No. 7 on the first date above written.

BP CORPORATION                                  STATE STREET BANK AND TRUST
NORTH AMERICA INC.                              COMPANY

By: _____                     By: _____

Title: DIRECTOR- TRUST INVESTMENT                Title: Vice President

## Amended EXHIBIT F-1

## COMPUTATION OF INVESTMENT MANAGEMENT FEE

### (BP Stock Fund)

The market value of the Investment Account AE01 under management by the Investment Manager shall be computed on a daily basis as provided in Section 6(a) of this Agreement and Exhibit D to this Agreement. One fourth (25%) of the annual Investment Management Fee shall be billed in arrears on a quarterly basis, with such quarterly amounts to be calculated based upon the average daily net asset value of Investment Account under management by the Investment Manager. The Investment Management Fee for a quarter will be one fourth of the annual Investment Management Fee (expressed in basis points) computed according to the following formula:

**Mangement Fee = Base + MIF * $(MAD_0 \_ MAD_a)$**

| MAD (basis points) | Fee (basis points) |
|---|---|
| $\leq 1$ | 1.4 |
| $> 1$ and $< 2$ | $1 + 0.4 * (MAD_0 - MAD_a)$ |
| $\geq 2$ | 1.0 |

*Where:*

Base = Base Investment Management Fee (1.0 basis point)
MIF = Maximum incentive fee (0.4 basis points)
$MAD_0$ = Mean Absolute Deviation at which incentive fee is zero (2 basis points)
$MAD_a$ = Actual Mean Absolute Deviation (as defined below)

Where the "Mean Absolute Deviation" (MAD) is defined as: The 12 month rolling average of the absolute value of the differences between the monthly return of the Investment Account and the monthly return of the Investment Account Benchmark, as defined in Exhibit C-1, paragraph C of this Agreement. The components of MAD should be carried out to 4 decimal points, when expressed as a percent.

Subject to the following constraint:

In no case will the Investment Management Fee be greater than the Base fee (1 basis point) if the Fund's risk exceeds the maximum acceptable level as defined in Exhibit C-1, paragraph C of this Agreement.

Until there is a full year of performance history from the effective date, 31 December 2005, the Investment Management Fee schedule will be calculated as follows:

1st Quarter 2005: The Investment Management Fee will be calculated using the previous fee schedule as detailed in Amendment Three to the Investment Manager Agreement, dated July 1, 2003.

2nd & 3rd Quarters 2005: ¼ of the Investment Management Fee, where MAD will be calculated using the preceding monthly returns for 2005 until a rolling 12 month period has been established (31 December 2005). For example, the second quarter fee will be based on the monthly performance data from January thru month-end June 2005.

4th Quarter 2005 and subsequent Quarters: ¼ of the Investment Management Fee, where MAD will be calculated as in the above formula.

The bills shall be forwarded to the Company for approval. Upon approval, the Company will direct the Trustee of the Plan to pay the Investment Management Fee out of Investment Account AE01.

In addition to the fees above the Investment Manager may pass through actual cost for proxy solicitation and tabulation.

# Eighth Amendment to Investment Manager Agreement

This Eighth Amendment to Investment Manager Agreement (the "Amendment") is made as of November 6, 2008, by and between the Savings Plan Investment Oversight Committee of BP Corporation North America Inc. (the "Investment Committee") and State Street Global Advisors, a division of State Street Bank and Trust Company (the "Investment Manager").  Capitalized terms used herein and not defined shall be given their meanings as so defined in the Agreement (as defined below).

WHEREAS, the the Investment Committee and the Investment Manager are party to an Investment Manager Agreement dated as of April 5, 2000 as amended (the "Agreement");

WHEREAS, the Investment Committee desires to appoint Investment Manager for existing and additional Investment Accounts. It is anticipated that certain assets may be transferred from other investment accounts into Investment Accounts B-11, B-12, B-13, and B-14 to be managed by the Investment Manager as provided in the respective Exhibits attached hereto. In addition, commencing upon a date to be determined, assets will be contributed by the Plan and Plan participants into Investment Accounts B-11A, B-12A, B-13A, and B-14A as provided in the respective Exhibits attached hereto; and

WHEREAS, the Investment Committee and the Investment Manager wish to further amend the Agreement to add Exhibits B-11, B-12, B-13, B-14, B-11A, B-12A, B-13A, B14-A, C-11,  C-12, C-13, C-14, C-11A, C-12A, C-13A, C-14A, F-11, F-12, F-13, F-14, F-11A, F-12A, F-13A and F-14A.

NOW, THEREFORE, the Investment Committee and the Investment Manager agree as follows:

1.  Amendments to the Agreement.

   (a)  The Agreement is amended to add Exhibits B-11, B-12, B-13, B-14, B-11A, B-12A, B-13A, B14-A, C-11, C-12, C-13, C-14, C-11A, C-12A, C-13A, C-14A, F-11, F-12, F-13, F-14, F-11A, F-12A, F-13A and F-14A. These Exhibits and each of the related Investment Accounts will become effective only upon the Investment the Investment Committee confirming in writing the date of effectiveness to the Investment Manager.

   (b)  Full Force and Effect.  Except as expressly set forth above, all other terms and provisions of the Agreement and Amendment shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their respective officers thereto duly authorized as of the day and year first above written.

**BP Corporation North America Inc. Savings Plan Investment Oversight Committee**

By *Gregory T. Williamson*

Name *Gregory T. Williamson*       Title *Secretary and Member*

**State Street Global Advisors, a division of State Street Bank & Trust Company**

By

Name                                 Title

LAWRENCE J. CARLSON
SENIOR MANAGING DIRECTOR

By

Name                                 Title

**EXHIBIT B-11**

## INVENTORY OF ACCOUNT ASSETS

Equity Index Fund

The assets contained in the Investment Account AE10 represent the funds for this Investment Account to be managed by the Investment Manager.

**EXHIBIT B-12**

<u>**INVENTORY OF ACCOUNT ASSETS**</u>

Small Cap Equity Index Fund

The assets contained in the Investment Account AE16 represent the funds for this Investment Account to be managed by the Investment Manager.

**EXHIBIT B-13**

**INVENTORY OF ACCOUNT ASSETS**

Bond Index Fund

The assets contained in the Investment Account AE11 represent the funds for this Investment Account to be managed by the Investment Manager.

**EXHIBIT B-14**

## INVENTORY OF ACCOUNT ASSETS

Bond Index Fund - Short Duration

The assets contained in the Investment Account AE24 represent the funds for this Investment Account to be managed by the Investment Manager.

**EXHIBIT B-11A**

**<u>INVENTORY OF ACCOUNT ASSETS</u>**

S& P 500 Index Fund

The assets contained in the Investment Account AE61 represent the funds for this Investment Account to be managed by the Investment Manager

**EXHIBIT B-12A**

**INVENTORY OF ACCOUNT ASSETS**

Russell 2000 Index Fund

The assets contained in the Investment Account AE62 represent the funds for this Investment Account to be managed by the Investment Manager.

**EXHIBIT B-13A**

<u>**INVENTORY OF ACCOUNT ASSETS**</u>

U.S. Fixed Income Fund

The assets contained in the Investment Account AE63 represent the funds for this Investment Account to be managed by the Investment Manager.

**EXHIBIT B-14A**

<u>**INVENTORY OF ACCOUNT ASSETS**</u>

U.S. Fixed Income Fund - Short Duration

The assets contained in the Investment Account AE64 represent the funds for this Investment Account to be managed by the Investment Manager.

**EXHIBIT C-11**

**INVESTMENT STRATEGY GUIDELINES**

Equity Index Fund

A.    Investment Objectives.

The investment objective of the Equity Index Fund Investment Account (the "Investment Account") is to provide daily responsiveness to participants pursuant to the Plan while attempting to match the investment return of the Standard & Poor's 500 Index after the inclusion of all fees and expenses and while permitting participants to purchase and redeem units on an "as of" basis.

B.    Investment Strategy.

The Equity Index Fund is a well diversified fund, which offers participants in the Plan an interest in the Investment Manager's S&P 500 Flagship Non-Lending Series Fund Class A (the "SSgA S&P 500 Fund"), a commingled fund designed to track the investment returns of the Standard and Poor's 500 Index. The SSgA S&P 500 Fund is governed by and subject to the objectives and criteria set forth in the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans dated August 15, 2005, (the "Declaration of Trust"), and respective Fund Declaration (the Declaration of Trust and the respective Fund Declaration are referred to herein as the "Fund Documents"). The Declaration of Trust as attached hereto as Attachment C and the Fund Declaration for the SSgA S&P 500 Fund is attached to this Exhibit C-11 as Attachment C-11. In the event that there is a conflict between these Investment Strategy Guidelines and the governing Fund Documents, the Fund Documents shall supersede and govern. The Investment Manager shall notify the Investment Committee of any changes to the Fund Documents as set forth in those documents.

The Investment Manager will keep abreast of new initiatives and be prepared to consult with the Investment Committee about the possibility of using such new initiatives.

C.    Return Objective.

The performance objective for the Investment Account is to provide an investment return which replicates the return (i.e. provides minimal tracking error) of the Investment Account Benchmark (as defined below) and mirrors the risk profile of the underlying Investment Account Benchmark after inclusion of all fees and expenses. The total risk as measured by the annualized standard deviation of the investment return over rolling 3 year periods should fall within a range of 98%-102% of the total risk of the Investment Account Benchmark measured over the same period. The residual risk, or tracking error, shall be measured as the annualized standard deviation of the difference in returns

between the Investment Account and the Investment Account Benchmark over rolling 3 year periods. It is anticipated that the tracking error for the Investment Account shall be in a range of 5 basis points to 20 basis points.

The Investment Account Benchmark shall be the total return of the Standard & Poor's 500 Index.

D.   Liquidity.

The Investment Manager will primarily utilize late trade notification funds in order to meet participant activity levels, but reserves the right to use a combination of cash and equity derivatives (futures and options) in addition to the underlying commingled fund if participant activity warrants it.

E.   Restrictions and Standards.

The Investment Manager may not lend securities in the SSgA S&P 500 Fund.

F.   Amendments.

The Investment Strategy Guidelines may be revised or altered by mutual agreement of the Investment Committee and the Investment Manager if the Investment Manager (i) recommends to the Investment Committee that such revision or alteration is necessary for the proper articulation of the Investment Manager's strategy, (ii) recognizes changes in domestic or global market conditions, or (iii) recognizes any changes in conditions of risk. It is acknowledged by the Investment Committee and the Investment Manager that these Guidelines shall govern the Investment Manager's management of the Investment Account for all purposes, except to the extent of any conflict with the Fund Documents as set forth in Section B above. Any discrepancies, inconsistencies or questions that the Investment Manager has in connection with complying with the Guidelines must be immediately communicated to the Investment Committee prior to any execution of trades, contracts or other agreements that may bind the Investment Account.

G.   Reporting.

The Investment Manager shall provide reports regarding the performance of the Investment Account in such form and at such intervals as shall be required by the Investment Committee. All such reports shall be true and correct and shall not contain any material misstatement or omission.

H.     Compliance Statements

In addition to the reports required by other sections of the Agreement and these Guidelines, not less than quarterly or at such times as the Investment Committee shall request, the Investment Manager will provide the Investment Committee a written report as to compliance by the Investment Manager with the terms of the Agreement and these Guidelines, the form of which shall be agreed upon between the Investment Committee and the Investment Manager.   The Investment Committee, if it requests, may supplement such report with meetings, telephone calls and other forms of communication in which representatives of the Investment Committee have an opportunity to ask questions about the report and the Investment Manager's activities with respect to the Investment Account.

**ATTACHMENT C**

**<u>DECLARATION OF TRUST</u>**

*Provided separately to Investment Committee*

**ATTACHMENT C-11**


**FUND DECLARATION**

**STATE STREET BANK AND TRUST COMPANY**
**INVESTMENT FUNDS FOR TAX EXEMPT RETIREMENT PLANS**

**CLASS DESCRIPTION**
**(CLASS A)**

*S&P 500® FLAGSHIP NON-LENDING SERIES FUND*
*(the "Fund")*

Pursuant to Section 3.2 of the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans, dated August 15, 2005 and effective as of October 1, 2005 (the "Declaration of Trust"), which authorizes State Street Bank and Trust Company (the "Trustee") to divide an investment fund established thereunder, including the Fund, into one or more Classes of Units representing beneficial interests in such Fund with differing fee and expense obligations, the Trustee hereby declares that the Fund shall have the authority to issue Units in the following Class ("Class A"). Class A shall have the rights, privileges and obligations set forth below. Capitalized terms used and not otherwise defined shall have the meanings set forth in the Declaration of Trust.

Eligibility for a Qualified Trust to invest in Units of Class A shall be determined based upon:

Any Qualified Trust is eligible to invest in Class A.

Class A will be charged an annual administration fee equal to $25,000. Class A will also be charged such other fees and expenses as are permitted by the Declaration of Trust and as are described below:

Class A will also be charged its allocable share of the fees and expenses borne by the Fund that are not specially allocated to one or more other Classes.

**STATE STREET BANK AND TRUST COMPANY**

By: _____
Name: *Timothy Connolly*
Title: *Sr. Principal*

STATE STREET BANK AND TRUST COMPANY
INVESTMENT FUNDS FOR TAX EXEMPT RETIREMENT PLANS

AMENDED FUND DECLARATION

*S&P 500® FLAGSHIP NON-LENDING SERIES FUND*
*(the "Fund")*

Pursuant to Articles III and VII of the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans, dated August 15, 2005 and effective as of October 1, 2005 (the "Declaration of Trust"), State Street Bank and Trust Company (the "Trustee"), by its execution of this Amended Fund Declaration, hereby amends and restates the Amendment and Fund Declaration of the Fund.  The Trustee agrees that it will hold, administer and deal with all money and property received by it as Trustee of the Fund in accordance with the terms of the Declaration of Trust, subject to the additional terms and conditions set forth in this Amended Fund Declaration.  Capitalized terms used and not otherwise defined shall have the meanings set forth in the Declaration of Trust.

1.   **Name of the Fund:**

     *S&P 500 Flagship Non-Lending Series Fund*

2.   **Effective Date of the Amendment and Fund Declaration:**

     October 1, 2005

3.   **Investment Objective of the Fund:**

     The Investment Objective of the Fund shall be to match, as closely as possible, the return of the Standard & Poor's 500® Index (the "Index"), while providing participants the ability to purchase and redeem units on an "as of" basis.

4.   **Permitted Categories of Assets and Investment Strategy of the Fund:**

     The Fund seeks to achieve its objective by investing primarily in units of the S&P 500 Flagship Non-Lending Fund (the "Core Fund"), a bank commingled fund maintained by the Trustee.  In addition, the Core Fund shall make direct investments in common stocks which are contained in the Index (the "Investments") and may also hold U.S. Treasury Bills, short-term fixed income securities, equity index futures, exchange traded funds and other similar derivative instruments as deemed appropriate by the Trustee.  The Core Fund may also hold units of the Stock Performance Index Futures Fund ("SPIFF"), a bank commingled fund maintained by the Trustee.

     Investments shall be selected on the basis of tracking the Index.  The investment universe shall consist substantially of the equity securities contained within the Index at the time the investment is made, and include collective investment funds with similar investment objectives.  The allocation and balance of Investments within the Core Fund may be re-weighted or replaced in order to maintain the industry weightings consistent with the

1

Index.  The Core Fund will be rebalanced periodically to reflect any changes in the Index and all dividends and realized capital gains shall be reinvested.

The Fund may invest excess cash in short-term securities and instruments including, but not limited to the Short Term Investment Fund ("STIF") or other short-term cash funds maintained by the Trustee, as well as shares of the SSgA Money Market Fund and the SSgA Yield Plus Fund (the "Mutual Funds"), short-term registered mutual funds for which an affiliate of the Trustee acts as investment advisor.

5.    **Operating Features:**

Because the Fund is a qualifying entity under the rules of the Commodity Futures Trading Commission (the "CFTC"), the Trustee, as a trust company subject to regulation of the Commonwealth of Massachusetts, is exempt from registration with the CFTC and the National Futures Association (the "NFA") as a commodity pool operator in connection with the Trustee's operation of the Fund pursuant to an exemption under Rule 4.5 promulgated pursuant to the Commodity Exchange Act (the "CEA").  The Trustee is not subject to regulation under the CEA or by the CFTC or NFA and is not required to deliver a disclosure document prepared in accordance with Rules 4.24 and 4.25 under the CEA or a Certified Annual Report to participants in the Fund.  Rule 4.5 does not impose any limits on the use of futures contracts or options thereon in connection with the investment of the Fund's assets.

Each Business Day shall be a Valuation Date.

6.    **Permitted Classes of Units, Fees and Expenses:**

The Fund will be charged an annual audit fee and such other fees and expenses as are permitted by the Declaration of Trust.

The Trustee shall have the authority to establish from time to time unlimited Classes of Units of the Fund and to issue from time to time an unlimited number of Units of any such Class of the Fund, each of which shall have the rights, privileges and obligations set forth in the Class Description for such Class.  The Trustee may in its discretion from time to time add, delete, amend or otherwise modify a Class of Units of the Fund, and the Trustee shall not be obligated or required to notify any Participants in the Fund of such addition, deletion, amendment or modification, other than the then current Participants in the affected Class as required in Section 3.2 of the Declaration of Trust.  Each Participant in the Fund will only receive a copy of the Class Description for the Class in which such Participant participates.

Each Class of Units of the Fund will be charged such fees and expenses as are permitted by the Declaration of Trust and as are described in the Class Description for such Class. Each Class of Units of the Fund will also be charged its allocable share of the fees and expenses borne by the Fund that are not allocable to a specific Class.

LIBB/1341885.2

With respect to the Fund assets invested in the Mutual Funds, the Fund will indirectly incur management fees and other charges paid to the Trustee, which currently do not exceed fifty-three (53) basis points.  With respect to that portion of the Fund's assets invested in units of SPIFF, the Fund will indirectly incur the management fees, custody fees and transaction charges set forth in the SPIFF Fund Declaration.  The Trustee will waive the allocable portion of each participant's management fee for the Fund that is attributable to such investment of cash in any of the Mutual Funds or SPIFF.

**STATE STREET BANK AND TRUST COMPANY**

By: _____

Name:  *Timothy Connolly*

Title:  *Sr. Principal*

Standard & Poor's S&P 500® Index is a registered trademark of Standard & Poor's, a division of the McGraw-Hill Companies, Inc.

3

## EXHIBIT C-12

## INVESTMENT STRATEGY GUIDELINES

Small-Cap Equity Index Fund

A.   Investment Objectives.

The investment objective of the Small-Cap Equity Index Fund , Investment Account (the "Investment Account") is to provide daily responsiveness to participants pursuant to the Plan while attempting to match the investment return of the Russell 2000 Index after the inclusion of all fees and expenses and while permitting participants to purchase and redeem units on an "as of" basis.

Investment Strategy.

The Small-Cap Equity Index Fund is a well diversified fund, which offers participants in the Plan an interest in the Investment Manager's Russell 2000 Index Non-Lending Series Fund Class A (the "SSgA Russell 2000 Fund"), a commingled fund designed to track the investment returns of the Russell 2000 Index. The SSgA Russell 2000 Fund is governed by and subject to the objectives and criteria set forth in the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans dated August 15, 2005 (the "Declaration of Trust"), and respective Fund Declaration (the Declaration of Trust and the respective Fund Declaration are referred to herein as the "Fund Documents"). The Declaration of Trust as attached hereto as Attachment C and the Fund Declaration for the SSgA Russell 2000 Fund is attached to this Exhibit C-12 as Attachment C-12. In the event that there is a conflict between these Investment Strategy Guidelines and the governing Fund Documents, the Fund Documents shall supersede and govern. The Investment Manager shall notify the Investment Committee of any changes to the Fund Documents as set forth in those documents.

The Investment Manager will keep abreast of new initiatives and be prepared to consult with the Investment Committee about the possibility of using such new initiatives.

C.   Return Objective.

The performance objective for the Investment Account is to provide an investment return which replicates the return (i.e. provides minimal tracking error) of the Investment Account Benchmark (as defined below) and mirrors the risk profile of the underlying Investment Account Benchmark after inclusion of all fees and expenses. The total risk as measured by the annualized standard deviation of the investment return over rolling 3 year periods should fall within a range of 98%-102% of the total risk of the Investment Account Benchmark measured over the same period. The residual risk, or tracking error, shall be measured as the annualized standard deviation of the difference in returns

between the Investment Account and the Investment Account Benchmark over rolling 3 year periods. It is anticipated that the tracking error for the Investment Account shall be in a range of 30 basis points to 45 basis points.

The Investment Account Benchmark shall be the total return of the Russell 2000 Index.

D.    Liquidity.

The Investment Manager will primarily utilize late trade notification funds in order to meet participant activity levels, but reserves the right to use a combination of cash and equity derivatives (futures and options) in addition to the underlying commingled fund if participant activity warrants it.

E.    Restrictions and Standards.

The Investment Manager may not lend securities in the SSgA Russell 2000 Fund.

F.    Amendments.

The Investment Strategy Guidelines may be revised or altered by mutual agreement of the Investment Committee and the Investment Manager if the Investment Manager (i) recommends to the Investment Committee that such revision or alteration is necessary for the proper articulation of the Investment Manager's strategy, (ii) recognizes changes in domestic or global market conditions, or (iii) recognizes any changes in conditions of risk. It is acknowledged by the Investment Committee and the Investment Manager that these Guidelines shall govern the Investment Manager's management of the Investment Account for all purposes, except to the extent of any conflict with the Fund Documents as set forth in Section B above. Any discrepancies, inconsistencies or questions that the Investment Manager has in connection with complying with the Guidelines must be immediately communicated to the Investment Committee prior to any execution of trades, contracts or other agreements that may bind the Investment Account.

G.    Reporting

The Investment Manager shall provide reports regarding the performance of the Investment Account in such form and at such intervals as shall be required by the Investment Committee. All such reports shall be true and correct and shall not contain any material misstatement or omission.

H.     <u>Compliance Statements</u>

In addition to the reports required by other sections of the Agreement and these Guidelines, not less than quarterly or at such times as the Investment Committee shall request, the Investment Manager will provide the Investment Committee a written report as to compliance by the Investment Manager with the terms of the Agreement and these Guidelines, the form of which shall be agreed upon between the Investment Committee and the Investment Manager.   The Investment Committee, if it requests, may supplement such report with meetings, telephone calls and  other  forms  of communication in which representatives of the Investment Committee have an opportunity to ask questions about the report and the Investment Manager's activities with respect to the Investment Account.

**ATTACHMENT C-12**

**FUND DECLARATION**

**STATE STREET BANK AND TRUST COMPANY**
**INVESTMENT FUNDS FOR TAX EXEMPT RETIREMENT PLANS**

**CLASS DESCRIPTION**
**(CLASS A)**

*RUSSELL 2000® INDEX NON-LENDING SERIES FUND*
*(the "Fund")*

Pursuant to Section 3.2 of the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans, dated August 15, 2005 and effective as of October 1, 2005 (the "Declaration of Trust"), which authorizes State Street Bank and Trust Company (the "Trustee") to divide an investment fund established thereunder, including the Fund, into one or more Classes of Units representing beneficial interests in such Fund with differing fee and expense obligations, the Trustee hereby declares that the Fund shall have the authority to issue Units in the following Class ("Class A"). Class A shall have the rights, privileges and obligations set forth below. Capitalized terms used and not otherwise defined shall have the meanings set forth in the Declaration of Trust.

Eligibility for a Qualified Trust to invest in Units of Class A shall be determined based upon:

Any Qualified Trust is eligible to invest in Class A.

Class A will be charged an annual administration fee equal to $25,000. Class A will also be charged such other fees and expenses as are permitted by the Declaration of Trust and as are described below:

Class A will also be charged its allocable share of the fees and expenses borne by the Fund that are not specially allocated to one or more other Classes.

**STATE STREET BANK AND TRUST COMPANY**

By: _____

Name: *Timothy Connolly*
Title: *Sr Principal*

**STATE STREET BANK AND TRUST COMPANY**
**INVESTMENT FUNDS FOR TAX EXEMPT RETIREMENT PLANS**

**AMENDED FUND DECLARATION**

*RUSSELL 2000® INDEX NON-LENDING SERIES FUND*
*(the "Fund")*

Pursuant to Articles III and VII of the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans, August 15, 2005 and effective as of October 1, 2005 (the "Declaration of Trust"), State Street Bank and Trust Company (the "Trustee"), by its execution of this Amended Fund Declaration, hereby amends and restates the Amendment and Fund Declaration of the Fund. The Trustee agrees that it will hold, administer and deal with all money and property received by it as Trustee of the Fund in accordance with the terms of the Declaration of Trust, subject to the additional terms and conditions set forth in this Amended Fund Declaration. Capitalized terms used and not otherwise defined shall have the meanings set forth in the Declaration of Trust.

1.  **Name of the Fund:**

    *Russell 2000 Index Non-Lending Series Fund*

2.  **Effective Date of the Amendment and Fund Declaration:**

    October 1, 2005

3.  **Investment Objective of the Fund:**

    The Investment Objective of the Fund shall be to match, as closely as possible, the return of the Russell 2000 Index (the "Index"), while providing participants the ability to purchase and redeem units on an "as of" basis.

4.  **Permitted Categories of Assets and Investment Strategy of the Fund:**

    The Fund seeks to achieve its objective by investing primarily in units of the Russell 2000® Index Non-Lending Fund (the "Core Fund"), a bank commingled fund maintained by the Trustee. In addition, the Core Fund shall make direct investments in common stocks which are contained in the Index (the "Investments") and may also hold U.S. Treasury Bills, short-term fixed income securities, equity index futures, exchange traded funds and other similar derivative instruments as deemed appropriate by the Trustee.

    Investments shall be selected on the basis of tracking the Index. The investment universe shall consist substantially of the equity securities contained within the Index at the time the investment is made, and include collective investment funds with similar investment objectives. The allocation and balance of Investments within the Core Fund may be re-weighted or replaced in order to maintain the industry weightings consistent with the Index. The Core Fund will be rebalanced periodically to reflect any changes in the Index and all dividends and realized capital gains shall be reinvested.

1

The Fund may invest excess cash in short-term securities and instruments including, but not limited to the Short Term Investment Fund ("STIF") or other short-term cash funds maintained by the Trustee, as well as shares of the SSgA Money Market Fund and the SSgA Yield Plus Fund (the "Mutual Funds"), short-term registered mutual funds for which an affiliate of the Trustee acts as investment advisor.

5.    **Operating Features:**

Because the Fund is a qualifying entity under the rules of the Commodity Futures Trading Commission (the "CFTC"), the Trustee, as a trust company subject to regulation of the Commonwealth of Massachusetts, is exempt from registration with the CFTC and the National Futures Association (the "NFA") as a commodity pool operator in connection with the Trustee's operation of the Fund pursuant to an exemption under Rule 4.5 promulgated pursuant to the Commodity Exchange Act (the "CEA"). The Trustee is not subject to regulation under the CEA or by the CFTC or NFA and is not required to deliver a disclosure document prepared in accordance with Rules 4.24 and 4.25 under the CEA or a Certified Annual Report to participants in the Fund. Rule 4.5 does not impose any limits on the use of futures contracts or options thereon in connection with the investment of the Fund's assets.

The Trustee shall monitor the Turnover Rate (as defined below) for each Participant or the account of a third party administrator which aggregates accounts of Participants (each, a "Participating Account") in the Fund. In the event that a Participating Account does not provide the Trustee with written notification of a Significant Plan Event (as defined below) at least two business days prior to such event, and the Turnover Rate for a Participating Account exceeds 20% for the previous 30 day rolling period, the Trustee shall notify the Participating Account in writing. The Participating Account shall have 45 days from receipt of such notice to implement a plan satisfactory to the Trustee which is reasonably designed to limit such Participating Account's Turnover Rate to below 20%. If the Participating Account fails to do so within such 45 day period, the Trustee shall terminate the Participating Account's participation in the Fund within 15 days, regardless of any other limitations or termination provisions found in any agreements between the Trustee and the Participating Account.

"Turnover Rate" for any 30-day period shall be determined by taking the absolute sum of the dollar amount of all purchases and sales of Fund units made by the Participating Account over that period, dividing that number by two, and dividing the result by the average daily market value of the Participating Account's assets in the Fund over the 30 day period.

"Significant Plan Event" means any event primarily caused by the sponsor of the Participating Account and not by any individual plan participants, such as annual payroll contributions or the conversion of new participants to the Participating Account.

Each business day shall be a Valuation Date (as defined in the Declaration of Trust).

6.     **Permitted Classes of Units, Fees and Expenses:**

The Fund will be charged an annual audit fee and such other fees and expenses as are permitted by the Declaration of Trust.

The Trustee shall have the authority to establish from time to time unlimited Classes of Units of the Fund and to issue from time to time an unlimited number of Units of any such Class of the Fund, each of which shall have the rights, privileges and obligations set forth in the Class Description for such Class. The Trustee may in its discretion from time to time add, delete, amend or otherwise modify a Class of Units of the Fund, and the Trustee shall not be obligated or required to notify any Participants in the Fund of such addition, deletion, amendment or modification, other than the then current Participants in the affected Class as required in Section 3.2 of the Declaration of Trust. Each Participant in the Fund will only receive a copy of the Class Description for the Class in which such Participant participates.

Each Class of Units of the Fund will be charged such fees and expenses as are permitted by the Declaration of Trust and as are described in the Class Description for such Class. Each Class of Units of the Fund will also be charged its allocable share of the fees and expenses borne by the Fund that are not allocable to a specific Class.

With respect to the Fund assets invested in the Mutual Funds, the Fund will indirectly incur management fees and other charges paid to the Trustee, which currently do not exceed fifty-three (53) basis points. The Trustee will waive the allocable portion of each participant's management fee for the Fund that is attributable to such investment of cash in any Mutual Fund.

**STATE STREET BANK AND TRUST COMPANY**

By: _____
Name: *Timothy Connolly*
Title: *Sr. Principal*

The Russell 2000® Index is a trademark of the Frank Russell Company. Russell™ is a trademark of the Frank Russell Company.

3

**EXHIBIT C-13**

**INVESTMENT STRATEGY GUIDELINES**

Bond Index Fund

A.    Investment Objectives.

The investment objective of the Bond Index Fund Investment Account (the "Investment Account") is to provide daily responsiveness to participants pursuant to the Plan while attempting to match the investment return of the Lehman Brothers Aggregate Bond Index after the inclusion of all fees and expenses and while providing participants the ability to purchase and redeem units on an "as of" basis.

B.    Investment Strategy.

The Bond Index Fund will be invested in the Investment Manager's Passive Bond Market Index Non-Lending Series Fund Class A ("SSgA Bond Index Fund"), a commingled fund designed to track the investment returns of the Lehman Brothers Aggregate Bond Index.  The SSgA Bond Index Fund is governed by and subject to the objectives and criteria set forth in the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans dated August 15, 2005, (the "Declaration of Trust"), and respective Fund Declaration (the Declaration of Trust and the respective Fund Declaration are referred to herein as the "Fund Documents"). The Declaration of Trust as attached hereto as Attachment C and the Fund Declaration for the SSgA Bond Index Fund is attached to this Exhibit C-13 as Attachment C-13.  In the event that there is a conflict between these Investment Strategy Guidelines and the governing Fund Documents, the Fund Documents shall supersede and govern.  The Investment Manager shall notify the Investment Committee of any changes to the Fund Documents as set forth in those documents.

The Investment Manager will keep abreast of new initiatives and be prepared to consult with the Investment Committee about the possibility of using such new initiatives.

C.    Return Objective.

The performance objective for the Investment Account is to provide an investment return which replicates the return (i.e. provides minimal tracking error) of the Investment Account Benchmark (as defined below) and mirrors the risk profile of the underlying Investment Account Benchmark after inclusion of all fees and expenses.  The total risk as measured by the annualized standard deviation of the investment return over rolling 3 year periods should fall within a range of 98%-102% of the total risk of the Investment Account Benchmark measured over the same period.  The residual risk, or tracking error, shall be measured as the annualized standard deviation of the difference in returns between the Investment Account and the Investment Account Benchmark over rolling 3 year periods.  It is anticipated that the tracking error for the Investment Account shall be in a range of 0 basis points to 10 basis points.

The Investment Account Benchmark shall be the total return of the Lehman Brothers Aggregate Bond Index.

D.     Liquidity.

The Investment Manager will primarily utilize late trade notification funds in order to meet participant activity levels, but reserves the right to use a combination of cash and equity derivatives (futures and options) in addition to the underlying commingled fund if participant activity warrants it.

E.     Restrictions and Standards.

The Investment Manager may not lend assets of the SSgA Bond Index Fund.

F.     Amendments.

The Investment Strategy Guidelines may be revised or altered by mutual agreement of the Investment Committee and the Investment Manager if the Investment Manager (i) recommends to the Investment Committee that such revision or alteration is necessary for the proper articulation of the Investment Manager's strategy, (ii) recognizes changes in domestic or global market conditions, or (iii) recognizes any changes in conditions of risk.  It is acknowledged by the Investment Committee and the Investment Manager that these Guidelines shall govern the Investment Manager's management of the Investment Account for all purposes, except to the extent of any conflict with the Fund Documents as set forth in Section B above.   Any discrepancies, inconsistencies or questions that the Investment Manager has in connection with complying with the Guidelines must be immediately communicated to the Investment Committee prior to any execution of trades, contracts or other agreements that may bind the Investment Account.

G.     Reporting

The Investment Manager shall provide reports regarding the performance of the Investment Account in such form and at such intervals as shall be required by the Investment Committee. All such reports shall be true and correct and shall not contain any material misstatement or omission.

H.    <u>Compliance Statements</u>

In addition to the reports required by other sections of the Agreement and these Guidelines, not less than quarterly or at such times as the Investment Committee shall request, the Investment Manager will provide the Investment Committee a written report as to compliance by the Investment Manager with the terms of the Agreement and these Guidelines, the form of which shall be agreed upon between the Investment Committee and the Investment Manager. The  Investment Committee, if it requests, may supplement such report with meetings, telephone calls and other forms of communication in which representatives of the Investment Committee have an opportunity to ask questions about the report  and  the  Investment Manager's activities with respect to the Investment Account.

**ATTACHMENT C-13**


**FUND DECLARATION**

**STATE STREET BANK AND TRUST COMPANY**
**INVESTMENT FUNDS FOR TAX EXEMPT RETIREMENT PLANS**

**CLASS DESCRIPTION**
**(CLASS A)**

*BOND MARKET NON-LENDING SERIES FUND*
*(the "Fund")*

Pursuant to Section 3.2 of the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans, dated August 15, 2005 and effective as of October 1, 2005 (the "Declaration of Trust"), which authorizes State Street Bank and Trust Company (the "Trustee") to divide an investment fund established thereunder, including the Fund, into one or more Classes of Units representing beneficial interests in such Fund with differing fee and expense obligations, the Trustee hereby declares that the Fund shall have the authority to issue Units in the following Class ("Class A"). Class A shall have the rights, privileges and obligations set forth below. Capitalized terms used and not otherwise defined shall have the meanings set forth in the Declaration of Trust.

Eligibility for a Qualified Trust to invest in Units of Class A shall be determined based upon:

Any Qualified Trust is eligible to invest in Class A.

Class A will be charged an annual administration fee equal to $25,000. Class A will also be charged such other fees and expenses as are permitted by the Declaration of Trust and as are described below:

Class A will also be charged its allocable share of the fees and expenses borne by the Fund that are not specially allocated to one or more other Classes.

**STATE STREET BANK AND TRUST COMPANY**

By: _____
Name: *Timothy Connolly*
Title: *Sr. Principal*

**STATE STREET BANK AND TRUST COMPANY**
**INVESTMENT FUNDS FOR TAX EXEMPT RETIREMENT PLANS**

**AMENDED FUND DECLARATION**

*BOND MARKET NON-LENDING SERIES FUND*
*(the "Fund")*

Pursuant to Articles III and VII of the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans, dated August 15, 2005 and effective as of October 1, 2005 (the "Declaration of Trust"), State Street Bank and Trust Company (the "Trustee"), by its execution of this Amended Fund Declaration, hereby amends and restates the Amendment and Fund Declaration of the Fund.  The Trustee agrees that it will hold, administer and deal with all money and property received by it as Trustee of the Fund in accordance with the terms of the Declaration of Trust, subject to the additional terms and conditions set forth in this Amended Fund Declaration.  Capitalized terms used and not otherwise defined shall have the meanings set forth in the Declaration of Trust.

1.    **Name of the Fund:**

      *Bond Market Non-Lending Series Fund*

2.    **Effective Date of the Amendment and Fund Declaration:**

      October 10, 2007

3.    **Investment Objective of the Fund:**

      The Investment Objective of the Fund shall be to match the return of the Lehman Brothers Aggregate Bond Index (the "Index"), while providing participants the ability to purchase and redeem units on an "as of" basis.

4.    **Permitted Categories of Assets and Investment Strategy of the Fund:**

      The Fund seeks to achieve its objective by investing in units of the Bond Market Non-Lending Fund (the "Core Fund"), a bank commingled fund maintained by the Trustee, the Fund Declaration of which is attached hereto.

      In addition, the Fund may invest excess cash in short term securities and instruments including, but not limited to, repurchase agreements, commercial paper, the Short Term Investment Fund ("STIF") or other short term cash funds maintained by the Trustee, as well as shares of the SSgA Money Market Fund or other short term registered mutual funds for which an affiliate of the Trustee acts as investment advisor ("Mutual Funds").

5.    **Operating Features:**

      Because the Fund is a qualifying entity under the rules of the Commodity Futures Trading Commission (the "CFTC"), the Trustee, as a trust company subject to regulation of the Commonwealth of Massachusetts, is exempt from registration with the CFTC and the National Futures Association (the "NFA") as a commodity pool operator in connection with the Trustee's operation of the Fund pursuant to an exemption under Rule 4.5 promulgated pursuant to the Commodity Exchange Act (the "CEA").  The Trustee is not subject to regulation under the CEA or by the CFTC or NFA and is not required to deliver a disclosure document prepared in accordance with Rules 4.24 and 4.25 under the CEA or a Certified Annual Report to participants

LIBB/1341885.2

in the Fund. Rule 4.5 does not impose any limits on the use of futures contracts or options thereon in connection with the investment of the Fund's assets.

Each Business Day shall be a Valuation Date.

6.    **Permitted Classes of Units, Fees and Expenses:**

The Fund will be charged an annual audit fee and such other fees and expenses as are permitted by the Declaration of Trust.

The Trustee shall have the authority to establish from time to time unlimited Classes of Units of the Fund and to issue from time to time an unlimited number of Units of any such Class of the Fund, each of which shall have the rights, privileges and obligations set forth in the Class Description for such Class. The Trustee may in its discretion from time to time add, delete, amend or otherwise modify a Class of Units of the Fund, and the Trustee shall not be obligated or required to notify any Participants in the Fund of such addition, deletion, amendment or modification, other than the then current Participants in the affected Class as required in Section 3.2 of the Declaration of Trust. Each Participant in the Fund will only receive a copy of the Class Description for the Class in which such Participant participates.

Each Class of Units of the Fund will be charged such fees and expenses as are permitted by the Declaration of Trust and as are described in the Class Description for such Class. Each Class of Units of the Fund will also be charged its allocable share of the fees and expenses borne by the Fund that are not allocable to a specific Class.

With respect to that portion of the Fund's assets invested in units of SPIFF, the Fund will indirectly incur the management fees, custody fees and transaction charges set forth in the SPIFF Fund Declaration. With respect to Fund assets invested in the Mutual Funds, the Fund will indirectly incur management fees and other charges which currently do not exceed fifty-nine (59) basis points. The Trustee will waive the allocable portion of the Fund's management fee that is attributable to any investment in SPIFF or in any of the Mutual Funds.

STATE STREET BANK AND TRUST COMPANY

By: _____

Name:  *Peter O'Connell*
Title:   *Sr. Managing Director*

2

**EXHIBIT C-14**

**INVESTMENT STRATEGY GUIDELINES**

Bond Index Fund - Short Duration

A.     Investment Objectives.

The investment objective of the Bond Index Fund – Short Duration Investment Account (the "Investment Account") is to provide daily responsiveness to participants pursuant to the Plan while attempting to match the investment return of the Lehman Brothers U.S. 1-3 Year U.S. Government Bond Index (the "U.S. 1-3 Year Index") after the inclusion of all fees and expenses.. The Bond Index Fund – Short Duration Investment Account will be invested in the "base" fund and is not priced on an "as of" basis, meaning that the "base" fund's NAV is calculated at the end of the day on the date of the contribution, rather than at the previous day's NAV.

B.     Investment Strategy.

The Bond Index Fund – Short Duration will be invested in the Investment Manager's Passive 1-3 Year U.S. Government Bond Index Non-Lending Strategy, which invests in two commingled funds of the Investment Manager:

✓ U.S. Agency 1-3 Year Index Non-Lending Series Fund ("SSgA Agency 1-3 Year Fund"), a commingled fund designed to track the investment returns of the Lehman Brothers U.S. Agency 1-3 Year Bond Index; and

✓ U.S. Treasury 1-3 Year Index Non-Lending Fund ("SSgA Treasury 1-3 Year Fund"), a commingled fund designed to track the investment returns of the Lehman Brothers U.S. Treasury 1-3 Year Bond Index.

The SSgA Agency 1-3 Year Fund and the SSgA Treasury 1-3 Year Fund are governed by and subject to the objectives and criteria set forth in the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans dated August 15, 2005 (the "Declaration of Trust"), and respective Fund Declaration (the Declaration of Trust and the respective Fund Declaration are referred to herein as the "Fund Documents"). The Declaration of Trust as attached hereto as Attachment C and the Fund Declarations for the SSgA Agency 1-3 Year Fund and the SSgA Treasury 1-3 Year Fund are attached to this Exhibit C-14 as Attachment C-14. In the event that there is a conflict between these Investment Strategy Guidelines and the governing Fund Documents, the Fund Documents shall supersede and govern.  The Investment Manager shall notify the Investment Committee of any changes to the Fund Documents as set forth in those documents.

The Bond Index Fund – Short Duration Investment Account will be rebalanced by the Investment Manager at each month-end, in accordance with the changes to the U.S. 1-3 Year Index, by buying and selling units of the aforementioned SSgA Agency 1-3 Year Fund and the SSgA Treasury 1-3 Year Fund at the approximate weights of the U.S. 1-3 Year Index.

The Investment Manager will keep abreast of new initiatives and be prepared to consult with the Investment Committee about the possibility of using such new initiatives.

C.    Return Objective.

The performance objective for the Investment Account is to provide an investment return which replicates the return (i.e. provides minimal tracking error) of the Investment Account Benchmark (as defined below) and mirrors the risk profile of the underlying Investment Account Benchmark after inclusion of all fees and expenses. The total risk as measured by the annualized standard deviation of the investment return over rolling 3 year periods should fall within a range of 98%-102% of the total risk of the Investment Account Benchmark measured over the same period. The residual risk, or tracking error, shall be measured as the annualized standard deviation of the difference in returns between the Investment Account and the Investment Account Benchmark over rolling 3 year periods. It is anticipated that the tracking error for the Investment Account shall be in a range of 0 basis points to 10 basis points.

The Investment Account Benchmark shall be the total return of the U.S. 1-3 Year Index.

D.    Liquidity.

The Investment Manager will primarily utilize late trade notification funds in order to meet participant activity levels, but reserves the right to use a combination of cash and equity derivatives (futures and options) in addition to the underlying commingled fund if participant activity warrants it.

E.    Restrictions and Standards.

The Investment Manager may not lend assets of the SSgA Agency 1-3 Year Fund or SSgA Treasury 1-3 Year Fund.

F.    Amendments.

The Investment Strategy Guidelines may be revised or altered by mutual agreement of the Investment Committee and the Investment Manager if the Investment Manager (i) recommends to the Investment Committee that such revision or alteration is necessary for the proper articulation of the Investment Manager's strategy, (ii) recognizes changes in domestic or global market conditions, or (iii) recognizes any changes in conditions of risk. It is acknowledged by the Investment Committee and the Investment Manager that these Guidelines shall govern the Investment Manager's management of the Investment Account for all purposes, except to the extent of any conflict with the Fund Documents as set forth in Section B above. Any discrepancies, inconsistencies or questions that the Investment Manager has in connection with complying with the Guidelines must be immediately communicated to the Investment Committee prior to any execution of trades, contracts or other agreements that may bind the Investment Account.

G.      Reporting

The Investment Manager shall provide reports regarding the performance of the Investment Account in such form and at such intervals as shall be required by the Investment Committee. All such reports shall be true and correct and shall not contain any material misstatement or omission.

H.      Compliance Statements

In addition to the reports required by other sections of the Agreement and these Guidelines, not less than quarterly or at such times as the Investment Committee shall request, the Investment Manager will provide the Investment Committee a written report as to compliance by the Investment Manager with the terms of the Agreement and these Guidelines, the form of which shall be agreed upon between the Investment Committee and the Investment Manager. The  Investment Committee, if it requests, may supplement such report with meetings, telephone calls and  other  forms  of  communication  in  which  representatives  of  the  Investment Committee  have  an   opportunity  to  ask  questions  about  the  report  and   the   Investment Manager's  activities  with  respect  to  the  Investment Account.

**ATTACHMENT C-14**

**FUND DECLARATIONS**

**STATE STREET BANK AND TRUST COMPANY**
**INVESTMENT FUNDS FOR TAX EXEMPT RETIREMENT PLANS**

**AMENDED FUND DECLARATION**

*U.S. AGENCY 1-3 YEAR INDEX NON-LENDING FUND*
*(the "Fund")*

Pursuant to Articles III and VII of the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans, dated August 15, 2005 and effective as of October 1, 2005 (the "Declaration of Trust"), State Street Bank and Trust Company (the "Trustee"), by its execution of this Amended Fund Declaration, hereby amends and restates the Amendment and Fund Declaration of the Fund. The Trustee agrees that it will hold, administer and deal with all money and property received by it as Trustee of the Fund in accordance with the terms of the Declaration of Trust, subject to the additional terms and conditions set forth in this Amended Fund Declaration. Capitalized terms used and not otherwise defined shall have the meanings set forth in the Declaration of Trust.

1.      **Name of the Fund:**

        *U.S. Agency 1-3 Year Index Non-Lending Fund*

2.      **Effective Date of the Amendment and Fund Declaration:**

        October 1, 2005

3.      **Investment Objective of the Fund:**

        The Investment Objective of the Fund shall be to match the return of the Lehman Brothers U.S. Agency 1-3 Year Bond Index (the "Index").

4.      **Permitted Categories of Assets and Investment Strategy of the Fund:**

        The Fund seeks to achieve its objective by investing primarily in securities contained within the Index. The Fund may also invest in other bank commingled funds ("Commingled Funds") maintained by the Trustee which have characteristics consistent with the overall investment objective, and medium term notes (MTNs) of issuers contained in the Index. The Fund may also invest in derivative securities including, but not limited to, options, futures and swaps.

        Additional securities, investments, or Commingled Funds shall be added to the Fund in the event that new sectors are added to the Index, and may be implemented without advance notice to participants.

        In addition, the Fund may invest excess cash in short term securities and instruments including, but not limited to, repurchase agreements, U.S. Treasury and agency securities, the Short Term Investment Fund ("STIF"), the Government Short Term Investment Fund ("GSTIF") or other short term cash funds maintained by the Trustee, as well as shares of

1

the SSgA U.S. Government Money Market Fund, the SSgA U.S. Treasury Money Market Fund or other short term registered mutual funds for which an affiliate of the Trustee acts as investment advisor ("Mutual Funds").

5.    **Operating Features:**

Because the Fund is a qualifying entity under the rules of the Commodity Futures Trading Commission (the "CFTC"), the Trustee, as a trust company subject to regulation of the Commonwealth of Massachusetts, is exempt from registration with the CFTC and the National Futures Association (the "NFA") as a commodity pool operator in connection with the Trustee's operation of the Fund pursuant to an exemption under Rule 4.5 promulgated pursuant to the Commodity Exchange Act (the "CEA"). The Trustee is not subject to regulation under the CEA or by the CFTC or NFA and is not required to deliver a disclosure document prepared in accordance with Rules 4.24 and 4.25 under the CEA or a Certified Annual Report to participants in the Fund. Rule 4.5 does not impose any limits on the use of futures contracts or options thereon in connection with the investment of the Fund's assets.

Each Business Day shall be a Valuation Date.

6.    **Permitted Classes of Units, Fees and Expenses:**

The Fund will be charged an annual audit fee and such other fees and expenses as are permitted by the Declaration of Trust. The Trustee will charge the Fund an annual custody fee equal to 2.0 basis points of the net asset value of the Fund and transaction fees equal to $12 per Fund transaction.

The Trustee shall have the authority to establish from time to time unlimited Classes of Units of the Fund and to issue from time to time an unlimited number of Units of any such Class of the Fund, each of which shall have the rights, privileges and obligations set forth in the Class Description for such Class. The Trustee may in its discretion from time to time add, delete, amend or otherwise modify a Class of Units of the Fund, and the Trustee shall not be obligated or required to notify any Participants in the Fund of such addition, deletion, amendment or modification, other than the then current Participants in the affected Class as required in Section 3.2 of the Declaration of Trust. Each Participant in the Fund will only receive a copy of the Class Description for the Class in which such Participant participates.

Each Class of Units of the Fund will be charged such fees and expenses as are permitted by the Declaration of Trust and as are described in the Class Description for such Class. Each Class of Units of the Fund will also be charged its allocable share of the fees and expenses borne by the Fund that are not allocable to a specific Class.

With respect to the Fund assets invested in the Mutual Funds, the Fund will indirectly incur management fees and other charges paid to the Trustee, which currently do not exceed fifty-three (53) basis points. The Trustee will waive the allocable portion of each

2

participant's management fee for the Fund that is attributable to such investment of cash in any Mutual Fund.

**STATE STREET BANK AND TRUST COMPANY**

By: _____

Name: *Timothy Connolly*

Title: *Sr. Principal*

3

**STATE STREET BANK AND TRUST COMPANY**
**INVESTMENT FUNDS FOR TAX EXEMPT RETIREMENT PLANS**

**AMENDED FUND DECLARATION**

*U.S. TREASURY 1-3 YEAR INDEX NON-LENDING FUND*
*(the "Fund")*

Pursuant to Articles III and VII of the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans, dated August 15, 2005 and effective as of October 1, 2005 (the "Declaration of Trust"), State Street Bank and Trust Company (the "Trustee"), by its execution of this Amended Fund Declaration, hereby amends and restates the Amendment and Fund Declaration of the Fund. The Trustee agrees that it will hold, administer and deal with all money and property received by it as Trustee of the Fund in accordance with the terms of the Declaration of Trust, subject to the additional terms and conditions set forth in this Amended Fund Declaration. Capitalized terms used and not otherwise defined shall have the meanings set forth in the Declaration of Trust.

1.   **Name of the Fund:**

     *U.S. Treasury 1-3 Year Index Non-Lending Fund*

2.   **Effective Date of the Amendment and Fund Declaration:**

     October 1, 2005

3.   **Investment Objective of the Fund:**

     The Investment Objective of the Fund shall be to match the return of the Lehman Brothers U.S. Treasury 1-3 Year Bond Index (the "Index").

4.   **Permitted Categories of Assets and Investment Strategy of the Fund:**

     The Fund seeks to achieve its objective by investing primarily in securities contained within the Index. The Fund may also invest in other bank commingled funds ("Commingled Funds") maintained by the Trustee which have characteristics consistent with the overall investment objective, and medium term notes (MTNs) of issuers contained in the Index. The Fund may also invest in derivative securities including, but not limited to, options, futures and swaps.

     Additional securities, investments, or Commingled Funds shall be added to the Fund in the event that new sectors are added to the Index, and may be implemented without advance notice to participants.

     In addition, the Fund may invest excess cash in short term securities and instruments including, but not limited to, repurchase agreements, U.S. Treasury and agency securities, the Short Term Investment Fund ("STIF"), the Government Short Term Investment Fund ("GSTIF") or other short term cash funds maintained by the Trustee, as well as shares of

1

the SSgA U.S. Government Money Market Fund, the SSgA U.S. Treasury Money Market Fund or other short term registered mutual funds for which an affiliate of the Trustee acts as investment advisor ("Mutual Funds").

5.    **Operating Features:**

Because the Fund is a qualifying entity under the rules of the Commodity Futures Trading Commission (the "CFTC"), the Trustee, as a trust company subject to regulation of the Commonwealth of Massachusetts, is exempt from registration with the CFTC and the National Futures Association (the "NFA") as a commodity pool operator in connection with the Trustee's operation of the Fund pursuant to an exemption under Rule 4.5 promulgated pursuant to the Commodity Exchange Act (the "CEA"). The Trustee is not subject to regulation under the CEA or by the CFTC or NFA and is not required to deliver a disclosure document prepared in accordance with Rules 4.24 and 4.25 under the CEA or a Certified Annual Report to participants in the Fund. Rule 4.5 does not impose any limits on the use of futures contracts or options thereon in connection with the investment of the Fund's assets.

Each Business Day shall be a Valuation Date.

6.    **Permitted Classes of Units, Fees and Expenses:**

The Fund will be charged an annual audit fee and such other fees and expenses as are permitted by the Declaration of Trust. The Trustee will charge the Fund an annual custody fee equal to 2.0 basis points of the net asset value of the Fund and transaction fees equal to $12 per Fund transaction.

The Trustee shall have the authority to establish from time to time unlimited Classes of Units of the Fund and to issue from time to time an unlimited number of Units of any such Class of the Fund, each of which shall have the rights, privileges and obligations set forth in the Class Description for such Class. The Trustee may in its discretion from time to time add, delete, amend or otherwise modify a Class of Units of the Fund, and the Trustee shall not be obligated or required to notify any Participants in the Fund of such addition, deletion, amendment or modification, other than the then current Participants in the affected Class as required in Section 3.2 of the Declaration of Trust. Each Participant in the Fund will only receive a copy of the Class Description for the Class in which such Participant participates.

Each Class of Units of the Fund will be charged such fees and expenses as are permitted by the Declaration of Trust and as are described in the Class Description for such Class. Each Class of Units of the Fund will also be charged its allocable share of the fees and expenses borne by the Fund that are not allocable to a specific Class.

With respect to the Fund assets invested in the Mutual Funds, the Fund will indirectly incur management fees and other charges paid to the Trustee, which currently do not exceed fifty-three (53) basis points. The Trustee will waive the allocable portion of each

2

participant's management fee for the Fund that is attributable to such investment of cash in any Mutual Fund.

**STATE STREET BANK AND TRUST COMPANY**

By:

Name: Timothy Connolly

Title: Sr. Principal

**EXHIBIT C-11A**

**INVESTMENT STRATEGY GUIDELINES**

S&P 500 Index Fund

A.   Investment Objectives.

The investment objective of the S&P 500 Index Fund Investment Account (the "Investment Account") is to provide daily responsiveness to participants pursuant to the Plan while attempting to match the investment return of the Standard & Poor's 500 Index after the inclusion of all fees and expenses and while permitting participants to purchase and redeem units on an "as of" basis.

B.   Investment Strategy.

The S&P 500 Index Fund is a well diversified fund, which offers participants in the Plan an interest in the Investment Manager's S&P 500 Flagship Non-Lending Series Fund Class A (the "SSgA S&P 500 Fund"), a commingled fund designed to track the investment returns of the Standard and Poor's 500 Index. The SSgA S&P 500 Fund is governed by and subject to the objectives and criteria set forth in the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans dated August 15, 2005 (the "Declaration of Trust"), and respective Fund Declaration (the Declaration of Trust and the respective Fund Declaration are referred to herein as the "Fund Documents"). The Declaration of Trust as attached hereto as Attachment C and the Fund Declaration for the SSgA S&P 500 Fund is attached to this Exhibit C-11A as Attachment C-11A. In the event that there is a conflict between these Investment Strategy Guidelines and the governing Fund Documents, the Fund Documents shall supersede and govern.   The Investment Manager shall notify the Investment Committee of any changes to the Fund Documents as set forth in those documents.

The Investment Manager will keep abreast of new initiatives and be prepared to consult with the Investment Committee about the possibility of using such new initiatives.

C.   Return Objective.

The performance objective for the Investment Account is to provide an investment return which replicates the return (i.e. provides minimal tracking error) of the Investment Account Benchmark (as defined below) and mirrors the risk profile of the underlying Investment Account Benchmark after inclusion of all fees and expenses.  The total risk as measured by the annualized standard deviation of the investment return over rolling 3 year periods should fall within a range of 98%-102% of the total risk of the Investment Account Benchmark measured over the same period.  The residual risk, or tracking error, shall be measured as the annualized standard deviation of the difference in returns

between the Investment Account and the Investment Account Benchmark over rolling 3 year periods. It is anticipated that the tracking error for the Investment Account shall be in a range of 5 basis points to 20 basis points.

The Investment Account Benchmark shall be the total return of the Standard & Poor's 500 Index.

D.    Liquidity.

The Investment Manager will primarily utilize late trade notification funds in order to meet participant activity levels, but reserves the right to use a combination of cash and equity derivatives (futures and options) in addition to the underlying commingled fund if participant activity warrants it.

E.    Restrictions and Standards.

The Investment Manager may not lend securities in the SSgA S&P 500 Fund.

F.    Amendments.

The Investment Strategy Guidelines may be revised or altered by mutual agreement of the Investment Committee and the Investment Manager if the Investment Manager (i) recommends to the Investment Committee that such revision or alteration is necessary for the proper articulation of the Investment Manager's strategy, (ii) recognizes changes in domestic or global market conditions, or (iii) recognizes any changes in conditions of risk. It is acknowledged by the Investment Committee and the Investment Manager that these Guidelines shall govern the Investment Manager's management of the Investment Account for all purposes, except to the extent of any conflict with the Fund Documents as set forth in Section B above. Any discrepancies, inconsistencies or questions that the Investment Manager has in connection with complying with the Guidelines must be immediately communicated to the Investment Committee prior to any execution of trades, contracts or other agreements that may bind the Investment Account.

G.    Reporting

The Investment Manager shall provide reports regarding the performance of the Investment Account in such form and at such intervals as shall be required by the Investment Committee. All such reports shall be true and correct and shall not contain any material misstatement or omission.

H.    Compliance Statements

In addition to the reports required by other sections of the Agreement and these Guidelines, not less than quarterly or at such times as the Investment Committee shall request, the Investment Manager will provide the Investment Committee a written report as to compliance by the Investment Manager with the terms of the Agreement and these Guidelines, the form of which shall be agreed upon between the Investment Committee and the Investment Manager.    The Investment Committee, if it requests, may supplement such report with meetings, telephone calls and other forms of communication in which representatives of the Investment Committee have an opportunity to ask questions about the report and the Investment Manager's activities with respect to the Investment Account.

**ATTACHMENT C-11A**


**FUND DECLARATION**

**Reference is made to Attachment C-11**

EXHIBIT C-12A

## INVESTMENT STRATEGY GUIDELINES

Russell 2000 Index Fund

A.     Investment Objectives.

The investment objective of the Russell 2000 Index Fund Investment Account (the "Investment Account") is to provide daily responsiveness to participants pursuant to the Plan while attempting to match the investment return of the Russell 2000 Index after the inclusion of all fees and expenses and while permitting participants to purchase and redeem units on an "as of" basis.

Investment Strategy.

The Russell 2000 Index Fund is a well diversified fund, which offers participants in the Plan an interest in the Investment Manager's Russell 2000 Index Non-Lending Series Fund Class A (the "SSgA Russell 2000 Fund"), a commingled fund designed to track the investment returns of the Russell 2000 Index. The SSgA Russell 2000 Fund is governed by and subject to the objectives and criteria set forth in the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans dated August 15, 2005, (the "Declaration of Trust"), and respective Fund Declaration (the Declaration of Trust and the respective Fund Declaration are referred to herein as the "Fund Documents"). The Declaration of Trust as attached hereto as Attachment C and the Fund Declaration for the SSgA Russell 2000 Fund is attached to this Exhibit C-12A as Attachment C-12A. In the event that there is a conflict between these Investment Strategy Guidelines and the governing Fund Documents, the Fund Documents shall supersede and govern. The Investment Manager shall notify the Investment Committee of any changes to the Fund Documents as set forth in those documents.

The Investment Manager will keep abreast of new initiatives and be prepared to consult with the Investment Committee about the possibility of using such new initiatives.

C.     Return Objective.

The performance objective for the Investment Account is to provide an investment return which replicates the return (i.e. provides minimal tracking error) of the Investment Account Benchmark (as defined below) and mirrors the risk profile of the underlying Investment Account Benchmark after inclusion of all fees and expenses. The total risk as measured by the annualized standard deviation of the investment return over rolling 3 year periods should fall within a range of 98%-102% of the total risk of the Investment Account Benchmark measured over the same period. The residual risk, or tracking error, shall be measured as the annualized standard deviation of the difference in returns

between the Investment Account and the Investment Account Benchmark over rolling 3 year periods.  It is anticipated that the tracking error for the Investment Account shall be in a range of 30 basis points to 45 basis points.

The Investment Account Benchmark shall be the total return of the Russell 2000 Index.

D.    <u>Liquidity</u>.

The Investment Manager will primarily utilize late trade notification funds in order to meet participant activity levels, but reserves the right to use a combination of cash and equity derivatives (futures and options) in addition to the underlying commingled fund if participant activity warrants it.

E.    <u>Restrictions and Standards</u>.

The Investment Manager may not lend securities in the SSgA Russell 2000 Fund.

F.    <u>Amendments</u>.

The Investment Strategy Guidelines may be revised or altered by mutual agreement of the Investment Committee and the Investment Manager if the Investment Manager (i) recommends to the Investment Committee that such revision or alteration is necessary for the proper articulation of the Investment Manager's strategy, (ii) recognizes changes in domestic or global market conditions, or (iii) recognizes any changes in conditions of risk.  It is acknowledged by the Investment Committee and the Investment Manager that these Guidelines shall govern the Investment Manager's management of the Investment Account for all purposes, except to the extent of any conflict with the Fund Documents as set forth in Section B above.  Any discrepancies, inconsistencies or questions that the Investment Manager has in connection with complying with the Guidelines must be immediately communicated to the Investment Committee prior to any execution of trades, contracts or other agreements that may bind the Investment Account.

G.    <u>Reporting</u>

The Investment Manager shall provide reports regarding the performance of the Investment Account in such form and at such intervals as shall be required by the Investment Committee.  All such reports shall be true and correct and shall not contain any material misstatement or omission.

H.     Compliance Statements

In addition to the reports required by other sections of the Agreement and these Guidelines, not less than quarterly or at such times as the Investment Committee shall request, the Investment Manager will provide the Investment Committee a written report as to compliance by the Investment Manager with the terms of the Agreement and these Guidelines, the form of which shall be agreed upon between the Investment Committee and the Investment Manager.    The Investment Committee, if it requests, may supplement such report with meetings, telephone calls and other forms of communication in which representatives of the Investment Committee have an opportunity to ask questions about the report and the Investment Manager's activities with respect to the Investment Account.

**ATTACHMENT C-12A**

**FUND DECLARATION**

**Reference is made to Attachment C-12**

## EXHIBIT C-13A

## INVESTMENT STRATEGY GUIDELINES

U.S. Fixed Income Fund

A.    Investment Objectives.

The investment objective of the U.S. Fixed Income Fund Investment Account (the "Investment Account") is to provide daily responsiveness to participants pursuant to the Plan while attempting to match the investment return of the Lehman Brothers Aggregate Bond Index after the inclusion of all fees and expenses and while providing participants the ability to purchase and redeem units on an "as of" basis.

B.    Investment Strategy.

The U.S. Fixed Income Fund will be invested in the Investment Manager's Passive Bond Market Index Non-Lending Series Fund Class A ("SSgA Bond Index Fund"), a commingled fund designed to track the investment returns of the Lehman Brothers Aggregate Bond Index. The SSgA Bond Index Fund is governed by and subject to the objectives and criteria set forth in the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans dated August 15, 2005, (the "Declaration of Trust"), and respective Fund Declaration (the Declaration of Trust and the respective Fund Declaration are referred to herein as the "Fund Documents"). The Declaration of Trust as attached hereto as Attachment C and the Fund Declaration for the SSgA Bond Index Fund is attached to this Exhibit C-13A as Attachment C-13A. In the event that there is a conflict between these Investment Strategy Guidelines and the governing Fund Documents, the Fund Documents shall supersede and govern. The Investment Manager shall notify the Investment Committee of any changes to the Fund Documents as set forth in those documents.

The Investment Manager will keep abreast of new initiatives and be prepared to consult with the Investment Committee about the possibility of using such new initiatives.

C.    Return Objective.

The performance objective for the Investment Account is to provide an investment return which replicates the return (i.e. provides minimal tracking error) of the Investment Account Benchmark (as defined below) and mirrors the risk profile of the underlying Investment Account Benchmark after inclusion of all fees and expenses. The total risk as measured by the annualized standard deviation of the investment return over rolling 3 year periods should fall within a range of 98%-102% of the total risk of the Investment Account Benchmark measured over the same period. The residual risk, or tracking error, shall be measured as the annualized standard deviation of the difference in returns between the Investment Account and the Investment Account Benchmark over rolling 3 year periods. It is anticipated that the tracking error for the Investment Account shall be in a range of 0 basis points to 10 basis points.

The Investment Account Benchmark shall be the total return of the Lehman Brothers Aggregate Bond Index.

D.    Liquidity.

The Investment Manager will primarily utilize late trade notification funds in order to meet participant activity levels, but reserves the right to use a combination of cash and equity derivatives (futures and options) in addition to the underlying commingled fund if participant activity warrants it.

E.    Restrictions and Standards.

The Investment Manager may not lend assets of the SSgA Bond Index Fund.

F.    Amendments.

The Investment Strategy Guidelines may be revised or altered by mutual agreement of the Investment Committee and the Investment Manager if the Investment Manager (i) recommends to the Investment Committee that such revision or alteration is necessary for the proper articulation of the Investment Manager's strategy, (ii) recognizes changes in domestic or global market conditions, or (iii) recognizes any changes in conditions of risk. It is acknowledged by the Investment Committee and the Investment Manager that these Guidelines shall govern the Investment Manager's management of the Investment Account for all purposes, except to the extent of any conflict with the Fund Documents as set forth in Section B above. Any discrepancies, inconsistencies or questions that the Investment Manager has in connection with complying with the Guidelines must be immediately communicated to the Investment Committee prior to any execution of trades, contracts or other agreements that may bind the Investment Account.

G.    Reporting

The Investment Manager shall provide reports regarding the performance of the Investment Account in such form and at such intervals as shall be required by the Investment Committee. All such reports shall be true and correct and shall not contain any material misstatement or omission.

H.    <u>Compliance Statements</u>

In addition to the reports required by other sections of the Agreement and these Guidelines, not less than quarterly or at such times as the Investment Committee shall request, the Investment Manager will provide the Investment Committee a written report as to compliance by the Investment Manager with the terms of the Agreement and these Guidelines, the form of which shall be agreed upon between the Investment Committee and the Investment Manager. The Investment Committee, if it requests, may supplement such report with meetings, telephone calls and other forms of communication in which representatives of the Investment Committee have an opportunity to ask questions about the report and the Investment Manager's activities with respect to the Investment Account.

ATTACHMENT C-13A


FUND DECLARATION

Reference is made to Attachment C-13

# EXHIBIT C-14A

## INVESTMENT STRATEGY GUIDELINES

U.S. Fixed Income Fund - Short Duration

A.      Investment Objectives.

The investment objective of the U.S. Fixed Income Fund – Short Duration Investment Account (the "Investment Account") is to provide daily responsiveness to participants pursuant to the Plan while attempting to match the investment return of the Lehman Brothers U.S. 1-3 Year U.S. Government Bond Index (the "U.S. 1-3 Year Index") after the inclusion of all fees and expenses. The U.S. Fixed Income Fund – Short Duration Investment Account will be invested in the "base" fund and is not priced on an "as of" basis, meaning that the "base" fund's NAV is calculated at the end of the day on the date of the contribution, rather than at the previous day's NAV.

B.      Investment Strategy.

The U.S. Fixed Income Fund – Short Duration will be invested in the Investment Manager's Passive 1-3 Year U.S. Government Bond Index Non-Lending Strategy, which invests in two commingled funds of the Investment Manager:

- ✓ U.S. Agency 1-3 Year Index Non-Lending Series Fund ("SSgA Agency 1-3 Year Fund"), a commingled fund designed to track the investment returns of the Lehman Brothers U.S. Agency 1-3 Year Bond Index; and

- ✓ U.S. Treasury 1-3 Year Index Non-Lending Fund ("SSgA Treasury 1-3 Year Fund"), a commingled fund designed to track the investment returns of the Lehman Brothers U.S. Treasury 1-3 Year Bond Index.

The SSgA Agency 1-3 Year Fund and the SSgA Treasury 1-3 Year Fund are governed by and subject to the objectives and criteria set forth in the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans dated August 15, 2005, (the "Declaration of Trust"), and respective Fund Declaration (the Declaration of Trust and the respective Fund Declaration are referred to herein as the "Fund Documents"). The Declaration of Trust as attached hereto as Attachment C and the Fund Declarations for the SSgA Agency 1-3 Year Fund and the SSgA Treasury 1-3 Year Fund are attached to this Exhibit C-14A as Attachment C-14A. In the event that there is a conflict between these Investment Strategy Guidelines and the governing Fund Documents, the Fund Documents shall supersede and govern.   The Investment Manager shall notify the Investment Committee of any changes to the Fund Documents as set forth in those documents.

The U.S. Fixed Income Fund – Short Duration Investment Account will be rebalanced by the Investment Manager at each month-end, in accordance with the changes to the U.S. 1-3 Year Index, by buying and selling units of the aforementioned SSgA Agency 1-3 Year Fund and the SSgA Treasury 1-3 Year Fund at the approximate weights of the U.S. 1-3 Year Index.

The Investment Manager will keep abreast of new initiatives and be prepared to consult with the

Investment Committee about the possibility of using such new initiatives.

C.      Return Objective.

The performance objective for the Investment Account is to provide an investment return which replicates the return (i.e. provides minimal tracking error) of the Investment Account Benchmark (as defined below) and mirrors the risk profile of the underlying Investment Account Benchmark after inclusion of all fees and expenses.  The total risk as measured by the annualized standard deviation of the investment return over rolling 3 year periods should fall within a range of 98%-102% of the total risk of the Investment Account Benchmark measured over the same period. The residual risk, or tracking error, shall be measured as the annualized standard deviation of the difference in returns between the Investment Account and the Investment Account Benchmark over rolling 3 year periods.  It is anticipated that the tracking error for the Investment Account shall be in a range of 0 basis points to 10 basis points.

The Investment Account Benchmark shall be the total return of the U.S. 1-3 Year Index.

D.      Liquidity.

The Investment Manager will primarily utilize late trade notification funds in order to meet participant activity levels, but reserves the right to use a combination of cash and equity derivatives (futures and options) in addition to the underlying commingled fund if participant activity warrants it.

E.      Restrictions and Standards.

The Investment Manager may not lend assets of the SSgA Agency 1-3 Year Fund or SSgA Treasury 1-3 Year Fund.

F.      Amendments.

The Investment Strategy Guidelines may be revised or altered by mutual agreement of the Investment Committee and the Investment Manager if the Investment Manager (i) recommends to the Investment Committee that such revision or alteration is necessary for the proper articulation of the Investment Manager's strategy, (ii) recognizes changes in domestic or global market conditions, or (iii) recognizes any changes in conditions of risk.  It is acknowledged by the Investment Committee and the Investment Manager that these Guidelines shall govern the Investment Manager's management of the Investment Account for all purposes, except to the extent of any conflict with the Fund Documents as set forth in Section B above.  Any discrepancies, inconsistencies or questions that the Investment Manager has in connection with complying with the Guidelines must be immediately communicated to the Investment Committee prior to any execution of trades, contracts or other agreements that may bind the Investment Account.

G.      Reporting

The Investment Manager shall provide reports regarding the performance of the Investment Account in such form and at such intervals as shall be required by the Investment Committee. All such reports shall be true and correct and shall not contain any material misstatement or omission.


H.      Compliance Statements

In addition to the reports required by other sections of the Agreement and these Guidelines, not less than quarterly or at such times as the Investment Committee shall request, the Investment Manager will provide the Investment Committee a written report as to compliance by the Investment Manager with the terms of the Agreement and these Guidelines, the form of which shall be agreed upon between the Investment Committee and the Investment Manager. The  Investment Committee, if it requests, may supplement such report with meetings, telephone calls and other forms of communication in which representatives of the Investment Committee have an  opportunity to ask questions about the report  and  the  Investment Manager's activities with  respect  to  the  Investment Account.

**ATTACHMENT C-14A**


**FUND DECLARATIONS**

**Reference is made to Attachment C-14**

## EXHIBIT F-11

## COMPUTATION OF INVESTMENT MANAGEMENT FEES

Equity Index Fund

The annual Investment Management Fee shall be equal to .01% flat fee of the net asset value of the Investment Account per annum.

The market value of the Investment Account shall be computed on a daily basis as provided in Section 6(a) of this Agreement. One fourth of the annual Investment Management Fee shall be billed in arrears on a quarterly basis, with such quarterly amounts to be calculated based upon the average daily net asset value of Investment Account under management by the Investment Manager. The Investment Committee will provide Investment Manager with the average daily net asset value of the Investment Account on a monthly basis.

The bills shall be forwarded to the Investment Committee for approval. Upon approval, the Investment Committee will direct the Trustee to pay the Management Fee out of the Investment Account. Payment is due to Investment Manager within thirty (30) days after receipt of invoice.

The SSgA S&P 500 Fund will charge an annual administration fee equal to $25,000, which shall be accrued and deducted on a daily basis from the Net Asset Value of the SSgA S&P 500 Fund. Custody charges are subject to change without notice.

Under normal circumstances, contributions made hereunder will be deposited into the SSgA Series Fund in which the Class set forth above participates which Series Fund, in turn, invests in a "base" fund. However, in the event that a contribution from the Investment Account exceeds 10% of the Net Asset Value ("NAV") of the Series Fund at the time of such contribution, the Investment Manager will instead invest Investment Account assets directly into the "base" fund identified in the Fund Declaration for the Series Fund.

The assets will be invested in the "base" SSgA fund on the first day, and then transferred out of the "base" fund and into the Series Fund on the second day. Consequently, if applicable under the terms of the Fund Declaration governing the "base" fund, the Investment Account will absorb the transaction costs incurred in purchasing the securities associated with the contribution, as well as market impact costs of such purchases. The Investment Committee will be promptly informed of the incurrence and amount of any such transaction costs. Furthermore, since the "base" fund is not priced on an "as of" basis, any such contribution will be effected at the "base" fund's NAV as calculated at the end of the day on the date of the contribution, rather than at the previous day's NAV.

**EXHIBIT F-12**

**COMPUTATION OF INVESTMENT MANAGEMENT FEES**

Small Cap Equity Index Fund

The annual Investment Management Fee shall be equal to .02% flat fee of the net asset value of the Investment Account per annum.

The market value of the Investment Account shall be computed on a daily basis as provided in Section 6(a) of this Agreement. One fourth of the annual Investment Management Fee shall be billed in arrears on a quarterly basis, with such quarterly amounts to be calculated based upon the average daily net asset value of Investment Account under management by the Investment Manager. The Investment Committee will provide Investment Manager with the average daily net asset value of the Investment Account on a monthly basis.

The bills shall be forwarded to the Investment Committee for approval. Upon approval, the Investment Committee will direct the Trustee to pay the Management Fee out of the Investment Account. Payment is due to Investment Manager within thirty (30) days after receipt of invoice.

The SSgA Russell 2000 Fund will charge an annual administration fee equal to $25,000, which shall be accrued and deducted on a daily basis from the Net Asset Value of the SSgA Russell 2000 Fund. Custody charges are subject to change without notice.

Under normal circumstances, contributions made hereunder will be deposited into the SSgA Series Fund in which the Class set forth above participates which Series Fund, in turn, invests in a "base" fund. However, in the event that a contribution from the Investment Account exceeds 10% of the Net Asset Value ("NAV") of the Series Fund at the time of such contribution, the Investment Manager will instead invest Investment Account assets directly into the "base" fund identified in the Fund Declaration for the Series Fund.

The assets will be invested in the "base" SSgA fund on the first day, and then transferred out of the "base" fund and into the Series Fund on the second day. Consequently, if applicable under the terms of the Fund Declaration governing the "base" fund, the Investment Account will absorb the transaction costs incurred in purchasing the securities associated with the contribution, as well as market impact costs of such purchases. The Investment Committee will be promptly informed of the incurrence and amount of any such transaction costs. Furthermore, since the "base" fund is not priced on an "as of" basis, any such contribution will be effected at the "base" fund's NAV as calculated at the end of the day on the date of the contribution, rather than at the previous day's NAV.

## EXHIBIT F-13

## COMPUTATION OF INVESTMENT MANAGEMENT FEES

Bond Index Fund

The annual Investment Management Fee shall be equal to 0.03% flat fee of the net asset value of the Investment Account per annum.

The market value of the Investment Account shall be computed on a daily basis as provided in Section 6(a) of this Agreement. One fourth of the annual Investment Management Fee shall be billed in arrears on a quarterly basis, with such quarterly amounts to be calculated based upon the average daily net asset value of Investment Account under management by the Investment Manager. The Investment Committee will provide Investment Manager with the average daily net asset value of the Investment Account on a monthly basis.

The bills shall be forwarded to the Investment Committee for approval. Upon approval, the Investment Committee will direct the Trustee to pay the Management Fee out of the Investment Account. Payment is due to Investment Manager within thirty (30) days after receipt of invoice.

The SSgA Bond Index Fund will charge an annual administration fee equal to $25,000, which shall be accrued and deducted on a daily basis from the Net Asset Value of the SSgA Bond Index Fund. Custody charges are subject to change without notice.

Under normal circumstances, contributions made hereunder will be deposited into the Series Fund in which the Class set forth above participates which SSgA Series Fund, in turn, invests in a "base" fund. However, in the event that Investment Account contribution exceeds 10% of the Net Asset Value ("NAV") of the Series Fund at the time of such contribution, Investment Manager will instead invest Investment Account assets directly into the "base" fund identified in the Fund Declaration for the Series Fund.

The assets will be invested in the "base" SSgA fund on the first day, and then transferred out of the "base" fund and into the Series Fund on the second day. Consequently, if applicable under the terms of the Fund Declaration governing the "base" fund, the Investment Account will absorb the transaction costs incurred in purchasing the securities associated with the contribution, as well as market impact costs of such purchases. The Investment Committee will be promptly informed of the incurrence and amount of any such transaction costs. Furthermore, since the "base" fund is not priced on an "as of" basis, any such contribution will be effected at the "base" fund's NAV as calculated at the end of the day on the date of the contribution, rather than at the previous day's NAV.

**EXHIBIT F-14**

<u>**COMPUTATION OF INVESTMENT MANAGEMENT FEES**</u>

Bond Index Fund - Short Duration

The annual Investment Management Fee shall be equal to 0.02% flat fee of the net asset value of the Investment Account per annum.

The market value of the Investment Account shall be computed on a daily basis as provided in Section 6(a) of this Agreement.   One fourth of the annual Investment Management Fee shall be billed in arrears on a quarterly basis, with such quarterly amounts to be calculated based upon the average daily net asset value of Investment Account under management by the Investment Manager.  The Investment Committee will provide Investment Manager with the average daily net asset value of the Investment Account on a monthly basis.

The bills shall be forwarded to the Investment Committee for approval.  Upon approval, the Investment Committee will direct the Trustee to pay the Management Fee out of the Investment Account.  Payment is due to Investment Manager within thirty (30) days after receipt of invoice.

The SSgA Agency 1-3 Year Fund and the SSgA Treasury 1-3 Year Fund (each a "Fund") will each charge an annual custody fee equal to 2.0 basis points of the net asset value of the Fund and transaction fees equal to $12 per Fund transaction.  Such custody fees shall be accrued and deducted on a daily basis from the Net Asset Value of each Fund. Custody charges are subject to change without notice.

## EXHIBIT F-11A

## <u>COMPUTATION OF INVESTMENT MANAGEMENT FEES</u>

S&P 500 Index Fund

The annual Investment Management Fee shall be equal to .01% flat fee of the net asset value of the Investment Account per annum.

The market value of the Investment Account shall be computed on a daily basis as provided in Section 6(a) of this Agreement.  One fourth of the annual Investment Management Fee shall be billed in arrears on a quarterly basis, with such quarterly amounts to be calculated based upon the average daily net asset value of Investment Account under management by the Investment Manager.  The Investment Committee will provide Investment Manager with the average daily net asset value of the Investment Account on a monthly basis.

The bills shall be forwarded to the Investment Committee for approval.  Upon approval, the Investment Committee will direct the Trustee to pay the Management Fee out of the Investment Account.  Payment is due to Investment Manager within thirty (30) days after receipt of invoice.

The SSgA S&P 500 Fund will charge an annual administration fee equal to $25,000, which shall be accrued and deducted on a daily basis from the Net Asset Value of the SSgA S&P 500 Fund. Custody charges are subject to change without notice.

Under normal circumstances, contributions made hereunder will be deposited into the SSgA Series Fund in which the Class set forth above participates which Series Fund, in turn, invests in a "base" fund.  However, in the event that a contribution from the Investment Account exceeds 10% of the Net Asset Value ("NAV") of the Series Fund at the time of such contribution, the Investment Manager will instead invest Investment Account assets directly into the "base" fund identified in the Fund Declaration for the Series Fund.

The assets will be invested in the "base" SSgA fund on the first day, and then transferred out of the "base" fund and into the Series Fund on the second day.   Consequently, if applicable under the terms of the Fund Declaration governing the "base" fund, the Investment Account will absorb the transaction costs incurred in purchasing the securities associated with the contribution, as well as market impact costs of such purchases. The Investment Committee will be promptly informed of the incurrence and amount of any such transaction costs.   Furthermore, since the "base" fund is not priced on an "as of" basis, any such contribution will be effected at the "base" fund's NAV as calculated at the end of the day on the date of the contribution, rather than at the previous day's NAV.

**EXHIBIT F-12A**

**COMPUTATION OF INVESTMENT MANAGEMENT FEES**

Russell 2000 Index Fund

The annual Investment Management Fee shall be equal to .02% flat fee of the net asset value of the Investment Account per annum.

The market value of the Investment Account shall be computed on a daily basis as provided in Section 6(a) of this Agreement.  One fourth of the annual Investment Management Fee shall be billed in arrears on a quarterly basis, with such quarterly amounts to be calculated based upon the average daily net asset value of Investment Account under management by the Investment Manager.  The Investment Committee will provide Investment Manager with the average daily net asset value of the Investment Account on a monthly basis.

The bills shall be forwarded to the Investment Committee for approval.  Upon approval, the Investment Committee will direct the Trustee to pay the Management Fee out of the Investment Account.  Payment is due to Investment Manager within thirty (30) days after receipt of invoice.

The SSgA Russell 2000 Fund will charge an annual administration fee equal to $25,000, which shall be accrued and deducted on a daily basis from the Net Asset Value of the SSgA Russell 2000 Fund.  Custody charges are subject to change without notice.

Under normal circumstances, contributions made hereunder will be deposited into the SSgA Series Fund in which the Class set forth above participates which Series Fund, in turn, invests in a "base" fund.  However, in the event that a contribution from the Investment Account exceeds 10% of the Net Asset Value ("NAV") of the Series Fund at the time of such contribution, the Investment Manager will instead invest Investment Account assets directly into the "base" fund identified in the Fund Declaration for the Series Fund.

The assets will be invested in the "base" SSgA fund on the first day, and then transferred out of the "base" fund and into the Series Fund on the second day.  Consequently, if applicable under the terms of the Fund Declaration governing the "base" fund, the Investment Account will absorb the transaction costs incurred in purchasing the securities associated with the contribution, as well as market impact costs of such purchases. The Investment Committee will be promptly informed of the incurrence and amount of any such transaction costs.  Furthermore, since the "base" fund is not priced on an "as of" basis, any such contribution will be effected at the "base" fund's NAV as calculated at the end of the day on the date of the contribution, rather than at the previous day's NAV.

**EXHIBIT F-13A**

## COMPUTATION OF INVESTMENT MANAGEMENT FEES

U.S. Fixed Income Fund

The annual Investment Management Fee shall be equal to 0.03% flat fee of the net asset value of the Investment Account per annum.

The market value of the Investment Account shall be computed on a daily basis as provided in Section 6(a) of this Agreement. One fourth of the annual Investment Management Fee shall be billed in arrears on a quarterly basis, with such quarterly amounts to be calculated based upon the average daily net asset value of Investment Account under management by the Investment Manager. The Investment Committee will provide Investment Manager with the average daily net asset value of the Investment Account on a monthly basis.

The bills shall be forwarded to the Investment Committee for approval. Upon approval, the Investment Committee will direct the Trustee to pay the Management Fee out of the Investment Account. Payment is due to Investment Manager within thirty (30) days after receipt of invoice.

The SSgA Bond Index Fund will charge an annual administration fee equal to $25,000, which shall be accrued and deducted on a daily basis from the Net Asset Value of the SSgA Bond Index Fund. Custody charges are subject to change without notice.

Under normal circumstances, contributions made hereunder will be deposited into the SSgA Series Fund in which the Class set forth above participates which Series Fund, in turn, invests in a "base" fund. However, in the event that Investment Account contribution exceeds 10% of the Net Asset Value ("NAV") of the Series Fund at the time of such contribution, Investment Manager will instead invest Investment Account assets directly into the "base" fund identified in the Fund Declaration for the Series Fund.

The assets will be invested in the "base" SSgA fund on the first day, and then transferred out of the "base" fund and into the Series Fund on the second day. Consequently, if applicable under the terms of the Fund Declaration governing the "base" fund, the Investment Account will absorb the transaction costs incurred in purchasing the securities associated with the contribution, as well as market impact costs of such purchases. The Investment Committee will be promptly informed of the incurrence and amount of any such transaction costs. Furthermore, since the "base" fund is not priced on an "as of" basis, any such contribution will be effected at the "base" fund's NAV as calculated at the end of the day on the date of the contribution, rather than at the previous day's NAV.

**EXHIBIT F-14A**

**COMPUTATION OF INVESTMENT MANAGEMENT FEES**

U.S. Fixed Income Fund - Short Duration

The annual Investment Management Fee shall be equal to 0.02% flat fee of the net asset value of the Investment Account per annum.

The market value of the Investment Account shall be computed on a daily basis as provided in Section 6(a) of this Agreement. One fourth of the annual Investment Management Fee shall be billed in arrears on a quarterly basis, with such quarterly amounts to be calculated based upon the average daily net asset value of Investment Account under management by the Investment Manager. The Investment Committee will provide Investment Manager with the average daily net asset value of the Investment Account on a monthly basis.

The bills shall be forwarded to the Investment Committee for approval. Upon approval, the Investment Committee will direct the Trustee to pay the Management Fee out of the Investment Account. Payment is due to Investment Manager within thirty (30) days after receipt of invoice.

The SSgA Agency 1-3 Year Fund and the SSgA Treasury 1-3 Year Fund (each a "Fund") will each charge an annual custody fee equal to 2.0 basis points of the net asset value of the Fund and transaction fees equal to $12 per Fund transaction. Such custody fees shall be accrued and deducted on a daily basis from the Net Asset Value of each Fund. Custody charges are subject to change without notice.

# Ninth Amendment to Investment Manager Agreement

This Ninth Amendment to Investment Manager Agreement (the "Amendment") is made as of June 30, 2009, by and between the Savings Plan Investment Oversight Committee of BP Corporation North America Inc. (the "Investment Committee") and State Street Global Advisors, a division of State Street Bank and Trust Company (the "Investment Manager"). Capitalized terms used herein and not defined shall be given their meanings as so defined in the Agreement (as defined below).

WHEREAS, the the Investment Committee and the Investment Manager are party to an Investment Manager Agreement dated as of April 5, 2000 as amended (the "Agreement"); and

WHEREAS, the Investment Committee and the Investment Manager wish to further amend the Agreement to amend Exhibit C-6.

NOW, THEREFORE, the Investment Committee and the Investment Manager agree as follows:

    1. <u>Amendment to the Agreement.</u>

        (a) Exhibit C-6 is amended by the attached Exhibit C-6A.

        (b) <u>Full Force and Effect.</u> Except as expressly set forth above, all other terms and provisions of the Agreement and Amendment shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their respective officers thereto duly authorized as of the day and year first above written.

**BP Corporation North America Inc. Savings Plan Investment Oversight Committee**

By *Gregory T Williamson*

Name *Gregory T. Williamson*    Title *Secretary and Member*

**State Street Global Advisors, a division of State Street Bank & Trust Company**

By *Staci A Reardon*

Name        STACI A. REARDON        Title

SENIOR MANAGING DIRECTOR

By

Name        Title

EXHIBIT C-6A

INVESTMENT STRATEGY GUIDELINES

AMENDED

**(International Equity Index Fund)**

Exhibit C-6 is hereby amended as follows:

1.  Subsection B of Exhibit C-6 is hereby amended by adding the following three sentences after the second sentence

    "In addition, the Investment Account is permitted to invest in units of participation in the Daily EAFE Non-Lending Series Fund Class A of the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans (the "Non-Lending EAFE Fund"). It is the intent of the parties, and the Investment Manager shall transition as soon as possible, all of the assets in the Investment Account from the Lending Funds (as hereafter defined) to the Non-Lending EAFE Fund, subject to certain withdrawal parameters that apply to redemptions from the Daily EAFE Index Securities Lending Series Fund – Class T (the "Lending Fund"), as outlined in Investment Manager's communication dated March 23, 2009. Investment Committee represents and warrants receipt of such communication, a copy of which is attached hereto as Addendum 1. The Investment Manager shall promptly inform the Investment Committee in writing of any modifications to such withdrawal restrictions."

2.  Subsection E of Exhibit C-6 is hereby amended by adding the following sentence at the end: "The Daily EAFE Non-Lending Series Fund Class A does not permit securities lending."

**Usage: External Use**
**Audience**: Clients / Consultants
**Content**: Client Letter

**Creation date**: March 23, 2009
**Region**: Global

**Addendum 1:**

# Detail Letter for DC Clients

## Details Regarding Modifications to the SSgA Securities Lending Funds and Securities Lending Program

You are an investor in one or more funds managed by State Street Global Advisors ("SSgA") that participates in State Street's securities lending program (each a "Lending Fund" and collectively the "Lending Funds").  When you initially subscribed to an interest in a Lending Fund, you chose to invest in a fund that engages in securities lending in order to benefit from the additional income that securities lending offers to institutional investors, whether to augment returns, offset plan expenses, or other similar purposes.  SSgA continues to believe strongly in the long-term benefits of securities lending as an income enhancement technique for institutional investors. However, the substantial disruption that the market and economic crisis has brought to the market for fixed income securities over the past 18 months presents significant challenges for all securities lending programs, including our own.  Our goals in addressing those challenges have been, and will continue to be: (1) to protect the interest of all investors in the Lending Funds as a whole, (2) to avoid realizing any losses for investors in the Lending Funds due either to credit events or the disposition of assets into a dysfunctional market in order to meet liquidity requirements, and (3) to position the Lending Funds so that upon return of normalcy in the fixed income markets, the long-term returns of the Lending Funds are not impacted by current market valuations.

This document will provide detail and is intended to:

> ➢ Update you on the Lending Funds and the SSgA securities lending program and describe the liquidity and valuation issues that have arisen in the current market with respect to interests in the cash collateral pools held by the Lending Funds (each a "Collateral Pool" and collectively the "Collateral Pools");

> ➢ Provide notice of our intention to adopt new investment guidelines for the Collateral Pools that will require future investments for the pools to comply with the asset quality, maturity and diversification limits of Rule 2a-7 of the Investment Company Act as currently in effect (rules governing registered money market funds);

> ➢ Describe the revised withdrawal parameters from the Lending Funds that replace those announced last October and which are being implemented to help protect the investors in the Lending Funds from realizing losses due either to credit events or the disposition of assets into a dysfunctional market in order to meet liquidity requirements **(importantly, ordinary course participant-directed activity remains unrestricted)**;

**Usage: External Use**
**Audience**: Clients / Consultants
**Content:** Client Letter

**Creation date:** March 23, 2009
**Region:** Global

> ➤ Discuss the divergence that the current market environment has caused between the "transaction value" of the Lending Funds and the underlying Collateral Pools and the valuation of those units in accordance with Generally Accepted Accounting Principles ("GAAP"), and why we continue to believe that transactions in the Lending Funds based upon a unit valuation of the Collateral Pools of $1.00 remains appropriate; and

> ➤ Highlight the issues that you and your advisers may want to consider due to the divergence between a GAAP or financial reporting value and a transaction value.

**You should carefully review and consider the following information when making decisions related to your investment in a Lending Fund.** SSgA Relationship Managers are ready to discuss these developments with you and to assist you in addressing any issues that you may have with respect to the Lending Funds.

## The SSgA Securities Lending Program and the Collateral Pools; Revised Investment Guidelines

You are invested in one or more Lending Funds which participate in an agency securities lending program sponsored by State Street Bank and Trust Company as the lending agent. The lending agent has been appointed by the Lending Funds for the purpose of lending up to 100% of the Lending Fund's securities and investing the cash collateral posted by the borrowers of those loaned securities in one of three Collateral Pools. The actual percentage of the Lending Fund's securities that are on loan (the utilization rate) will typically fluctuate on a daily basis in a dynamic lending program. The utilization rate will also vary across asset classes depending on borrowers' demand for particular securities. The utilization rate for equity lending is generally significantly below 100%, although some equity securities will have a higher borrower demand. The utilization rate for certain fixed income lending (such as Treasury instruments) may be as high as 100%. The Lending Fund compensates the lending agent in connection with operating and maintaining the securities lending program by allowing the agent to retain a portion of the income earned by the Collateral Pools. SSgA acts as investment manager for the Collateral Pools and is compensated for its services. For an in-depth description of how securities lending programs generally operate and the various risks associated with securities lending, please contact your SSgA Relationship Manager.

The Collateral Pools' investment guidelines are designed to provide safety of principal and a competitive return and generally seek, but are not required to maintain, a constant net asset value of $1.00 per unit. The Collateral Pools are not money market funds registered with the US Securities and Exchange Commission ("SEC"), and until implementation of the new investment guidelines discussed below have not been required to comply with the investment restrictions that apply to registered money market funds. Historically, the investment guidelines of the Collateral Pools have been similar to money market funds with regard to credit quality, but

**Usage: External Use**
**Audience**: Clients / Consultants
**Content:** Client Letter

**Creation date:** March 23, 2009
**Region:** Global

permit the portfolios to hold securities of somewhat longer average duration than money market funds. The Collateral Pools are also not FDIC-insured bank deposits or otherwise guaranteed by SSgA or State Street Bank and Trust Company. The Collateral Pools are subject to a number of risks, including the risk that the value of the investments held in the Collateral Pool may decline at any time.

The Collateral Pools have been managed conservatively and in conformity with their established investment guidelines. They were designed to generate returns beyond those available in an SEC-registered money market fund while maintaining relatively low risk. Although the Collateral Pools typically hold many investments that a registered money market fund could hold, they also hold intermediate-term high credit quality instruments, including asset-backed securities ("ABS"). As a result of current market turmoil, credit spread widening on these investments has placed extraordinary downward price pressure on holdings and the Collateral Pools' NAV on a mark-to-market basis. Price deterioration has been driven by extreme disruption in the fixed income markets and is not the result of asset impairments in any of our Collateral Pools. Also contributing to the mark-to-market net asset value declines are the dramatic correction in global equity prices decreasing the cash value of outstanding securities loans and lower demand from borrowers associated with ongoing market deleveraging. These trends have resulted in an increase in the percentage that intermediate-term securities represent in our Collateral Pools and have exacerbated the effect of credit spread widening on Collateral Pools' net asset values.

Since the beginning of the current market distress that started in August of 2007, we have been defensively positioning our Collateral Pools by building liquidity at the portfolio level. We have enhanced liquidity by investing available cash in overnight or very short-term assets (one-to-three month maturities), and by reinvesting these in shorter-dated securities the cash proceeds generated as the portfolio of ABS and other intermediate-term instruments either matured or received payments of principal. All holdings in the Collateral Pools continue to perform consistent with our credit outlook and have maintained high credit ratings, with 95% of ABS holdings currently rated triple-A by one of either S&P, Moody's or Fitch. We will continue to manage the Collateral Pools with the goals of: (1) maintaining sufficient liquidity to meet the lending program's liquidity needs, and (2) providing as much liquidity to you as is prudent in the current market environment.

Reflecting the investment approach we have taken in the Collateral Pools' investments over the past 18 months and to continue the trend to reduce the weighted average maturity of the Collateral Pools, we are amending the Collateral Pools' investment guidelines to further require that all new cash collateral and other available cash be invested consistent with Rule 2a-7 of the Investment Company Act as currently in effect (rules governing SEC-registered money market funds). By formally incorporating this more conservative investment approach into the investment guidelines, we are committing to maintain the investment approach that has protected the Collateral Pools against material credit losses in the market over the past 18

**Usage: External Use**

**Audience**: Clients / Consultants

**Content:** Client Letter

**Creation date:** March 23, 2009

**Region:** Global

months.   Over time, this approach will result in the Collateral Pools having diversification, maturity and credit characteristics that are substantially similar to those of a registered money market fund (although the Collateral Pools are not registered money market funds and do not hold themselves out as such).   If you would like a copy of these revised investment guidelines, please contact your SSgA Relationship Manager.

## Liquidity in the Collateral Pools

Many investors in the Lending Funds have noted that there is a significant degree of liquidity in the Collateral Pools resulting from the high percentage of overnight and short-term instruments could be used to fund redemption requests from the Lending Funds.  The Lending Funds are unable to use all of this liquidity for current withdrawal requests because of their obligations to borrowers of securities and the need to similarly protect all of the Lending Fund investors as a whole.

> - Legal obligations to borrowers: In addition to satisfying redemption requests from the Lending Funds, liquidity in the Collateral Pools is needed to meet two legal obligations of the Lending Funds arising out of the lending program.  When a Lending Fund places securities on loan and receives cash collateral from the borrower, it has two ongoing obligations to that borrower.  When the borrower returns the loaned securities, the Lending Fund has to return the amount of the cash collateral that it holds as security from that borrower.  Although the Lending Fund may have invested that cash collateral in the Collateral Pools, the obligation to the borrower is fixed and not dependent upon the net asset value of the Collateral Pools.  If the Lending Fund cannot return the cash collateral when the borrower returns the loaned securities, the Lending Fund would be in default and be responsible for any shortfall to the borrower.  Therefore, return of cash collateral is one essential need for liquidity.  Similarly, each day as the market value of securities on loan changes, the Lending Fund either receives additional cash collateral from the borrower (if the value of the loaned securities increases) or returns a portion of the cash collateral previously received from the borrower (if the value of the securities on loan decreases).  These two requirements, repayment of cash collateral upon borrower returns and mark-to-market obligations, reflect the contractual obligations of the Lending Funds and take precedence over liquidity requirements for redemptions from the Lending Funds.

> - Protecting all Lending Fund investors: The second and equally important reason that we do not believe it is prudent to permit the available liquidity in the Collateral Pools to be depleted is the negative impact that such depletion may have on non-redeeming investors in the Lending Funds.  To the extent significant liquidity in the Collateral Pools is used to redeem investors in the Lending Funds, the remaining investors in the Lending Fund would hold units that entail greater risks because less liquid, longer-term investments would represent a greater percentage of the Collateral Pools.

**Usage: External Use**
**Audience**: Clients / Consultants
**Content:** Client Letter

**Creation date:** March 23, 2009
**Region:** Global

Under the trust documents, the trustee of the Collateral Pools can effect purchase and redemption transactions at $1.00, although the net asset value of units of the Collateral Pools based upon the market value of the Collateral Pools' investments can fluctuate over time. As discussed more fully below in "Maintaining the $1 Collateral Pool Unit Value For Transaction Purposes" and as a result of the ongoing illiquidity of the short-term fixed income markets, we continue to value the units of each of the Collateral Pools at $1.00 for transaction purposes notwithstanding that the mark-to-market unit value of the Collateral Pool's portfolio is below $1.00 per unit.

If you would like to have more detailed information about the Collateral Pool in which your Lending Fund participates, including a statement of current holdings and the current mark-to-market unit value of the Collateral Pool, please contact your SSgA Relationship Manager.


## Withdrawal Parameters Adopted in 2008

As noted above, effective October 3, 2008, SSgA implemented certain withdrawal limits in order to protect the Collateral Pools and the Lending Funds from having to realize unnecessary losses and to allow the Lending Funds to continue to transact in the units of the Collateral Pools at a $1.00 unit value. These limits were necessary because redemptions by an investor in a Lending Fund also effectively entail a corresponding redemption by the Lending Fund from the underlying Collateral Pool.  Under those withdrawal limits, investors in the Lending Funds were allowed to make withdrawal requests for ordinary course business purposes including: (i) to pay operating expenses and (ii) to effect periodic asset allocation rebalancing.  Under those withdrawal limits, defined contribution plan participants were able to make ordinary course contributions and withdrawals within their retirement accounts from the Lending Funds.  Since October, SSgA has been carefully monitoring the level of ordinary course redemption requests and evaluating those requests on the basis of each client's historical transaction activity.  We believe that we have been successful in meeting most clients' ordinary course liquidity needs.

We remain extremely sensitive to the liquidity needs of our clients and committed to providing as much liquidity to clients as is prudent in the current market environment.  However, as a result of ongoing market conditions discussed above, we have determined that it is necessary to revise further the withdrawal parameters that have been in place on the Lending Funds since last October.


## Revised Withdrawal Parameters and Liquidity Options

Effective immediately, we are revising the existing parameters to provide investors in the Lending Funds with two liquidity options for plan level withdrawals:

**Usage: External Use**                                        **Creation date:** March 23, 2009
**Audience**: Clients / Consultants                                    **Region:** Global
**Content:** Client Letter

1. <u>New Monthly Withdrawal Parameters</u>

Until at least the end of 2009, withdrawal requests from each Lending Fund will be limited to a per month maximum of between 2% to 4% of your account's net asset value in that Lending Fund at the time of the redemption request.  If a Lending Fund (by a virtue of being a fund of funds) invests in more than one Collateral Pool where the liquidity allocations (either 2% or 4%) are different, then the maximum per month withdrawal percentage will be determined based on the weighted average of the underlying funds exposure to the two different Collateral Pools at the time of the redemption request.   Please contact your SSgA Relationship Manager for the maximum per month withdrawal percentage for the particular Lending Funds in which you are invested. In any month that SSgA does not receive a request for the maximum monthly percentage from you, you will be able to accumulate the right to redeem the remaining percentage at a later date (an "Accumulated Withdrawal Right"), thereby accumulating available liquidity in a Lending Fund over time.   Subject to the per month withdrawal percentage, the Lending Funds will continue to process withdrawals under normal frequency and timing (daily or twice a month depending on the Lending Fund) until April 1, 2009.  Beginning April 1, 2009 and until such time as these revised withdrawal parameters are either removed or revised further, all Lending Funds will follow a twice per month redemption process.  If you choose to request a portion of your maximum monthly withdrawal percentage at each of the two redemption openings in any given month, the actual redemption amount will be calculated on different valuation dates (T-2) and may therefore differ depending on the value of your account on each valuation date. In order for your redemption request to be processed in any month, SSgA must receive your redemption request in good order five days before one of the trade dates (T-5) for such month.  Attached as **_Appendix A_**, is a calendar for the remainder of 2009, which details the trade dates, the dates by which redemption requests must be received, and the payment date for each trade date.

In order to ensure that we will be able to give priority to Accumulated Withdrawal Rights in the event that the withdrawal parameters are modified in the future, we are amending the fund declarations for the Lending Funds to expressly state that State Street has the obligation as trustee to give priority over other investors to redemption requests from investors with Accumulated Withdrawal Rights in circumstances where there is limited available liquidity, including where the withdrawal parameters have been further limited.  Consequently, while it is possible that the withdrawal parameters may be modified in the future due to liquidity constraints in the Collateral Pools so as to limit redemptions in any one month to less than an investor's Accumulated Withdrawal Rights, no redemptions will be permitted by investors in the Lending Funds until all redemption requests for investors with Accumulated Withdrawal Right's have been satisfied in full.  We have provided as **_Appendix B_** the notice of the amendment required under the trust documents.  The amendment will become effective shortly after your receipt of this letter.

**Usage: External Use**
**Audience:** Clients / Consultants
**Content:** Client Letter

**Creation date:** March 23, 2009
**Region:** Global

Under these revised withdrawal parameters, you will continue to be permitted to effect rebalancing transactions between Lending Funds provided that, subsequent to any such rebalancing transactions, there is no net negative impact to the Collateral Pools.  Additionally, you may allocate a portion or the entirety of your maximum monthly percentage or Accumulated Withdrawal Rights for rebalancing transactions.   More information regarding rebalancing transactions and the related mechanics will be provided upon request.

As was the case with the previous limits, the revised withdrawal parameters will only apply to plan level or plan sponsor directed activities within the Lending Funds.  Therefore, ordinary course participant-directed account activity in defined contribution plans will not be subject to the modified limits.

Our decision not to apply the withdrawal parameters to participant-directed activity is based, in part, on our determination that, as a whole, the volume of ordinary course participant-directed activity (including both inflows and outflows) in the Lending Funds does not negatively impact the liquidity position of the Collateral Pools.   To the extent that we observe a volume of participant-directed withdrawal activity from any plan or plans that we believe to be out of the ordinary course and detrimental to the liquidity of the Collateral Pools, we may apply the maximum per month withdrawal percentages, as outlined above, to participant-directed activity from those plans going forward.

As you know, defined contribution plans invest in the Lending Funds ("Core Funds") through feeder funds (the "Series Funds").   In order to provide us with the broadest flexibility to distinguish the unique needs of our defined contribution plan clients and to manage their assets accordingly we intend separate the Series Funds into distinct Core Funds that will only be available to defined contribution plans.   The Series Funds will make direct investments in securities (as opposed to indirect investments through Core Funds) consistent with the current investment objectives and policies of the particular Series Fund.  Over time, this will allow us to manage the Series Funds with the distinct liquidity needs of defined contribution plan participants in mind.  We have provided as ***Appendix C*** the notice of the amendment required under the trust documents for the Series Funds.  The amendment will become effective shortly after your receipt of this letter.

We expect these withdrawal parameters to remain in place for a period of approximately nine months, at which time we will re-evaluate their necessity and may decide to continue or modify them at that time.  However, based on our regular and ongoing review of the liquidity in the Collateral Pools, SSgA may at anytime and without notice further modify the these withdrawal parameters.  Any modification could include extending the expected effective period, reducing the amount of liquidity investors will be able to withdraw during any given period, or imposing limitations on participant activity.

**Usage: External Use**
**Audience**: Clients / Consultants
**Content**: Client Letter

**Creation date:** March 23, 2009
**Region:** Global

Given the projected maturity schedule of the assets held by the Collateral Pools, we currently expect that by early to mid 2010 the Collateral Pools will have greater liquidity to meet withdrawal requests. Although we expect the liquidity in the Collateral Pools to improve over time, our view is based, in part, on an assumption that the current economic environment will not further materially deteriorate, and that the market for fixed income securities, particularly high-quality short and intermediate-term fixed income securities, will stabilize and improve over time. If these assumptions are not correct and there is a continued decline in the overall economy or in the securities markets in general, in the fixed income market in particular, or if there are other adverse changes in the market, such as the imposition of additional short selling limitations by regulators or a general decline of securities lending, the liquidity in the Collateral Pools could be adversely affected. In such a case, the Collateral Pools' most liquid securities may need to be sold first in order to fulfill obligations to the securities borrowers and other creditors. An investor's interest in a Lending Fund would be redeemed last and as a result you may not receive the full value of your investment or may have to receive interests in illiquid securities instead of cash.

If you have questions about the operation of these withdrawal parameters, please contact your SSgA Relationship Manager.

2.  <u>Transfer to Non-Lending Fund or Full/Partial Exit from a Lending Fund</u>

In addition to the monthly liquidity process described above, in the event that you would like to move to a corresponding SSgA-managed Non-Lending Fund or you need additional liquidity not provided by the monthly option outlined above; you will have the option, twice per month, to withdraw from the Lending Fund, in whole or in part. The portion of your interest in a Lending Fund that are not out on loan will either be transferred to a corresponding SSgA-managed Non-Lending Fund or will be paid out to you in cash, as you elect. Your remaining interest in the Lending Fund will be paid to you in the form of units of the Collateral Pool (valued at a transaction value of a $1.00) that will be converted (generally on a quarterly basis as outlined in **Appendix A**) into units of a liquidating trust. The percentage of the withdrawal proceeds that will be distributed as units of a Collateral Pool convertible into liquidating trust units will vary, depending upon the percentage of the Lending Fund's securities that are on loan at the time the request is processed. The liquidating trust will make cash distributions as the assets of the liquidating trust pay income or principal, mature, or are sold for prudent management purposes. Although we are currently planning quarterly conversions of Collateral Pools units into liquidating trusts units, the quarterly schedule is dependent upon sufficient interest in this option to allow for a liquidating trust of sufficient size to receive a pro-rata in-kind distribution of assets from the Collateral Pool. Until the units in the Collateral Pools are converted into units of the liquidating trusts, you will be subject to the investment risks of the Collateral Pools, including the risk that there may be a material change in the percentage of the Collateral Pools' assets that are represented by liquid, short-term assets due to the normal operation of the securities

**Usage: External Use**                                    **Creation date:** March 23, 2009
**Audience**: Clients / Consultants                          **Region:** Global
**Content:** Client Letter

lending program on behalf of the Lending Funds, such as the need to redeem units of the Collateral Pools to return cash collateral to a borrower of securities. No management fees will be charged by SSgA to these liquidating trusts.

As electing this option constitutes subscription into a new liquidating trust and may constitute a change to your investment program, risk profile, and asset class exposure, you will need to agree to amend the terms of your agreements with us (as applicable), as well as adopt the terms of the liquidating trust's governing documents. If you wish to consider this option further, you should contact your SSgA Relationship Manager for more information.

## Maintaining the $1 Collateral Pool Unit Value for Transaction Purposes

Under Generally Accepted Accounting Principles ("GAAP"), the Lending Funds typically value their portfolio holdings based upon market values reported by independent pricing sources. As for certain asset types, such as money market instruments and units in the Collateral Pools, the Lending Funds can alternatively value these assets at amortized cost, if amortized cost approximates the mark-to-market value of the underlying assets. Historically, the market values of the Collateral Pools' assets have approximated amortized cost, which was the basis for SSgA's determination that the value of the units of the Collateral Pools was $1.00 for financial reporting purposes as well as for transaction purposes. For the financial reporting period that ended December 31, 2007, the mark-to-market net asset values of the Collateral Pools' units ranged from $0.986 to $1.00. For both transacting and reporting purposes, SSgA determined that the fair market value of the units of each Collateral Pool held by Lending Funds remained at $1.00 based on a number of factors, including the credit quality and liquidity of the assets in the Collateral Pools and the continued ability of the Collateral Pools to redeem units at a $1.00 transaction value. Accordingly, the Lending Funds' audited financial statements for the year ended December 31, 2007 reflected the $1.00 unit value for Collateral Pool units and the lower mark-to-market value of the Collateral Pool units was disclosed in the notes to the financial statements.

As of December 31, 2008, the difference between the amortized cost of the Collateral Pools' assets and the valuation for those assets reported by independent pricing sources in the disrupted market increased from the prior period, particularly during the fourth quarter of 2008. As of December 31, 2008, the mark-to-market value of the Collateral Pools' units ranged from $0.908 to $0.953. For the financial reporting period that ended December 31, 2008, SSgA has determined in consultation with the Funds' independent auditors to reflect the units of the Collateral Pools at the mark to market value rather than amortized cost for financial reporting purposes in accordance with GAAP under Statement of Financial Accounting Standards No. 157, *Fair Value Measurements,"* ("FAS 157"). The degree of impact for GAAP reporting will depend upon, among other things, the percentage of the Lending Funds' portfolio holdings that are out on loan. In some cases, the impact on the Lending Funds' net asset value for financial

**Usage: External Use**                                    **Creation date:** March 23, 2009
**Audience:** Clients / Consultants                            **Region:** Global
**Content:** Client Letter

reporting purposes will be immaterial, while in other cases the impact may be significant. The mark-to-market value of the Collateral Pools' units has improved since December 31, 2008.

On March 17, 2009, the Financial Accounting Standards Board (FASB) issued a proposed staff position ("FSP") providing additional guidance on determining the fair value of securities under FAS 157 with specific guidance on determining whether a market for a security is not active and whether recent security transaction prices are representative of distressed transactions. The FASB's stated goal is to issue final guidance on or about April 1, 2009. If adopted as proposed, this FSP may have a positive impact on the valuation of the securities in the Collateral Pools under GAAP. There can be no assurance that this guidance will be issued in its current form or otherwise. Nor can there be any assurances that the valuation of the securities in the Collateral Pools will increase for GAAP purposes. The effective date of any new guidance will also not be known until the final FSP is issued.

While we generally use independent third-party pricing services for GAAP purposes, the Lending Funds and the Collateral Pools have broader latitude in determining net asset values for purposes of effecting purchase and redemption transactions. In light of the disruption in the fixed income markets, particularly the market for ABS, the prices reported by independent third-party pricing services are not reflective, in our view, of the intrinsic value that the Collateral Pools would expect to realize under normal circumstances. Consequently, for transaction and client reporting purposes, SSgA believes that it is appropriate to continue to effect purchase and redemption transactions in the Lending Funds based upon a net asset value that reflects a $1.00 transactional value for units of the Collateral Pools. SSgA's transactional value determination for the units of the Collateral Pools held by each lending fund is based on a number of factors:

> ➢ The Collateral Pools have not realized any material credit losses nor do they hold securities of issuers that have defaulted on their obligations. For example, the Collateral Pools did not suffer any realized material credit losses from the bankruptcy of Lehman Brothers Holdings, Inc., nor do they have investments in SIVs.

> ➢ SSgA has maintained high standards in its credit analysis in constructing the Collateral Pools. The credit team reviews the portfolio holdings on a regular basis and applies stress testing to all of these positions. Our credit team continues to support the credit quality of the portfolios and expects, even with the difficult economic environment, that the portfolios will continue to receive payments of principal and interest as forecasted.

> ➢ The Collateral Pools continue to maintain adequate liquidity to meet the Lending Funds' contractual obligations with respect to their outstanding securities loaned. As of March 17, 2009, the percentage of the Collateral Pools' holdings that mature or are scheduled to pay down in 90 days or less ranged from approximately 47% to 51%. The percentage that mature or are scheduled to pay down within 180 days or less ranged from 51% to 58%. Based upon historical and reasonably foreseeable developments in the market, SSgA believes that level of liquidity, together with the restrictions on liquidity for

**Usage:** External Use
**Audience:** Clients / Consultants
**Content:** Client Letter

**Creation date:** March 23, 2009
**Region:** Global

redemption of units of the Lending Funds discussed above, and the ability to generate additional liquidity if necessary by placing additional securities on loan, will enable the Collateral Pools to hold to maturity the Collateral Pools' portfolio securities, thereby avoiding any premature sale of longer-dated securities that would generate a realized loss.

➢ The liquidity in the Collateral Pools has been managed successfully through an extremely difficult period in the securities markets, with resulting increases in redemptions to meet mark-to-market obligations and borrower returns, as many market participants, including hedge funds, have de-levered their positions. Due primarily to these factors, the aggregate value of units in the Collateral Pools held by the Lending Funds decreased from approximately $50 billion as of June 30, 2008 to approximately $31 billion as of December 31, 2008. This substantial reduction in the size of the lending program and reduction in the net assets of the Collateral Pools has been accomplished without the need to sell any portfolio holdings into a dysfunctional fixed income market. This positive result was achieved by the determination of the portfolio managers of the Collateral Pools in early 2008 to increase the short-term liquidity in the Collateral Pools as well as by careful management of the liquidity in the Collateral Pools as the fixed income and equity markets became increasingly disrupted.

➢ The market value of the Collateral Pools' assets continues to improve from depressed year-end levels. As of March 18, 2009, the mark-to-market value of the Collateral Pool units ranged from $0.940 to $0.968.

SSgA reviews the factors underlying its decision to value the units of the Collateral Pools at $1.00 for transaction purposes on a weekly basis to make sure that the determination remains reasonable. Given current market conditions, there is no guarantee that SSgA will be able to continue to make the determination permitting the Lending Funds to transact investor activity reflecting a constant value of $1.00 for the Collateral Pool units. If SSgA's transaction value methodology no longer supports a $1.00 per unit price for the Collateral Pool at the time you redeem your shares of the Lending Fund, your redemption proceeds will reflect the lower mark-to-market value of the Collateral Pool units held by the Lending Fund. Factors that could effect that determination could include realization of material credit losses within the Collateral Pools, decreased percentage of the Collateral Pools' assets represented by positions that mature or pay down in the near term, or the need to sell any of the Collateral Pools' holdings in the market. Any impact on the net asset value of a Lending Fund due to a determination that the Lending Fund's holdings of units of a Collateral Pool should be valued for transaction purposes at less than $1.00 or the realization of any material loss in a Collateral Pool will be dependent upon the percentage of the Lending Fund's securities that are on loan and the amount of Collateral Pool units held by the Lending Fund.

**Financial Reporting Considerations**

As previously discussed, the Lending Funds' financial statements as of December 31, 2008 will reflect the mark-to-market value of the Collateral Pools' assets, which in turn, will affect the

**Usage: External Use**
**Audience**: Clients / Consultants
**Content:** Client Letter

**Creation date:** March 23, 2009
**Region:** Global

Lending Funds' financial statements by varying degrees. The Lending Funds' net asset value for year-end GAAP reporting purposes may differ from the net asset value you may have transacted at or that was reported to you on the year-end statements that we previously sent to you. This difference may need to be reflected in your financial reporting, including periodic financial statements and/or Department of Labor Form 5500 filings.  You should notify your plan administrator, auditor, actuary, trustee, or any other party that relies on or utilizes valuation information from the year-end account statements that the Lending Funds' forthcoming audited financial statements will reflect the mark-to-market NAV of the Collateral Pools' assets.  If you have questions about any potential financial, regulatory or other reporting considerations, please contact your SSgA Relationship Manager.

## Conflicts of Interest

Whenever State Street, SSgA, or an affiliate provides a service to the Lending Funds there is the potential for a conflict of interest.  Among the potential sources of conflict is compensation paid to SSgA and its affiliates.  SSgA receives compensation from the Collateral Pools or the investors in the Lending Funds in two principal ways:  management fees and sharing of revenue from securities lending.  SSgA receives a management fee from the Collateral Pools, and investors in the Lending Funds pay SSgA a management fee for management of the Lending Funds.  For its services managing the securities lending program, State Street receives a portion of the income generated by the Collateral Pools.  The remaining portion of this income is distributed pro rata to the investors of the Lending Funds.

Because SSgA's revenue from managing the Lending Funds is determined in part by the net assets of the Lending Funds and the percentage of the Lending Funds' securities out on loan, SSgA's overall revenue would decrease in the event of significant withdrawals, a reduction of assets in the Lending Funds, and Collateral Pools or the overall decline in securities lending generally.  Consequently, although the limitations on redemptions from the Lending Funds and Collateral Pools have been imposed to protect all investors in the Lending Funds, SSgA may also benefit from these limitations on redemption.

As we stated in our October 2008 letter, it is SSgA's goal to protect the interests of all investors, while providing a level of liquidity that can be prudently made available to our clients.  As liquidity conditions improve over time, we will reassess the need for institutional account and plan level withdrawal restrictions as appropriate. Please contact your SSgA Relationship Manager if you have any questions or need more information.

**Usage:** External Use                                        **Creation date:** March 23, 2009
**Audience:** Clients / Consultants                              **Region:** Global
**Content:** Client Letter

<u>**APPENDIX A**</u>

**Calendar**

| **Monthly Liquidity Schedule for 2009** |
| Transaction Timeline Relative to Trade Date (TD) Available |

| **TD - 5** | **TD - 2** | **TD** | **TD + 3*** |
|---|---|---|---|
| **Notification Date** | **Asset Valuation Date** | **Trade Date** | **Settlement** |
| Letter of Direction to be received by 7:30 EST | Used to calculate transaction value | Portfolio Manager places trades | Transaction completed, cash and / or assets delivered |
| **April 7** (Tues) | **April 13** (Mon) | **April 15** (Weds) | **April 20** (Mon) |
| **April 23** (Thurs) | **April 28** (Tues) | **April 30** (Thurs) | **May 5** (Tues) |
| **May 13** (Weds) | **May 18** (Mon) | **May 20** (Weds) | **May 26** (Tues) |
| **May 22** (Fri) | **May 27** (Weds) | **May 29** (Fri) | **June 3** (Weds) |
| **June 10** (Weds) | **June 15** (Mon) | **June 17** (Weds) | **June 22** (Mon) |
| **June 23** (Tues) | **June 26** (Fri) | **June 30** (Tues) | **July 6** (Mon) |
| **July 8** (Weds) | **July 13** (Mon) | **July 15** (Weds) | **July 20** (Mon) |
| **July 24** (Fri) | **July 29** (Weds) | **July 31** (Fri) | **August 3** (Mon) |
| **August 12** (Weds) | **August 17** (Mon) | **August 19** (Weds) | **August 24** (Mon) |
| **August 24** (Mon) | **August 27** (Thurs) | **August 31** (Mon) | **September 3** (Thurs) |
| **September 9** (Weds) | **September 14** (Mon) | **September 16** (Weds) | **September 21** (Mon) |
| **September 23** (Weds) | **September 28** (Mon) | **September 30** (Weds) | **October 5** (Mon) |
| **October 14** (Weds) | **October 19** (Mon) | **October 21** (Weds) | **October 26** (Mon) |
| **October 23** (Fri) | **October 28** (Weds) | **October 30** (Fri) | **November 4** (Weds) |
| **November 11** (Weds) | **November 16** (Mon) | **November 18** (Weds) | **November 22** (Mon) |
| **November 23** (Mon) | **November 25** (Wed) | **November 30** (Mon) | **December 3** (Thurs) |
| **December 9** (Weds) | **December 14** (Mon) | **December 16** (Weds) | **December 21** (Mon) |

*Withdrawals will be made available as soon as possible.  This depends on trade settlement dates and crossing.  A time schedule for availability of
proceeds is typically available on the day prior to the fund opening date.

Usage: **External Use**
Audience: Clients / Consultants
Content: Client Letter

Creation date: March 23, 2009
Region: Global

## APPENDIX A (continued)

### Calendar

**Exiting the Securities Lending Program Schedule for 2009 (Initial Transaction)**
Transaction Timeline Relative to Trade Date (TD) Available for Receiving Ownership Interest

| TD - 5 | TD - 2 | TD | TD + 3* |
|---|---|---|---|
| **Notification Date** Letter of Direction to be received by 7:30 EST | **Asset Valuation Date** Used to calculate transaction value | **Trade Date** Portfolio Manager places trades | **Settlement** Transaction completed, cash and / or assets delivered |
| **March 24** (Tues) | **March 27** (Fri) | **March 31** (Tues) | **April 3** (Fri) |
| **April 7** (Tues) | **April 13** (Mon) | **April 15** (Weds) | **April 20** (Mon) |
| **April 23** (Thurs) | **April 28** (Tues) | **April 30** (Thurs) | **May 5** (Tues) |
| **May 13** (Weds) | **May 18** (Mon) | **May 20** (Weds) | **May 26** (Tues) |
| **May 22** (Fri) | **May 27** (Weds) | **May 29** (Fri) | **June 3** (Weds) |
| **June 10** (Weds) | **June 15** (Mon) | **June 17** (Weds) | **June 22** (Mon) |
| **June 23** (Tues) | **June 26** (Fri) | **June 30** (Tues) | **July 6** (Mon) |
| **July 8** (Weds) | **July 13** (Mon) | **July 15** (Weds) | **July 20** (Mon) |
| **July 24** (Fri) | **July 29** (Weds) | **July 31** (Fri) | **August 3** (Mon) |
| **August 12** (Weds) | **August 17** (Mon) | **August 19** (Weds) | **August 24** (Mon) |
| **August 24** (Mon) | **August 27** (Thurs) | **August 31** (Mon) | **September 3** (Thurs) |
| **September 9** (Weds) | **September 14** (Mon) | **September 16** (Weds) | **September 21** (Mon) |
| **September 23** (Weds) | **September 28** (Mon) | **September 30** (Weds) | **October 5** (Mon) |
| **October 14** (Weds) | **October 19** (Mon) | **October 21** (Weds) | **October 26** (Mon) |
| **October 23** (Fri) | **October 28** (Weds) | **October 30** (Fri) | **November 4** (Weds) |
| **November 11** (Weds) | **November 16** (Mon) | **November 18** (Weds) | **November 22** (Mon) |
| **November 23** (Mon) | **November 25** (Wed) | **November 30** (Mon) | **December 3** (Thurs) |
| **December 9** (Weds) | **December 14** (Mon) | **December 16** (Weds) | **December 21** (Mon) |

**Exiting the Securities Lending Program Schedule for 2009 (Secondary Transaction)**
Pay-Out of Available Liquidity and Transfer of Remaining Assets In-Kind to the "Liquidating Trust"

| TD | TD + 3* |
|---|---|
| **Trade Date** Portfolio Manager places trades (liquidation & In-kind transfer) | **Settlement** Transaction completed, cash delivered and assets transferred |
| **May 15** (Fri) | **May 20** (Weds) |
| **August 14** (Fri) | **August 19** (Weds) |
| **November 13** (Fri) | **November 18** (Weds) |

*Withdrawals will be made available as soon as possible.  This depends on trade settlement dates and crossing.  A time schedule for availability of

**Usage: External Use**                                     **Creation date:** March 23, 2009
**Audience:** Clients / Consultants                                     **Region:** Global
**Content:** Client Letter

## APPENDIX B

### Notice of Amendment to Fund Declarations for Lending Funds

Notwithstanding any other provision of the Fund Declaration or the Declaration of Trust to the contrary, and in addition to any other authority granted to the Trustee thereunder, in the interest of fair and equitable treatment of all Participants and the protection of the Fund, the Trustee may in its sole discretion adopt and implement redemption practices and policies with respect to the rights of Participants to withdraw or redeem Units from the Fund.  In adopting and implementing redemption practices and policies, the Trustee may take into account such factors as the Trustee deems appropriate in its sole discretion, including, without limitation: the liquidity of the Fund's investment portfolio and known and potential requirements for such liquidity, the state or condition of the Fund's investment portfolio, the Fund's ability to generate cash to fund redemptions and satisfy other obligations of the Fund, and the likelihood and materiality of losses or gains relating thereto; a particular Participant's absolute or relative ownership interest in the Fund; amounts previously withdrawn by one or more particular Participants; and the length of time and frequency of any outstanding or accrued withdrawal requests by particular Participants.  Any such practices and policies may include, without limitation, suspending or limiting the frequency of withdrawal rights for some or all Participants; effecting  withdrawals wholly or partially in-kind; varying the per Unit redemption amount paid to Participants based on such factors as the Trustee may determine, such as the amount and timing of a Participant's withdrawal requests; limiting withdrawal rights for some or all Participants to specified dollar amounts or percentage interests in the Fund; and permitting one or more (but less than all) Participants to withdraw on a priority or preferential basis relative to one or more other Participants based upon such factors as the Trustee determines to be equitable, including time, amount or frequency of redemptions and/or withdrawal requests by Participants.  The Trustee may in its sole discretion treat one or more Participants differently from other Participants in determining the extent to which a particular Participant is entitled to withdraw, the per Unit redemption amount to be paid to a particular Participant, the timing, manner (cash, in-kind or a combination thereof) and frequency of redemption payments, and any other matters relevant to a Participant's withdrawal.  Any such action by the Trustee will be evaluated and implemented in its sole discretion and undertaken by the Trustee as part of a plan designed to provide fair and equitable treatment to all Participants, protect the Fund, and be in the best interests of all Participants over time and will seek to preserve the Fund's liquidity, avoid or mitigate losses to the Fund, permit the Fund to achieve its investment objectives and to otherwise avoid any adverse consequences to the Fund and its Participants.  Such practices and policies may be adopted, modified or terminated by the Trustee at any time in its sole discretion.   The Trustee shall, to the extent practicable, provide reasonable notice (which need not be prior notice) to Participants of any such redemption practices and policies as they may be in effect from time to time.

**Usage: External Use**                        **Creation date:** March 23, 2009
**Audience**: Clients / Consultants                        **Region:** Global
**Content:** Client Letter

### <u>APPENDIX C</u>

**Notice of Amendment to Fund Declarations for Series Lending Funds**

Pursuant to Section 3.4(a) of Article III of the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds For Tax Exempt Retirement Plans, effective October 1, 2005 (the "Declaration of Trust"), this letter serves to notify you that the Trustee has amended the Fund Declaration that governs each of the collective investment funds established by State Street Bank and Trust Company under the Declaration of Trust and in which defined contribution employee benefit plans directly invest (each a "Series Fund" and each such Fund Declaration a "Fund Declaration"). The Series Funds are feeder funds that are entirely invested in collective investment funds (the "Core Funds") that directly invest in securities and other instruments and engage in securities lending. The amendment to each Fund Declaration provides that the applicable Series Fund (1) may purchase, hold and sell securities and other instruments directly or indirectly in order to achieve its stated investment objective; (2) may lend securities it holds from time to time, under State Street Bank and Trust Company's securities lending program; and (3) may enter into custody, administration, management and any other agreements or other documents and take any other actions necessary or appropriate in the trustee's sole discretion in connection with the foregoing. Except as noted above, the investment objective and guidelines of each Series Fund will remain substantially unchanged. The aggregate fees and expenses payable by each Series Fund will not change in connection with these amendments. Copies of the amended Fund Declarations are available upon request.

# Tenth Amendment to Investment Manager Agreement

This Tenth Amendment to Investment Manager Agreement (the "Amendment") is made as of July 16, 2009, by and between the Savings Plan Investment Oversight Committee of BP Corporation North America Inc. (the "Investment Committee") and State Street Global Advisors, a division of State Street Bank and Trust Company (the "Investment Manager"). Capitalized terms used herein and not defined shall be given their meanings as so defined in the Agreement (as defined below).

WHEREAS, the the Investment Committee and the Investment Manager are party to an Investment Manager Agreement dated as of April 5, 2000 as amended (the "Agreement");

WHEREAS, the Investment Committee desires to appoint Investment Manager for three additional Investment Accounts; and

WHEREAS, the Investment Committee and the Investment Manager wish to further amend the Agreement to add Exhibits A-15, A-16, A-17, B-15, B-16, B-17 C-15, C-16, C-17, F-15, F-16, and F-17.

NOW, THEREFORE, the Investment Committee and the Investment Manager agree as follows:

1. <u>Amendments to the Agreement.</u>

    (a) The Agreement is amended to add Exhibits A-15, A-16, A-17, B-15, B-16, B-17 C-15, C-16, C-17, F-15, F-16, and F-17. The effective date of the new Investement Accounts and this Amendment will be September 1, 2009.

    (b) <u>Full Force and Effect.</u> Except as expressly set forth above, all other terms and provisions of the Agreement and Amendment shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their respective officers thereto duly authorized as of the day and year first above written.

**BP Corporation North America Inc. Savings Plan Investment Oversight Committee**

By _Gregory T. Williamson_

Name _Gregory T. Williamson_      Title _Secretary and Member_

**State Street Global Advisors, a division of State Street Bank & Trust Company**

By _Staci A. Reardon_

Name      STACI A. REARDON
          SENIOR MANAGING DIRECTOR          Title _____

By _____

Name _____      Title _____

**EXHIBIT A-15**

**<u>INVENTORY OF ACCOUNT ASSETS</u>**

World Government Bond Index Fund – Ex U.S.


The assets contained in the Investment Account AE66 represent the funds for this Investment Account to be managed by the Investment Manager.

**EXHIBIT A-16**

**<u>INVENTORY OF ACCOUNT ASSETS</u>**

US Treasury Inflation Protected Securities (TIPS) Bond Fund

The assets contained in the Investment Account AE65 represent the funds for this Investment Account to be managed by the Investment Manager.

**EXHIBIT A-17**

## INVENTORY OF ACCOUNT ASSETS

Emerging Markets Index Fund

The assets contained in the Investment Account AE67 represent the funds for this Investment Account to be managed by the Investment Manager.

## EXHIBIT B-15

## INVESTMENT STRATEGY GUIDELINES

World Government Bond Index Fund – Ex U.S.


A.      Investment Objectives.

The investment objective of the World Government Bond Index Fund – Ex U.S. (the "World Index Fund") Investment Account (the "Investment Account") is to provide daily responsiveness to participants pursuant to the Plan while attempting to match the investment return of the Citigroup World Government Bond Ex-U.S. Index after the inclusion of all fees and expenses and while permitting participants to purchase and redeem units on an "as of" basis.


B.      Investment Strategy.

The World Index Fund is a well diversified fund, which offers participants in the Plan an interest in the Investment Manager's World Government Bond Ex-U.S. Index Non-Lending Series Fund – Class A ("SSgA World Series Fund"), a commingled fund designed to track the investment returns of the Citigroup World Government Bond Ex-U.S. Index. The World Series Fund is governed by and subject to the objectives and criteria set forth in the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans dated August 15, 2005, as amended (the "Declaration of Trust"), and respective Fund Declaration (the Declaration of Trust and the respective Fund Declaration are referred to herein as the "Fund Documents"). The Declaration of Trust has been heretofore delivered to the Investment Committee and the Fund Declaration for the World Index Fund is attached to this Exhibit B-15 as Attachment B-15. In the event that there is a conflict between these Investment Strategy Guidelines and the governing Fund Documents, the Fund Documents shall supersede and govern.  The Investment Manager shall notify the Investment Committee of any changes to the Fund Documents as set forth in those documents.

The Investment Manager will keep abreast of new initiatives and be prepared to consult with the Investment Committee about the possibility of using such new initiatives.


C.      Return Objective.

The performance objective for the Investment Account is to provide an investment return which replicates the return (i.e. provides minimal tracking error) of the Investment Account Benchmark (as defined below) and mirrors the risk profile of the underlying Investment Account Benchmark after inclusion of all fees and expenses. The total risk as measured by the annualized standard deviation of the investment return over rolling 3 year periods should fall within a range of 98-102% of the total risk of the Investment

Account Benchmark measured over the same period. The residual risk, or tracking error, shall be measured as the annualized standard deviation of the difference in returns between the Investment Account and the Investment Account Benchmark over rolling 3 year periods. It is anticipated that the tracking error for the Investment Account shall be in a range of 15 basis points to 20 basis points.

The Investment Account Benchmark shall be the total return of the Citigroup World Government Bond Ex-U.S. Index.

D.    Liquidity.

The Investment Manager will primarily utilize late trade notification funds in order to meet participant activity levels, but reserves the right to use a combination of cash and equity derivatives (futures and options) in addition to the underlying commingled fund if participant activity warrants it.

E.    Restrictions and Standards.

The Investment Manager may not lend securities in the SSgA World Series Fund.

F.    Amendments.

The Investment Strategy Guidelines may be revised or altered by mutual agreement of the Investment Committee and the Investment Manager if the Investment Manager (i) recommends to the Investment Committee that such revision or alteration is necessary for the proper articulation of the Investment Manager's strategy, (ii) recognizes changes in domestic or global market conditions, or (iii) recognizes any changes in conditions of risk. It is acknowledged by the Investment Committee and the Investment Manager that these Guidelines shall govern the Investment Manager's management of the Investment Account for all purposes, except to the extent of any conflict with the Fund Documents as set forth in Section B above. Any discrepancies, inconsistencies or questions that the Investment Manager has in connection with complying with the Guidelines must be immediately communicated to the Investment Committee prior to any execution of trades, contracts or other agreements that may bind the Investment Account.

G.    Reporting

The Investment Manager shall provide reports regarding the performance of the Investment Account in such form and at such intervals as shall be required by the Investment Committee. All such reports shall be true and correct and shall not contain any material misstatement or omission.

H.  <u>Compliance Statements</u>

In addition to the reports required by other sections of the Agreement and these Guidelines, not less than quarterly or at such times as the Investment Committee shall request, the Investment Manager will provide the Investment Committee a written report as to compliance by the Investment Manager with the terms of the Agreement and these Guidelines, the form of which shall be agreed upon between the Investment Committee and the Investment Manager.   The Investment Committee, if it requests, may supplement such report with meetings, telephone calls and  other  forms  of communication in which representatives of the Investment Committee have an opportunity to ask questions about the report and the Investment Manager's activities with respect to the Investment Account.

**ATTACHMENT B-15**


**FUND DECLARATION**

**STATE STREET BANK AND TRUST COMPANY**
**INVESTMENT FUNDS FOR TAX EXEMPT RETIREMENT PLANS**

**FUND DECLARATION**

*WORLD GOVERNMENT BOND EX-U.S. INDEX NON-LENDING SERIES FUND*

Pursuant to Article III of the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans, dated August 15, 2005 and effective as of October 1, 2005 (the "Declaration of Trust"), State Street Bank and Trust Company (the "Trustee"), by its execution of this Fund Declaration, hereby establishes the World Government Bond Ex-U.S. Index Non-Lending Series Fund (the "Fund"). The Trustee agrees that it will hold, administer and deal with all money and property received by it as Trustee of the Fund in accordance with the terms of the Declaration of Trust, subject to the additional terms and conditions set forth in this Fund Declaration. Capitalized terms used and not otherwise defined shall have the meanings set forth in the Declaration of Trust.

1.  **Name of the Fund:**

    *World Government Bond Ex-U.S. Index Non-Lending Series Fund*

2.  **Effective Date of the Fund Declaration:**

    June 10, 2009

3.  **Investment Objective of the Fund:**

    The investment objective of the Fund shall be to match the return of the Citigroup World Government Bond Ex-U.S. Index (the "Index") while providing participants the ability to purchase and redeem units on an "as of" basis.

4.  **Permitted Categories of Assets and Investment Strategy of the Fund:**

    The Fund seeks to achieve its objective by investing directly or indirectly in securities and other instruments, including without limitation in units of the World Government Bond Ex-U.S. Index Non-Lending Fund (the "Core Fund"), and other bank commingled funds maintained by the Trustee ("Commingled Funds"). The Fund or Core Fund may invest in other public or private investment companies or pools, including without limitation exchange-traded funds and money market funds. The Fund or Core Fund shall not invest in the United States based issuers or securities, although the Fund may hold U.S. listed securities of foreign issuers without advance notice to participants.

    The Fund (or any investment company or pool in which the Fund invests) may engage in transactions involving exchange-listed or over-the-counter derivatives, including, but not limited to, options, futures contracts, swap contracts, and foreign currency forward contracts, or other investments as the Trustee in its discretion deems appropriate under the circumstances. The Fund or Core Fund will not engage in derivatives transactions or borrow money for the purpose of creating investment leverage.

    Investment companies or pools in which the Fund may invest, including Commingled Funds, may be managed, administered, or sponsored by the Trustee or an affiliate of the Trustee, or may otherwise be affiliated with the Trustee and may pay fees to the Trustee or affiliates of the Trustee. The Fund may invest excess cash in short-term securities and instruments including, but not limited to the Short Term Investment Fund or other short-term cash funds maintained by the Trustee, as well as shares of the SSgA Money Market Fund (the "Affiliated Money Market Funds"), a short-term registered mutual fund for which an affiliate of the Trustee acts as investment advisor.

Although the Fund will seek to replicate the return of the Index over time, it is unlikely that the Fund's return will match the return of the Index precisely due to a number factors, such as the fact that the Fund may incur expenses not reflected in the Index return, the need for management of cash flows within the Fund, and the possibility that the investments selected by the Trustees for investment by the Fund may not replicate the investment return of the Index. The investment policies and limitations of any Commingled Fund in which the Fund invests may differ from those of the Fund, and the securities making up the portfolios of the Commingled Funds in which the Fund invests may not, in the case of any one Commingled Fund or in the case of all such Commingled Funds in the aggregate, comply in all respects with the investment policies and limitations of the Fund relating to investments by the Fund.

5.     **Operation of the Fund:**

Each Business Day shall be a Valuation Date. Except as provided below, the Trustee will value the Fund's assets at market value, based on market quotations, as of the Valuation Date.  If the Trustee cannot readily ascertain market value of an asset held by the Fund, either because a market quotation is not reasonably available for the asset or the Trustee believes for whatever reason that a market quotation is unreliable, the Trustee shall determine a fair value of the asset in good faith. The Trustee may consider such information as it, in its discretion, considers appropriate, including, by way of example, pricing of recent transactions in the asset or similar assets, or estimates or fair valuations provided by one or more pricing services selected by the Trustee. The Trustee may in its discretion value securities held by the Fund at prices used by the Index sponsor or administrator.

The Trustee is exempt from registration and regulation under the Commodity Exchange Act as a commodity pool operator in connection with the operation of the Fund.

Due to the combination of the effects of "as of" pricing and cash inflows to and outflows from this Fund, as well as other Commingled Funds maintained by the Trustee, the Fund may not precisely track the Index.

6.     **Permitted Classes of Units, Fees and Expenses:**

The Trustee will charge the Fund an annual audit fee and such other fees and expenses as are permitted by the Declaration of Trust. The Fund may pay the Trustee or its affiliates other fees and expenses related to the provision of bookkeeping, and accounting services, transfer agency and shareholder servicing, and other services that the Trustee may from time to time consider necessary or appropriate.  To the extent the Fund invests directly in securities, the Trustee will charge the Fund custody fees as set forth on the attached schedule.  Should the Fund invest primarily in units of the Core Fund or Commingled Funds maintained by the Trustee, the Trustee will charge the Fund an annual administration fee equal to $25,000.

The Trustee shall have the authority to establish from time to time an unlimited number of Classes of Units of the Fund and to issue from time to time an unlimited number of Units of any such Class of the Fund, each of which shall have the rights, privileges and obligations set forth in the Class Description for such Class.  The Trustee may in its discretion from time to time add, delete, amend or otherwise modify a Class of Units of the Fund, and the Trustee shall not be obligated or required to notify any participants in the Fund of such addition, deletion, amendment or modification, other than the then current participants in the affected Class as required in Section 3.2 of the Declaration of Trust. Each participant in the Fund will only receive a copy of the Class Description for the Class in which such participant participates.

Each Class of Units of the Fund will be charged such fees and expenses as are permitted by the Declaration of Trust and as are described in the Class Description for such Class. Each Class of Units of the Fund will also be charged its allocable share of the fees and expenses borne by the Fund that are not allocable to a specific Class.

With respect to the Fund assets invested in the Affiliated Money Market Funds, the Fund will indirectly incur management fees and other charges paid to the Trustee, which currently do not exceed fifty-nine (59) basis points.  The Trustee will waive the allocable portion of each participant's management fee for the Fund that is attributable to such investment of cash in any Affiliated Money Market Fund.

**STATE STREET BANK AND TRUST COMPANY**

By: _____
Name:   Mark D. Hoefel
Title:    Managing Director

## Schedule of Custody Charges

The following countries will be charged holding charges equal to four (4.0) basis points and transaction charges equal to $25 per fund transaction:

| | |
|---|---|
| Australia | Japan |
| Austria | Netherlands |
| Belgium | New Zealand |
| Canada | Norway |
| Denmark | Portugal |
| Finland | Singapore |
| France | Spain |
| Germany | Sweden |
| Hong Kong | Switzerland |
| Ireland | United Kingdom |
| Italy | United States * |

The following countries will be charged holding charges equal to twenty (20.0) basis points and transaction charges equal to $75 per fund transaction:

| | |
|---|---|
| Argentina | Mexico |
| Brazil | Morocco |
| Chile | Pakistan |
| China | Peru |
| Colombia | Philippines |
| Czech Republic | Poland |
| Egypt | Russia |
| Greece | Slovak Republic |
| Hungary | Slovenia |
| India | South Africa |
| Indonesia | Sri Lanka |
| Israel | Taiwan |
| Jordan | Thailand |
| Korea | Turkey |
| Malaysia | Venezuela |
| | Zimbabwe |

All holding and transaction charges will be deducted directly out of the fund.

* United States will be subject to one (1) basis point and $12 per fund transaction

**STATE STREET BANK AND TRUST COMPANY**
**INVESTMENT FUNDS FOR TAX EXEMPT RETIREMENT PLANS**

**CLASS DESCRIPTION**
**(CLASS A)**

*WORLD GOVERNMENT BOND EX-U.S. INDEX NON-LENDING SERIES FUND*
*(the "Fund")*

Pursuant to Section 3.2 of the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans, dated August 15, 2005 and effective as of October 1, 2005 (the "Declaration of Trust"), which authorizes State Street Bank and Trust Company (the "Trustee") to divide an investment fund established thereunder, including the Fund, into one or more Classes of Units representing beneficial interests in such Fund with differing fee and expense obligations, the Trustee hereby declares that the Fund shall have the authority to issue Units in the following Class ("Class A"). Class A shall have the rights, privileges and obligations set forth below. Capitalized terms used and not otherwise defined shall have the meanings set forth in the Declaration of Trust.

Any Qualified Investor (as such term is defined in the Declaration of Trust) is eligible to invest in Class A.

**Class A Total Annual Operating Expense Ratio.** The total annual operating expense ratio of the Fund includes (i) the direct fees and expenses of the Fund including, among others, custody, audit, administration and legal fees, and, if applicable (ii) the indirect fees and expenses of the Fund's investment in the World Government Bond Ex-U.S. Index Non-Lending Fund (the "Core Fund"), including among others, the Core Fund's custody, audit, administration and legal fees (together, the "Class A Total Annual Operating Expense Ratio"). Transaction costs (including, for example, brokerage cost and taxes, if any) are not reflected in the Class A Total Annual Operating Expense Ratio but are reflected in the net performance of the Fund. The Class A Total Annual Operating Expense Ratio is not expected to exceed .02% annually.

**STATE STREET BANK AND TRUST COMPANY**

By: _____

Name: *Robert F. Dempsey*
Title: *Managing Director*

**EXHIBIT B-16**

**INVESTMENT STRATEGY GUIDELINES**

U.S. Treasury Inflation Protected Securities (TIPS) Bond Fund

A.     Investment Objectives.

The investment objective of the U.S. Treasury Inflation Protected Securities (TIPS) Bond Fund ("TIPS Fund") Investment Account (the "Investment Account") is to provide daily responsiveness to participants pursuant to the Plan while attempting to match the investment return of Barclays Capital Global Real: U.S. TIPS Index after the inclusion of all fees and expenses and while permitting participants to purchase and redeem units on an "as of" basis.

Investment Strategy.

The TIPS Fund is a well diversified fund, which offers participants in the Plan an interest in the Investment Manager's Treasury Inflation Protected Securities Non-Lending Index Series Fund – Class A ("SSgA TIPS Index Fund"), a commingled fund designed to track the investment returns of the Barclays Capital Global Real: U.S. TIPS Index. The SSgA TIPS Index Fund is governed by and subject to the objectives and criteria set forth in the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans dated August 15, 2005 (the "Declaration of Trust"), and respective Fund Declaration (the Declaration of Trust and the respective Fund Declaration are referred to herein as the "Fund Documents"). The Declaration of Trust as has been hereto fore delivered to the Investment Committee and the Fund Declaration for the SSgA TIPS Index Fund is attached to this Exhibit B-16 as Attachment B-16. In the event that there is a conflict between these Investment Strategy Guidelines and the governing Fund Documents, the Fund Documents shall supersede and govern. The Investment Manager shall notify the Investment Committee of any changes to the Fund Documents as set forth in those documents.

The Investment Manager will keep abreast of new initiatives and be prepared to consult with the Investment Committee about the possibility of using such new initiatives.

C.     Return Objective.

The performance objective for the Investment Account is to provide an investment return which replicates the return (i.e. provides minimal tracking error) of the Investment Account Benchmark (as defined below) and mirrors the risk profile of the underlying Investment Account Benchmark after inclusion of all fees and expenses. The total risk as measured by the annualized standard deviation of the investment return over rolling 3 year periods should fall within a range of 98-102% of the total risk of the Investment

Account Benchmark measured over the same period. The residual risk, or tracking error, shall be measured as the annualized standard deviation of the difference in returns between the Investment Account and the Investment Account Benchmark over rolling 3 year periods. It is anticipated that the tracking error for the Investment Account shall be in a range of 2 basis points to 7 basis points.

The Investment Account Benchmark shall be the total return of the Barclays Capital Global Real: U.S. TIPS Index

D.   Liquidity.

The Investment Manager will primarily utilize late trade notification funds in order to meet participant activity levels, but reserves the right to use a combination of cash and equity derivatives (futures and options) in addition to the underlying commingled fund if participant activity warrants it.

E.   Restrictions and Standards.

The Investment Manager may not lend securities in the SSgA TIPS Index Fund .

F.   Amendments.

The Investment Strategy Guidelines may be revised or altered by mutual agreement of the Investment Committee and the Investment Manager if the Investment Manager (i) recommends to the Investment Committee that such revision or alteration is necessary for the proper articulation of the Investment Manager's strategy, (ii) recognizes changes in domestic or global market conditions, or (iii) recognizes any changes in conditions of risk. It is acknowledged by the Investment Committee and the Investment Manager that these Guidelines shall govern the Investment Manager's management of the Investment Account for all purposes, except to the extent of any conflict with the Fund Documents as set forth in Section B above. Any discrepancies, inconsistencies or questions that the Investment Manager has in connection with complying with the Guidelines must be immediately communicated to the Investment Committee prior to any execution of trades, contracts or other agreements that may bind the Investment Account.

G.   Reporting

The Investment Manager shall provide reports regarding the performance of the Investment Account in such form and at such intervals as shall be required by the Investment Committee. All such reports shall be true and correct and shall not contain any material misstatement or omission.

H.     <u>Compliance Statements</u>

In addition to the reports required by other sections of the Agreement and these Guidelines, not less than quarterly or at such times as the Investment Committee shall request, the Investment Manager will provide the Investment Committee a written report as to compliance by the Investment Manager with the terms of the Agreement and these Guidelines, the form of which shall be agreed upon between the Investment Committee and the Investment Manager.    The  Investment Committee, if it requests, may supplement such report with meetings, telephone calls and  other  forms  of communication  in  which  representatives  of  the  Investment Committee have an opportunity to ask questions about the report  and  the Investment Manager's activities with respect to the Investment Account.

**ATTACHMENT B-16**

**FUND DECLARATION**

STATE STREET BANK AND TRUST COMPANY
INVESTMENT FUNDS FOR TAX EXEMPT RETIREMENT PLANS

AMENDED FUND DECLARATION

*TREASURY INFLATION PROTECTED SECURITIES INDEX
NON-LENDING SERIES FUND
(the "Fund")*

Pursuant to Articles III and VII of the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans, dated August 15, 2005 and effective as of October 1, 2005 (the "Declaration of Trust"), State Street Bank and Trust Company (the "Trustee"), by its execution of this Amended Fund Declaration, hereby amends and restates the Treasury Inflation Protected Securities Index Non-Lending Series Fund (the "Fund"). The Trustee agrees that it will hold, administer and deal with all money and property received by it as Trustee of the Fund in accordance with the terms of the Declaration of Trust, subject to the additional terms and conditions set forth in this Amended Fund Declaration. Capitalized terms used and not otherwise defined shall have the meanings set forth in the Declaration of Trust.

1.     **Name of the Fund:**

       *Treasury Inflation Protected Securities Index Non-Lending Series Fund*

2.     **Effective Date of the Amended Fund Declaration:**

       June 11, 2009

3.     **Investment Objective of the Fund:**

       The investment objective of the Fund shall be to match, as closely as possible, Barclays Capital U.S. Treasury Inflation-Protected Securities Index (the "Index"), while providing participants the ability to purchase and redeem units on an "as of" basis.

4.     **Permitted Categories of Assets and Investment Strategy of the Fund:**

       The Fund seeks to achieve its objective by investing directly or indirectly in securities and other instruments, including without limitation in units of the Treasury Inflation Protected Securities Index Non-Lending Fund (the "Core Fund"), and other bank commingled funds maintained by the Trustee ("Commingled Funds").

       In addition, the Fund or Core Fund may invest excess cash in short term securities and instruments including, but not limited to, repurchase agreements, U.S. Treasury securities, short term government cash funds maintained by the Trustee, as well as shares of the SSgA U.S. Government Money Market Fund, the SSgA U.S. Treasury Money Market Fund or other short-term registered mutual funds for which an affiliate of the Trustee acts as investment advisor.

5.     **Operating Features:**

       Because the Fund is a qualifying entity under the rules of the Commodity Futures Trading Commission (the "CFTC"), the Trustee, as a trust company subject to regulation of the Commonwealth of Massachusetts, is exempt from registration with the CFTC and the National Futures Association (the "NFA") as a commodity pool operator in connection with the Trustee's operation of the Fund pursuant to an exemption under Rule 4.5 promulgated pursuant to the Commodity Exchange Act (the "CEA"). The Trustee is not subject to regulation under the CEA or by the CFTC or NFA and is not required to deliver a disclosure document prepared in accordance with Rules 4.24 and 4.25 under the CEA or a Certified Annual Report to

1

participants in the Fund. Rule 4.5 does not impose any limits on the use of futures contracts or options thereon in connection with the investment of the Fund's assets.

Each business day shall be a Valuation Date (as defined in the Declaration of Trust). The Trustee reserves the right to delay the processing of a participant's requested withdrawal from the Fund or Core Fund in order to ensure that securities liquidations will be carried out in an orderly manner. The Trustee, furthermore, may suspend valuation and withdrawal rights under certain circumstances, as more fully described in Section 4.5 of the Declaration of Trust.

Due to the combination of the effects of "as of" pricing and cash inflows to and outflows from this Fund, as well as other Commingled Funds maintained by the Trustee, the Fund may not precisely track the Index.

6.      **Permitted Classes of Units, Fees and Expenses:**

The Trustee will charge the Fund an annual audit fee and such other fees and expenses as are permitted by the Declaration of Trust. The Fund may pay the Trustee or its affiliates other fees and expenses related to the provision of bookkeeping, and accounting services, transfer agency and shareholder servicing, and other services that the Trustee may from time to time consider necessary or appropriate. To the extent the Fund invests directly in securities, the Trustee will charge the Fund custody fees as set forth on the attached schedule. Should the Fund invest primarily in units of the Core Fund or Commingled Funds maintained by the Trustee, the Trustee will charge the Fund an annual administration fee equal to $25,000.

The Trustee shall have the authority to establish from time to time unlimited Classes of Units of the Fund and to issue from time to time an unlimited number of Units of any such Class of the Fund, each of which shall have the rights, privileges and obligations set forth in the Class Description for such Class. The Trustee may in its discretion from time to time add, delete, amend or otherwise modify a Class of Units of the Fund, and the Trustee shall not be obligated or required to notify any Participants in the Fund of such addition, deletion, amendment or modification, other than the then current Participants in the affected Class as required in Section 3.2 of the Declaration of Trust. Each Participant in the Fund will only receive a copy of the Class Description for the Class in which such Participant participates.

Each Class of Units of the Fund will be charged such fees and expenses as are permitted by the Declaration of Trust and as are described in the Class Description for such Class. Each Class of Units of the Fund will also be charged its allocable share of the fees and expenses borne by the Fund that are not allocable to a specific Class.

With respect to the Fund assets invested in the Affiliated Mutual Funds, the Fund will indirectly incur management fees and other charges which currently do not exceed fifty-three (53) basis points. The Trustee will waive the allocable portion of each participant's management fee for the Fund that is attributable to such investment of cash in any of the Affiliated Mutual Funds.

**STATE STREET BANK AND TRUST COMPANY**

By: _____

Name:   *Mark D. Hoefel*

Title:   *Managing Director*

## Schedule of Custody Charges

The Trustee will charge the Fund an annual custody fee equal to 2.0 basis points of the net asset value of the Fund and transaction fees equal to $12 per Fund transaction.

**STATE STREET BANK AND TRUST COMPANY**
**INVESTMENT FUNDS FOR TAX EXEMPT RETIREMENT PLANS**

**CLASS DESCRIPTION**
**(CLASS A)**

*TREASURY INFLATION PROTECTED SECURITIES INDEX*
*NON-LENDING SERIES FUND*

*(the "Fund")*

Pursuant to Section 3.2 of the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans, dated August 15, 2005 and effective as of October 1, 2005 (the "Declaration of Trust"), which authorizes State Street Bank and Trust Company (the "Trustee") to divide an investment fund established thereunder, including the Fund, into one or more Classes of Units representing beneficial interests in such Fund with differing fee and expense obligations, the Trustee hereby declares that the Fund shall have the authority to issue Units in the following Class ("Class A"). Class A shall have the rights, privileges and obligations set forth below. Capitalized terms used and not otherwise defined shall have the meanings set forth in the Declaration of Trust.

Eligibility for a Qualified Trust to invest in Units of Class A shall be determined based upon:

Any Qualified Trust is eligible to invest in Class A.

Class A will be charged an annual administration fee equal to $25,000. Class A will also be charged such other fees and expenses as are permitted by the Declaration of Trust and as are described below:

Class A will also be charged its allocable share of the fees and expenses borne by the Fund that are not specially allocated to one or more other Classes.

**STATE STREET BANK AND TRUST COMPANY**

By: _____
Name: Timothy Connolly
Title: Sr. Principal

## EXHIBIT B-17

## INVESTMENT ST RATEGY GUIDELINES

Emerging Markets Index Fund

A.    Investment Objectives.

The investment objective of the Emerging Markets Index Fund (the "Emerging Markets Fund") Investment Account ("Investment Account") is to provide daily responsiveness to participants pursuant to the Plan while attempting to match the investment return of the Morgan Stanley Capital International Emerging Markets Free Index ("Emerging Market Free Index") after the inclusion of all fees and expenses and while providing participants the ability to purchase and redeem units on an "as of" basis.

B.    Investment Strategy.

The Emerging Markets Fund is a well diversified fund which offers participants in the Plan an interest in the Investment Manager's  Daily Emerging Markets Index Non-Lending Series Fund – Class T ("SSgA Emerging Markets Index Fund"), a commingled fund designed to track the investment returns of the Emerging Market Free Index.  The SSgA Emerging Markets Index Fund is governed by and subject to the objectives and criteria set forth in the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans dated August 15, 2005, (the "Declaration of Trust"), and respective Fund Declaration (the Declaration of Trust and the respective Fund Declaration are referred to herein as the "Fund Documents"). The Declaration of Trust has been heretofore delivered to the Investment Committee and the Fund Declaration for the SSgA Emerging Markets Index Fund is attached to this Exhibit B-17 as Attachment B-17.  In the event that there is a conflict between these Investment Strategy Guidelines and the governing Fund Documents, the Fund Documents shall supersede and govern.  The Investment Manager shall notify the Investment Committee of any changes to the Fund Documents as set forth in those documents.

The Investment Manager will keep abreast of new initiatives and be prepared to consult with the Investment Committee about the possibility of using such new initiatives.

C.    Return Objective.

The performance objective for the Investment Account is to provide an investment return which replicates the return (i.e. provides minimal tracking error) of the Investment Account Benchmark (as defined below) and mirrors the risk profile of the underlying Investment Account Benchmark after inclusion of all fees and expenses.  The total risk as measured by the annualized standard deviation of the investment return over rolling 3 year periods should fall within a range of 98-102% of the total risk of the Investment Account Benchmark measured over the same period.  The residual risk, or tracking error, shall be measured as the annualized standard deviation of the difference in returns

between the Investment Account and the Investment Account Benchmark over rolling 3 year periods.  It is anticipated that the tracking error for the Investment Account shall be in a range of 50 basis points to100 basis points.

The Investment Account Benchmark shall be the total return of the Emerging Market Free Index.

D.    Liquidity.

The Investment Manager will primarily utilize late trade notification funds in order to meet participant activity levels, but reserves the right to use a combination of cash and equity derivatives (futures and options) in addition to the underlying commingled fund if participant activity warrants it.

E.    Restrictions and Standards.

The Investment Manager may not lend assets of the SSgA Emerging Markets Index Fund.

F.    Amendments.

The Investment Strategy Guidelines may be revised or altered by mutual agreement of the Investment Committee and the Investment Manager if the Investment Manager (i) recommends to the Investment Committee that such revision or alteration is necessary for the proper articulation of the Investment Manager's strategy, (ii) recognizes changes in domestic or global market conditions, or (iii) recognizes any changes in conditions of risk.  It is acknowledged by the Investment Committee and the Investment Manager that these Guidelines shall govern the Investment Manager's management of the Investment Account for all purposes, except to the extent of any conflict with the Fund Documents as set forth in Section B above.  Any discrepancies, inconsistencies or questions that the Investment Manager has in connection with complying with the Guidelines must be immediately communicated to the Investment Committee prior to any execution of trades, contracts or other agreements that may bind the Investment Account.

G.    Reporting

The Investment Manager shall provide reports regarding the performance of the Investment Account in such form and at such intervals as shall be required by the Investment Committee.  All such reports shall be true and correct and shall not contain any material misstatement or omission.

H.   <u>Compliance Statements</u>

In addition to the reports required by other sections of the Agreement and these Guidelines, not less than quarterly or at such times as the Investment Committee shall request, the Investment Manager will provide the Investment Committee a written report as to compliance by the Investment Manager with the terms of the Agreement and these Guidelines, the form of which shall be agreed upon between the Investment Committee and the Investment Manager.   The Investment Committee, if it requests, may supplement such report with meetings, telephone calls and   other   forms   of communication in which representatives of the Investment Committee have an opportunity to ask questions about the report and the Investment Manager's activities with respect to the Investment Account.

**ATTACHMENT B-17**


**FUND DECLARATION**

STATE STREET BANK AND TRUST COMPANY
INVESTMENT FUNDS FOR TAX EXEMPT RETIREMENT PLANS

AMENDED FUND DECLARATION

*DAILY EMERGING MARKETS INDEX NON-LENDING SERIES FUND*
*(the "Fund")*

Pursuant to Articles III and VII of the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans, dated August 15, 2005 and effective as of October 1, 2005 (the "Declaration of Trust"), State Street Bank and Trust Company (the "Trustee"), by its execution of this Amended Fund Declaration, hereby amends and restates the Amendment and Fund Declaration of the Fund.  The Trustee agrees that it will hold, administer and deal with all money and property received by it as Trustee of the Fund in accordance with the terms of the Declaration of Trust, subject to the additional terms and conditions set forth in this Amended Fund Declaration.  Capitalized terms used and not otherwise defined shall have the meanings set forth in the Declaration of Trust.

1.     **Name of the Fund:**

   *Daily Emerging Markets Index Non-Lending Series Fund*

2.     **Effective Date of the Amendment and Fund Declaration:**

   June 15, 2007

3.     **Investment Objective of the Fund:**

   The Investment Objective of the Fund shall be to match, as closely as possible, the performance of the Morgan Stanley Capital International Emerging Markets Free Index$^{SM}$ (the "Index"), while providing participants the ability to purchase and redeem units on an "as of" basis

4.     **Permitted Categories of Assets and Investment Strategy of the Fund:**

   The Fund seeks to achieve its objective by investing primarily in units of the Daily Emerging Markets Index$^{SM}$ Fund (the "Core Fund"), a bank commingled fund maintained by the Trustee, the Fund Declaration of which is attached hereto.

   The Fund may invest excess cash in short-term securities and instruments including, but not limited to the Short Term Investment Fund ("STIF") or other short-term cash funds maintained by the Trustee, as well as shares of the SSgA Money Market Fund and the SSgA Yield Plus Fund (the "Mutual Funds"), short-term registered mutual funds for which an affiliate of the Trustee acts as investment advisor.

1

5.    **Operating Features:**

Because the Fund is a qualifying entity under the rules of the Commodity Futures Trading Commission (the "CFTC"), the Trustee, as a trust company subject to regulation of the Commonwealth of Massachusetts, is exempt from registration with the CFTC and the National Futures Association (the "NFA") as a commodity pool operator in connection with the Trustee's operation of the Fund pursuant to an exemption under Rule 4.5 promulgated pursuant to the Commodity Exchange Act (the "CEA"). The Trustee is not subject to regulation under the CEA or by the CFTC or NFA and is not required to deliver a disclosure document prepared in accordance with Rules 4.24 and 4.25 under the CEA or a Certified Annual Report to participants in the Fund. Rule 4.5 does not impose any limits on the use of futures contracts or options thereon in connection with the investment of the Fund's assets.

The Trustee shall monitor the Turnover Rate (as defined below) for each Participant or the account of a third party administrator which aggregates accounts of Participants (each, a "Participating Account") in the Fund. In the event that a Participating Account does not provide the Trustee with written notification of a Significant Plan Event (as defined below) at least two business days prior to such event, and the Turnover Rate for a Participating Account exceeds 20% for the previous 30 day rolling period, the Trustee shall notify the Participating Account in writing. The Participating Account shall have 45 days from receipt of such notice to implement a plan satisfactory to the Trustee which is reasonably designed to limit such Participating Account's Turnover Rate to below 20%. If the Participating Account fails to do so within such 45 day period, the Trustee shall terminate the Participating Account's participation in the Fund within 15 days, regardless of any other limitations or termination provisions found in any agreements between the Trustee and the Participating Account.

"Turnover Rate" for any 30-day period shall be determined by taking the absolute sum of the dollar amount of all purchases and sales of Fund units made by the Participating Account over that period, dividing that number by two, and dividing the result by the average daily market value of the Participating Account's assets in the Fund over the 30 day period.

"Significant Plan Event" means any event primarily caused by the sponsor of the Participating Account and not by any individual plan participants, such as annual payroll contributions or the conversion of new participants to the Participating Account.

Each business day shall be a Valuation Date (as defined in the Declaration of Trust). The Trustee reserves the right to delay the processing of a participant's requested withdrawal from the Core Fund in order to ensure that securities liquidations will be carried out in an orderly manner. The Trustee, furthermore, may suspend valuation and withdrawal rights under certain circumstances, as more fully described in Section 4.5 of the Declaration of Trust.

LIBB/1341885.2

Due to the combination of the effects of "as of" pricing and cash inflows to and outflows from this Fund, as well as other commingled funds maintained by the Trustee which directly or indirectly purchase units of the Core Fund, the Fund may not precisely track the Index.

6.  **Permitted Classes of Units, Fees and Expenses:**

The Fund will be charged an annual audit fee and such other fees and expenses as are permitted by the Declaration of Trust.

The Trustee shall have the authority to establish from time to time unlimited Classes of Units of the Fund and to issue from time to time an unlimited number of Units of any such Class of the Fund, each of which shall have the rights, privileges and obligations set forth in the Class Description for such Class. The Trustee may in its discretion from time to time add, delete, amend or otherwise modify a Class of Units of the Fund, and the Trustee shall not be obligated or required to notify any Participants in the Fund of such addition, deletion, amendment or modification, other than the then current Participants in the affected Class as required in Section 3.2 of the Declaration of Trust. Each Participant in the Fund will only receive a copy of the Class Description for the Class in which such Participant participates.

Each Class of Units of the Fund will be charged such fees and expenses as are permitted by the Declaration of Trust and as are described in the Class Description for such Class. Each Class of Units of the Fund will also be charged its allocable share of the fees and expenses borne by the Fund that are not allocable to a specific Class.

With respect to the Fund assets invested in the Mutual Funds, the Fund will indirectly incur management fees and other charges which currently do not exceed fifty-nine (59) basis points. The Trustee will waive the allocable portion of each participant's management fee for the Fund that is attributable to such investment of cash in any of the Mutual Funds.

Participants of the Core Fund will be charged transaction fees with respect to any cash contribution or withdrawal which exceeds five percent (5%) of the Core Fund's assets. However, such fees will be waived in the event that the Core Fund's net participant activity (net of total contributions and withdrawals, excluding in-kind transfers) on any day is less than 5% of the Core Fund's assets. In each case, the 5% calculation will be based upon the Core Fund's net asset value as of the prior Valuation Date. Such transaction fees shall be equal to seventy-five (75) basis points of such contributions or withdrawals and shall be credited to the Core Fund.

**STATE STREET BANK AND TRUST COMPANY**

**By:** _____

**Name: Peter O'Connell**
**Title: Sr. Managing Director**

The MSCI Emerging Markets Free Index[SM] is a trademark of Morgan Stanley Capital International.

3

## STATE STREET BANK AND TRUST COMPANY
## INVESTMENT FUNDS FOR TAX EXEMPT RETIREMENT PLANS

### CLASS DESCRIPTION
### (CLASS T)

### *DAILY EMERGING MARKETS INDEX NON-LENDING SERIES FUND*

#### *(the "Fund")*

Pursuant to Section 3.2 of the Fourth Amended and Restated Declaration of Trust for the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans, dated August 15, 2005 and effective as of October 1, 2005 (the "Declaration of Trust"), which authorizes State Street Bank and Trust Company (the "Trustee") to divide an investment fund established thereunder, including the Fund, into one or more Classes of Units representing beneficial interests in such Fund with differing fee and expense obligations, the Trustee hereby declares that the Fund shall have the authority to issue Units in the following Class ("Class T"). Class T shall have the rights, privileges and obligations set forth below. Capitalized terms used and not otherwise defined shall have the meanings set forth in the Declaration of Trust.

Eligibility for a Qualified Trust to invest in Units of Class T shall be determined based upon:

Any Qualified Trust which desires to provide its participants with the ability to purchase and redeem Units on an "as of" basis is eligible to invest in Class T.

Class T will be charged an annual administration fee equal to $25,000. Class T will also be charged such other fees and expenses as are permitted by the Declaration of Trust and as are described below:

Class T will also be charged its allocable share of the fees and expenses borne by the Fund that are not specially allocated to one or more other Classes.

**STATE STREET BANK AND TRUST COMPANY**

By: _____

Name:  *Timothy Connolly*

Title:  *Sr. Principal*

1

**EXHIBIT F-15**

**COMPUTATION OF INVESTMENT MANAGEMENT FEES**

World Government Bond Index Fund – Ex U.S.

The annual Investment Management Fee shall be equal to .05% flat fee of the net asset value of the Investment Account per annum.

 The market value of the Investment Account shall be computed on a daily basis as provided in Section 6(a) of this Agreement and Exhibit C to this Agreement. One fourth of the annual Investment Management Fee shall be billed in arrears on a quarterly basis, with such quarterly amounts to be calculated based upon the average daily net asset value of Investment Account under management by the Investment Manager. The Investment Committee will provide Investment Manager with the average daily net asset value of the Investment Account on a monthly basis.

The bills shall be forwarded to the Investment Committee for approval. Upon approval, the Investment Committee will direct the Trustee to pay the Management Fee out of the Investment Account. Payment is due to Investment Manager within thirty (30) days after receipt of invoice.

The SSgA World Series Fund will charge an annual administration fee equal to $25,000. Custody charges for SSgA domestic funds may be assessed against the funds unless passed out to contributing/redeeming clients through the purchase/redemption value process. Custody charges are subject to change without notice.

**EXHIBIT F-16**

**<u>COMPUTATION OF INVEST MENT MANAGEMENT FEES</u>**

U.S. Treasury Inflation Protected Securities (TIPS) Bond Fund

The annual Investment Management Fee shall be equal to .05% flat fee of the net asset value of the Investment Account per annum for the first $100 million in assets and .04% on the assets in excess of $100 million.

The market value of the Investment Account shall be computed on a daily basis as provided in Section 6(a) of this Agreement and Exhibit C to this Agreement. One fourth of the annual Investment Management Fee shall be billed in arrears on a quarterly basis, with such quarterly amounts to be calculated based upon the average daily net asset value of Investment Account under management by the Investment Manager. The Investment Committee will provide Investment Manager with the average daily net asset value of the Investment Account on a monthly basis.

The bills shall be forwarded to the Investment Committee for approval. Upon approval, the Investment Committee will direct the Trustee to pay the Management Fee out of the Investment Account. Payment is due to Investment Manager within thirty (30) days after receipt of invoice.

The SSgA TIPS Index Fund will charge an annual administration fee equal to $25,000. Custody charges for SSgA domestic funds may be assessed against the funds unless passed out to contributing/redeeming clients through the purchase/redemption value process. Custody charges are subject to change without notice.

EXHIBIT F-7

## COMPUTATION OF INVESTMENT MANAGEMENT FEES

Emerging Markets Index Fund

The annual Investment Management Fee shall be equal to .10 % flat fee of the net asset value of the Investment Account per annum.

The market value of the Investment Account shall be computed on a daily basis as provided in Section 6(a) of this Agreement and Exhibit C to this Agreement.  One fourth of the annual Investment Management Fee shall be billed in arrears on a quarterly basis, with such quarterly amounts to be calculated based upon the average daily net asset value of Investment Account under management by the Investment Manager.  The Investment Committee will provide Investment Manager with the average daily net asset value of the Investment Account on a monthly basis.

The bills shall be forwarded to the Investment Committee for approval.  Upon approval, the Investment Committee will direct the Trustee to pay the Management Fee out of the Investment Account.  Payment is due to Investment Manager within thirty (30) days after receipt of invoice.

The SSgA Emerging Markets Index Fund will charge an annual administration fee equal to $25,000. Custody charges for SSgA domestic funds may be assessed against those funds unless passed out to contributing/redeeming clients through the purchase/redemption value process. Custody charges are subject to change without notice.