EXHIBIT N

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 20-F

(Mark One)

☐ **REGISTRATION STATEMENT PURSUANT TO SECTION 12(b) or (g) OF THE SECURITIES EXCHANGE ACT OF 1934**

OR

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended 31 December 2008**

OR

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

OR

☐ **SHELL COMPANY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**Commission file number: 1-6262**

# BP p.l.c.
(Exact name of Registrant as specified in its charter)

**England and Wales**
(Jurisdiction of incorporation or organization)

**1 St James's Square,
London SW1Y 4PD
United Kingdom**
(Address of principal executive offices)

**Dr Byron E Grote
BP p.l.c. 1 St James's Square,
London SW1Y 4PD
United Kingdom
Tel +44 (0) 20 7496 4000
Fax +44 (0) 20 7496 4630**
(Name, Telephone, E-mail and/or Facsimile number and Address of Company Contact Person)

| Title of each class | Name of each exchange on which registered |
|---|---|
| Ordinary Shares of 25c each | New York Stock Exchange* |
| 4 7/8% Guaranteed Notes due 2010 | New York Stock Exchange |
| Floating Rate Guaranteed Extendible Notes | New York Stock Exchange |
| Floating Rate Guaranteed Notes due 2010 | New York Stock Exchange |
| Substitute Floating Rate Guaranteed Notes due July 10 2009 | New York Stock Exchange |
| Substitute Floating Rate Guaranteed Notes due October 9 2009 | New York Stock Exchange |
| 5.25% Guaranteed Notes due 2013 | New York Stock Exchange |

*Not for trading, but only in connection with the registration of American Depositary Shares, pursuant to the requirements of the Securities and Exchange Commission

Securities registered or to be registered pursuant to Section 12(g) of the Act.
**None**

Securities for which there is a reporting obligation pursuant to Section 15(d) of the Act.
**None**

Indicate the number of outstanding shares of each of the issuer's classes of capital or common stock as of the close of the period covered by the annual report.

| | |
|---|---:|
| **Ordinary Shares of 25c each** | **18,730,307,315** |
| **Cumulative First Preference Shares of £1 each** | **7,232,838** |
| **Cumulative Second Preference Shares of £1 each** | **5,473,414** |

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.

Yes ☒   No ☐

If this report is an annual or transition report, indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934.

Yes ☐   No ☒

Note – Checking the box above will not relieve any registrant required to file reports pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 from their obligations under those Sections.

Indicate by check mark whether the Registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the Registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.

Yes ☒   No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of ''accelerated filer and large accelerated filer'' in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ☒         Accelerated filer ☐         Non-accelerated filer ☐

Indicate by check mark which basis of accounting the registrant has used to prepare the financial statements included in this filing: International Financial Reporting Standards as issued by the

U.S. GAAP ☐     International Accounting Standards Board ☒     Other ☐

If "Other" has been checked in response to the previous question, indicate by check mark which financial statement item the registrant has elected to follow.

Item 17 ☐   Item 18 ☐

If this is an annual report, indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).

Yes ☐   No ☒

# Cross reference to Form 20-F

|  |  | Page |
|---|---|---|
| Item 1. | Identity of Directors, Senior Management and Advisors | n/a |
| Item 2. | Offer Statistics and Expected Timetable | n/a |
| Item 3. | Key Information |  |
|  | A. Selected financial data | 6 |
|  | B. Capitalization and indebtedness | n/a |
|  | C. Reasons for the offer and use of proceeds | n/a |
|  | D. Risk factors | 8-10 |
| Item 4. | Information on the Company |  |
|  | A. History and development of the company | 11-12 |
|  | B. Business overview | 13-45 |
|  | C. Organizational structure | 45 |
|  | Appendix A to Item 4D | 7, 16-18, 185-190, 192 |
|  | D. Property, plants and equipment | 45 |
| Item 4A. | Unresolved Staff Comments | None |
| Item 5. | Operating and Financial Review and Prospects |  |
|  | A. Operating results | 46-53 |
|  | B. Liquidity and capital resources | 54 |
|  | C. Research and development, patent and licenses | 36,130 |
|  | D. Trend information | 54-55 |
|  | E. Off-balance sheet arrangements | 55-56 |
|  | F. Tabular disclosure of contractual commitments | 56 |
|  | G. Safe harbour | 10 |
| Item 6. | Directors, Senior Management and Employees |  |
|  | A. Directors and senior management | 62-64 |
|  | B. Compensation | 73-83, 170-171 |
|  | C. Board practices | 61-71, 62, 81, 170-171 |
|  | D. Employees | 44-45 |
|  | E. Share ownership | 72, 79-80, 86-87, 166-170 |
| Item 7. | Major Shareholders and Related Party Transactions |  |
|  | A. Major shareholders | 87 |
|  | B. Related party transactions | 88, 138-139 |
|  | C. Interests of experts and counsel | n/a |
| Item 8. | Financial Information |  |
|  | A. Consolidated financial statements and other financial information | 88-89, 99-193 |
|  | B. Significant changes | None |
| Item 9. | The Offer and Listing |  |
|  | A. Offer and listing details | 89-90 |
|  | B. Plan of distribution | n/a |
|  | C. Markets | 89-90 |
|  | D. Selling shareholders | n/a |
|  | E. Dilution | n/a |
|  | F. Expenses of the issue | n/a |
| Item 10. | Additional Information |  |
|  | A. Share capital | n/a |
|  | B. Memorandum and articles of association | 91-92 |
|  | C. Material contracts | None |
|  | D. Exchange controls | 92 |
|  | E. Taxation | 92-94 |
|  | F. Dividends and paying agents | n/a |
|  | G. Statements by experts | n/a |
|  | H. Documents on display | 94 |
|  | l. Subsidiary information | n/a |
| Item 11. | Quantitative and Qualitative Disclosures about Market Risk | 140-145, 148-153 |
| Item 12. | Description of securities other than equity securities | n/a |
| Item 13. | Defaults, Dividend Arrearages and Delinquencies | None |
| Item 14. | Material Modifications to the Rights of Security Holders and Use of Proceeds | 94 |
| Item 15. | Controls and Procedures | 94-95 |
| Item 16A. | Audit Committee Financial Expert | 95 |
| Item 16B. | Code of Ethics | 95 |
| Item 16C. | Principal Accountant Fees and Services | 95 |
| Item 16D. | Exemptions from the Listing Standards for Audit Committees | n/a |
| Item 16E. | Purchases of Equity Securities by the Issuer and Affiliated Purchases | 97 |
| Item 16G | Corporate governance practices | 95-96 |
| Item 17. | Financial Statements | n/a |
| Item 18. | Financial Statements | 16-18, 99-193 |
| Item 19. | Exhibits | 98 |

**Performance indicators**
We have well-developed systems, processes and metrics for reporting personal safety and environmental metrics that support internal performance management as well as public reporting.

We introduced several new metrics in 2008 that aim to enhance our monitoring of process safety performance within BP's operating entities. These include, for example, a process safety incident index, as recommended by the panel, which uses weighted severity scores to record and assess process safety events, and a measure to record any loss of hydrocarbon from primary containment.

Our indicators include industry-aligned 'lagging' process safety metrics that register events that have already occurred, and 'leading' indicators that focus on the strength of our controls to prevent undesired events in future. A suite of indicators is regularly reported to the GORC within the quarterly 'HSE and Operations Integrity Report' and several new metrics have also been piloted. To further enhance the management of health risks across the group, we began the systematic reporting of recordable illness rates within the HSE and Operations Integrity Report. We continue to work with industry bodies such as the Centre for Chemical Process Safety and the American Petroleum Institute on the development of process safety metrics, definitions and guidance.

**Continuing to focus on health**
In addition to our efforts to improve process safety performance, we strive to protect the personal health and safety of our workforce, recognizing that healthy performance is delivered through healthy people, healthy processes and healthy plant.

In the course of 2008, we defined health 'group essentials', which specify requirements designed to prevent harm to the health of employees, contractors, visitors and local communities. These were incorporated within the OMS framework. Our health strategy and plan was also refreshed in 2008. Priorities include reducing significant occupational exposure and infectious disease risks, maintaining robust regulatory compliance in product health and safety and addressing the issue of fatigue management raised by the panel by providing training and awareness-raising.

# Environment

**Regulation and claims**
We are subject to extensive international, national, state and local environmental regulations concerning our products, operations and activities. Current and proposed fuel and product specifications, emission controls and climate change programmes under a number of environmental laws will have a significant effect on the production, sale and profitability of many of our products. Environmental laws also require us to remediate the environmental impacts of prior disposal or releases of chemicals or petroleum substances by the group or other parties. Such contingencies may exist for various locations where products are, or have been, produced, processed, stored, distributed, sold or disposed of, such as refineries, chemical plants, natural gas processing plants, oil and natural gas fields, service stations, terminals and waste disposal sites. Some of these obligations relate to prior asset sales or closed facilities. Provisions for environmental restoration and remediation are made when a clean-up is probable and the amount of the obligation can be reliably estimated. Generally this coincides with commitment to a formal plan of action or, if earlier, on divestment or on closure of inactive sites. The provisions made are considered by management to be sufficient to meet known requirements.

The extent and cost of future environmental restoration, remediation and abatement programmes are often inherently difficult to estimate. They often depend on the extent of contamination, and the associated impact and timing of the corrective actions required, technological feasibility and BP's share of liability. Though the costs of future programmes could be significant and may be material to the results of operations in the period in which they are recognized, it is not expected that such costs will be material to the group's overall results of operations or financial position or liquidity. See Financial statements – Note 37 on page 156 for the amounts provided in respect of environmental remediation and decommissioning.

We are also subject to environmental and common law claims for personal injury and property damage alleging the release or exposure to hazardous substances. A number of proceedings involving governmental authorities are pending or known to be contemplated against BP and certain of its subsidiaries under federal, state or local environmental laws, each of which could result in monetary sanctions of $100,000 or more. No individual proceeding is, nor are the proceedings in aggregate, expected to be material to the group's results of operations or financial position.

We cannot accurately predict the effect of future developments, such as stricter environmental laws or enforcement policies on the group's operations, products or profitability. A risk of increased environmental costs and operational impacts is inherent in grouping our businesses and there can be no assurance that material liabilities and costs will not be incurred in the future. We believe that the group's activities are in material compliance with applicable environmental laws and regulations, or that the group has disclosed such non-compliance and is working with the relevant regulatory authorities to ensure compliance. For a discussion of the group's environmental expenditure see page 53.

BP operates in more than 90 countries worldwide. In each of these areas, BP has, or is developing, processes designed to ensure compliance with applicable regulations. In addition, each employee is required to comply with BP health, safety and environmental policies as embedded in the BP code of conduct. Our partners, suppliers and contractors are also encouraged to adopt them.

This Environment section focuses primarily on the US and the EU, where around 61% of our fixed assets are located, and on issues of a global nature such as our operations and the environment, climate change programmes and maritime oil spills regulations.

**Our operations and the environment**
During 2008, we continued to use environmental management systems to seek improvements on a wide range of environmental issues. Except at two locations, the operations at our major operating sites are covered

**EXHIBIT 12 — Rule 13a — 14(a) Certificates**

I, Dr AB Hayward, certify that:

1. I have reviewed this annual report on Form 20-F of BP p.l.c.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the company as of, and for, the periods presented in this report;

4. The company's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the company and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the company, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the company's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the company's internal control over financial reporting that occurred during the period covered by the annual report that has materially affected, or is reasonably likely to materially affect, the company's internal control over financial reporting; and

5. The company's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the company's auditors and the audit committee of the company's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the company's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the company's internal control over financial reporting.

Dated: 4 March 2009
/s/ DR AB HAYWARD
Dr AB Hayward
Group Chief Executive

I, Byron E. Grote, certify that:

1. I have reviewed this annual report on Form 20-F of BP p.l.c.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the company as of, and for, the periods presented in this report;

4. The company's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the Company and have:

    (a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the company, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    (b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    (c) Evaluated the effectiveness of the company's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    (d) Disclosed in this report any change in the company's internal control over financial reporting that occurred during the period covered by the annual report that has materially affected, or is reasonably likely to materially affect, the company's internal control over financial reporting; and

5. The company's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the company's auditors and the audit committee of the company's board of directors (or persons performing the equivalent functions);

    (a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the company's ability to record, process, summarize and report financial information; and

    (b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the company's internal control over financial reporting.

Dated: 4 March 2009

/s/ BYRON E GROTE
Byron E Grote
Chief Financial Officer

EXHIBIT 13 — Rule 13a — 14(b) Certificates Certification

**Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002**

**(Subsections (a) and (b) of Section 1350, Chapter 63 of Title 18, United States Code)**

Pursuant to section 906 of the Sarbanes-Oxley Act of 2002 (subsections (a) and (b) of section 1350, chapter 63 of title 18, United States Code), the undersigned officer of BP p.l.c., a company incorporated under the laws of England and Wales (the "company"), hereby certifies, to such officer's knowledge, that:

The Annual Report on Form 20-F for the year ended December 31, 2008 (the "Report") of the company fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934 and information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the company.

Dated: 4 March 2009

/s/ DR AB HAYWARD
Dr AB Hayward
Group Chief Executive

The foregoing certification is being furnished solely pursuant to section 906 of the Sarbanes-Oxley Act of 2002 (subsections (a) and (b) of section 1350, chapter 63 of title 18, United States Code) and is not being filed as part of the Report or as a separate disclosure document.

A signed original of this written statement required by Section 906 has been provided to the company and will be retained by the company and furnished to the Securities and Exchange Commission or its staff upon request.

1

**Certification**

**Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002**

**(Subsections (a) and (b) of Section 1350, Chapter 63 of Title 18, United States Code)**

Pursuant to section 906 of the Sarbanes-Oxley Act of 2002 (subsections (a) and (b) of section 1350, chapter 63 of title 18, United States Code), the undersigned officer of BP p.l.c., a company incorporated under the laws of England and Wales (the "company"), hereby certifies, to such officer's knowledge, that:

The Annual Report on Form 20-F for the year ended December 31, 2008 (the "Report") of the company fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934 and information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the company.

Dated: 4 March 2009

/s/ BYRON E GROTE
Byron E Grote
Chief Financial Officer

The foregoing certification is being furnished solely pursuant to section 906 of the Sarbanes-Oxley Act of 2002 (subsections (a) and (b) of section 1350, chapter 63 of title 18, United States Code) and is not being filed as part of the Report or as a separate disclosure document.

A signed original of this written statement required by Section 906 has been provided to the company and will be retained by the company and furnished to the Securities and Exchange Commission or its staff upon request.

2