**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| **IN RE: BP ERISA LITIGATION** | MDL No. 4:10-md-2185<br><br>Civil Action No. 4:10-cv-04214<br>Hon. Keith P. Ellison |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS
THE FIRST AMENDED CONSOLIDATED ERISA COMPLAINT
AND TO STRIKE PLAINTIFFS' JURY DEMAND**

OF COUNSEL:
Paul J. Ondrasik, Jr. (*pro hac vice*)
Morgan D. Hodgson (*pro hac vice*)
Ryan T. Jenny (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Office: (202) 429-3000
Fax: (202) 429-3902
E-mail: pondrasik@steptoe.com
    mhodgson@steptoe.com
    rjenny@steptoe.com

Daryl A. Libow (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue N.W.
Washington, DC 20006-5805
Office: (202) 956-7500
E-mail: libowd@sullcrom.com

Richard C. Pepperman, II (*pro hac vice*)
Marc De Leeuw (*pro hac vice*)
M. David Possick
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Office: (212) 558-4000
Email: peppermanr@sullcrom.com
    deleeuwm@sullcrom.com
    possickmd@sullcrom.com

Thomas W. Taylor
Texas State Bar No. 19723875
S.D. Tex. Bar No. 3906
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, TX 77002
Office: (713) 220-4200
Fax: (713) 220-4285
E-mail: ttaylor@andrewskurth.com

*Attorney-in-Charge for Defendants
BP Corporation North America, Inc., BP p.l.c.,
BP America Inc., BP Corporation North America,
Inc.'s Board of Directors, the BP Savings Plan
Investment Oversight Committee, Lord John
Browne, Stephanie C. Moore, Gregory T.
Williamson, Thomas L. Taylor, Neil Shaw, Brian
D. Smith, Stephen J. Riney, Robert A. Malone,
Jeanne M. Johns, Anthony Hayward, Lamar
McKay, Patrick Gower, James Dupree, Richard J.
Dorazil, Corey Correnti, Marvin L. Damsma, and
Patricia H. Miller*

1

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDING ................................................................ 1

STATEMENT OF ISSUES ....................................................................................... 2

SUMMARY OF ARGUMENT ................................................................................. 3

BACKGROUND ..................................................................................................... 5

I.   The Plans ......................................................................................................... 5

   A.   General Structure ...................................................................................... 5

   B.   The BP Stock Fund ................................................................................... 6

   C.   Defendants and Their Roles, If Any, with Respect to the Plans................... 6

      1.   Corporate Entities, BPNAI's Board of Directors, and Designated Officers............. 7

      2.   Appointing Officer ............................................................................ 8

      3.   Plan Administrator ............................................................................ 8

      4.   SPIOC .............................................................................................. 9

      5.   State Street ....................................................................................... 10

APPLICABLE LEGAL STANDARDS ................................................................... 11

ARGUMENT .......................................................................................................... 12

I.   CLAIMS AGAINST CORPORATE DEFENDANTS AND INDIVIDUAL DEFENDANTS IN THEIR CAPACITIES AS BPNAI DIRECTORS AND DESIGNATED OFFICERS SHOULD BE DISMISSED BECAUSE THOSE  DEFENDANTS ARE NOT FIDUCIARIES WITH RESPECT TO THE MATTERS ALLEGED ................................. 12

   A.   The Corporate Defendants Are Not Fiduciaries with Respect to the Matters Alleged in the Complaint ......................................................................................... 14

      1.   BP and BP America .......................................................................... 14

      2.   BPNAI ............................................................................................. 15

   B.   Director and Designated Officer Defendants Are Not Fiduciaries with Respect to the Issues Alleged in the Complaint. .......................................................... 17

      1.   BPNAI Director Defendants .............................................................. 17

      2.   Designated Officer Defendants .......................................................... 19

II.   THE DUTY TO MONITOR AND CO-FIDUCIARY CLAIMS (COUNT II) SHOULD BE DISMISSED IN THEIR ENTIRETY. ............................................... 20

   A.   The Duty to Monitor Claims Should Be Dismissed. .................................. 20

   B.   The Co-Fiduciary Claims Should Be Dismissed. ...................................... 23

III.   COUNT I's INSIDER INFORMATION DUTY OF PRUDENCE CLAIM AGAINST DEFENDANT DUPREE SHOULD BE DISMISSED......................................... 24

IV. PLAINTIFFS' CLAIMS AGAINST INDIVIDUAL DEFENDANTS SHOULD BE
DISMISSED FOR ALL TIME PERIODS WHEN SUCH DEFENDANTS ARE NOT
ALLEGED TO HAVE HELD FIDUCIARY POSITIONS.................................................... 24

V.  PLAINTIFFS' CLAIM THAT DEFENDANTS SHOULD HAVE DIVESTED THE .PLANS
OF EMPLOYER STOCK BASED ON INSIDER INFORMATION FAILS. ...................... 25

VI. PLAINTIFFS LACK STANDING TO BRING CLAIMS ON BEHALF OF THE
PARTNERSHIP SAVINGS PLAN (PSP) OR DIRECT SAVINGS PLAN (DSP).............. 26

VII.THE COURT SHOULD STRIKE PLAINTIFFS' JURY TRIAL DEMAND...................... 27

CONCLUSION.................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acosta v. Pacific Enters.*,
    950 F.2d 611 (9th Cir. 1991) ..........................................................................................3, 26

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................... passim

*Bannistor v. Ullman*,
    287 F.3d 394 (5th Cir. 2002) .................................................................................2, 3, 15, 24

*Bauer-Ramazani v. Teachers Ins. & Annuity Ass'n*,
    No. 1:09-CV-190, 2013 WL 6189802 (D. Vt. Nov. 27, 2013).............................................30

*Beddall v. State St. Bank & Trust Co.*,
    137 F.3d 12 (1st Cir. 1998)............................................................................................23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................11, 19

*Borst v. Chevron*,
    36 F.3d 1308 (5th Cir. 1994) ..........................................................................................3, 28, 29

*Broadnax Mills v. Blue Cross & Blue Shield*,
    876 F. Supp. 809 at 816 (E.D. Va. 1995)............................................................................29

*Calamia v. Spivey*,
    632 F.2d 1235 (5th Cir. 1980) ..........................................................................................3, 28, 29

*Camera v. Dell Inc.*,
    No. A-13-CA-876, 2014 U.S. Dist. LEXIS 34533 (W.D. Tex. Feb. 26, 2014)......................21

*Camera v. Dell Inc.*,
    No. A-13-CA-876, 2014 U.S. Dist. LEXIS 82579 (W.D. Tex. June 17, 2014) ....................21

*Chauffeurs, Teamsters, & Helpers, Local No. 391 v. Terry*,
    494 U.S. 558 (1990)............................................................................................28, 29

*CIGNA Corp. v. Amara*,
    131 S. Ct. 1866 (U.S. 2011)............................................................................................17, 29, 30

*Cinel v. Connick*,
    15 F.3d 1338 (5th Cir. 1994) ..........................................................................................11

*Clyde A. Wilson Int'l. Investigations, Inc. v. Travelers Ins. Co.*
  959 F. Supp. 756 (S.D. Tex. 1997) ...................................................................28

*Collins v. Morgan Stanley Dean Witter,*
  224 F.3d 496 (5th Cir. 2000) ..........................................................................11

*Curtiss-Wright Corp. v. Schoonejongen,*
  514 U.S. 73 (1995) ...........................................................................................16

*Fifth Third Bancorp v. Dudenhoeffer,*
  134 S. Ct. 2459 (2014) ............................................................................. passim

*Firestone Tire & Rubber Co. v. Bruch,*
  489 U.S. 101 (1989).........................................................................................29

*Fisher v. JP Morgan Chase & Co.,*
  703 F. Supp. 2d 374 (S.D.N.Y. 2010)..............................................................14

*Fulmer v. Klein,*
  No. 3:09-CV-2354, 2012 U.S. Dist. LEXIS 186922 (N.D. Tex. Mar. 15, 2012), *aff'd,*
  *Kopp v. Klein,* 722 F.3d 327 (5th Cir. 2013) ...................................................14

*Gentilello v. Rege,*
  627 F.3d 540 (5th Cir. 2010) ..........................................................................11

*Halaris v. Viacom, Inc.,*
  No. 3:06-CV-1646, 2008 U.S. Dist. LEXIS 75557 (N.D. Tex. Aug. 19, 2008)...............12, 21

*Harold H. Huggins Realty, Inc. v. FNC, Inc.,*
  634 F.3d 787 (5th Cir. 2011) ..........................................................................26

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,*
  143 F.3d 1006 (5th Cir. 1998) ........................................................................11

*Hozier v. Midwest Fasteners, Inc.,*
  908 F.2d 1155 (3d Cir. 1990)..........................................................................16

*Hughes Aircraft Co. v. Jacobson,*
  525 U.S. 432 (1999).........................................................................................16

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.,*
  756 F. Supp. 2d 330 (S.D.N.Y. 2010)..............................................................15

*In re Calpine Corp. ERISA Litig.,*
  No. C-03-1685, 2005 U.S. Dist. LEXIS 9719 (N.D. Cal. Mar. 30, 2005)..............................22

*In re Citigroup ERISA Litig.*,
No. 07 Civ. 9790, 2009 U.S. Dist. LEXIS 78055 (S.D.N.Y. Aug. 31, 2009), *aff'd*,
*Gray v. Citigroup Inc. (In re Citigroup ERISA Litig.)*, 662 F.3d 128 (2d Cir. 2011)..............19

*In re Dynegy, Inc. ERISA Litig.*,
309 F. Supp. 2d 861 (S.D. Tex. 2004) ...................................................................2, 15, 18, 21

*In re ING Groep N.V. ERISA Litig.*,
749 F. Supp. 2d 1338 (N.D. Ga. 2010) ........................................................................ passim

*In re Nokia ERISA Litig.*,
No. 10-cv-03306, 2011 U.S. Dist. LEXIS 101265 (S.D.N.Y. Sept. 6, 2011) ........................22

*In Re RadioShack ERISA Litig.*,
547 F. Supp. 2d 606 (N.D. Tex. 2008) ..................................................................................21

*In re Reliant Energy ERISA Litig.*,
336 F. Supp. 2d 646 (S.D. Tex. 2004) ..............................................................................2, 21

*In re SLM Corp. ERISA Litig.*,
No. 08 Civ. 4334, 2010 U.S. Dist. LEXIS 109775 (S.D.N.Y. Sept. 24, 2010) .................26, 27

*In re Sprint Corp. ERISA Litig.*,
388 F. Supp. 2d 1207 (D. Kan. 2004) ...................................................................................23

*In re Syncor ERISA Litig.*,
351 F. Supp. 2d. 970 (C.D. Cal. 2004) .................................................................................23

*In re YRC Worldwide, Inc. ERISA Litig.*,
No. 09-2593-JWL, 2010 WL 4920919 (D. Kan. Nov. 29, 2010)..........................................29

*Jimenez v. Mayfield Lumber & Container Corp.*,
No. EP-11-CV-329, 2012 U.S. Dist. LEXIS 6935 (W.D. Tex. Jan. 20, 2012) .......2, 12, 13, 23

*Kendall v. Emp. Ret. Plan of Avon Prods.*,
561 F.3d 112 (2d Cir. 2009)...................................................................................................27

*Kirschbaum v. Reliant Energy, Inc.*,
526 F.3d 243 (5th Cir. 2008) ...................................................................................... passim

*Koehler v. Aetna Health Inc.*,
683 F.3d 182 (5th Cir. 2012) .................................................................................................17

*Kopp v. Klein*,
722 F.3d 327 (5th Cir. 2013) ...................................................................................2, 21, 23

*Lain v. UNUM Life Ins. Co. of Am.*,
27 F. Supp. 2d 926 (S.D. Tex. 1998) .....................................................................................28

*Loomis v. Exelon Corp.*,
   No. 06 CV 4900, 2009 U.S. Dist. LEXIS 114626 (N.D. Ill. Dec. 9, 2009), *aff'd*, 658
   F.3d 667 (7th Cir. 2011) ...................................................................................................22

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)......................................................................................................3, 27

*Middleton v. Life Ins. Co. of N. Am.*
   No. H-09-CV-3270, 2010 WL 582552 (S.D. Tex. Feb. 12, 2010) ...................................28, 29

*Morales v. Prudential Fin, Inc.*,
   No. M-08-235, 2009 WL 311109 (S.D. Tex. Feb. 5, 2009) ...................................................28

*N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*,
   782 F. Supp. 2d 294 (S.D. Tex. 2011) ................................................................................28

*Pedraza v. Coca-Cola Co.*,
   456 F. Supp. 2d 1262 (N.D. Ga. 2006) ...............................................................................21

*Pegram v. Herdrich*,
   530 U.S. 211 (2000)............................................................................................... passim

*Powell v. Dallas Morning News LP*,
   610 F. Supp. 2d 571 (N.D. Tex. 2009) ...............................................................................13

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) .............................................................................................12

*Salameh v. Provident Life & Acc. Ins. Co.*,
   23 F. Supp. 2d 704 (S.D. Tex. 1998) ............................................................................27, 28

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*,
   607 F.3d 1029 (5th Cir. 2010) ...........................................................................................11

*Siskind v. Sperry Ret. Program, Unisys*,
   47 F.3d 498 (2d Cir. 1995)................................................................................................16

*Stein v. Smith*,
   270 F. Supp. 2d 157 (D. Mass. 2003) .................................................................................23

*Van Duzer v. U.S. Bank N.A.*,
   995 F. Supp. 2d 673 (S.D. Tex. 2014) ................................................................................19

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996)..........................................................................................................18

**CONSTITUTIONS**

U.S. Const. Amend. VII.................................................................................27

**STATUTES**

29 U.S.C. § 1002(16) ..................................................................................14

29 U.S.C. § 1002(16)(A)...............................................................................8

29 U.S.C. § 1002(21)(A)..................................................................12, 13, 18

29 U.S.C. § 1002(34) ....................................................................................5

29 U.S.C. § 1102(a) ...............................................................................12, 17

29 U.S.C. § 1104(a)(2)...................................................................................6

29 U.S.C. § 1104(c) .......................................................................................5

29 U.S.C. § 1105(a) .....................................................................................23

29 U.S.C. § 1107(b)(1) ..............................................................................6, 8

29 U.S.C. § 1107(d)(3) ..................................................................................6

29 U.S.C. § 1109(b) .............................................................................3, 4, 24

29 U.S.C. § 1132(a)(2), (a)(3)..................................................................3, 26

29 U.S.C. § 1132(e)(1) .................................................................................27

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 533, 93d.................................................................................16
    *reprinted in* 1974 U.S.C.C.A.N. 4639

**RULES**

Fed. R. Civ. P. 12(b)(1)....................................................................11, 26, 12

Fed. R. Civ. P. 12(f)......................................................................................12

Fed. R. Civ. P. 39(a)(2).................................................................................12

Rule 12(b)(6)..........................................................................................11, 13

NATURE AND STAGE OF PROCEEDING

Following this Court's Memorandum and Order (Dkt. 170) partially granting Plaintiffs' motion for leave to amend, Plaintiffs filed a First Amended Consolidated ERISA Complaint (the "Complaint" or "CEC") (Dkts. 172, 173) alleging breach of ERISA fiduciary obligations in connection with the investment by four 401(k) plans sponsored by BP Corporation North America Inc. ("BPNAI") in American Depository Shares ("BP stock") of its ultimate parent BP p.l.c. ("BP"). While the Complaint has been reduced to two Counts consistent with this Court's ruling on the motion to amend, Plaintiffs again have resorted to a "shotgun" approach, broadly asserting their claims over an extended class period against numerous corporate and individual Defendants, many of whom have no conceivable connection to the purported breaches alleged in the Complaint. Named as Defendants are (a) BP, BP America Inc. ("BP America") and BPNAI (collectively "Corporate Defendants"); (b) BPNAI's Board of Directors; and (c) the Savings Plan Investment Oversight Committee ("SPIOC") for BPNAI's 401(k) plans. In addition, seventeen present or former BPNAI Board members, officers, or employees are named individually as Defendants. The proposed class period stretches over three and one half years from January 16, 2007 to June 24, 2010. Plaintiffs seek to proceed on a class action basis only as an alternative to their preferred derivative action.

Defendants respectfully seek dismissal of all claims against the Corporate Defendants, BPNAI's Board of Directors, and Designated Officer Defendants Anthony Hayward and Lord John Browne because none of these Defendants is plausibly alleged to be a "fiduciary" under ERISA. In addition, Count I should be dismissed as to Defendant James Dupree because the Complaint fails to plausibly allege that he had relevant inside information, as the Court recognized in its decision on Plaintiffs' motion to amend (Dkt. 170 at 21-22, 30 n.16). To the extent that Count I purports to assert a divestment claim, that claim is facially implausible and

should be dismissed.  Defendants also seek dismissal of Count II because the facts alleged in the Complaint do not state a plausible duty to monitor or co-fiduciary liability claim.  Any claims brought on behalf of two of the four plans at issue – the BP Partnership Savings Plan and BP DirectSave Plan – should fail for want of standing.  Finally, Plaintiffs' request for a jury trial should be stricken because Plaintiffs are not entitled to a jury trial on any of the ERISA claims asserted in the Complaint.

Defendants identified many of these deficiencies in seeking dismissal of Plaintiffs' initial Consolidated Complaint (Dkts. 88-1, 109).  Because the Court dismissed that complaint on the basis of the *Moench* presumption, it did not reach these issues.  Dkt. 116 ("Mem. Order").  For those reasons as well as those stated below, Defendants now ask the Court to dismiss these claims and Defendants and to strike Plaintiffs' jury demand.

## STATEMENT OF ISSUES

1. Should ERISA breach of fiduciary duty claims against the Corporate Defendants, and individual defendants in their capacities as BPNAI Board of Director Defendants and Designated Officer Defendants, be dismissed for failure to state a claim when the Complaint lacks well-pled allegations that those corporations and individuals were ERISA fiduciaries with respect to the matters challenged in the Complaint?  *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000); *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. 2008); *Bannistor v. Ullman*, 287 F.3d 394, 408 (5th Cir. 2002). (Counts I-II)

2. Should ERISA claims that an alleged fiduciary breached duties to monitor another fiduciary or is subject to co-fiduciary liability for another fiduciary's breach be dismissed when the Complaint fails to plead sufficient facts to support such claims against any fiduciary?  29 C.F.R. § 2509.75-8 at FR-17; *Kopp v. Klein*, 722 F.3d 327, 344 (5th Cir. 2013); *Jimenez v. Mayfield Lumber & Container Corp.*, No. EP-11-CV-329, 2012 U.S. Dist. LEXIS 6935, at *13-14 (W.D. Tex. Jan. 20, 2012); *In re Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646, 657 n.13 (S.D. Tex. 2004); *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 904 (S.D. Tex. 2004).  (Count II)

3. Should an ERISA duty of prudence claim against Defendant Dupree as an Insider Defendant be dismissed when the Complaint makes no material changes to allegations against him that the Court previously found insufficient to state a claim?  Dkt. 170 at 21-22, 30 n.16.  (Count I)

4. Should ERISA fiduciary duty claims be dismissed against a Defendant to the extent such claims seek to impose liability for breaches that allegedly occurred before the Defendant became, or after the Defendant ceased to be, a plan fiduciary?  29 U.S.C. § 1109(b); *Pegram v. Herdrich*, 530 U.S. 211, 227 (2000); *Bannistor v. Ullman*, 287 F.3d 394, 405 (5th Cir. 2002).  (Counts I-II)

5. Should Plaintiffs' claim that prudent fiduciaries should have divested BP's 401(k) plans of BP stock holdings based on insider information be dismissed as contrary to this Court's ruling on Plaintiffs' motion for leave to amend and the Supreme Court's decision in *Dudenhoeffer*?  Dkt. 170 at 24 n.13; *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2472 (2014).  (Count I)

6. Should Plaintiffs' derivative claims on behalf of two ERISA plans in which they did not participate be dismissed for want of constitutional or statutory standing? 29 U.S.C. § 1132(a)(2), (a)(3); *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992); *Acosta v. Pacific Enters.*, 950 F.2d 611, 617 (9th Cir. 1991); *In re ING Groep N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1345-46 (N.D. Ga. 2010).  (Counts I-II)

7. Should Plaintiffs' jury trial demand be stricken because under Fifth Circuit law no such right exists for ERISA breach of fiduciary duty claims?  *Borst v. Chevron*, 36 F.3d 1308, 1324 (5th Cir. 1994) (citing *Calamia v. Spivey*, 632 F.2d 1235, 1237 (5th Cir. 1980)).

## SUMMARY OF ARGUMENT

The Complaint in this litigation, commenced soon after the price of BP stock declined following the April 2010 Deepwater Horizon explosion, now consists of two Counts.  The first Count, primarily directed at certain "Insider Defendants," but also asserted against the Corporate Defendants on a *respondeat superior* theory, alleges that these Defendants violated fiduciary duties under ERISA by failing to act on the basis of allegedly negative inside corporate information to protect Plan participants from acquiring BP stock at artificially inflated prices. Plaintiffs allege that the Defendants violated their fiduciary duties by failing to take the following prospective protective measures:  (a) closing the BP Stock Fund to further investment; or (b) making a market disclosure of the inside information, which disclosure, according to the Complaint, would have corrected BP's share price.  Count II alleges derivative failure to monitor and co-fiduciary claims against all Defendants.

The claims asserted against many of the Defendants are not cognizable under ERISA.

3

- All claims against the Corporate Defendants (Counts I and II) and Designated Officer Defendants Hayward (Counts I and II) and Browne (Count II) should be dismissed in their entirety because the Complaint does not contain plausible factual allegations that they had or exercised the requisite discretionary authority or control regarding the 401(k) plans to make them ERISA fiduciaries with respect to the matters at issue.  The claims against the Corporate Defendants are further defective because no adequate basis for *respondeat superior* liability is alleged.

- Insider information prudence claims against Defendant Dupree in Count I should be dismissed because the Complaint makes no material changes to the allegations against him that the Court previously found legally insufficient.  *See* Dkt. 170 at 21-22, 30 n.16.

- Count II's failure-to-monitor claims (brought against all Defendants) should be dismissed because many Defendants either are not ERISA fiduciaries with respect to claims alleged or had no monitoring role to play.  For those defendants who arguably were fiduciaries and had a monitoring role, the Complaint contains no plausible claim that they failed to discharge their monitoring duties.

- Count II's co-fiduciary claims should be dismissed as to all Defendants because the allegations supporting those claims are too conclusory to satisfy *Iqbal/Twombly* pleading standards.  Alternatively, they should be dismissed as to all Defendants who are not adequately pled to be ERISA fiduciaries with respect to the claims alleged.

- All claims against individual Defendants should be dismissed as to breaches alleged to have occurred before a Defendant became a fiduciary or after a Defendant ceased to be one, as required by ERISA § 409(b), 29 U.S.C. § 1109(b).

- The Complaint's claims that Plan fiduciaries should have liquidated the BP stock held in the Plans on the basis of insider information should be dismissed as contrary to the rulings of the Supreme Court and this Court that ERISA's duty of prudence cannot require divestiture of employer stock because such an action would violate the securities laws.  *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2472 (2014); Dkt. 170 at 24 n.13.

- Derivative claims on behalf of two plans in which Plaintiffs are not alleged to have participated should be dismissed for want of constitutional and/or statutory standing.

- The jury trial demand should be stricken because ERISA does not provide Plaintiffs the right to trial by jury.

While many of these grounds overlap, they lead to the same conclusion – the Complaint should be significantly narrowed both in its claims and the number of Defendants sued.  Count I should be dismissed as to the Corporate Defendants and Defendant Hayward; Court II should be dismissed in its entirety; and the jury trial demand should be stricken.

# BACKGROUND

## I.    THE PLANS

### A.    General Structure

This case involves four 401(k) plans:[1] the BP Employee Savings Plan ("ESP"), BP Capital Accumulation Plan ("CAP"), BP Partnership Savings Plan ("PSP"), and BP DirectSave Plan ("DSP") (collectively, the "Plans").[2] CEC ¶ 1; Exs. A-D (2008 Plans); *see also* Ex. E, Form 11-K at 5 (June 16, 2010).[3] The Plans are individual account plans and defined contribution plans under ERISA, *i.e.*, each participant has an individual account, the value of which determines his or her plan benefit.  CEC ¶¶ 102, 103; ERISA § 3(34), 29 U.S.C. § 1002(34).[4] The Plans allow both employee contributions and employer contributions.  CEC ¶ 105; ESP §§ 3.1-3.2.  Employer-matching contributions, which are made in cash, are subject to a ceiling based on annual compensation.  *See, e.g.*, ESP § 3.4.  At all times relevant, participants had full discretion to invest their individual accounts among the Plans' many investment options[5] and could change investments on a daily basis.  ESP § 6.1; *see also* Ex. G, ESP Summary Plan Description ("SPD") at 6, 9, 16, 26-27.[6]

---

[1] No Plaintiff is or has been a participant in the PSP or DSP.

[2] For convenience and in alignment with the Complaint, Plan citations are to the 2008 restatement of the ESP (Ex. A hereto); earlier Plan documents are referenced only if their terms differ.  The ESP was amended and restated effective January 1, 2002 ("2002 ESP") and effective January 1, 2008.  Exhibit F provides a cross-index to the terms of the PSP, CAP, and DSP that conform to the 2008 ESP terms.

[3] The Court may consider documents referenced in the Complaint such as Plan documents. *See infra* at p. 11, n.16.

[4] The Plans are ERISA Section 404(c) plans, *i.e.*, participants control investment of their accounts. 29 U.S.C. § 1104(c).  Defendants reserve all defenses available to them under Section 404(c) of ERISA.

[5] The Plans offered participants at least fifteen Core Investment Options and, for most of the proposed class period, a Mutual Fund Window with approximately 185 mutual funds as options.  *See* Ex. G, ESP SPD at 26; *see also* Ex. A, ESP at Appendix 1.58; Ex. L, Master Trust at Exhibit B and Amendments 9-11, 13-14, 16-17.

[6] The Plans' design promotes diversification of participants' individual accounts (*see* ESP §§ 3.4, 6.1, 6.2), and Plan communications have emphasized the importance of diversification and singled out the risks of investing in the BP Stock Fund.  *See* Ex. H, Investment Options Guide at 6 (Aug. 2008).

### B.    The BP Stock Fund

The Plan explicitly provides for the inclusion of the BP Stock Fund as an investment option.  ESP § 1.32.[7]  The BP Stock Fund is a unitized fund consisting primarily of BP stock with a small cash/short term investment position to facilitate daily transactions.  CEC ¶ 4; *see also* Investment Options Guide at 35 (Aug. 2008) (Ex. H).  Because the Plan explicitly provides for the BP Stock Fund, the Plan satisfies the definition of an "eligible individual account plan" under Section 407(d)(3) of ERISA, 29 U.S.C. § 1107(d)(3).  As a result, the Plans' holdings of BP stock are exempt from ERISA's prudence standard to the extent it requires diversification and from ERISA limitations otherwise applicable to the holding of employer securities.  ERISA § 404(a)(2), 29 U.S.C. § 1104(a)(2); ERISA § 407(b)(1), 29 U.S.C. § 1107(b)(1).

### C.    Defendants and Their Roles, If Any, with Respect to the Plans

The Plans' governance structure is detailed in the respective Plan documents.  Through those documents, BPNAI – the Plans' employer sponsor – established roles for various parties and entities involved in the Plans.  In addition to BPNAI's role as Plan sponsor/settlor (which it could exercise through its Board of Directors or through "Designated Officers"), the Plans provided for an Appointing Officer, an Administrator, and an Investment Committee (the Savings Plan Investment Oversight Committee or "SPIOC").  The respective responsibilities of each are set forth below and on Exhibit I.[8]

---

[7] The CAP, a small closed plan for certain former Atlantic Richfield union workers, does not include a separate definition but provides that participants may direct investments to the BP Stock Fund.  Ex. B, CAP § 3.2(b).  That plan also references the Trust Agreement, which lists the Plans' investment options, including the BP Stock Fund.  *See* Master Trust Agreement at Exhibit B; CAP §§ 1.36-37.

[8] For the Court's convenience, Exhibit I explains in diagram form the Plans' governance structure.  The allocation and delegation of fiduciary duties to one person or entity under the Plans is intended to limit liability of all other fiduciaries with respect to those duties.  *See* ESP §§ 14.1(e)(1) & (g)(3).

1.      **Corporate Entities, BPNAI's Board of Directors, and Designated Officers**

As the Plans' sponsor, BPNAI established and maintains the Plans for the benefit of its employees, CEC ¶ 110; ESP § 1.72, but has no role in the administration or management of the Plans. Rather, the Plan documents limit BPNAI's authority to its right as plan settlor to amend the Plans and the power to appoint and remove the Plans' Trustee. ESP §§ 16.1, 15.1(b). Plan documents expressly provide that BPNAI's Plan amendments are made in a settlor capacity and thus are not subject to ERISA's fiduciary responsibility provisions. ESP § 16.4.

Under the Plan documents, BPNAI may exercise its settlor/non-fiduciary powers through its Board of Directors or Designated Officers. ESP § 14.5; *see also* CEC ¶¶ 122, 127. Thus, BPNAI's Board of Directors has the authority to amend the Plans in a settlor capacity. ESP §§ 16.1(a), 14.1(a), 14.1(p).[9] The Board also has authority to appoint Designated Officers, in addition to those identified in the Plans, to act on behalf of BPNAI. *See* ESP §§ 1.39, 14.1(b), 15.5. Under these Plan terms, Director Defendants (Malone, McKay, Riney, Smith, and Taylor (CEC ¶ 54)) have no fiduciary role in their capacity as BPNAI Board members with respect to Plan investments and no authority to appoint those who do have a fiduciary role.

The Plan documents similarly limit the role of "Designated Officer." ESP § 1.39. Unless they also perform another function (such as Appointing Officer), Designated Officers play a non-fiduciary, employer/plan sponsor role. They, too, have general authority to amend the Plans' terms, a non-fiduciary settlor act. ESP § 16.1(c).[10] Amendments that add or eliminate

---

[9] While the Board established the SPIOC as the named investment fiduciary for the Plans, the Board does not appoint SPIOC members and has no obligation to monitor SPIOC's activities. *See infra* at pp. 7-9, 17-18. The only party empowered to appoint SPIOC members is the Appointing Officer. ESP §§ 1.13, 14.1(c).

[10] In addition, they are authorized to perform certain narrowly-defined activities on behalf of BPNAI with respect to the Plans – none of which are at issue in this case. *See* ESP §§ 14.1(b); *see also* CEC ¶¶ 126-27.

investment options or that take other actions to limit or freeze transfers to or from such options are adopted "as directed" by the SPIOC.  ESP § 6.3.  As a result, the Designated Officer Defendants – Hayward (who is named in this lawsuit only because he is a Designated Officer) and Malone, Dorazil, and McKay in their capacities as Designated Officers (CEC ¶ 66) – had *no fiduciary role under the Plans*, much less any fiduciary role with respect to the Plans' investment options.  Indeed, the Plan documents provide that Defendants BPNAI Board members and Designated Officers *cannot* be named fiduciaries under the Plans, unless they have some other specifically-designated fiduciary role (*e.g*. Appointing Officer).  ESP § 14.1(e)(2).

Finally, the Plan documents establish *no* role, fiduciary or otherwise, for the other Corporate Defendants, BP and BP America.  The *only* Plan reference to BP is as the issuer of BP stock.  *See* ESP § 1.30.  BP America is not referenced at all.  Neither corporation plays any role in the administration or management of the Plans or in the investment of the Plans' assets.

### 2.      Appointing Officer

The Plan documents identify an Appointing Officer – BPNAI's President.  ESP § 1.13. The Appointing Officer is authorized to name or remove Named Fiduciaries, including the Plan Administrator and SPIOC members.  *Id.* § 14.1(c).  In exercising that authority, the Appointing Officer acts "on behalf of the Plan or Trust, but not on behalf of the Company."  *Id.* §14.1(a)(2). At times during the proposed class period, Defendants Malone and McKay served as Appointing Officer when each was BPNAI's President. CEC ¶¶ 44-47, 67.

### 3.      Plan Administrator

Under the Plans' "Administration" Article, the Administrator is the "administrator" as defined under ERISA Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).  *See* ESP § 14.1(m). The Administrator has authority to "control and manage the operation and administration of the Plan or the Trust," ESP § 1.5, to establish procedures and rules to administer the Plans, to make

8

final benefit determinations, and to contract with specialists to aid in Plan administration, ESP §§ 1.6, 14.1(d).  The Administrator has no authority, however, to select, retain, or remove investment options or investment managers for the Plans.  Rather, in the investment area, the Administrator's authority is limited to administrative actions "to minimize plan disruptions and to protect the interest of all Plan Participants, including disruptions caused by excessive Participant trading or for any other reason."  ESP § 6.5.[11]  The Administrators who served during the proposed class period – Defendants Dorazil and Miller (CEC ¶¶ 141, 89) – thus had no responsibilities in their Plan Administrator roles with respect to the matters at issue in this action.

## 4.  SPIOC

Authority to manage the Trust for the Plans' investment options resides with the SPIOC. ESP § 1.60.[12]  The Appointing Officer appoints the SPIOC members.  ESP §§ 1.13, 14.1(c).[13] The SPIOC is identified as the "Applicable Investment Named Fiduciary" for the Plans "with respect to any Authority or Discretion regarding the Trust."  ESP § 1.12.  Section 4.1(a) of the Master Trust provides:  "The Investment Committee, from time to time, may direct the Trustee to establish one or more Investment Funds within the Trust Fund for a Plan."  Ex. L.  The SPIOC operates in accordance with its By-Laws, which are incorporated into the Plans.  ESP § 14.1(p). The SPIOC thus has control and authority to (a) appoint, monitor, and remove the Trustee, State Street Bank and Trust; (b) select, direct, monitor and terminate external investment managers; (c) develop investment strategies and policies; and (d) direct the Trustee as to investment of

---

[11] The Administrator is permitted, for example, to establish redemption fees or rules to restrict participant rights to effectuate transactions (ESP § 6.5) and to assist with transition rules when Plan investment options change (ESP § 6.4).

[12] BPNAI's Board established the Investment Committee for the Plans to operate and manage the Trust holding the Plans' assets.  *See* ESP § 14.1(p).  With respect to the defined contribution benefit plans at issue here, the Investment Committee refers to the SPIOC.

[13] Defendants Correnti, Damsma, Dorazil, Dupree, Gower, Johns, Malone, McKay, Miller, Moore, Riney, Shaw, Smith, Taylor and Williamson are named as the "SPIOC Defendants."  CEC ¶ 88.

Trust assets.  Ex. J, SPIOC By-Laws § 1.2(a).  The SPIOC also may direct a Designated Officer to limit or freeze investments in investment options, add funding or reorganize an investment option, or add or terminate Plan investment options.  ESP § 6.3.

### 5.  State Street

As contemplated by the Plans and Trust, the SPIOC delegated authority and control over the BP Stock Fund (and several other Plan investment options) to State Street Global Advisors ("State Street") as investment manager.  *See* ESP § 14.1(g)(1); *see also* Ex. K, Investment Manager Agreement (April 5, 2000), and at Exhibit B-1.[14]  The Investment Manager Agreement with State Street expressly states that SPIOC "hereby delegates fiduciary authority to the Investment Manager."  Investment Manager Agreement at 1.  In that same agreement, State Street (a) acknowledges that it is a "fiduciary" to the Plans with respect to the BP Stock Fund; (b) agrees to discharge its duties in accordance with ERISA, including ERISA's fiduciary responsibility provisions; and (c) agrees that, subject to the terms of the Agreement, it has "full discretionary authority to manage the investment of the assets in each Investment Account." Investment Manager Agreement at Arts. 2(a), 3(a).[15]

Under the terms of the Plans, this delegation of authority to State Street significantly curtailed SPIOC's responsibilities for the BP Stock Fund.  The Plans provide that, where Plan fiduciaries delegate their fiduciary duties, ERISA liability shifts from the delegating fiduciary (here, the SPIOC) to the delegated party (here, State Street):

---

[14] *See also* Ex. L, Ninth Amendment to the Trust Agreement § 16.11 (effective Sept. 10, 2004).  The SPIOC "ceases to be an Applicable Investment Named Fiduciary . . . to the extent such Authority or Discretion has been identified or allocated to another Applicable Investment Named Fiduciary."  Ninth Amendment to the Trust Agreement § 16.4(c).

[15] The Trust Agreement also provides that the Trustee "has no duty or responsibility to . . . any Investment Account unless expressly agreed to in writing," but that once the Trustee enters into such an agreement, it has the powers and duties of an Investment Manager with regard to such an Investment Account.  Trust Agreement § 4.4.

> [T]he identification of such [delegated] Named Fiduciary will result in the
> Administrator or Investment Committee or other Named Fiduciary no longer
> being a Named Fiduciary with respect to, nor having any longer, such Authority
> or Discretion.  On and after the identification of a person as a Named Fiduciary,
> neither the Administrator nor the Investment Committee nor any other Named
> Fiduciary with respect to the Plan or Trust, will have any liability for the acts (or
> failure to act) of any such identified Named Fiduciary except to the extent of its
> co-fiduciary duty under ERISA.

ESP § 14.1(e)(1).

## APPLICABLE LEGAL STANDARDS

To survive a motion to dismiss, a complaint must allege facts stating a claim for relief that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  *Twombly*, 550 U.S. at 555 (alteration in original and citations omitted).

A court should not give weight to conclusory allegations or legal conclusions.  *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 544; *Gentilello*, 627 F.3d at 544.  A court instead assumes the truth of only well-pleaded, non-conclusory factual allegations and then determines whether such allegations "plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.  Determining "plausibility" is "context-specific."  *Id*; *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2470 (2014).  Allegations "merely consistent with a defendant's liability" are insufficient. *Iqbal*, 556 U.S. at 678, 683 (citing *Twombly*, 550 U.S. at 557, 570); *cf. Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1034 (5th Cir. 2010).[16]

Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."

---

[16] On a Rule 12(b)(6) motion, a court may examine documents to which the complaint refers and that are central to the plaintiff's claim(s), as well as matters of public record.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted).  The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

A court may strike a jury demand, on its own or an objecting party's motion, if the right to a jury trial on an issue does not exist under the applicable federal statute or the Seventh Amendment to the U.S. Constitution.  *See* Fed. R. Civ. P. 39(a)(2); Fed. R. Civ. P. 12(f).

## ARGUMENT

### I.   CLAIMS AGAINST CORPORATE DEFENDANTS AND INDIVIDUAL DEFENDANTS IN THEIR CAPACITIES AS BPNAI DIRECTORS AND DESIGNATED OFFICERS SHOULD BE DISMISSED BECAUSE THOSE DEFENDANTS ARE NOT FIDUCIARIES WITH RESPECT TO THE MATTERS ALLEGED.

The threshold question in any case alleging a breach of fiduciary duty under ERISA is whether the defendant acted as a "fiduciary" in taking the challenged action.  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *see also Jimenez v. Mayfield Lumber & Container Corp.*, No. EP-11-CV-329, 2012 U.S. Dist. LEXIS 6935, at *9-10 (W.D. Tex. Jan. 20, 2012).  "ERISA liability arises only from actions taken or duties breached in performance of ERISA obligations." *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 256 (5th Cir. 2008) (quotation omitted). Here, claims against the Corporate Defendants and individual Defendants acting in their capacities as BPNAI Directors and Designated Officers should be dismissed because those Defendants were not Plan fiduciaries and/or their limited fiduciary role is not implicated by the allegations in this case.

Under ERISA, one becomes a fiduciary with respect to specific matters by (a) being designated as a named fiduciary in a plan document or identified as a fiduciary through a plan-specified procedure (*see* ERISA § 402(a), 29 U.S.C. § 1102(a)), or (b) exercising "discretionary

12

authority" or "discretionary responsibility" over those matters.  *See* ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A); *see also* Dkt. 115 at 16; *Halaris v. Viacom, Inc.*, No. 3:06-CV-1646, 2008 U.S. Dist. LEXIS 75557, at *15 (N.D. Tex. Aug. 19, 2008) ("Fiduciary duties may arise either from the terms of the plan or from acts and practices in carrying it out").  Except for Appointing Officers and SPIOC members, Plaintiffs do not allege specific facts supporting their assertion that each Defendant was a named or functional fiduciary with respect to the Plans' investments in the BP Stock Fund or the appointment of SPIOC members.  Rather, the Complaint simply paraphrases ERISA's statutory definition of fiduciary (ERISA § 3(21)(A)), blankety asserting that Defendants were fiduciaries because they "exercised discretionary authority or control" in the administration or management of the Plans and its assets.  *See*, *e.g.,* CEC ¶¶ 44, 46, 48, 50, 52, 55, 57, 59, 69, 71, 73, 76, 78, 79, 81, 83, 85.  At other points, it simply lumps Defendants together:  "At all relevant times . . . [all Defendants] were fiduciaries within the meaning of ERISA."  CEC ¶ 324; *see also id.* ¶¶ 40, 306.  Such conclusory allegations parroting the statute simply are insufficient.  *See Iqbal*, 556 U.S. at 678-79; *Jimenez*, 2012 U.S. Dist. LEXIS 6935, at *12 ("Plaintiff must include factual information about Defendant's duties, authority, or discretion under the ESOP in order to successfully allege that Defendant was a fiduciary."); *Powell v. Dallas Morning News LP*, 610 F. Supp. 2d 571, 580 (N.D. Tex. 2009) ("[C]laims against the Committee, unsupported by underlying facts and based entirely on conclusory allegations that are insufficient to state a claim, should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6)").  Nor is the absence of supporting facts– as explained below.  Plaintiffs' allegations of fiduciary status in many cases are flatly refuted by the terms of the Plan documents.

13

## A.     The Corporate Defendants Are Not Fiduciaries with Respect to the Matters Alleged in the Complaint

### 1.     BP and BP America

BP is named as a Defendant solely as the ultimate parent of BPNAI.  The Complaint contains no well-pled factual allegation that BP exercised *any* discretionary authority or control over the Plans or the BP Stock Fund.  And, while Plaintiffs assert, in conclusory fashion, that BP "exercised discretionary authority and control with respect to the appointment of the Plans' fiduciaries, management and administration of the Plans and the Plans' assets" (CEC ¶ 93),[17] Plan documents plainly state otherwise.  The Plan documents specifically authorize the Appointing Officer to appoint Plan fiduciaries and give the Administrator and Investment Committee authority over the Plans' administration and assets.  *See* ESP § 14.1(d) & (p).  They make no reference to BP having such authority or control.

Allegations regarding BP America's fiduciary status are even weaker.  Plaintiffs assert that "BP America is designated as the claims administrator for the Plans" (CEC ¶ 94), but that assertion is demonstrably incorrect.  BP America is not even mentioned in the Plans.[18]  And, in any event, even if BP America were considered to be the claims administrator, that would not

---

[17] Plaintiffs must do more than paraphrase the statutory language.  *Fulmer v. Klein*, No. 3:09-CV-2354, 2012 U.S. Dist. LEXIS 186922, at *18 n.9 (N.D. Tex. Mar. 15, 2012) (rejecting allegation of fiduciary status where "Plaintiffs offer no factual support for this assertion. It is nothing more than the 'formulaic recitation of the elements of a cause of action' rejected in *Twombly*."), *aff'd*, *Kopp v. Klein*, 722 F.3d 327 (5th Cir. 2013) (*vacated on other grounds*, 134 S. Ct. 2900 (2014)); *In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1346 (N.D. Ga. 2010) (dismissal granted where allegations of *de facto* fiduciary status were held to be "a classic example of a 'formulaic recitation [] of the elements of a cause of action'") (quoting *Iqbal*, 556 U.S. at 678); *Fisher v. JP Morgan Chase & Co.*, 703 F. Supp. 2d 374, 382 (S.D.N.Y. 2010) ("plaintiffs have not alleged sufficient facts to create a plausible claim that JP Morgan Chase was a 'de facto' plan fiduciary, nor have the plaintiffs sufficiently alleged that the director defendants and other individual defendants had discretion over the decision to offer the JP Morgan Chase stock as an investment option to plan participants") (quoting *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"; a complaint that "offers 'labels and conclusions' or "'a formulaic recitation of the elements of a cause of action will not do.'"")).

[18] *See also* 29 U.S.C. § 1002(16) (defining the "administrator" of a Plan as "the person specifically so designated by the terms of the instrument under which the plan is operated").  Although the SPD provides a BP America mailing address for a Claims/Appeals Analyst to which formal claims can be directed, the location of that individual on BP America's premises does not make BP America the Plans' claims administrator.  In any event, this case does not in any way pertain to claims processing.

mean that BP America has any fiduciary responsibility or liability for the Plans' investment in the BP Stock Fund. "An ERISA fiduciary for one purpose is not necessarily a fiduciary for other purposes" because "fiduciary status under ERISA is not an 'all-or-nothing' concept." *Kirschbaum*, 526 F.3d at 251 (citations omitted); *see also* Dkt. 115 at 16. The claims administrator's role is to conduct "the initial review of any claim relating to a Person's eligibility to participate in the Plan" and "the appeal of all claims" relating to participant eligibility or benefit determinations (ESP § 1.26) – duties not relevant to any allegation in the Complaint.

Nor are BP or BP America proper Defendants on a *respondeat superior* theory. *See* CEC ¶¶ 22, 92-96. In this Circuit, "non-fiduciary *respondeat superior* liability attache[s] under ERISA *only* when the principal 'actively and knowingly' participated in the agent's breach." *Bannistor*, 287 F.3d at 408 (liability requires factual showing that principal had and exercised *de facto* control over agent with respect to duty at issue); *see also In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 756 F. Supp. 2d 330, 346-47 (S.D.N.Y. 2010). Here, Plaintiffs make no factual allegations of any active or knowing participation by BP or BP America in another's breach of fiduciary duty to support *respondeat superior* liability. *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 901-03 (S.D. Tex. 2004) (rejecting *respondeat superior* liability because plaintiffs failed to allege corporation and directors actively and knowingly participated in alleged breach by investment committee); *Bank of Am.*, 756 F. Supp. 2d at 347.

## 2.    BPNAI

BPNAI cannot be subject to fiduciary liability in its role as the Plans' sponsor, and Plaintiffs' assertion to the contrary (CEC ¶¶ 42, 92) is wrong as matter of law. *Dynegy*, 309 F. Supp. 2d at 899. The fact that the BPNAI established the Plans and has the authority to "amend, suspend, or modify the Plan[s]" (ESP § 16.1) does not give rise to fiduciary status. It is well established that Plan sponsors do not act as ERISA fiduciaries when designing, adopting,

15

amending, or even terminating ERISA plans.  *See Pegram*, 530 U.S. at 226 ("[A]n employer's decisions about the content of a plan are not themselves fiduciary acts."); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443-45 (1999) ("ERISA's fiduciary duty requirement simply is not implicated" where plan settlor "makes a decision regarding the form or structure of the Plan").[19] As the Fifth Circuit explained in *Kirschbaum*:

> [W]hen employers undertake actions to adopt, modify or terminate a plan, 'they do not act as fiduciaries but are analogous to the settlors of the trust.'  Viewed solely from this perspective, Kirschbaum's insistence that REI had an obligation to terminate the Common Stock Fund, cease purchasing REI stock for the Fund, and liquidate the Fund's investment in REI common stock seeks no less than systemic modifications of the Plan itself.  *Because the Plan's design was allotted to REI, as settlor, the company had no fiduciary duty concerning such terms.*

526 F.3d. at 251 (emphasis added) (citations omitted).

Plaintiffs' assertion that the Investment Options Guide gave BPNAI the authority to direct an investment manager to liquidate the BP Stock Fund (CEC ¶ 111) misstates the relevant Plan documents and cannot create fiduciary status that does not otherwise exist.  The Plan documents give it no such authority, and instead authorizes it only to make amendments in its settlor capacity.  *See* ESP §§ 6.3, 14.1(p), 15.1(b), 16.1, 16.4.[20]  The Plans also expressly limit BPNAI's ability to serve as a Plan fiduciary:  "[T]he Appointing Officer may not identify an Employer (or its board of directors), officer or employee as a Named Fiduciary, except by making any of them an Administrator or a member of the Investment Committee."  ESP

---

[19] The exemption of an employer's plan-design decisions from fiduciary review is a necessary ingredient in ERISA's legislative balance.  One of Congress's purposes in adopting ERISA was to encourage formation of benefit plans by employers. *See Siskind v. Sperry Ret. Program, Unisys*, 47 F.3d 498, 505 (2d Cir. 1995) (citing H.R. Rep. No. 533, 93d Cong., 2nd Sess. 1, *reprinted in* 1974 U.S.C.C.A.N. 4639, 4639); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1160-62 (3d Cir. 1990) (subjecting sponsor's plan design decisions to fiduciary review would sweep away "limitations so meticulously built into" ERISA's statutory scheme).  The "settlor doctrine" therefore reflects the voluntary nature of employee benefits plans under ERISA, which does not require employers to create an employee benefit plan or provide any specific level of benefits.  *See, e.g., Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995).

[20] ESP § 16.4 provides:  "Decisions regarding the design of the Plan (including any decision to amend or terminate, or not to amend or terminate the Plan) will be made in a settlor capacity and will not be governed by the fiduciary responsibility provisions of ERISA."

§ 14.1(e)(2).  The Investment Options Guide cannot trump operative Plan documents.  *See* Investment Options Guide at 76 (in event of conflict, Plan documents control); *see*, *e.g.*, *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1877-78 (U.S. 2011); *Koehler v. Aetna Health Inc.*, 683 F.3d 182, 189 (5th Cir. 2012); ERISA §402(a), 29 USC §1102(a).  Moreover, even if Plaintiffs' citation to the Investment Options Guide relates to BPNAI's ability to eliminate investment options by Plan amendment (and it does not), the power to amend the Plan is a settlor function.[21]

BPNAI also cannot be liable under a *respondeat superior* theory for the same reasons BP and BP America cannot, *supra*.  In short, Plaintiffs' conclusory allegations are insufficient to plead active or knowing participation by BPNAI in another's breach of fiduciary duty as required for *respondeat superior* liability.  BPNAI thus should be dismissed from this case.

> **B.      Director and Designated Officer Defendants Are Not Fiduciaries with Respect to the Issues Alleged in the Complaint.**
>
> **1.      BPNAI Director Defendants**

Defendants Malone, McKay, Riney, Smith and Taylor should be dismissed in their capacities as BPNAI directors for the same reasons that BPNAI should be dismissed – their power to amend the Plans on behalf of BPNAI can be taken only in a non-ERISA settlor capacity.  ESP §§ 16.1, 16.4.  The Plans do not name BPNAI's Board of Directors or its members as Plan fiduciaries or grant them authority or control with respect to the BP Stock Fund.  Under the Plan documents, a BPNAI Director cannot be a named fiduciary unless he has

---

[21] Plaintiffs' reference (CEC ¶¶ 111, 295) to Investment Options Guide language (at 35) relating to liquidation of BP ADSs in the Stock Fund has nothing to do with this action.  Because the BP Stock Fund is a unitized fund, State Street as investment manager is obligated to manage that fund such that it tracks the market price of BP stock.  The Guide, in a section entitled "*Tracking*," merely notes that BPNAI is enabled to act in the event that State Street does not engage in such tracking.  That section is thus irrelevant, as Plaintiffs do not claim that the BP Stock Fund was not tracking the market price.  And in any event Plaintiffs cannot plead a divestment/liquidation claim.  *See* Dkt. 170 at 24 n.13.

17

another fiduciary role such as Appointing Officer, SPIOC member or Administrator.  ESP
§§ 1.13, 14.1(e)(2).

In addition, the BPNAI Board has no authority to appoint or remove SPIOC members
and, thus, no fiduciary duty to monitor them.  The mere fact that the BPNAI Board receives an
annual report from the SPIOC pursuant to SPIOC By-Laws (*see* CEC ¶ 124) is irrelevant to the
Board's fiduciary status:  Board members are not ERISA fiduciaries simply because of their
corporate positions.  *See*, *e.g.*, *Dynegy*, 309 F. Supp. 2d at 899; DOL Interpretive Bulletin 75-8,
29 C.F.R. § 2509.75-8, at D-4 ("Members of the board of directors of an employer which
maintains an employee benefit plan will be fiduciaries *only to the extent that they have
responsibility for the functions* described in section 3(21)(A)") (emphasis added).  Plaintiffs'
theory impermissibly seeks to tag the Board with ERISA responsibility based on an ordinary
corporate reporting function – a proposition that would infinitely expand board liability.

Plaintiffs' *only* factual allegations as to Board Defendants concern just two Defendants –
Messrs. Malone and McKay – and those allegations focus solely on their corporate roles, not any
alleged fiduciary role.  *See* CEC ¶¶ 224, 230 (citing Malone's statements to Congress and in
press release to SEC); *id.* ¶¶ 195-196, 246, 255 (citing McKay's statements to Congress).  Such
statements, made in the regular course of business while a defendant wears his or her "corporate
hat," do not trigger ERISA fiduciary obligations or liability.  *See*, *e.g.*, *Pegram*, 530 U.S. at 225;
*Varity Corp. v. Howe*, 516 U.S. 489, 505 (1996) (statements about corporate business implicate
ERISA only if a fiduciary makes material misrepresentations to plan participants that are closely
linked to communications about plan benefits); *Kirschbaum*, 526 F.3d at 257 (defendants making
SEC filings incorporated into plan prospectus were discharging corporate duties and not acting
as ERISA fiduciaries).

## 2.    Designated Officer Defendants

For much the same reasons, this Court also should dismiss the claims brought against five Defendants (Messrs. Hayward, Browne, Dorazil, Malone, and McKay) in their capacity as Designated Officers under the Plans.[22]  Such service simply provides no basis for ERISA fiduciary status.

For Defendants Hayward and Browne, their role as Designated Officer is their *only* basis for their alleged fiduciary status.  They should be dismissed entirely because, as Designated Officers, they had no fiduciary responsibilities under the Plans' terms with respect to the BP Stock Fund or, indeed, the Plans at all.[23]  Their role was purely a corporate, settlor one, not actionable under ERISA.  Nor are they alleged to have taken any actions with respect to the Plans.  Although they are alleged to have made statements to the market, any such statements, as this Court has already held, were made in a corporate, non-ERISA capacity and cannot give rise to ERISA liability.  *See* pp. 7-8, *supra*; Mem. Order at 37-42.[24]

More generally, Plaintiffs' allegations regarding the fiduciary status of Designated Officers are conclusory legal assertions parroting ERISA's fiduciary definition that are made "on information and belief."  *See*, *e.g.*, CEC ¶ 128; *see also* ¶¶ 40, 55, 59.  Such allegations are insufficient under *Iqbal* and *Twombly*.  *See*, *e.g.*, *Van Duzer v. U.S. Bank N.A.*, 995 F. Supp. 2d 673, 689 (S.D. Tex. 2014) (holding a conclusory allegation made on information and belief insufficient to challenge a mortgage assignment);  *In re Citigroup ERISA Litig.*, No. 07 Civ.

---

[22] As noted (pp. 7-8, *supra*), Plan documents define various specific Designated Officers and provide that the BPNAI Board may appoint other such officers to act on behalf of BPNAI. *See* ESP §§ 1.39, 14.1(b), 15.5.

[23] The Plans establish a process by which through delegation the Administrator or the SPIOC can be divested of fiduciary control and authority.  *See* ESP § 14.1(g).  Plaintiffs' "upon information and belief" allegation that Designated Officers are "Investment Named Fiduciaries" and "Administrative Named Fiduciaries" (CEC ¶ 128) contradicts the Plan documents and must be disregarded.

[24] Notably, the Complaint makes no allegations against Dorazil in his capacity as Designated Officer: the sole Dorazil-specific factual allegation is a statement he allegedly made in a participant communication while allegedly acting as "Appointing Officer, Plan Administrator, and member of the SPIOC."  CEC ¶ 140.

9790, 2009 U.S. Dist. LEXIS 78055, at *34 n.4, 46-47 (S.D.N.Y. Aug. 31, 2009) (allegations of fiduciary status were "entirely conclusory" and thus inadequate), *aff'd*, *Gray v. Citigroup Inc. (In re Citigroup ERISA Litig.)*, 662 F.3d 128 (2d Cir. 2011) (abrogated on other grounds by *Dudenhoeffer*); *In re ING Groep N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1346 (N.D. Ga. 2010).  Accordingly, the claims made against all Designated Officers in their capacity as such should be dismissed for the failure to adequately allege fiduciary status.

## II.     THE DUTY TO MONITOR AND CO-FIDUCIARY CLAIMS (COUNT II) SHOULD BE DISMISSED IN THEIR ENTIRETY.

The duty to monitor and co-fiduciary liability claims against *all* Defendants in Count II are likewise deficient.  *See* CEC ¶¶ 324, 333.  As explained above, only Appointing Officers and SPIOC members arguably are ERISA fiduciaries for the matters at issue.  Consequently, Count II is improperly asserted against all other Defendants and, for this threshold defect alone, should be dismissed as to them.  Count II should also be dismissed in its entirety for failure to state a claim.

### A.     The Duty to Monitor Claims Should Be Dismissed.

The duty to monitor claim also should be dismissed against the Appointing Officers and SPIOC, the only parties that are arguably ERISA fiduciaries for the matters at issue.  A fiduciary duty to monitor arises, if at all, only where one party has appointed another to perform a fiduciary task.  29 C.F.R. § 2509.75-8, FR-17.  In such cases, the appointer may have a duty to monitor his or her appointee.  In the case of the SPIOC Defendants, the only entity that the SPIOC appointed to a fiduciary role was State Street, the ERISA investment manager for the BP Stock Fund.  But State Street is *not* a defendant in this action, and the Complaint contains *no* allegations that State Street breached any ERISA duties in connection with its management of the BP Stock Fund.  Because the SPIOC Defendants can face no fiduciary liability for failing to monitor State Street unless State Street allegedly breached its duties, the Complaint lacks the

necessary predicate for a failure to monitor claim. As this Court has already held (Mem. Order at 42), a duty to monitor claim is derivative and necessarily requires a viable fiduciary breach claim against the appointee. *See Kopp v. Klein*, 722 F.3d 327, 344 (5th Cir. 2013) (abrogated on other grounds by *Dudenhoeffer*); *Camera v. Dell Inc.*, No. A-13-CA-876, 2014 U.S. Dist. LEXIS 82579, at *17-18 (W.D. Tex. June 17, 2014) (a breach of the duty to monitor claim is a derivative claim, requiring an underlying breach of fiduciary duty to be actionable).[25]

More broadly, the Complaint lacks well-pled factual allegations against any Appointing Officer or SPIOC member (or any other Count II Defendant) that their monitoring procedures were inadequate. ERISA's duty to monitor requires as follows:

> At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan.

29 C.F.R. § 2509.75-8 at FR-17. Plaintiffs allege no facts suggesting that Appointing Officers, SPIOC Defendants or any other Defendant failed to review the performance of an appointee "[a]t reasonable intervals." *Id.*; *see also In re Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646, 657 n.13 (S.D. Tex. 2004) ("Liability based on a failure to monitor does not arise unless the appointing fiduciary failed to periodically monitor the performance of each of the [appointees]."); *Pedraza v. Coca-Cola Co.*, 456 F. Supp. 2d 1262, 1277-78 (N.D. Ga. 2006) (citing cases holding that duty to monitor under ERISA is congruent with 29 C.F.R. § 2509.75-8 at FR 17) (abrogated on other grounds).[26]

---

[25] *Accord, Camera v. Dell Inc.*, No. A-13-CA-876, 2014 U.S. Dist. LEXIS 34533, at *14 (W.D. Tex. Feb. 26, 2014); *see also Halaris*, 2008 U.S. Dist. LEXIS 75557, at *16; *In Re RadioShack ERISA Litig.*, 547 F. Supp. 2d 606, 616 (N.D. Tex. 2008).

[26] The duty to monitor claim is also insufficient because Plaintiffs allege no "red flags" that would have alerted a monitoring Defendant to intervene to protect against a fiduciary breach of an appointee. *See Dynegy*, 309 F. Supp. 2d at 904 (dismissing duty to monitor claim where complaint failed to "allege that the corporate defendants had notice that any specific appointees were incompetent or otherwise subject to replacement for cause"). Plaintiffs'

At its heart, Plaintiffs' monitoring claim conflates Counts I and II in a transparent attempt to expand liability beyond the Defendants alleged to have had "insider" knowledge and sued in Count I on that basis.  The essence of this claim is that the monitoring obligation somehow includes a duty to disclose negative inside corporate information to appointees.  CEC ¶ 330 (Defendants breached monitoring duty by "failing to ensure that the monitored fiduciaries had access to knowledge about the Company's problems" and "completely appreciated the substantial risk of investment … in the BP Stock Fund").[27]  This theory, however, provides no basis for imposing potential liability on any Defendant not alleged to have insider knowledge – they simply had no information to pass on.  Nor does it provide any basis for a claim against the "insider" Defendants different from that asserted in Count I.  *Dudenhoeffer* sets forth the standard for the potential liability of a fiduciary who allegedly possesses inside information in the employer stock context and fails to act.  As this Court recognized in ruling on Plaintiffs' motion to amend, the failure to pass on that inside information to another fiduciary who likewise would be constrained by the securities laws from acting on it is not actionable.  Dkt. 170 at p. 25, n. 14.  Accordingly, the monitoring claim should be dismissed on this basis.

---

conclusory allegation that Defendants ignored a duty to monitor (CEC ¶¶ 99, 271, 326, 330, 332) is likewise insufficient.  *See In re Nokia ERISA Litig.*, No. 10-cv-03306, 2011 U.S. Dist. LEXIS 101265, at *22 (S.D.N.Y. Sept. 6, 2011) ("Furthermore, the Complaint does not allege any specific factual basis to support Plaintiffs' conclusory allegation of a lack of legally sufficient monitoring by Defendants."); *Loomis v. Exelon Corp.*, No. 06 CV 4900, 2009 U.S. Dist. LEXIS 114626, at *15-16 (N.D. Ill. Dec. 9, 2009) (conclusory allegation that board members failed to monitor appointees insufficient), *aff'd*, 658 F.3d 667 (7th Cir. 2011); *In re Calpine Corp. ERISA Litig.*, No. C-03-1685, 2005 U.S. Dist. LEXIS 9719, at *19-20 (N.D. Cal. Mar. 30, 2005) (same).

[27] While Plaintiffs suggest other alleged elements of the monitoring obligation such as ensuring that appointees possess "the needed credentials and experience," are "knowledgeable" about Plan operations, have "adequate financial resources to do their job," have "access to outside, impartial advisors," maintain "adequate records" and the like, they nowhere allege that Defendants were somehow deficient in such respects or that such deficiencies resulted in any harm to the plan.  *See* CEC ¶ 328.  Rather, their entire claim is predicated on a duty to disclose inside information.

**B.      The Co-Fiduciary Claims Should Be Dismissed.**

The co-fiduciary claims (*see* CEC ¶¶ 281, 291, 333) should be dismissed as to all

Defendants because they are too generalized and conclusory to meet *Iqbal/Twombly* pleading

standards.  *See Iqbal*, 556 U.S. at 678-79.  Under § 405(a) of ERISA, a fiduciary may be held

liable for another fiduciary's breach of duty only under three distinct circumstances:

> (1) if he participates *knowingly* in, or *knowingly* undertakes to conceal, an act or
> omission of such other fiduciary, *knowing* such act or omission is a breach;
>
> (2) if, by his failure to comply with section 404(a)(1) in the administration of *his
> specific responsibilities which give rise to his status as a fiduciary*, he has enabled
> such other fiduciary to commit a breach; or
>
> (3) if he has *knowledge* of a breach by such other fiduciary, unless he makes
> reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a) (emphasis added).  *See also Beddall v. State St. Bank & Trust Co.*, 137 F.3d

12, 18-19 (1st Cir. 1998); *see also Kopp*, 722 F.3d at 344 (vacated on other grounds); *Jimenez*,

2012 U.S. Dist. LEXIS 6935, at *13-14.  A plaintiff must plead specific facts showing that the

requirements of one of these circumstances is satisfied.  The Complaint, however, does nothing

more than simply parrot the statute, which is not enough.[28]  It nowhere alleges facts indicating

that each Defendant had the specific and actual knowledge needed to support liability or that one

Defendant breached a duty and thereby caused another to breach his.  Rather, the Complaint

contains nothing but conclusory assertions and, thus, fails to state a claim.

---

[28] *Jimenez*, 2012 U.S. Dist. LEXIS 6935, at *14 (claim dismissed where complaint "failed to allege any
facts that would indicate Defendant knowingly aided or failed to correct" co-fiduciaries' actions); *In re ING Group*,
749 F. Supp. 2d 1338, 1352 (N.D. Ga. 2010) (co-fiduciary liability claim dismissed because complaint relied on
"conclusory statements" that "each defendant knew of the breaches by the other fiduciaries," and that "defendants
through their high ranking positions with [ING] knew or should have known that the Company's stock was an
imprudent investment.") (internal citations and alterations omitted); *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d
1207, 1230 (D. Kan. 2004) (co-fiduciary claim dismissed as inadequate – it "contain[s] no factual allegations at all,
but instead simply parrot[s] the language of the co-fiduciary liability statute"); *In re Syncor ERISA Litig.*, 351 F.
Supp. 2d 970, 988 (C.D. Cal. 2004) (holding that conclusory allegations of knowing participation not sufficient);
*Stein v. Smith*, 270 F. Supp. 2d 157, 175 (D. Mass. 2003) ("by pleading that the other defendants knew or should
have known of alleged breaches by Smith, the plaintiffs have not met the standard set forth in ERISA, which
requires an allegation of knowing participation in or facilitation of the underlying breach") (emphasis in original).

### III.    COUNT I'S INSIDER INFORMATION DUTY OF PRUDENCE CLAIM AGAINST DEFENDANT DUPREE SHOULD BE DISMISSED.

The Complaint's allegations regarding Defendant Dupree with respect to insider information are nearly identical to those made in Plaintiffs' proposed amended complaint that this Court found were inadequate to support such claim as to him. *Compare* CEC ¶¶ 7, 73-75, 198-199, 205-206, 312, *with* proposed Consolidated Amended Complaint Dkt. 152-1, 153-1 ¶¶ 6, 73-75, 211-212, 218-219, 362. The Court found insider allegations regarding Mr. Dupree "much less compelling" than those against other insider defendants and advised Plaintiffs to add "specific allegations" regarding Mr. Dupree's supposed insider knowledge. Dkt. 170 at 22. "If Plaintiffs are able to address the deficiencies in their allegations regarding Mr. Dupree's knowledge of insider information, . . . the insider information prudence claims against him may also be amended." Dkt. 170 at 30 n.16.

Plaintiffs have failed to heed the Court's admonition. The Complaint remedies none of the deficiencies that the Court identified. Consequently, the Count I insider information prudence claims alleged against Mr. Dupree should be dismissed.[29]

### IV.    PLAINTIFFS' CLAIMS AGAINST INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED FOR ALL TIME PERIODS WHEN SUCH DEFENDANTS ARE NOT ALLEGED TO HAVE HELD FIDUCIARY POSITIONS.

ERISA § 409(b) provides: "No fiduciary shall be liable with respect to a breach of fiduciary duty under this title if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary." 29 U.S.C. § 1109(b). Without fiduciary status at the time a breach allegedly occurs, there is no basis for fiduciary liability. *See Pegram v. Herdrich*, 530 U.S. 211, 227 (2000); *Bannistor v. Ullman*, 287 F.3d 394, 405 (5th Cir. 2002).

---

[29] Plaintiffs' failure to add specific allegations concerning Defendant Dupree's purported insider knowledge is particularly problematic since he allegedly did not become a member of the SPIOC until February 1, 2010, and thus not until a date near the close of the putative class period. CEC ¶ 73. Other than his service as a SPIOC member, there is no basis for his alleged fiduciary status.

The Complaint nevertheless does not limit the fiduciary duty claims made against individual Defendants to those time periods when they were fiduciaries.  For example, several Defendants left the positions that allegedly gave rise to their fiduciary status shortly after the January 16, 2007 commencement date of the putative class period and years before BP stock declined in value following the April 2010 Deepwater Horizon explosion.  CEC ¶ 48 (Defendant Riney – March 14, 2007); ¶ 55 (Lord John Browne – May 1, 2007); ¶ 79 (Patricia Miller – Jan. 7, 2008).  These Defendants plainly cannot have any fiduciary liability for any breaches that occurred after they left those positions.  Other Defendants served in positions that allegedly gave rise to fiduciary status only for a portion of the purported class period.  They, too, can have no liability for any purported breaches that occurred either before or after their service in an alleged fiduciary role.  As detailed in Exhibit M, attached hereto, any claims against Defendants should be dismissed under Section 409 to the extent they seek to impose liability for breaches that allegedly occurred outside the period of a Defendant's service in an alleged fiduciary role.[30]

## V.      PLAINTIFFS' CLAIM THAT DEFENDANTS SHOULD HAVE DIVESTED THE PLANS OF EMPLOYER STOCK BASED ON INSIDER INFORMATION FAILS.

Claims that Defendants should have divested the Plans of BP stockholdings based upon insider information (CEC ¶ 316)[31] should be dismissed.  This Court has already recognized that such a claim fails.  *Dudenhoeffer,* 134 S. Ct. at 2472 ("As every Court of Appeals to address the question has held, ERISA's duty of prudence cannot require an ESOP fiduciary to perform an

---

[30] Individual Defendants' dates of service on the SPIOC and in other roles are set forth in the CEC (¶¶ 44, 46, 48, 50, 52, 57, 69, 71, 73, 76, 78, 79, 81, 83, 85) and are summarized in Exhibit M.

[31] Paragraph 316 provides, in relevant part: "To divest some or all of the Plans of holdings of BP ADS without depressing the market price of BP ADSs or causing the Plans more harm than good, Defendants could have, with the aid of State Street or another outside investment consultant, readily developed a divestment strategy to sell the BP ADSs in the Plans over a period of time, taking into consideration the overall trading volume and any limitations under the securities laws. Such divestment strategies are routinely used by investment fiduciaries of retirement plans and trusts."

action – such as divesting the fund's holdings of the employer's stock on the basis of inside information – that would violate the securities laws"); *see* Dkt. 170 at 24 n.13.

## VI.    PLAINTIFFS LACK STANDING TO BRING CLAIMS ON BEHALF OF THE PARTNERSHIP SAVINGS PLAN (PSP) OR DIRECT SAVINGS PLAN (DSP).

None of the Plaintiffs are alleged to be, or to have been, participants in the PSP or the DSP.  Nonetheless, Plaintiffs purport to bring this action derivatively on behalf of such Plans pursuant to ERISA §§ 502(a)(2) and (a)(3), 29 U.S.C. §§ 1132(a)(2), (a)(3), and seek to recover losses allegedly sustained by such Plans.  CEC ¶¶ 1, 3, 322, 335.[32]  However, because Plaintiffs are not, and have not been PSP or DSP participants, Plaintiffs lack statutory and constitutional standing to bring derivative claims on behalf of such Plans, and any such claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).  *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011).

Plaintiffs have no statutory standing under ERISA to pursue any such derivative claims.  By their terms, ERISA §§ 502(a)(2) and (a)(3) limit standing to bring claims for breach of fiduciary duty to plan participants, beneficiaries and fiduciaries.[33]  To bring a derivative action on a plan's behalf under these provisions, an individual must be a participant, beneficiary or fiduciary of the plan for whose benefit he is suing.  *See Acosta v. Pacific Enters.*, 950 F.2d 611, 617 (9th Cir. 1991) (plaintiff lacked standing under ERISA § 502(a)(2) to challenge decisions affecting ERISA plans in which he did not participate).  Because Plaintiffs were not participants in the PSP or the DSP, they do not meet this statutory requirement.  *In re SLM Corp. ERISA Litig.*, No. 08 Civ. 4334, 2010 U.S. Dist. LEXIS 109775, at *29-32 (S.D.N.Y. Sept. 24, 2010)

---

[32] According to the Complaint, Plaintiffs only seek to bring this case as a class action "in the alternative in the event class action procedures are deemed necessary by this Court."  CEC ¶ 148; *see also* CEC ¶¶ 1, 4.  Their apparent preference is to proceed on a derivative basis on behalf of the four Plans, including the two in which they did not participate.  *Id.*, ¶¶ 1, 3.

[33] The Secretary of Labor is also authorized to bring suit under ERISA § 502(a)(2).

(plaintiffs lacked standing to bring claims involving plan in which they did not participate); *In re ING Groep N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1345-46 (N.D. Ga. 2010) (same).[34]

For this same reason, Plaintiffs lack constitutional standing to bring derivative ERISA claims on behalf of such Plans.  To meet constitutional standing requirements, a plaintiff must have "suffered an injury-in-fact" that is "likely to be redressed by a favorable decision."  *Kendall v. Emp. Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Plaintiffs cannot rely on any alleged injury suffered by the PSP or DSP to meet this requirement, because they neither participated in the allegedly injured Plan nor will benefit from any recovery that those Plans might obtain.  *SLM Corp.*, 2010 U.S. Dist. LEXIS 109775, at *29-32; *ING Groep*, 749 F. Supp. 2d at 1345-46.

Accordingly, this Court should dismiss the derivative claims purportedly brought by the Plaintiffs on behalf of the PSP and DSP for lack of standing.[35]

## VII.   THE COURT SHOULD STRIKE PLAINTIFFS' JURY TRIAL DEMAND.

The Seventh Amendment provides, "In suits at Common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."  U.S. Const. Amend. VII.  Where a statute, such as ERISA, does not itself provide a right to jury trial, courts evaluate whether a right at law or in equity is at issue.  *See Salameh v. Provident Life & Acc. Ins. Co.*, 23 F. Supp. 2d 704, 719 (S.D. Tex. 1998) ("There being no express statutory right to a jury trial and no indication of congressional intent to grant such a right, any entitlement to a jury trial must arise from the Seventh Amendment").  "To determine whether a particular action will resolve legal rights, [a court] examine[s] both the nature of the issues involved and the

---

[34] This Court also lacks subject matter jurisdiction over the derivative claims brought on behalf of the PSP and DSP.  Under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), federal jurisdiction exists only over actions under ERISA §§ 502(a)(2) and (a)(3) if brought by parties with standing under those provisions.

[35] Defendants reserve all rights to challenge Plaintiffs' ability to represent a class that includes participants in the PSP or DSP if they decide to proceed on a class action basis.

remedy sought." *Borst v. Chevron*, 36 F.3d 1308, 1323 (5th Cir. 1994) (quoting *Chauffeurs, Teamsters, & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990)); *Middleton v. Life Ins. Co. of N. Am.* No. H-09-CV-3270, 2010 WL 582552, at *6-8 (S.D. Tex. Feb. 12, 2010). "This analysis consists of two inquiries: (1) a comparison of the present statutory action to 18th-century actions in the courts of England before the merger of the courts of law and equity; and (2) an examination of the relief sought to determine whether it is legal or equitable in nature." *Borst*, 36 F.3d at 1323. There is no right to a jury trial as to equitable claims. *Id.*

It is well established in the Fifth Circuit that ERISA claims, including claims for breach of fiduciary duty asserted here, are not triable to a jury. The Fifth Circuit explains: "We have held, as have the majority of other circuits, that ERISA claims do not entitle a plaintiff to a jury trial." *Borst*, 36 F. 3d at 1324 (citing *Calamia v. Spivey*, 632 F. 2d 1235, 1237 (5th Cir. 1980)); *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 316 (S.D. Tex. 2011) (the Fifth Circuit "does not provide for a jury trial in ERISA matters."); *Middleton*, 2010 WL 582552, *6-8 (S.D. Tex. Feb. 12, 2010) ("the Fifth Circuit, along with a majority of other circuit courts, have held that the right to a jury trial is not available under ERISA"); *Morales v. Prudential Fin, Inc.*, No. M-08-235, 2009 WL 311109, at *4 (S.D. Tex. Feb. 5, 2009) ("Defendants are correct that ERISA claims do not entitle a plaintiff to a jury trial."); *Lain v. UNUM Life Ins. Co. of Am.*, 27 F. Supp. 2d 926, 935 (S.D. Tex. 1998) (same); *Salameh*, 23 F. Supp. 2d at 718-19 (same and collecting cases); *Clyde A. Wilson Int'l. Investigations, Inc. v. Travelers Ins. Co.* 959 F. Supp. 756, 758, n.3 (S.D. Tex. 1997) ("Plaintiffs have no right to a jury trial under section 502 of ERISA.") (citations omitted).

The Fifth Circuit has reasoned that "the first inquiry is relatively simple, as ERISA law is closely analogous to the law of trusts, an area within the exclusive jurisdiction of the courts of

equity." *Borst*, 36 F.3d at 1324 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989) ("ERISA abounds with the language and terminology of trust law.  ERISA's legislative history confirms that the Act's fiduciary responsibility provisions 'codif[y] and make [] applicable to [ERISA] fiduciaries certain principles developed in the evolution of the law of trusts.'") (brackets in original)); *Calamia*, 632 F. 2d at 1237 (striking jury demand for ERISA § 502 claim because such claim is equitable); *Middleton*, 2010 WL 582552, at *7 ("right to a jury trial is not available under ERISA because such actions are inherently equitable").

Courts also have held that the remedies sought in ERISA breach of fiduciary duty cases do not give rise to a right to a jury trial.  The remedies sought in such cases are equitable because they seek to restore plaintiffs to their previous position absent the alleged breach of duty.  *See e.g., Middleton*, 2010 WL 582552, at *8 (finding remedies equitable where aim was to restore plaintiff to prior position absent fiduciary breach).  The fact that Plaintiffs seek monetary relief does not change the nature of the remedy as equitable.  *Middleton*, 2010 WL 582552, at *8 (ERISA claim for monetary relief is equitable because it is tied to whether there has been a fiduciary breach and is thus "thoroughly and inexorably intertwined with wholly equitable forms of relief.").[36]  Any doubt on that score was dispelled by the Supreme Court's holding in *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011), that the monetary remedy known as "surcharge"

---

[36] *See also Borst*, 36 F.3d at 1324 (holding that remedies sought were equitable because they were restitutionary in nature, where plaintiffs sought restitution of money allegedly wrongly held by defendants; court also cautioned that "Plaintiff['s] requests for monetary recovery…, traditionally the form of relief offered in courts of law, do[es] not mandate a conclusion that [his or her] action is legal in nature."); *In re YRC Worldwide, Inc. ERISA Litig.*, No. 09-2593-JWL, 2010 WL 4920919, at *5 (D. Kan. Nov. 29, 2010) (holding that monetary remedy and money damages for plan losses sought by plaintiffs for breach of fiduciary duty was indeed equitable in nature, by reasoning that "a claim against a trustee for breach of trust to recover the resulting loss in value of the trust estate is an equitable remedy, not a legal one" and that the monetary remedy was necessarily intertwined with equitable relief in that there is no entitlement to money damages until the court determines there is a breach of fiduciary duty, a determination within the court's equitable domain); *Broadnax Mills v. Blue Cross & Blue Shield*, 876 F. Supp. 809, at 816 (E.D. Va. 1995) (monetary relief under section 502(a)(2) did not provide for right to jury trial because "any relief sought is necessarily intertwined with the equitable process of resolving the ultimate issue – whether or not there has been a breach of fiduciary duty"); *see also Terry*, 494 U.S. at 570-71 (request for monetary recovery sounds in equity when it is restitutionary and intertwined with claims for injunctive relief).

available against a breaching fiduciary as "traditionally equitable relief." *Id.* at 1880 ("prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a 'surcharge,' was 'exclusively equitable'") (citations omitted); *see also Bauer-Ramazani v. Teachers Ins. & Annuity Ass'n*, No. 1:09-CV-190, 2013 WL 6189802, at *11 (D. Vt. Nov. 27, 2013) (citing *Amara* in holding that all remedies for breach of fiduciary duty under ERISA § 502(a) are equitable).

Both Counts asserted here are breach of fiduciary duty claims under ERISA § 502(a)(2) or § 502(a)(3). *See* CEC. ¶¶ 305-335. Plaintiffs seek equitable relief for such alleged breaches – among other things, to "restore" the plan's losses and to enjoin Defendants from further alleged ERISA violations. *Id.*, Prayer for Relief. As these are precisely the claims for which the courts have repeatedly held that no right to a jury trial exists Plaintiffs' jury demand should be stricken.

## CONCLUSION

For the above reasons, the claims and Defendants in the First Amended Consolidated ERISA Complaint discussed herein should be dismissed with prejudice. Defendants also respectfully request that the Court strike Plaintiffs' jury demand.

March 18, 2015

Respectfully submitted,

OF COUNSEL:

/s/ *Thomas W. Taylor*_____

| | |
|---|---|
| Paul J. Ondrasik, Jr. (*pro hac vice*) | Thomas W. Taylor |
| Morgan D. Hodgson (*pro hac vice*) | Texas State Bar No. 19723875 |
| Ryan T. Jenny (*pro hac vice*) | S.D. Tex. Bar No. 3906 |
| STEPTOE & JOHNSON LLP | ANDREWS KURTH LLP |
| 1330 Connecticut Avenue, N.W. | 600 Travis, Suite 4200 |
| Washington, D.C. 20036 | Houston, TX 77002 |
| Office: (202) 429-3000 | Office: (713) 220-4200 |
| Fax: (202) 429-3902 | Fax: (713) 220-4285 |
| E-mail: pondrasik@steptoe.com | E-mail: ttaylor@andrewskurth.com |
|      mhodgson@steptoe.com | |

30

rjenny@steptoe.com

Daryl A Libow (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue N.W.
Washington, DC 20006-5805
Office:  (202) 956-7500
E-mail:  libowd@sullcrom.com

Richard C. Pepperman, II (*pro hac vice*)
Marc De Leeuw (*pro hac vice*)
M. David Possick
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Office:  (212) 558-4000
Email: peppermanr@sullcrom.com
        deleeuwm@sullcrom.com
        possickmd@sullcrom.com

*Attorney-in-Charge for Defendants
BP Corporation North America, Inc., BP p.l.c.,
BP America Inc., BP Corporation North America,
Inc.'s Board of Directors, the BP Savings Plan
Investment Oversight Committee, Lord John
Browne, Stephanie C. Moore, Gregory T.
Williamson, Thomas L. Taylor, Neil Shaw, Brian
D. Smith, Stephen J. Riney, Robert A. Malone,
Jeanne M. Johns, Anthony Hayward, Lamar
McKay, Patrick Gower, James Dupree, Richard J.
Dorazil, Corey Correnti, Marvin L. Damsma, and
Patricia H. Miller*