**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

MDL No. 4:10-md-2185

**IN RE:  BP ERISA LITIGATION**

Civil Action No. 4:10-cv-04214
Hon. Keith P. Ellison

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**PARTIAL MOTION TO DISMISS AND TO STRIKE JURY DEMAND**

OF COUNSEL:
Paul J. Ondrasik, Jr. (*pro hac vice*)
Morgan D. Hodgson (*pro hac vice*)
Eric G. Serron (*pro hac vice*)
Ryan T. Jenny (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036
Office: (202) 429-3000
Fax:  (202) 429-3902
E-mail: pondrasik@steptoe.com
       mhodgson@steptoe.com
       rjenny@steptoe.com

Daryl A. Libow (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue N.W.
Washington, DC 20006-5805
Office:  (202) 956-7500
E-mail:  libowd@sullcrom.com

Richard C. Pepperman, II (*pro hac vice*)
Marc De Leeuw (*pro hac vice*)
M. David Possick
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Office: (212) 558-4000
Email: peppermanr@sullcrom.com
       deleeuwm@sullcrom.com
       possickmd@sullcrom.com

Thomas W. Taylor
Texas State Bar No. 19723875
S.D. Tex. Bar No. 3906
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, TX 77002
Office:  (713) 220-4200
Fax:  (713) 220-4285
E-mail: ttaylor@andrewskurth.com

*Attorney-in-Charge for Defendants*
*BP Corporation North America, Inc., BP p.l.c.,*
*BP America Inc., BP Corporation North America,*
*Inc.'s Board of Directors, the BP Savings Plan*
*Investment Oversight Committee, Lord John*
*Browne, Stephanie C. Moore, Gregory T.*
*Williamson, Thomas L. Taylor, Neil Shaw,*
*Brian D. Smith, Stephen J. Riney, Robert A.*
*Malone, Jeanne M. Johns, Anthony Hayward,*
*Lamar McKay, Patrick Gower, James Dupree,*
*Richard J. Dorazil, Corey Correnti, Marvin L.*
*Damsma, and Patricia H. Miller*

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

I.      PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE THAT THEIR CLAIMS AGAINST
        CORPORATE DEFENDANTS AND INDIVIDUAL DEFENDANTS IN ROLES AS
        BPNAI DIRECTORS AND DESIGNATED OFFICERS SHOULD PROCEED. .............1

        A.      BP and BP America Are Not Subject to Liability under *Respondeat Superior*.......2

        B.      BPNAI Is the Plan Sponsor, Not a Fiduciary. .........................................................2

        C.      BPNAI Director Defendants Are Not Proper Defendants. ......................................4

        D.      Hayward and Browne Are Not Proper Defendants.................................................5

II.     COUNT II DOES NOT STATE A VIABLE DUTY TO MONITOR CLAIM. .................7

III.    THE CO-FIDUCIARY CLAIMS SHOULD BE DISMISSED...........................................9

IV.     DUPREE SHOULD BE DISMISSED FROM COUNT I (INSIDER TRADING).............9

V.      CLAIMS AGAINST INDIVIDUAL DEFENDANTS SHOULD BE LIMITED
        TO TIME PERIODS WHEN THEY ARE ALLEGED TO BE FIDUCIARIES. .............10

VI.     ANY CLAIM THAT DEFENDANTS SHOULD HAVE DIVESTED THE
        PLANS OF EMPLOYER STOCK BASED ON INSIDER INFORMATION FAILS. ....11

VII.    PLAINTIFFS LACK ERISA STANDING TO BRING CLAIMS ON BEHALF OF
        THE PSP OR DSP. .........................................................................................................11

VIII.   THE COURT SHOULD STRIKE PLAINTIFFS' JURY TRIAL DEMAND. .................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acosta v. Pacific Enters.*,
  950 F.2d 611 (9th Cir. 1991) ...............................................................................................12

*Bank of La. v. Aetna U.S. Healthcare, Inc.*,
  468 F.3d 237 (5th Cir. 2006) ..................................................................................................7

*Bannistor v. Ullman*,
  287 F.3d 394 (5th Cir. 2002) ...........................................................................................2, 10

*Borst v. Chevron*,
  36 F.3d 1308 (5th Cir. 1994) ..........................................................................................12, 13

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585, 603 (8th Cir. 2009) .........................................................................................9

*Burch v. Wellstream Int'l, Ltd.*,
  No. H-10-1472, 2011 U.S. Dist. LEXIS 114931 (S.D. Tex. Oct. 4, 2011) ...........................13

*Calamia v. Spivey*,
  632 F.2d 1235 (5th Cir. 1980) ..............................................................................................12

*CIGNA Corp. v. Amara*,
  131 S. Ct. 1866 (2011)...........................................................................................................12

*DeLuca v. Blue Cross Blue Shield of Michigan*,
  628 F.3d 743 (6th Cir. 2010) ..................................................................................................6

*El-Hanafi v. United States*,
  No. 1:13-cv-2072, 2015 U.S. Dist. LEXIS 1266 (S.D.N.Y. Jan. 6, 2015) ...........................10

*Faber v. Wells Fargo Bank*,
  No. 15-00191, 2015 U.S. Dist. LEXIS 48361 (E.D. Pa. Apr. 13, 2015)................................10

*Fifth Third Bancorp v. Dudenhoeffer*,
  134 S. Ct. 2459 (2014).................................................................................................2, 8, 11

*Halaris v. Viacom, Inc.*,
  No. 3:06-CV-1646, 2008 U.S. Dist. LEXIS 75557 (N.D. Tex. Aug. 19, 2008).......................1

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
  634 F.3d 787 (5th Cir. 2011) ................................................................................................12

*Humana Health Plan, Inc. v. Nguyen*,
No. 14-20358, 2015 U.S. App. LEXIS 7741 (5th Cir. May 11, 2015)......................................6

*Hunter v. Caliber Sys.*,
220 F.3d 702 (6th Cir. 2000) .......................................................................................6, 7

*In re Citigroup ERISA Litig.*,
No. 11 Cv. 7672, 2015 U.S. Dist. LEXIS 63460 (S.D.N.Y. May 13, 2015) ......................7, 12

*In re Dynegy, Inc. ERISA Litig.*,
309 F. Supp. 2d 861 (S.D. Tex. 2004) ..............................................................................2

*In re ING Groep N.V. ERISA Litig.*,
749 F. Supp. 2d 1338 (N.D. Ga. 2010) ...........................................................................12

*In re SLM Corp. ERISA Litig.*,
No. 08 Civ. 4334, 2010 U.S. Dist. LEXIS 109775 (S.D.N.Y. Sept. 24, 2010) .......................12

*J&R Mktg., SEP v. GMC*,
No. 06-10201, 2007 U.S. Dist. LEXIS 13227 (E.D. Mich. Feb. 27, 2007).............................12

*Jimenez v. Mayfield Lumber & Container Corp.*,
No. EP-11-CV-329, 2012 U.S. Dist. LEXIS 6935 (W.D. Tex. Jan. 20, 2012) .........................1

*Kirschbaum v. Reliant Energy, Inc.*,
526 F.3d 243 (5th Cir. 2008) ........................................................................................7

*Kopp v. Klein*,
722 F.3d 327 (5th Cir. 2013) ........................................................................................2

*Leimkuehler v. Am. United Life Ins. Co.*,
713 F.3d 905 (7th Cir. 2013) ........................................................................................6

*Middleton v. Life Ins. Co. of N. Am.*
No. H-09-CV-3270, 2010 WL 582552 (S.D. Tex. Feb. 12, 2010) .........................................12

*Milofsky v. Am. Airlines, Inc.*,
404 F.3d 338 (5th Cir. 2005) ........................................................................................1

*Pegram v. Herdrich*,
530 U.S. 211 (2000)...........................................................................................1, 2, 6, 10

*Powell v. Dallas Morning News LP*,
610 F. Supp. 2d 571 (N.D. Tex. 2009) .............................................................................1

*Rhodes v. Piggly Wiggly Alabama Distributing Co.*,
741 F. Supp. 1542 (N.D. Ala. 1990) ..............................................................................13

iii

*Shannahan v. Dynegy, Inc.*,
     No. H706-0160, 2006 U.S. Dist. LEXIS 80943 (S.D. Tex. Nov. 6, 2006) ..............................10

**STATUTES**

29 U.S.C. § 1002(21)(A)................................................................................................................5

29 U.S.C. § 1105(a) ......................................................................................................................9

29 U.S.C. § 1109(b) ....................................................................................................................10

29 U.S.C. § 1132(a)(1)................................................................................................................13

29 U.S.C. § 1132(a)(2)................................................................................................................13

29 U.S.C. § 1132(a)(3)................................................................................................................13

**INTRODUCTION**

In responding to Defendants' motion (Dkt. 184) seeking partial dismissal of the First

Amended Consolidated ERISA Complaint ("Complaint" or "CEC") (Dkts. 172, 173) Plaintiffs

lob a volley of scattershot points, none of which hits its mark.  For the reasons stated below and

in Defendants' opening brief, the Court should narrow this case by (i) dismissing Count I as to

all Defendants other than Messrs. McKay and Shaw; (ii) dismissing Count II in its entirety;

(iii) dismissing the derivative claims brought by Plaintiffs on behalf of two plans in which no

Plaintiff was a participant; and (iv) striking Plaintiffs' jury trial demand.

I.     **PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE THAT THEIR CLAIMS
AGAINST CORPORATE DEFENDANTS AND INDIVIDUAL DEFENDANTS IN
ROLES AS BPNAI DIRECTORS AND DESIGNATED OFFICERS SHOULD
PROCEED.**

Plaintiffs rely on the outdated notion that fiduciary status should not be decided on a

motion to dismiss because it is "premature," pointing to case law that pre-dates *Twombly/Iqbal*'s

pleading standard (Dkt. 190, Pl. Br. at 8).  Plaintiffs' argument is wrong – courts in this Circuit

(and elsewhere) routinely dismiss parties where, as here, their alleged fiduciary status is based on

conclusory allegations that simply parrot ERISA's statutory definition of fiduciary or are

otherwise contrary to the governing plan terms.[1]

---

[1] *See*, *e.g.*, *Jimenez v. Mayfield Lumber & Container Corp.*, No. EP-11-CV-329, 2012 U.S. Dist. LEXIS 6935, at *9-12 (W.D. Tex. Jan. 20, 2012) (citing *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *Milofsky v. Am. Airlines, Inc.*, 404 F.3d 338, 342 (5th Cir. 2005) (holding a complaint must "identify any specific discretion or decisionmaking authority" to survive a Rule 12(b)(6) motion to dismiss)); *Powell v. Dallas Morning News LP*, 610 F. Supp. 2d 571, 580 (N.D. Tex. 2009) ("[C]laims against the Committee, unsupported by underlying facts and based entirely on conclusory allegations that are insufficient to state a claim, should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6)"); *Halaris v. Viacom, Inc.*, No. 3:06-CV-1646, 2008 U.S. Dist. LEXIS 75557, at *15-16 (N.D. Tex. Aug. 19, 2008) (holding on 12(b)(6) motion that defendants "are improper parties because Plaintiffs have not adequately alleged that they were fiduciaries of the Plan").

### A.   BP and BP America Are Not Subject to Liability under *Respondeat Superior.*

Implicitly conceding that BP and BP America had no role, fiduciary or otherwise, with respect to the 401(k) plans here at issue, Plaintiffs maintain that they are properly named as defendants based on a *respondeat superior* theory of liability (Pl. Br. at 12-13).  In this Circuit, however, a principal may be subject to *respondeat superior* liability only if it exercised control over another defendant's fiduciary actions and actively and knowingly participated in the other defendant's alleged breach.  *See Bannistor v. Ullman*, 287 F.3d 394, 408 (5th Cir. 2002) ("the issue is whether BT Appellants . . . had de facto control over Ullman and Villano's actions").  The Complaint alleges no facts plausibly showing that BP or BP America imposed control over any of the Defendants with respect to their fiduciary activities;[2] rather, Plaintiffs point to nothing more than the fact of employment or committee service (Pl. Br. at 12-13), facts that are present in all ERISA stock drop cases but that do not come close to what the Fifth Circuit requires to establish *respondeat superior* liability.  And, simply parroting the legal conclusion that the corporate entities "actively and knowingly" participated in a fiduciary's breach (as Plaintiffs do in their Complaint and brief) is plainly insufficient.  *See* Dkt. 184-1, Def. Br. at 15 (citing cases).

### B.   BPNAI Is the Plan Sponsor, Not a Fiduciary.

Accepting that BP Corporation North America Inc.'s (BPNAI) plan sponsor role does not give rise to fiduciary status,[3] Plaintiffs assert that BPNAI is nonetheless a proper defendant because under the Plans "BPNAI was a named fiduciary and a functional fiduciary."  Pl. Br. at 9 (citing ESP § 1.72 (Ex. A); PSP § 1.66 (Ex. C); DSP § 1.66 (Ex. D)).  This assertion is refuted by

---

[2] Absent are any allegations of the type found in *Bannistor* – where the corporations' majority shareholders overtook a fiduciary's will with an order to "make sure you take care of the employees."  287 F.3d at 408.

[3] *See Kopp v. Klein*, 722 F.3d 327, 334 (5th Cir. 2013) (explaining distinction between ERISA fiduciary functions and settlor or employer functions, citing *Pegram*, 530 U.S. at 225) (abrogated on other grounds by *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014)); *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 899 (S.D. Tex. 2004) ("A company cannot be subject to fiduciary liability simply by virtue of its role as plan sponsor.").

the very Plan provisions on which Plaintiffs rely.  Indeed, the Plan language cited by Plaintiffs

nowhere identifies BPNAI as a plan fiduciary, but rather states that:  "'Plan Sponsor' means BP

Corporation North America Inc."  ESP § 1.72; PSP § 1.66; DSP § 1.66.  Nor do the provisions of

the Trust (Ex. L) noted by Plaintiffs (Pl. Br. at 10) support their claim; indeed, they make no

mention of BPNAI.  Section 4.1 instead refers to the authority of the "Investment Committee."

And Section 4.5 refers to the authority of the "Applicable Named Fiduciary" to appoint

investment managers, which is the SPIOC and *not* BPNAI.  *See* Def. Br. at 9-10 (citing ESP

§§ 1.12, 1.60, 14.1(p); Trust § 4.1(a); SPIOC By-Laws (Ex. J) § 1.2(a)).

Plaintiffs' other contention – that BPNAI is a fiduciary based on statements outside the

controlling Plan documents  (Pl. Br. at 11) – stands on no firmer ground.  Plaintiffs incorrectly

claim that BPNAI had investment-related responsibilities under the Investment Manager

Agreement ("IMA") during the Complaint's "Class" or "Relevant" Period, including the

appointment and monitoring of State Street.  But the April 5, 2000 IMA on which this argument

is based long predated creation of the SPIOC in 2004.  Once the SPIOC was created (six years

before the start of the putative class period), the operative Plan documents delegated such

investment oversight authority to the SPIOC and limited BPNAI's responsibility to Plan

amendments made in a settlor capacity.  *See* ESP §§ 6.3, 14.1(p), 16.4; *see also* SPIOC By-Laws

(Ex. J) § 1.2(a) (incorporating into Plan documents SPIOC's authority to "select, direct, monitor

and terminate external investment managers").  Indeed, every amendment to the IMA in the

period covered by the Complaint was executed by the SPIOC and *not* BPNAI.  *See*, *e.g.*, Ex. K,

IMA Amendments 8-10.  And, in any event, the IMA has no relevance to this case because there

is *no* allegation that State Street violated any of its fiduciary responsibilities in connection with the Plans' company stock holdings.[4]

### C.     BPNAI Director Defendants Are Not Proper Defendants.

In protesting Defendants' efforts to "slice and dice the various roles of Defendants" (Pl. Br. at 13), Plaintiffs complain of an issue of their own making.  An examination of each Defendant's roles and whether such roles plausibly provide a basis for fiduciary status is necessitated by the structure of Plaintiffs' Complaint, which sues Defendants in a variety of different capacities.  *See*, *e.g.*, CEC ¶¶ 37, 68, 91.  That approach requires examination of various alleged bases for fiduciary status to determine whether they support a viable claim for relief, particularly since the Complaint and Plaintiffs' opposition often blur the distinctions between those roles.  Moreover, even if some individual Director Defendants may remain subject to suit due to their service in *other* roles, the clarification of the basis for fiduciary status appropriately limits the universe of defendants and scope of discovery going forward.[5]

Plaintiffs' attempt to sue Director Defendants in their capacity as directors demonstrates their pleading failures.  Defendant Directors simply did not possess the authority ascribed to them with respect to appointment and monitoring of investment managers (State Street) during the period at issue in the Complaint (Pl. Br. at 13); rather, the SPIOC had those powers under the Plan documents.  Other "fiduciary" functions Plaintiffs allege are also irrelevant for the reasons stated regarding BPNAI and in the initial brief.  *See* Def. Br. at 15-18.

---

[4] Plaintiffs' remaining contentions are without merit.  As demonstrated previously, Plaintiffs' assertion that BPNAI is a fiduciary based on a statement in the Investment Option Guide is wrong.  The Investment Option Guide's "tracking section" does not trump the operative Plan documents and, at best, refers to BPNAI's ability to amend the Plans.  *See* Def. Br. at 17 n.21.  BPNAI also is not subject to liability under a *respondeat superior* theory for the same reasons that BP and BP America face no such liability.

[5] Plaintiffs' attempt to cloud these facts is evident as they cite to their own Complaint, rather than Plan documents, to allege Director Defendants' fiduciary status.  Pl. Br. at 15-16.

### D.      Hayward and Browne Are Not Proper Defendants.

Designated Officer Defendants Hayward and Browne have no place in this ERISA

lawsuit and should be dismissed.  Plaintiffs' Complaint and Opposition brief fail to identify a

single plan-related activity in which they were engaged, much less any involving the Plan's BP

stockholdings.  *See* Pl. Br. at 6 (summarizing Defendant Hayward's public statements

"concerning BP's safety, the company's reaction to previous accidents, and the *Deepwater*

*Horizon* disaster," and referencing no allegations concerning Browne).  Rather, all of the actions

ascribed to Hayward and Browne in the Complaint were plainly taken in their corporate roles.[6]

Indeed, service as a Designated Officer cannot give rise to ERISA fiduciary status on the

part of any of the Defendants sued in that capacity.  Despite the Plaintiffs' repeated assertion to

the contrary (Pl. Br. at 2, 14), they cite no Plan provision identifying Designated Officers as

"Investment Named Fiduciaries."  Nor does § 6.3 of the ESP give Designated Officers fiduciary

authority over the BP Stock Fund as Plaintiffs contend (Pl. Br. at 14).  Section 6.3 states:

> Investment Options. The Plan's Investment Options are indicated in Appendix
> 1.58. In addition, a Designated Officer may, from time to time, *as directed by*
> *the Investment Committee*:
> (a) limit or freeze investments in, or transfers from, an Investment Option;
> (b) add funding vehicles thereunder;
> (c) liquidate, consolidate, or otherwise reorganize an existing Investment
> Option; or
> (d) add new Investment Options to, or delete Investment Options from
> Appendix 1.58.

Ex. A at § 6.3 (Dkt. 184-4) (emphasis added).  That the Designated Officers could take such

actions only "as directed by the Investment Committee" makes clear that they did *not* have the

discretionary authority to act on their own necessary to acquire fiduciary status.  *See* 29 U.S.C.

§ 1002(21)(A) (defining "fiduciary"); 29 C.F.R. § 2509.75-8 (D-2) ("a person who performs

---

[6] In fact, Exhibit A to Plaintiffs' opposition (Dkt. 190-1) highlights that Hayward and Browne had no
"overlapping roles" with respect to the Plans, but served only as Designated Officers.

purely ministerial functions . . . within a framework of policies, interpretations, rules, practices and procedures made by other persons" is not a fiduciary); *Humana Health Plan, Inc. v. Nguyen*, No. 14-20358, 2015 U.S. App. LEXIS 7741, at \*7-9 (5th Cir. May 11, 2015); *DeLuca v. Blue Cross Blue Shield of Michigan*, 628 F.3d 743, 747 (6th Cir. 2010).[7]

Plaintiffs' reliance on ESP §13.1 – which authorizes Designated Officers "to enter into one or more Trust Agreements" – is likewise misplaced.  First, there is no allegation that any of the Designated Officer Defendants entered into a Trust Agreement on the Company's behalf, much less violated some fiduciary duty to Plaintiffs in doing so.  Second, establishing a trust is the quintessential settlor, non-fiduciary act.  *See*, *e.g*., *Hunter v. Caliber Sys*., 220 F.3d 702, 718 (6th Cir. 2000).  Finally, the Trust Agreement (or who entered into it) is a non-issue in this case – there are no allegations that the Trustee[8] or Designated Officer Defendants violated or failed to discharge any duties arising under that document.

Plaintiffs' remaining asserted basis for the alleged fiduciary status of Designated Officers – ESP § 14.1(b) (Pl. Br. at 14) – fares no better.  That provision authorizes Designated Officers to "act as an Employer" and carry out corporate or settlor activities – and not fiduciary activities – on behalf of the BPNAI.[9]  *See*, *e.g.*, *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000);

---

[7] To the extent that Plaintiffs suggest that Designated Officers had discretion to disregard such instructions, that too would not be a basis for fiduciary status in this case because there are no allegations in the Complaint that any Designated Officers received *any* instructions concerning the Company stock fund, much less carried out (or refused to carry out) any such instructions. *See Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 913-14 (7th Cir. 2013) (an entity may be liable for a fiduciary breach under ERISA only for exercises of authority or control), *cert. denied*, 134 S. Ct. 1280 (2014).

[8] The Trustee – State Street Bank & Trust Company ("SSB&T") – is a separate and distinct entity from State Street Global Advisors ("State Street"), which served as investment manager for the Company Stock Fund. While Plaintiffs allege that insufficient information was provided to State Street (Pl. Br. at 2, 17-19), there are no similar allegations concerning SSB&T at issue. *See* Def. Br. at 9-10; Ex. J, SPIOC By-Laws § 1.2(a); *see also* ESP § 14.1(p).

[9] Examples include the power to "amend the Plan," to determine what expenses will be paid "from Employer assets," to "retain, monitor and terminate such service providers as are considered appropriate to perform Employer activities with respect to the Plan," and to determine the Plan's "funding policy."  The sole exception is

*Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 256 (5th Cir. 2008); *Bank of La. v. Aetna U.S. Healthcare, Inc.*, 468 F.3d 237, 243 (5th Cir. 2006); *Hunter*, 220 F.3d at 718.  And, in all events, none of the actions authorized by this provision are at issue.

## II.        COUNT II DOES NOT STATE A VIABLE DUTY TO MONITOR CLAIM.

Plaintiffs' defense of Count II misses the critical point – a failure to monitor claim (in this case, the failure to monitor State Street) cannot survive dismissal unless an actionable fiduciary breach has been alleged against the monitored entity.  As one court recently explained, "[c]laims for breach of the duty to monitor and for co-fiduciary liability require antecedent breaches in order to be viable."  *In re Citigroup ERISA Litig.*, No. 11 Cv. 7672, 2015 U.S. Dist. LEXIS 63460, at *45-46 (S.D.N.Y. May 13, 2015).  While Plaintiffs baldly assert the contrary (Pl. Br. at 2, 17-19), they cite *no* case support for this proposition, and we are not aware of any.  Nor do they challenge Defendants' case law, including this Court's prior ruling, establishing the need for an underlying breach.  *See* Def. Br. at 21 (citing Dkt. 116 at p. 42 (holding that duty to monitor claim is derivative and necessarily requires viable fiduciary breach claim against appointee), and citing cases).  Because no underlying claim of fiduciary wrongdoing is alleged against State Street, Count II's failure to monitor claim should be dismissed for this reason alone.

Count II also suffers from additional defects.  Plaintiffs cannot explain their conflation of Count I, against Insider Defendants, and Count II, in which they seek to expand liability beyond those alleged to have insider information.  *See* Def. Br. at 22.  It defies logic to attempt to impose liability on any Defendant *not alleged* to have insider knowledge on a failure to monitor theory –

---

§14.1(b)(3), which pertains only to Designated Officers who serve also as "Appointing Officers;" the fiduciary status of Appointing Officers is not challenged in this motion.

Plaintiffs implicitly concede that those Defendants had no insider information that they could have passed on to State Street.[10]

Moreover, as Defendants pointed out, this Court already held in ruling on Plaintiffs' Motion to Amend that the failure to pass on insider information to another fiduciary who also would be constrained by the securities laws from acting on it is not actionable under *Dudenhoeffer*.  *See* Def. Br. at 22 (citing Dkt. 170 at p. 25 n.14).  Plaintiffs challenge Defendants' description of that holding, but it is Plaintiffs who misconstrue it.  While Plaintiffs insist that Insider Defendants could have disclosed insider information to the market, the issue on their monitoring claim is different – it is whether Insider Defendants had a duty to disclose information to those whom they had a duty to monitor, and what, if any, permissible action that would have elicited.  The Court correctly reasoned that passing on the information to State Street would merely kick the can down the road, as State Street also could not use that information under the security laws.  *See* Dkt. 170 at p. 25, n.14. ("To the extent that Plaintiffs fault Defendants for not providing [State Street] with insider information, they have simply shifted the question, rather than answered it.  [State Street] was as constrained by the securities laws as Defendants.").  In short, such failure is not a separate basis for liability.[11]

Finally, as demonstrated in Defendants' opening brief, the monitoring claim should be dismissed as to all Defendants because of the absence of any well-pled allegations of inadequate monitoring procedures.  *See* Def. Br. at 21.  Plaintiffs' sole retort is that this issue should not be

---

[10] Plaintiffs seem to have conceded that point, as it is not addressed in their Opposition.

[11] Plaintiffs' effort to avoid dismissal of their failure to monitor claim also misstates the appointment authority of the various Defendants with respect to the SPIOC and State Street.  *See* Pl. Br. at 19 ("each of them had a duty to monitor the fiduciaries *they appointed* (BPNAI as to State Street; BP, BPNAI, and BP America as to their employees on the SPIOC; Designated Officers as to the SPIOC and State Street; BPNAI Directors as to State Street" (emphasis added)).  None of those statements of appointment relationships is accurate: only the Appointing Officers appointed SPIOC members, and only the SPIOC appointed State Street.  There simply is no basis for a failure to monitor claim against any of the other Defendants.

resolved on a motion to dismiss.  *See* Pl. Br. at 17.  Such an approach cannot be squared with the

teachings of *Iqbal* and *Twombly*, and with a single exception, all of their authorities pre-date

those two decisions.  And the only post-*Twombly* decision, *Braden v. Wal-Mart Stores, Inc.*,

simply vacated dismissal of the monitoring claim as derivative of the prudence claim on which it

was predicated.  588 F.3d 585, 603 (8th Cir. 2009)  ("declin[ing] to pass on the merits of the

derivative claims here. We instead remand counts II and IV for the district court to consider

whether those claims may proceed").  Finally, Plaintiffs' effort to justify their pleading

deficiencies rings particularly hollow given their access to the SPIOC minutes and the extensive

discovery in the related MDL litigation in advance of filing their Complaint.

## III.    THE CO-FIDUCIARY CLAIMS SHOULD BE DISMISSED.

Plaintiffs concede that their co-fiduciary claims do no more than engage in group

pleading and then parrot the statutory basis for such liability set out in ERISA § 405(a).  Pl. Br.

at 19-20 (alleging that all defendants "were the Plans' fiduciaries and [that] they knowingly

participated in each other's fiduciary breaches").  Such conclusory allegations are insufficient to

state a plausible claim for relief.  *See* Def. Br. at 23.  Plaintiffs' reliance on out-of-circuit cases

decided before *Iqbal* and/or *Twombly* is misplaced; those cases do not accurately state the

pleading standard applicable to this claim and cannot save this claim from dismissal.

## IV.    DUPREE SHOULD BE DISMISSED FROM COUNT I (INSIDER TRADING).

Although this Court instructed Plaintiffs that they could amend "the insider information

prudence claims" against Mr. Dupree only "[i]f Plaintiffs are able to address the deficiencies in

their allegations regarding Mr. Dupree's knowledge of insider information," the Complaint

contains no new allegations concerning such knowledge.  Dkt. 170 at 30 n.16; *see also id.* at 21-

22.  Indeed, Plaintiffs do not even attempt to argue that the Complaint meets this instruction.

Rather, they essentially ask the Court to reconsider its prior ruling, arguing that the same

allegations that the Court found wanting can now somehow be read to adequately allege

Dupree's insider knowledge status.  *See* Pl. Br. at 20-21.  That argument then devolves into their

plea that "Plaintiffs should be allowed to proceed to discovery before a ruling is made

concerning Dupree." Pl. Br. at 21.  There is no reason for the Court to reconsider its prior ruling.

Plaintiffs were given an opportunity to present plausible factual allegations regarding Dupree,

and their failure to do so should result in his dismissal from Count I.

## V.     CLAIMS AGAINST INDIVIDUAL DEFENDANTS SHOULD BE LIMITED TO TIME PERIODS WHEN THEY ARE ALLEGED TO BE FIDUCIARIES.

The Court should dismiss fiduciary claims to the extent that they assert liability outside

the period that a defendant is alleged to have served as a Plan fiduciary.  Plaintiffs' only response

is that discovery is needed to confirm the fiduciary service dates that Plaintiffs themselves

alleged in their Complaint.  Pl. Br. at 1-2.  They cite no authority for this dubious proposition.

To the contrary, dismissal or limiting of claims pursuant to ERISA § 409(b) based on dates

alleged in a complaint is proper.  *See Shannahan v. Dynegy, Inc.*, No. H706-0160, 2006 U.S.

Dist. LEXIS 80943, at *26-29 (S.D. Tex. Nov. 6, 2006).[12]  Claims can be, and are, narrowed

through a Rule 12(b)(6) motion for partial dismissal frequently.  *See*, *e.g.*, *Faber v. Wells Fargo*

*Bank*, No. 15-00191, 2015 U.S. Dist. LEXIS 48361, at *1, *3, *12 (E.D. Pa. Apr. 13, 2015)

(granting Rule 12(b)(6) motion to partially dismiss UCC claim); *El-Hanafi v. United States*, No.

1:13-cv-2072, 2015 U.S. Dist. LEXIS 1266, at *14, *25 (S.D.N.Y. Jan. 6, 2015) (defendants use

12(b)(6) motion "to narrow the scope of the FTCA claims").

---

[12] *See generally Pegram*, 530 U.S. at 227; *Bannistor*, 287 F.3d at 405; 29 U.S.C. § 1109(b).

## VI.   ANY CLAIM THAT DEFENDANTS SHOULD HAVE DIVESTED THE PLANS OF EMPLOYER STOCK BASED ON INSIDER INFORMATION FAILS.

Plaintiffs concede that a claim that Defendants should have divested the Plans of BP

ADSs based upon insider information is not viable.  *See* Pl. Br. at 21-22.  Therefore, to the extent

that the Complaint may be construed to assert such a claim of liability based on the supposed

failure to "develop[] a divestment strategy to sell the BP ADSs in the Plans over a period of time,

taking into consideration the overall trading volume and any limitations under the securities

laws" (CEC ¶ 316), it should be dismissed.  Under *Dudenhoeffer*, no such divestment could

occur based on the possession of material nonpublic information.  134 S. Ct. at 2472 ("ERISA's

duty of prudence cannot require an ESOP fiduciary to perform an action—such as divesting the

fund's holdings of the employer's stock on the basis of inside information—that would violate

the securities laws."); *see also* Dkt. 170 at 24 n.13.[13]

## VII.   PLAINTIFFS LACK ERISA STANDING TO BRING CLAIMS ON BEHALF OF THE PSP OR DSP.

Plaintiffs' standing argument is flatly wrong and misses the point.  The issue presented is

*not* whether in a properly certified class action, a class representative has constitutional standing

to represent participants in plans in which he or she does not participate.  The question presented

here is whether, in the absence of class procedures, a plaintiff has ERISA statutory standing to

bring a derivative fiduciary breach claim on behalf of a plan in which he or she does not

participate.  As the authorities cited in Defendants' opening brief make clear, they do not have

such statutory standing.  Indeed, since Defendants filed their opening brief, the Southern District

---

[13] While beside the point on this motion, Plaintiffs' assertion that "divestment of the Plans is a damages issue" tied to a market disclosure (Pl. Br. at 21-22) is hard to fathom.  If there was a market disclosure there would, be no need to divest the Plans' BP Stock since the stock would no longer be overvalued.  Also, no prudent fiduciary would choose to override Plan participants' selection of the BP Stock Fund and divest that fund at its lowest price, which would only ensure that Plan participants would not be able to take advantage of the subsequent significant rebound in the price of BP stock.

of New York reached the same conclusion on virtually identical facts to those presented here.  *In re Citigroup ERISA Litig.*, 2015 U.S. Dist. LEXIS 63460, at *33 ("There are no named plaintiffs that qualify as participants or beneficiaries for the Citibuilder Plan …. Accordingly the plaintiffs do not have standing to seek relief under the Citibuilder Plan").  In so holding, the court rejected plaintiffs' arguments based on the same principles of class standing advanced here, recognizing that they did not address the distinct principle of statutory standing.  *Id.* at *33, n.10.[14]

Consequently, this Court should reject on ERISA statutory standing grounds Plaintiffs' attempt to bring derivative fiduciary breach claims directly on behalf of the PSP and DSP (CEC ¶¶ 1, 3, 4, 148).  Whether Plaintiffs could represent the participants of those plans in a properly certified class action is an issue for another day, assuming Plaintiffs move for class certification.

## VIII.  THE COURT SHOULD STRIKE PLAINTIFFS' JURY TRIAL DEMAND.

Plaintiffs' opposition cites only out-of-Circuit and pre-ERISA decisions from the 1950s, 1960s, and early 1970s, ignoring Defendants' on-point authority (*see* Def. Br. at pp. 27-30) showing that there is no right to a jury trial under ERISA.  Plaintiffs' arguments have already been rejected by this Circuit.  *See*, *e.g.*, *Borst v. Chevron*, 36 F.3d 1308, 1323-24 (5th Cir. 1994); *Calamia v. Spivey*, 632 F.2d 1235, 1237 (5th Cir. 1980); *see also CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1880 (2011) (monetary relief may be equitable relief); *Middleton v. Life Ins. Co. of N.*

---

[14] *See also Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011); *Acosta v. Pacific Enters.*, 950 F.2d 611, 617 (9th Cir. 1991) (plaintiff lacked standing under ERISA § 502(a)(2) to challenge decisions affecting ERISA plans in which he did not participate); *In re SLM Corp. ERISA Litig.*, No. 08 Civ. 4334, 2010 U.S. Dist. LEXIS 109775, at *29-32 (S.D.N.Y. Sept. 24, 2010) (plaintiffs lacked standing to bring claims involving plan in which they did not participate); *In re ING Groep N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1345-46 (N.D. Ga. 2010) (same); *cf. J&R Mktg., SEP v. GMC*, No. 06-10201, 2007 U.S. Dist. LEXIS 13227, at *16 n.11 (E.D. Mich. Feb. 27, 2007) ("Although Plaintiffs placed heavy reliance on *Fallick* . . . at oral argument, that case is inapplicable here because it only discussed Article III standing and certification of a class action under Rule 23 . . . . Nothing in *Fallick* addressed the issue at bar here, namely, whether Plaintiffs have *statutory standing*").

12

*Am.* No. H-09-CV-3270, 2010 WL 582552, at \*6-8 (S.D. Tex. Feb. 12, 2010).[15]   The Court

therefore should strike Plaintiffs' jury trial demand.

May 22, 2015

OF COUNSEL:                                         Respectfully submitted,


                                                    /s/ *Thomas W. Taylor*_____

Paul J. Ondrasik, Jr. (*pro hac vice*)               Thomas W. Taylor
Morgan D. Hodgson (*pro hac vice*)                   Texas State Bar No. 19723875
Eric G. Serron (*pro hac vice*)                      S.D. Tex. Bar No. 3906
Ryan T. Jenny (*pro hac vice*)                       ANDREWS KURTH LLP
STEPTOE & JOHNSON LLP                                600 Travis, Suite 4200
1330 Connecticut Avenue, N.W.                        Houston, TX 77002
Washington, D.C.  20036                              Office:  (713) 220-4200
Office: (202) 429-3000                               Fax:  (713) 220-4285
Fax:  (202) 429-3902                                 E-mail: ttaylor@andrewskurth.com
E-mail: pondrasik@steptoe.com
     mhodgson@steptoe.com                            *Attorney-in-Charge for Defendants*
     eserron@steptoe.com                             *BP Corporation North America, Inc., BP p.l.c.,*
     rjenny@steptoe.com                              *BP America Inc., BP Corporation North America,*
                                                     *Inc.'s Board of Directors, the BP Savings Plan*
Daryl A Libow (*pro hac vice*)                       *Investment Oversight Committee, Lord John*
SULLIVAN & CROMWELL LLP                              *Browne, Stephanie C. Moore, Gregory T.*
1701 Pennsylvania Avenue N.W.                        *Williamson, Thomas L. Taylor, Neil Shaw, Brian*
Washington, DC 20006-5805                            *D. Smith, Stephen J. Riney, Robert A. Malone,*
Office:  (202) 956-7500                              *Jeanne M. Johns, Anthony Hayward, Lamar*
E-mail:  libowd@sullcrom.com                         *McKay, Patrick Gower, James Dupree, Richard J.*
                                                     *Dorazil, Corey Correnti, Marvin L. Damsma, and*
Richard C. Pepperman, II (*pro hac vice*)            *Patricia H. Miller*
Marc De Leeuw (*pro hac vice*)
M. David Possick
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Office:  (212) 558-4000
Email: peppermanr@sullcrom.com

---

[15] The Fifth Circuit has rejected the minority position of *Rhodes v. Piggly Wiggly Alabama Distributing Co.*, 741 F. Supp. 1542 (N.D. Ala. 1990) (*see* Pl. Br. at 24), to allow a jury trial in an ERISA § 502(a)(1) action. *See Borst*, 36 F.3d at 1323-24; *Burch v. Wellstream Int'l, Ltd.*, No. H-10-1472, 2011 U.S. Dist. LEXIS 114931, at \*16 (S.D. Tex. Oct. 4, 2011).  In any event, *Rhodes* is inapposite because it permitted a jury trial specifically because of the "difference between the relief provided in 29 U.S.C. § 1132(a)(1)(B), which is 'legal,' and the relief provided in 29 U.S.C. § 1132(a)(3)(A) or (B), which is 'equitable.'"  741 F. Supp. at 1543.  Unlike *Rhodes*, Plaintiffs do not assert claims under ERISA § 502(a)(1) but rather under §§ 502(a)(2) and 502(a)(3). *See* CEC ¶¶ 305-335.

deleeuwm@sullcrom.com
possickmd@sullcrom.com

14

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been served by electronic CM/ECF filing, on this 22nd day of May, 2015.

*s/Thomas W. Taylor*
Thomas W. Taylor