United States District Court
Southern District of Texas

**ENTERED**

October 30, 2015

David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **IN RE: BP P.L.C. SECURITIES LITIGATION** | **MDL No. 4:10-MD-2185** |
| **This document relates to:** **IN RE: BP ERISA LITIGATION** | **Civil Action No. 4:10-cv-4214** **Honorable Keith P. Ellison** |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Partial Motion to Dismiss the First Amended Consolidated ERISA Complaint and to Strike Plaintiffs' Jury Demand (the "Motion").

## I. Background[1]

Each of the nine plaintiffs is an individual participant and beneficiary of either the BP Employee Savings Plan ("ESP") or the BP Capital Accumulation Plan ("CAP").[2] Plaintiffs seek to bring this action derivatively on behalf of the ESP, the CAP, the BP Partnership Savings Plan ("PSP") and the BP DirectSave Plan ("DSP") (collectively, the "Plan"), each of which featured the option of investing in the "BP Stock Fund," a fund comprised entirely of BP American Depositary Shares ("ADSs").[3]

---

[1] The Court has previously provided a detailed background of Plaintiffs' ERISA action and will refrain from repeating itself here. *See, e.g.*, Doc. No. 116 ("2012 Mem. and Order").

[2] First Am. Consolidated ERISA Compl. ("Compl.") ¶ 1, Doc. No. 173. The individual plaintiffs are: (i) David M. Humphries, Jerry McGuire, Edward Mineman, Charis Moule, Maureen S. Riley, Thomas P. Soesman, Arshadullah Syed, and Ralph Whitley, each of whom is a participant in the ESP; and (ii) Frankie Ramirez, who is a participant in the CAP. Compl. ¶ 1.

[3] *See* Compl. ¶¶ 4, 18. In the alternative, and "only to the extent deemed necessary by the Court," Plaintiffs seek to bring their claims on behalf of a putative class of similarly situated participants and beneficiaries of the Plans. Compl. ¶ 1.

Plaintiffs bring their claims under ERISA, alleging that Defendants breached their fiduciary duties to the Plan from January 16, 2007 to June 24, 2010 (the "Relevant Period").[4] Specifically, Plaintiffs assert two general theories of liability ("Count I" and "Count II," respectively):

(1) The "Insider Defendants"[5] and "Corporate Defendants"[6] breached their duties of prudence and loyalty by permitting Plan participants to invest in the BP Stock Fund, and

(2) The "Designated Officer Defendants,"[7] the "Appointing Officer Defendants,"[8] the Savings Plan Investment Oversight Committee Defendants (the "SPIOC"),[9] the "Board Defendants,"[10] and the Corporate Defendants breached their duties to adequately monitor other fiduciaries and provide them with accurate information.[11]

According to Plaintiffs, Defendants' actions and/or inaction cost Plan participants hundreds of millions of dollars in losses following the Deepwater Horizon explosion.[12]

This is not the first motion to dismiss that the Court has considered in this action. In March of 2012, it dismissed Plaintiffs' First Consolidated ERISA Complaint, holding that

---

[4] Compl. ¶ 3.

[5] The term "Insider Defendants" refers to the Defendants who are alleged to have had insider information regarding the artificially inflated value of BP's stock. These Defendants include BPNAI, Anthony Hayward, Lamar McKay, Neil Shaw, and James Dupree. Compl. ¶ 306.

[6] The "Corporate Defendants" include BP p.l.c. ("BP"), BP America Inc. ("BP America") and BPNAI. Compl. ¶ 39.

[7] The "Designated Officer Defendants" include Lord John Browne, Richard Dorazil, Anthony Hayward, McKay, and Robert Malone. Compl. ¶ 66.

[8] The "Appointing Officer Defendants" include McKay and Malone. Compl. ¶ 67.

[9] The "SPIOC Defendants" include the SPIOC, Malone, McKay, Stephen Riney, Brian Smith, Thomas Taylor, Corey Correnti, Marvin Damsma, Dorazil, Dupree, Patrick Gower, Jeanne Johns, Patricia Miller, Stephanie Moore, Shaw, and Gregory Williamson. Compl. ¶ 88.

[10] The "Board Defendants" include Malone, McKay, Riney, Smith, and Taylor. Compl. ¶¶ 44-54.

[11] Compl. ¶¶ 305-35.

[12] Compl. ¶ 331.

Plaintiffs had failed to adequately rebut the so-called "*Moench* presumption of prudence."[13]  The Court also dismissed Plaintiffs' duty-to-monitor claims on the grounds that such claims are a form of secondary liability only, requiring a primary violation to be viable.[14]  Later that year, the Plaintiffs filed a motion for leave to amend, but the Court denied Plaintiffs' motion because the proposed amendments would have been futile in light of the *Moench* presumption.  Plaintiffs timely appealed to the Fifth Circuit.

It would turn out, however, that these motion-to-dismiss proceedings were largely for naught.  In June of 2014, the Supreme Court scuttled the *Moench* presumption and created a new framework for evaluating claims against certain ERISA fiduciaries.[15]  Accordingly, the Fifth Circuit vacated this Court's denial of leave to amend and remanded the matter for reconsideration in light of *Dudenhoeffer*.  On remand, this Court granted Plaintiffs leave to amend their complaint,[16] and Plaintiffs filed the First Amended Consolidated ERISA Complaint (the "Complaint") earlier this year.  Defendants have now moved to dismiss.

## II. <u>Legal Standard</u>

In deciding whether to dismiss a case for failure to state a claim under Rule 12(b)(6), "the district court must take the factual allegations of the complaint as true and resolve any

---

[13] *See* 2012 Mem. and Order, 36.  The *Moench* presumption provided that company stock is a presumptively prudent investment for employee benefit plans. *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 254 (5th Cir. 2008). To overcome the presumption, a plaintiff had to allege "persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest." *Id.* at 256.

[14] 2012 Mem. and Order, 42.

[15] *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014). Because the Plans authorized investment in employer stock, they are Eligible Individual Account Plans ("EIAPs"), as defined in ERISA § 407(d)(3), 29 U.S.C. § 1107(d)(3).

[16] *See* Dkt. 170 ("2015 Mem. and Order").  Defendants sought permission to seek interlocutory review, and the Court granted it.  The appeal is still pending.

ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff."[17] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."[18] Mere "formulaic recitation of the elements of a cause of action will not do."[19] Even taking into account the liberal pleading standard set forth by Rule 12(b)(6), the Court may not assume that a plaintiff can prove facts he has not alleged.[20] Moreover, dismissal is appropriate when the complaint "lacks an allegation regarding a required element necessary to obtain relief."[21]

ERISA does not impose heightened pleading requirements.[22] Thus proceeding under Rule 8, a plaintiff is required to provide only "a short and plain statement of the claim" to put the defendant on notice of the subject and basis of the claim.[23] "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."[24]

In evaluating a 12(b)(6) motion, the court "must limit [its consideration] to the contents of the pleadings, including attachments thereto."[25] Documents not attached to the pleadings, but to the motion to dismiss, may be considered "part of the pleadings if they are referred to in the

---

[17] *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993).

[18] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[19] *Id.*

[20] *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 443 (5th Cir.1986).

[21] *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir.1995) (citation omitted).

[22] *In re Dynegy, Inc. ERISA Litig.*, 309 F.Supp.2d 861, 867 (S.D.Tex.2004).

[23] Fed. R. Civ. P. 8(a).

[24] *Twombly*, 550 U.S. at 546.

[25] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000) (citing Fed. R. Civ. P. 12(b)(6)).

plaintiff's complaint and are central to [the] claim ... [because i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."[26]

### III. Fiduciary Status of Defendants

The first question pertinent to any breach-of-fiduciary-duty claim under ERISA is whether the defendant was in fact a fiduciary.[27] Defendants have focused the brunt of their motion to dismiss on this threshold consideration, arguing that Plaintiffs have failed to allege specific facts showing that BP, BP America, BPNAI, the Board Defendants, or the Designated Officers were fiduciaries with respect to either (i) prudently managing Plan assets (*e.g.*, the BP Stock Fund), or (ii) monitoring and informing other fiduciaries.[28]   In other words, Defendants argue that these entities and individuals were not Plan fiduciaries in any way that would be pertinent to this litigation.

#### A.  Legal Overview

ERISA recognizes two types of fiduciaries: "named fiduciaries" and "functional fiduciaries."[29]   Named fiduciaries are persons or entities who are either "named in the plan instrument or, pursuant to a procedure specified in the plan, [are] identified as a fiduciary [by an employer]."[30]   They are expressly afforded the "authority to control and manage the operation . .

---

[26] *Id.* at 498–99.

[27] *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

[28] Defs' Mem. Supp. at 13 (hereinafter "Resp."), Doc. No. 155.   Defendants concede, however, the fiduciary status of the members of the SPIOC and the Appointing Officers.   Resp. at 12.

[29] *See Mertens v. Hewitt Assoc.*, 508 U.S. 248, 251 (1993) (citing 29 U.S.C. § 1002(21)(A) and § 1102(a)).

[30] 29 U.S.C. § 1102(a).

. of the plan."[31]  Functional fiduciaries, on the other hand, need not be named as fiduciaries in the governing plan document.  Instead, courts look to whether, as a practical matter, an entity or individual "exercises discretionary authority and control that amounts to actual decision-making power . . . with respect to the plan."[32]  Thus, "[f]iduciary duties may . . . arise either from the terms of the governing plan or from acts and practices in carrying it out."[33]

But, critically, fiduciary status under ERISA is not an all-or-nothing concept.[34]  Instead, the scope of an ERISA fiduciary's responsibility is "correlative with the scope of [his] duties."[35]  "An ERISA fiduciary for one purpose is not necessarily a fiduciary for other purposes.  Rather, a person is a fiduciary only *to the extent* he has or exercises specified authority and control over a plan or its assets."[36]  For example, the fact that a person has the authority to appoint plan fiduciaries means that he has a fiduciary duty to monitor those appointees,[37] but it does not mean that he has a fiduciary obligation to prudently manage and invest the plan's assets.[38]

---

[31] *See* 29 U.S.C. § 1102(a).  Benefit plans are required to provide for a named fiduciary.  29 U.S.C. 1002(1)(1).

[32] *Dynegy,* 309 F. Supp. 2d at 872; 29 U.S.C. § 1002(21)(A)(i) and (iii);  *see also Landry v. Air Line Pilots Ass'n Inter. AFL–CIO*, 901 F.2d 404, 418 (5th Cir.1990) ("[F]iduciary status is to be determined by looking at the actual authority or power demonstrated, as well as the formal title and duties of the parties at issue [emphasis in original].").

[33] *Kirschbaum*, 526 F.3d at 251.

[34] *Id.* (citing *Cotton v. Mass. Mut. Life Company*, 402 F.3d 1267, 1277 (11th Cir.2005).

[35] *Id.*

[36] *Id.*

[37] *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 553-54 (S.D. Tex. 2003).

[38] *See Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1549-60 (5th Cir.1986) ("For example, if an employer and its board of directors have no power with respect to a plan other than to appoint the plan administrator and the trustees, then their fiduciary duty extends only to those functions.")

This principle is the driving force behind the structure of ERISA plans. Plan documents are usually crafted to ensure that the plan sponsor—which, typically, is the employer who establishes the plan—is not named as a fiduciary or otherwise granted meaningful authority or control over plan management.[39]  Instead, plans typically allocate discreet parcels of authority to certain committees and individuals, creating silos of fiduciary duties intended to cordon off the scope of potential ERISA liability.  Here, Defendants argue that all applicable authority and control—and, therefore, all applicable fiduciary obligations—resided exclusively with the SPIOC and the Appointing Officers, while Plaintiffs contend that such authority was vested more broadly.

### B.  The Corporate Defendants: Fiduciary Status and Scope

Plaintiffs allege that the Corporate Defendants were both named and functional fiduciaries.  Moreover, even if the Corporate Defendants were not directly fiduciaries under the terms of the Plans, they should be held liable under the doctrine of *respondeat superior*.  The Court disagrees.

#### (1) BP and BP America

In the Complaint, Plaintiffs allege that BP and BP America are direct fiduciaries under the Plan, but they seem to have dropped this argument in the briefing—and for good reason.  The Complaint contains little more than conclusory allegations that BP and BP America "exercised

---

[39] Plan sponsors, as such, have no inherent fiduciary duties regarding the management or administration of the plan.  While true that plan sponsors are often vested with the authority to unilaterally amend the terms of a plan, the Supreme Court has held that, "without exception," the "decisions of a plan sponsor to modify, amend or terminate the plan" do not give rise to fiduciary status.  *Kirschbaum*, 526 F.3d at 251 (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999)).  These decisions relate to plan design (as opposed to plan "management" or "administration"), and are the decisions of a trust settlor, not a fiduciary.  *Id.*

discretionary authority and control with respect to [the Plan],"[40] and an examination of the Plan reveals that it does not endow either company with any relevant authority and control.  In fact, the Plan does not even mention BP America.  Consequently, Plaintiffs instead attempt to tie BP and BP America into the litigation solely through a theory of respondeat superior, which is discussed below.

### (2) BPNAI

Whether Plaintiffs adequately alleged that BPNAI is a fiduciary is a more difficult question that requires close scrutiny of a complicated web of interrelated documents.  Plaintiffs direct the Court's attention to three documents in particular: (1) the Plan; (2) the Investment Manager Agreement; and (3) the Investment Options Guide.[41]  But before delving into the terms of these documents, a proper understanding of the role that each document plays within the constructs of ERISA is necessary.

As discussed in Section III.A above, the Fifth Circuit has recognized that fiduciary duties can arise from sources of two different types.  First, courts look to "the terms of the governing plan."[42]  ERISA requires that every employee benefit plan be established and maintained pursuant to a written instrument (typically referred to as the "governing plan" or "plan document").[43]  The plan document is responsible for expressly allocating fiduciary responsibilities amongst plan managers.  Here, that "plan document" is the Plan.

Second, if entities are not vested with fiduciary authority in the plan document, "their status as fiduciaries is controlled by ERISA's definition of fiduciary, which is functional in

---

[40] *See, e.g.,* Compl., ¶ 93.

[41] Plaintiffs also cite to a provision that they attribute to the Trust Agreement, but the cited language is actually found in the Investment Manager Agreement.

[42] *Kirschbaum*, 526 F.3d at 251.

[43] 29 U.S.C. § 1102(a)(1).

nature."[44]  Courts consequently look to a person's alleged "acts and practices in carrying . . . out [the governing plan]" to determine whether he is a functional fiduciary.[45]  The ancillary documents cited by Plaintiffs are relevant to this end.  Although express grants of fiduciary authority are the sole province of the governing plan, non-plan documents can serve as evidence that an entity, in practice—and despite the terms of the governing plan—exercised functional authority and control over a particular aspect of the plan, giving rise to functional-fiduciary status.

*The Plan* – Plaintiffs' lone basis for concluding that the Plan vests BPNAI with fiduciary responsibilities is Section 1.72, which provides that BPNAI is the "Plan Sponsor."[46]  But this provision is of no consequence to fiduciary status: a "company cannot be subject to fiduciary liability simply by virtue of its role as a plan sponsor."[47]  Moreover, the Plan names the SPIOC—not BPNAI—as the "Investment Named Fiduciary,"[48] and accordingly vests the SPIOC with authority and control regarding the "management or disposition of any assets of the Trust" as well as "the discretion to designate an Investment Manager."[49]  Put differently, the Plan endows the SPIOC with the very authority that Plaintiffs allege belongs to BPNAI.  The Plan provides no basis for concluding that BPNAI is a fiduciary.

Because plaintiffs are unable to show that BPNAI had any "fiduciary duties . . . aris[ing] . . . from the terms of the governing plan," they must show that a fiduciary duty arose "from

---

[44] *Dynegy*, 309 F. Supp. 2d at 899.

[45] *Kirschbaum*, 526 F.3d at 251.

[46] *See* Resp. at 9 (citing only ESP § 1.72 in discussing the alleged fiduciary status of BPNAI).

[47] *Dynegy*, 309 F. Supp. 2d at 899.

[48] ESP § 1.12.  More to the point, the Plan largely *forbids* administrators from allocating or delegating discretionary authority and control to BPNAI.  ESP § 14.1(e)(2); 14.1(g)(4).

[49] ESP § 1.62.

[BPNAI's] acts and practices in carrying it out."[50]   To that end, Plaintiffs cite to the Investment Manager Agreement and the Investment Options Guide.

    ***Investment Manager Agreement ("IMA")*** – Plaintiffs cite to numerous provisions in the IMA that purportedly grant BPNAI authority and control over managing the Plan assets and appointing an investment manager.[51]   Defendants, however, claim that all of these provisions— which lie outside the terms of the governing plan—are inapplicable because the version of the IMA on which Plaintiffs rely long predated the creation of the SPIOC and the relevant version of the Plan.[52]   Once the SPIOC was created, the operative Plan documents delegated investment oversight authority to the SPIOC and limited BPNAI's responsibility to Plan amendments made in a settlor capacity.[53]   Thus, say Defendants, at all times during the Relevant Period, the IMA provisions cited by Plaintiff apply to the SPIOC, not to BPNAI.[54]

    Defendants are correct.   As an initial matter, the IMA is not part of the "governing plan" and cannot give rise to named-fiduciary status.   At most, allegations based on the IMA can be used to show that BPNAI was a functional fiduciary.   But, even assuming that Plaintiffs' IMA-based allegations plausibly suggest that BPNAI was acting as a functional fiduciary around the time of its signing,[55] BPNAI's fiduciary status in April of 2000—which is when the IMA was

---

[50] *See Kirschbaum*, 526 F.3d at 251.

[51] Plaintiffs also cite to the Investment Strategy Guidelines, which are appended to the IMA as Exhibit C-1.

[52] Reply Mem. in Supp. ("Reply") at 3, Doc. No. 195.

[53] *Id.*

[54] *Id.*

[55] The Court questions the extent to which the IMA actually grants BPNAI discretionary authority or control that would be applicable to Plaintiff's claims.   For example, despite Plaintiffs' claims to the contrary, there is no basis to conclude that BPNAI had a duty to monitor State Street—the IMA expressly notes in its first recital that the "Investment Committee" was charged with appointing the investment manager.   (The "Investment Committee" referenced in

executed—is not relevant to Plaintiffs' claims.  Here, the Relevant Period runs from 2007-2010, and Plaintiffs have pled no facts showing that BPNAI acted as a functional fiduciary during that period of time.  To the contrary, as Defendants note, every amendment made to the IMA during the Relevant Period was executed by the SPIOC, further suggesting that the SPIOC was the lone investment-related functional fiduciary for the purposes of this litigation.

        *Investment Options Guide* – Plaintiffs further allege that the Investment Options Guide ("IOG") expressly recognizes BP's authority and control to liquidate the BP Stock Fund: "Under limited circumstances and in accordance with ERISA, the investment manager may attempt to liquidate all the BP ADS in the BP Stock Fund should the investment manager or BP determine such an investment is no longer prudent."[56]  But this argument is flawed for two reasons.  First, Plaintiffs have taken the quoted language out of context.  The language appears in a section of the IOG entitled "Tracking," which outlines State Street's obligation to manage the BP Stock Fund such that it tracks the market price of BP stock.[57]  Thus, BP's ability to liquidate the Fund arises only to the extent that the Fund is not properly tracking the price of BP ADS.  Second, even if the quoted IOG language is meant to grant BPNAI liquidation authority outside of the "tracking" context, the Court has already held that, under *Dudenhoeffer*, Plaintiffs cannot plead a divestment/liquidation claim—ERISA's duty of prudence cannot require a fiduciary to divest stock on the basis of insider information.[58]

---

the April 2000 version of the IMA was the predecessor to the SPIOC, which was created in 2004.)

[56] Compl. ¶ 111 (quoting the 2007 and 2008 Investment Options Guides).

[57] Investment Options Guide at 35.

[58] *See* 2015 Mem. and Order, at 24 n.13.

### (3) Respondeat Superior

Plaintiffs additionally assert that the Corporate Defendants are vicariously liable for their employees' breaches of fiduciary duty under ERISA.   Under the common-law formulation of respondeat superior, this issue would be easily resolved in favor of the Plaintiffs; Plaintiffs have alleged facts sufficient to show that employees of each Corporate Defendant, acting within their scopes of employment, participated in a breach of fiduciary duty.   But the Fifth Circuit's formulation of respondeat superior in the ERISA context departs from the common-law construction.   To state a claim against an employer for respondeat superior liability under ERISA, a plaintiff must satisfy two elements.[59]   First, as at common law, the plaintiff must adequately allege that an employee breached his duty to a third party while acting in the course and scope of his employment.[60]   Second, unlike at common law, the Fifth Circuit requires that plaintiffs satisfy an additional, federal requirement to vicarious liability under ERISA: the principal must "actively and knowingly participate[] in the agent's breach" or exercise "*de facto* control over the agent."[61]

This additional requirement substantially limits the utility of respondeat superior—if an employer was an "active . . . participant" or exercised "*de facto* control," then the employer likely had sufficient "authority or control" over the breach to be directly liable under ERISA as a fiduciary.   Judge Garza recognized as much in his concurring opinion in *Bannister v. Ullman*:

> The "active and knowing" requirement means that respondeat superior will rarely do any heavy lifting in the ERISA context. Remember that ERISA makes anyone who "exercises any authority or control" over plan assets directly responsible as a

---

[59] *See Am. Fed. of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y of the U.S.*, 841 F.2d 658, 665 (5th Cir.1988); *see also Bannistor v. Ullman*, 287 F.3d 394, 411-412 (5th Cir. 2002) (Garza, J., concurring).

[60] *Id.*

[61] *Bannister*, 287 F.3d at 408.

fiduciary. Whenever a principal "actively" participates in an agent's decision about how to use plan assets, he will, by virtue of his control over the agent's actions, also be exercising a degree of control over the assets themselves. The "active and knowing" requirement therefore makes respondeat superior basically a non-issue. The issue is only whether the principal, by virtue of its de facto control over the agent, also had control over the disposition of plan assets.[62]

The majority implicitly recognized this point as well, noting that "the ultimate issue in any non-fiduciary respondeat superior theory of liability is virtually identical to a case . . . in which liability is directly predicated upon breach of the fiduciary duty to exercise proper control over plan assets."[63]   Thus, while Plaintiffs are technically correct that "[t]he Fifth Circuit recognizes that respondeat superior may be a source of liability [in ERISA cases]," as a practical matter, the doctrine has largely been rendered moot.

Nevertheless, Plaintiffs have pressed forward with their respondeat superior claim, arguing that the Corporate Defendants "effectively controlled the individual defendants" because the Corporate Defendants employed the individual defendants and appointed them to Plan-related positions.   But more than an employer-employee relationship is required to meet the "active and knowing participation" or "*de facto* control" element under *American Federation* and *Bannister*.   An employer-employee relationship is only half of the equation in the ERISA context.   The Fifth Circuit added the "active and knowing/control" element to the common-law scope-of-employment test specifically because it demands something more than mere employment to establish vicarious liability.   To hold that an employer's control over an employee satisfies the second element would effectively render it superfluous.

---

[62] *Id.* at 412 (Garza, J., concurring).

[63] *Id.* at 408.

Moreover, the vicarious liability test requires that the principal have "participated *in the agent's breach*."[64]   Although Plaintiffs allege that the Corporate Defendants appointed the individual defendants to Plan-related positions, they have not alleged that the Corporate Defendants' control or participation extended to the individual Defendants' alleged *breach*.   To the contrary, Plaintiffs fail to tie the Corporate Defendants in any way to the individual defendants' alleged breach.[65]

### (C) BPNAI Board of Directors: Fiduciary Status and Scope

Defendants argue that claims against the Board should be dismissed for the same reasons that claims against BPNAI should be dismissed: the Board's power to amend the Plan on behalf of BPNAI can be taken only in a non-ERISA settlor capacity.   Plaintiffs respond by citing to allegations in the Complaint that the Board, acting on behalf of BPNAI, had the authority to freeze or liquidate the BP Stock Fund if it determined that the Fund was no longer a prudent investment.

Defendants are correct. Plaintiffs' claims against the Board go hand-in-hand with their claims against BPNAI—the Board's authority and control under the Plans is entirely derivative of BPNAI's authority and control.   The Plan grants no substantive authority to the Board other than to act on BPNAI's behalf "whenever [BPNAI] has the authority to take action under [the] Plan."[66]   Indeed, when arguing that the Board is a fiduciary, Plaintiffs cited to the same set of allegations that they asserted against BPNAI.[67]   Just as those allegations were insufficient to

---

[64] *Id*. *See also* Am. Fed., 841 F.2d at 665.

[65] This is unlike in *Bannister* where the Board member of a parent company called an executive at a subsidiary and, essentially, instructed the executive to breach his ERISA duties.

[66] *See* ESP § 14.5.

[67] Compl. ¶ 122 (citing Plan provision providing that, whenever BPNAI has authority to take action, the Board has authority to act on its behalf) ¶ 122 ("[BPNAI], through authority vested in

show that BPNAI was a fiduciary during the Relevant Period, so too are they insufficient to support Plaintiffs' claims against the Board.

### (D) Designated Officers

Plaintiffs cite to three Plan provisions as evidence that the Designated Officers had a duty to prudently manage Plan assets.  None of these provisions, however, provides a compelling basis to conclude that the Designated Officers had any fiduciary duty to the Plan that would be relevant to this litigation.

Plaintiffs first claim that, "under the express terms of the Plan, the Designated Officers were Investment Named Fiduciaries within the meaning of ERISA," citing to Section 6.3 of the Plan.[68]  The provision states that "a Designated Officer may, from time to time, as directed by the Investment Committee, . . . limit or freeze investments . . . ."[69]  According to Plaintiffs, the use of the term "may" indicates that the Designated Officer had a choice as to whether to follow the direction of the SPIOC.[70]  Thus, the Designated Officers had "discretion and responsibility over the management . . . of the Plan."[71]

This argument is unpersuasive for the reasons that Defendants cite in their Reply.  Under Section 6.3, the Designated Officers could take action only "as *directed* by the Investment

---

its Board . . ."); 147 (references only BPNAI, not the Board); ¶ 92; ¶ 106 (deriving the Board's authority from BPNAI's authority under Investment Options Guide); ¶ 111 (deriving the Board's authority on BPNAI's authority under Investment Options Guide); ¶ 147 (deriving the Board's authority from BPNAI's supposed authority under IMA's Investment Strategy Guidelines); ¶ 295 (same).

[68] Resp. at 14.  Plaintiffs also cite to Paragraphs 55-65 of the Complaint, but these paragraphs contain no citations to any documents, much less a citation to the "express terms" of the Plan that name the Designated Officers as "Investment Named Fiduciaries."

[69] ESP § 6.3.

[70] Resp. at 14.

[71] *Id.*

Committee."[72]  The Designated Officers have no authority to limit or freeze investments in the BP Stock Fund unless they are so "directed" by the SPIOC.  In other words, even assuming that the word "may" confers some level of discretion over the BP Stock Fund,[73] such authority arises only if the SPIOC has issued a directive to the Designated Officers pursuant to Section 6.3.  But here, there is no allegation that this triggering event occurred.  Accordingly, the Complaint fails to allege facts showing that the Designated Officers had authority under Section 6.3 to manage Plan assets.

Plaintiffs next claim that the Designated Officers had authority and control over the management of State Street.  In support, they cite only to Section 13.1 of the Plan, which provides that a "Designated Officer may enter into . . . Trust Agreements to provide for the holding, investment, and payment of Plan assets."[74]

Defendants assert several arguments in response.  Their second argument—that the act of establishing a trust is taken in a settlor (*i.e.*, non-fiduciary) capacity—is the most compelling.  Here, Plaintiffs have alleged that the Designated Officers merely had the authority to enter into a trust agreement on behalf of BPNAI.  As Defendants correctly note, setting up a trust is the quintessential act of a settlor.[75]  And even if some fiduciary duty did somehow arise from

---

[72] ESP § 6.3 (emphasis added).

[73] Even this proposition is debatable. On the one hand, Plaintiffs are correct that use of the word "may" (as opposed to, for example, "shall") suggests that the Designated Officers had the authority to disregard a directive from the SPIOC.  On the other hand, however, the phrase "as *directed* by the Investment Committee" (as opposed to, for example, "as *recommended* by the Investment Committee") casts some limited degree of doubt on that conclusion.  "Directing" someone to take an action suggests that he is under some obligation to follow the order, while recommending that someone take an action implies that the person has discretion over whether to heed the recommendation.

[74] ESP § 13.1.

[75] *See Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 718 (6th Cir. 2000) ("establishing . . . [a] trust" is an action taken "as [an] employer performing settlor functions").

executing the trust agreement, it would have nothing to do with prudently managing the BP Stock Fund or appointing a fiduciary.

Finally, Plaintiffs claim that Section 14.1(b) of the Plan, which lists a number of powers afforded to Designated Officers, authorizes them to act as fiduciaries.  But, as was the case with Plaintiffs' allegations against the Board, the authority provided in this section of the Plan is entirely derivative of BPNAI's authority.  Plaintiffs admitted as much at the Hearing.[76] Accordingly, the authority granted to Designated Officers under Section 14.1(b) is insufficient to show that the Designated Officers were fiduciaries during the Relevant Period in any way applicable to this litigation.

***

In summary, the Court holds that Plaintiffs have failed to allege facts showing that any of the Corporate Defendants, the Board Defendants, or the Designated Officer Defendants were fiduciaries with respect to the Plans.  As a result, all claims against the Defendants—but only to the extent that they served in one or more of the foregoing capacities—should be dismissed. This results in the dismissal of all claims against the Corporate Defendants.  It likewise results in the dismissal of all claims against Defendants Browne and Hayward, who are alleged only to have served as Designated Officers.

## IV. <u>Alleged Breach of the Duty to Monitor</u>

In Count II of the Complaint, Plaintiffs allege that the Corporate Defendants, Board Defendants, Designated Officer Defendants, Appointing Officer Defendants, and the SPIOC Defendants (the "Monitoring Defendants") breached their fiduciary duty to monitor the fiduciaries that they allegedly appointed to manage the Plans' assets.  But, as the Court already

---

[76] Mot. to Dismiss Hr'g, 15:17-21.

held in Section III, the Corporate Defendants, the Board Defendants, and the Designated Officer Defendants (in their capacities as such) did not owe the Plans *any* applicable fiduciary duties. Plaintiffs' claims against those Defendants—including their duty-to-monitor claims—will be dismissed accordingly.[77]   Plaintiffs' duty-to-monitor claims against the SPIOC and Appointing Officers, however, are undisturbed by this holding.  Indeed, Defendants have expressly conceded that the SPIOC and the Appointing Officers had a duty to monitor the fiduciaries that they appointed.[78]   Instead, Defendants have opted to attack Plaintiffs' Count II claims against the SPIOC and Appointing Officers on a different front: even if these Defendants had a duty to monitor, the Complaint lacks well-pled factual allegations showing that they breached that duty. Thus, contend Defendants, Count II should be dismissed in its entirety.  The Court agrees.[79]

### A. Requisite Underlying Breach of Fiduciary Duty

Duty-to-monitor claims are derivative in nature.  "To prevail on these derivative claims, Plaintiffs must adequately state a claim for an underlying breach of fiduciary duty" by the appointed fiduciary.[80]   Plaintiffs' duty to monitor claims against the SPIOC fail for this reason. Although the SPIOC appointed State Street (giving rise to a duty to monitor), Plaintiffs have not alleged that State Street committed any underlying breach of fiduciary duty.   As a result, Plaintiffs' duty-to-monitor claims against the SPIOC should be dismissed.

---

[77] *See* Section III.B, *supra*.

[78] Under the terms of the Plan, the Appointing Officer is responsible for appointing the SPIOC. ESP §§ 1.60, 14.1. The SPIOC is responsible for appointing the investment manager, State Street.   *See* ESP § 1.62; *see also* ESP § 14.1(p) (incorporating by reference the SPIOC Bylaws, which provide that the SPIOC's authority includes "selecting, directing, monitoring and terminating external investment managers").

[79] Plaintiffs also included a claim for co-fiduciary liability within Count II.  The Court discusses that issue in Section V, *infra*, and concludes that Plaintiffs have failed to state a claim.

[80] 2012 Mem. and Order, at 42.

The duty-to-monitor claims against the Appointing Officers, however, meet this threshold requirement.  Plaintiffs adequately allege that the insider SPIOC Defendants—who were appointed by the Appointing Officers—breached their fiduciary duties to the Plan.[81]

### B. Scope of the Duty to Monitor

Before addressing any potential breaches of the duty to monitor, the Court must first define the contours of the duty itself.  Indeed, the scope of the duty to monitor was the parties' primary source of disagreement in the briefing.  According to Plaintiffs, the duty to monitor is composed of two fiduciary obligations: (1) a duty to inform appointees of material, non-public information that is within the possession of the monitoring fiduciary and could affect the appointees' evaluation of the prudence of investing in the plan sponsor's securities; and (2) a duty to ensure that the monitored fiduciaries are performing their fiduciary obligations.[82] Defendants take a narrower view of the duty to monitor.  While they acknowledge that a monitoring fiduciary must take certain measures to ensure that the appointees are adequately performing their fiduciary obligations, they reject the notion that any so-called "duty to inform" exists under ERISA.

For at least two reasons, the Court concludes that ERISA does not impose a duty on monitoring fiduciaries to keep their appointees apprised of material, non-public information. First, as Judge Kaplan recently discussed in detail in *In re Lehman Brothers*, "nothing in ERISA itself or in traditional principles of trust law" imposes such a duty."[83]  ERISA merely provides

---

[81] Because Plaintiffs have failed to allege an underlying breach by the non-insider SPIOC Defendants, as a matter of law, the Appointing Officers could not have breached their duty to monitor them, and Plaintiffs' claims should be dismissed accordingly.

[82] *See* Compl. ¶ 329.

[83] *In re Lehman Brothers Sec. and ERISA Litig.*, 2015 WL 4139978, at *14, --- F. Supp. 3d --- (S.D.N.Y. 2015).

that "a person is a fiduciary *only to the extent* he has or exercises specified authority and control over a plan or its assets."[84]  Here, under the terms of the Plan, the Appointing Officers' fiduciary authority and control was limited to appointing and removing members of the SPIOC.[85]  Their fiduciary duties can be expanded no further.  The Department of Labor has specifically laid out the "ongoing responsibilities of a fiduciary who has appointed trustees or other fiduciaries" in the Code of Federal Regulations, and a "duty to inform" appointed fiduciaries is nowhere to be found.[86]  Nor is it present in any other ERISA provision or federal regulation.[87]

ERISA is a complex statutory and regulatory apparatus, and "adding additional requirements [to it] is not to be undertaken lightly."[88]  Plaintiffs have not provided a weighty reason to impose a duty-to-inform requirement here.  The Court therefore declines to impose a fiduciary duty that Congress and federal regulators did not see fit to include when crafting this elaborate statute and its related regulations.[89]

---

[84] *Kirshbaum*, 526 F.3d at 248.

[85] *See* ESP §§ 1.60 and 14.1(c)(3).

[86] *See* 29 C.F.R. § 2509.75–8 (FR–17 Q & A) ("Q: What are the ongoing responsibilities of a fiduciary who has appointed trustees or other fiduciaries with respect to these appointments? A: At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan.").  Courts have also been careful to restrict the duty of a fiduciary to disclose plan-related information to participants. *See also* 2015 Mem. and Order, at 8-10 (discussing the ways in which "efforts to imbue [ERISA] with [a duty of disclosure to plan participants] have generally been unsuccessful at the Fifth Circuit").

[87] *Lehman*, 2015 WL 4139978, at *14.

[88] *Id*. at *15.

[89] *See id.* at 14.  This is especially true where, as here, Plaintiffs' conception of the proposed duty to inform "would transform [the Appointing Officers'] limited obligations into all-encompassing ones," creating "endless conflicts of interests between duties of corporate employees to act in the best interests of their employers . . . and newly imposed duties to disclose confidential employer information to plan fiduciaries." *Id.*

20

Second, Plaintiffs have not provided any precedent that conclusively establishes a duty to inform, nor is the Court aware of any.[90]   Although Plaintiffs correctly assert that a court in this district recognized a duty to inform in *In re Enron*, the precedential weight of that case is limited. The *Enron* fiduciaries' duty to inform appears to have arisen from the express terms of the governing plan, not ERISA.   Section XIII.8 of the plan required Enron to "provide the Administrative Committee with 'any information that the Committee determines is necessary for the proper administration of the Plan.'"[91]   The Plan at issue here contains no such provision.

Moreover, despite the dozens of pages that the *Enron* court spent outlining the applicable legal standards governing the plaintiffs' ERISA claims, the court made no mention of any inherent duty under ERISA to inform appointed fiduciaries of material, non-public information. It seems a stretch to conclude that the *Enron* court intended to recognize a duty to inform— especially one that had not been conclusively established within the Fifth Circuit—by merely discussing it in passing.

On the other hand, at least one case from this district cuts directly against the duty to inform.   In *In re Reliant Energy*, Reliant's authority under the plan was limited to appointing and removing members of the benefits committees.   As here, the plaintiffs claimed that this power gave rise to a duty to disclose to the benefits committee "all pertinent facts required for the Committees to perform their function as fiduciaries."[92]   But the court rejected the plaintiffs' argument, holding that the "limited fiduciary duties [of appointing and removing fiduciaries] do

---

[90] *Kopp v. Klein*, 722 F.3d 327 (5th Cir. 2013) references the duty to inform in passing, but its reference is far too oblique to reasonably conclude that the duty to inform is the law of the land.  The same is true for a handful of district court cases within the Fifth Circuit's jurisdiction. *See, e.g.*, *In re Dell, Inc. ERISA Litig.*, 563 F. Supp. 2d 681 (W.D. Tex. 2008) (same).

[91] *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 653 (S.D. Tex. 2003).

[92] *In re Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646, 658 (S.D. Tex. 2004).

not give rise to the expansive duty to disclose all allegedly pertinent information to the Plan fiduciaries."[93]   "Liability based on a failure to monitor does not arise unless the appointing fiduciary failed to periodically monitor the performance of each of the appointed members of the REI Benefits Committee."[94]

### C. Alleged Breach of the Duty to Monitor

Although the duty to monitor does not include a duty to inform, it does include an obligation to take reasonable measures to ensure that appointees are adequately performing their duties.  The Court now turns to the question of whether Plaintiffs have sufficiently alleged that the Appointing Officers failed to adequately monitor the members of the SPIOC.

The Department of Labor has promulgated an ERISA Interpretive Bulletin that lays out "the ongoing responsibilities of a fiduciary who has appointed . . . other fiduciaries" as follows:

> At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan.[95]

Courts have acknowledged that this obligation to review the performance of fiduciaries is also triggered if the appointing fiduciary has notice of appointee misconduct.[96]

Here, Plaintiffs claim that the Appointing Officers ignored "numerous 'red flags' that BP stock was not a prudent investment for the retirement plan."[97]   But Plaintiffs' argument misconstrues the relevant law.  The question is not whether Defendants had notice that the BP

---

[93] *Id.* at 659.  Also of note, the court distinguished *In re WorldCom, Inc. ERISA Litig.*, 263 F.Supp.2d 745 (S.D.N.Y.2003), which is a case that Plaintiffs rely on here.

[94] *Id.* at 657 n. 13.

[95] *Id.*

[96] *Dynegy*, 309 F.Supp.2d at 902.

[97] Resp. 18.

Stock Fund was an imprudent investment, but rather whether the Appointing Officers had "notice of possible *breaches* by [the members of the SPIOC] that they failed to investigate."[98] For the SPIOC members to have breached their duty of prudence, they must have *known* (or should have known) that the market price of BP ADSs was artificially inflated.[99]  Thus, to plead a "red flag" (*i.e.*, "notice of possible breaches"), Plaintiffs must allege that the Appointing Officers had notice that the SPIOC members might be *knowingly* investing in stock that was artificially inflated—not just that the SPIOC members were investing in artificially inflated stock.[100]  Plaintiffs have not pointed to any such allegation in the Complaint, and their duty-to-monitor claim against the Appointing Officers fails as a result.[101]

## V. Co-Fiduciary Liability

Plaintiffs claim that certain Defendants are liable as co-fiduciaries under ERISA § 405(a). Section 405 provides that a fiduciary may be held liable for another fiduciary's breach of duty if:

---

[98] Dynegy, 309 F.Supp.2d at 902, 904 (emphasis added).

[99] 2015 Mem. and Order, at 17-18, 19.

[100] *See Dynegy*, 309 F. Supp. 2d at 902, 904 (dismissing a duty-to-monitor claim for failing to allege that the defendants "had notice of possible *breaches* by their appointees that they failed to investigate" or "the corporate defendants had notice that any specific appointees were incompetent or otherwise subject to replacement for cause").  To hold otherwise would effectively impose a duty to inform on monitoring fiduciaries.  Plaintiffs are essentially proposing that, if a monitoring fiduciary—based on his insider knowledge—has notice that his appointees are *unknowingly* making imprudent investment decisions, he has a duty to take action. But, assuming that the appointees are exercising proper diligence in their decision-making, the only conceivable action that the monitoring fiduciary could take to remedy the situation would be to inform the appointees of the insider information.  As the Court held above, a monitoring fiduciary has no such duty to inform.

[101] The Court acknowledges that, in addition to serving as an Appointing Officer, McKay served on the SPIOC and is adequately alleged to have breached his duty of prudence as an SPIOC member.  Thus, in the most technical sense, it can be said that McKay, in his capacity as an Appointing Officer, was aware that he, in his capacity as an SPIOC member, was acting imprudently.  But the Court declines to venture far enough into the realm of metaphysics to address whether a person can monitor *himself*.  Plaintiffs' prudence-based claims against McKay provide them with a sufficient tool to hold McKay accountable for any wrongdoing attributable to his failure to prudently exercise his own investment-related responsibilities.

(A) he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(B) by his failure to comply with section 404(a)(1), 29 U.S.C. § 1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(C) he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).  To survive a motion to dismiss, a plaintiff must plead *facts* showing that the requirements of one of these provisions are satisfied.[102]  As Defendants correctly point out, however, the Complaint contains nothing more than a conclusory assertion invoking the language of Section 405.[103]  And Plaintiffs do little to dispute this point in their briefing.  Instead of directing the Court to allegations of facts in support of their theory, they merely recite Paragraph 333 of the Complaint—which is inescapably conclusory—and claim that "nothing more is needed to plead co-fiduciary liability."[104]  This is plainly incorrect: "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."[105]  Plaintiffs' allegations of co-fiduciary liability are paradigmatic examples of that which *Iqbal* expressly proscribes. Their claim should be dismissed accordingly.

---

[102] *See Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009).

[103] *See* Compl. ¶ 333 ("Monitoring Defendants are liable as cofiduciaries because they were the Plans' fiduciaries and they knowingly participated in each other's fiduciary breaches as well as those by monitored fiduciaries, they enabled the breaches by these Defendants, and they failed to make any effort to remedy these breaches, despite having knowledge of them.").

[104] Resp. 19.

[105] *Iqbal*, 556 U.S. at 678.   Plaintiffs' citations to out-of-circuit, pre-*Iqbal* cases are unavailing.

## VI. Prudence Claim against James Dupree

In January of this year, the Court considered whether to grant Plaintiffs' motion for leave to amend their complaint.[106]  As part of that consideration, the Court analyzed whether Plaintiffs' proposed amended complaint ("Proposed Amended Complaint") sufficiently alleged that Defendant James Dupree knew, based on insider information, that the market price of BP ADS was artificially inflated.  This allegation is an essential element to Plaintiffs' insider-information prudence claim against Dupree.[107]

The Court held that Plaintiffs failed to allege sufficient facts in the Proposed Amended Complaint showing that Dupree knew or should have known the relevant insider information. Although Plaintiffs had alleged a number of facts indicating that Dupree was in a position to have had access to the insider information, the specific allegation that "Dupree [knew or] or should have known that OMS was not implemented . . . [was] not clearly stated in the [Proposed Amended Complaint]."[108]  The Court did, however, allow Plaintiffs to amend their claim against Dupree.[109]

Plaintiffs failed to address this defect when they filed the Complaint now before the Court.  Accordingly, the Court cannot hold that the Complaint states a claim against Dupree. But, in light of Plaintiffs' oral argument at a hearing on the Motion (the "Hearing"), the Court finds that Plaintiffs may be able to state a claim if given the chance to amend their complaint one

---

[106] *See* 2015 Mem. and Order.

[107] *Id*. at 21-22.

[108] *Id*. at 22; *see also, e.g., id.* ("[A]lthough Mr. Dupree is alleged to have been the highest ranking officer responsible for the implementation of MS in the Gulf, he is not alleged to have known that OMS was not in place on contract-owned rigs.  Thus, it is unclear whether Plaintiffs believe him to have had insider information . . . .")

[109] *Id.*

final time.  At the Hearing, Plaintiffs explained why they had failed to do address the Court's concern:

> We have very limited information. There's only so much we can say. I think you wanted us to . . . allege that Dupree knew that OMS wasn't being implemented in the Gulf. We don't have that information as a fact. We just don't based on the fact that we haven't had discovery in this case.

Mot. to Dismiss Hr'g, 53:8-14.  But the "*Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant."[110]  Here, Dupree's knowledge qualifies as such a fact, and at the hearing, Plaintiffs indicated that they would be willing to plead that, on information and belief, Dupree had knowledge of the inside information.[111]  The Court therefore grants Plaintiffs leave to amend the Complaint for that limited purpose.

## VII. Limiting Time Periods of Plaintiffs' Claims

Defendants seek to narrow Plaintiffs' claims to the extent that they assert fiduciary liability outside the period that a given Defendant is alleged to have served as a Plan fiduciary. Under ERISA § 409(b), "No fiduciary shall be liable with respect to a breach of fiduciary duty . . . if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary."[112]  Thus, to state a claim in conformity with Section 409, *Iqbal* requires that a plaintiff allege facts showing that the defendant was a fiduciary *at the time of each alleged breach*.[113]

---

[110] *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

[111] Mot. to Dismiss Hr'g 53:19-21.

[112] 29 U.S.C. § 1109(b)

[113] *See Pegram v. Herdrich*, 120 S.Ct. 2143, 2152-53 (2000) ("[T]he threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.").

But here, Plaintiffs have alleged facts showing that certain individual defendants were fiduciaries at the time of some—but not all—of the alleged breaches during the Relevant Period. For example, Plaintiffs allege that Defendant Lamar McKay started serving in a fiduciary capacity on December 18, 2007, yet seek to hold him liable for all fiduciary breaches that occurred after January 16, 2007—well before McKay is alleged to have begun serving as an ERISA fiduciary.   Thus, the Complaint lacks well-pled facts that support the full breadth of Plaintiffs' claims.

Plaintiffs' argue that "[a] Rule 12(b)(6) motion cannot be used to narrow the period of time for which a Defendant was a fiduciary, particularly given that Plaintiffs have not received ERISA discovery and the allegations [in the Complaint] are based on unverified representations of Defendants in connection with the parties' early exchange of documents and information."[114] But as Defendants correctly note, Plaintiffs fail to cite to any authority in support of their proposition.   To the contrary, the Southern District has recognized that courts may narrow ERISA claims based on dates alleged in a complaint.[115]

Moreover, Plaintiffs' position is inconsistent with well-established pleading standards. To state a claim for breach of fiduciary duty under ERISA in conformity with Section 409, *Iqbal* requires that a plaintiff allege facts showing that the defendant was a fiduciary at the time of each

---

[114] Plaintiff's Mem. Supp. at 1-2.  Plaintiffs' arguments regarding the need for discovery are unpersuasive.  While discovery has not yet begun in the ERISA class action *per se*, as a practical matter, Plaintiffs already have access to information regarding each individual defendant's corporate role through the discovery that has taken place in the federal securities class action. Moreover, even if the Court narrows Plaintiffs' claims as Defendants have requested, Plaintiffs are still free to seek documents during ERISA discovery regarding the dates of the applicable Defendants' corporate roles.  If information is unearthed showing that a Defendant served in a fiduciary role for longer than originally alleged, then the Court will grant Plaintiffs leave to amend their pleadings accordingly.

[115] *See Shannahan v. Dynegy, Inc.*, 2006 WL 3227319, at *8 (S.D. Tex. Nov. 6, 2006).

alleged breach.[116]   Plaintiffs do not dispute that their Complaint is deficient in this regard—at least, with respect to certain defendants for certain periods of time—so it would make little sense to allow Plaintiffs' admittedly deficient claims to proceed uninhibited.

## VIII. <u>Standing to Bring Claims on Behalf of PSP and DSP</u>

Plaintiffs sought to bring this action derivatively on behalf of each of the four Plans.[117] Defendants moved to dismiss the derivative actions brought on behalf of the PSP and DSP, correctly arguing that, because no Plaintiff is alleged to be (or have ever been) a participant in either Plan, Plaintiffs lack statutory standing to bring derivative claims on behalf of such Plans. At the Hearing, Plaintiffs stated that they would be willing to drop their PSP and DSP derivative claims, and instead proceed on a class-action basis with respect to those two Plans.[118]

## IX. <u>Motion to Strike Plaintiffs' Jury Trial Demand</u>

Defendants have moved to strike Plaintiffs' demand for a jury trial.  ERISA does not provide a statutory right to a jury trial, so "any entitlement to a jury trial must arise from the Seventh Amendment."[119]  The Seventh Amendment applies to "suits in which legal rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered."[120] In most cases, "To determine whether

---

[116] See *Pegram*, 120 S.Ct. at 2152-53.

[117] Plaintiffs noted in their briefing, however, that "in the event that class action procedures are deemed necessary by the Court," they wish to assert their claims as a class action on behalf of participants in the Plans. Compl. ¶ 4.

[118] Mot. to Dismiss Hr'g at 55:19-24. Defendants have not challenged Plaintiffs' ability to bring a class action in this Motion to Dismiss, but noted that they reserved the right to do so at a later time.

[119] *Salameh v. Provident Life & Acc. Ins. Co.*, 23 F. Supp. 2d 704, 719 (S.D. Tex. 1998).

[120] *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (U.S. 1990).

a particular action will resolve legal rights, [courts] examine both the nature of the issues involved and the remedy sought."[121]

Case law within the Fifth Circuit weighs decisively in favor of striking Plaintiffs jury demand.  Following the Fifth Circuit's holding in *Borst v. Chevron*, nearly every Texas federal court to address the issue has held that "ERISA claims do not entitle a plaintiff to a jury trial."[122] In fact, in two cases, the plaintiffs themselves readily conceded that they had no right to a jury trial for an ERISA claim and struck their own jury demand.[123]  As Defendants correctly note,

---

[121] *Borst v. Chevron Corp.*, 36 F.3d 1308, 1323 (5th Cir. 1994) (citing *Chauffeurs*, 494 U.S. at 565).  This analysis consists of two inquiries: "(1) a comparison of the present statutory action to 18th-century actions in the courts of England before the merger of the courts of law and equity; and (2) an examination of the relief sought to determine whether it is legal or equitable in nature."

[122] *See, e.g., Morales v. Prudential Fin., Inc.*, 2009 WL 311109, at *4 (S.D. Tex. Feb. 5, 2009) (noting that "[d]efendants are correct that ERISA claims do not entitle a plaintiff to a jury trial" and perfunctorily striking jury demand); *Lain v. UNUM Life Ins. Co. of Am.*, 27 F.Supp.2d 926, 935 (S.D. Tex. 1998) (same); *Francis v. S. Cent. Houston Action Council, Inc.*, 2015 WL 4207142, at *2 (S.D. Tex. July 1, 2015) (same); *Salameh*, 23 F. Supp. 2d. at 719 (same); *Clyde A. Wilson Int'l Investigations, Inc. v. Travelers Ins. Co.*, 959 F. Supp. 756, 758 (S.D. Tex. 1997) (noting in dicta that plaintiffs, who were asserting a claim under 502(a)(2), "have no right to a jury trial under section 502 of ERISA"); *MB Valuation Servs., Inc. v. Ins. Co. of N. Am.*, 1997 WL 642987, at *5 (N.D. Tex. Oct. 6, 1997) ("As noted above, the Fifth Circuit held that ERISA claims are equitable rather than legal in nature.  Therefore, the Fifth Circuit determined that the Seventh Amendment does not provide a plaintiff in an ERISA action a constitutional right to a jury trial."); *Kersh v. UnitedHealthcare Ins. Co.*, 946 F. Supp. 2d 621, 645 (W.D. Tex. 2013) (noting in dicta that "it is correct that ERISA claims do not entitle a plaintiff to a jury trial"); *Harwood v. Unicare Life & Health Ins. Co.*, 2010 WL 1790477, at *1 (W.D. Tex. May 3, 2010) ("Unicare objects to the amendment because the proposed amended complaint includes a jury demand.  A plaintiff asserting an ERISA claim is not entitled to a jury trial.  That portion of the proposed amended complaint that includes a jury demand is futile."); *Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co.*, 2012 WL 4442368, at *2 (N.D. Tex. Sept. 26, 2012) ("There is no right to jury trial for the ERISA claims.").

[123] *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 316 (S.D. Tex. 2011) (Ellison, J.) (party agreed to strike its own jury demand "in recognition that the Fifth Circuit does not provide for a jury trial in ERISA matters"); *Lain*, 27 F. Supp. 2d at 935 ("[Plaintiff] concedes that if ERISA preempts her state-law claims, her ERISA claim must be tried to the court without a jury.")

Plaintiffs fail to identify any contrary authority, citing only to out-of-Circuit and pre-ERISA decisions from the 1950s, 1960s, and early 1970s; nor is the Court aware of any such authority.

## X. Conclusion

After considering the parties' filings, all responses and replies thereto, the oral arguments of the parties, and the applicable law, the Court holds that Defendants' motion to dismiss should be **GRANTED** in its entirety.  As a result:

(A) All claims against the Corporate Defendants, Anthony Hayward, and Lord John Browne are dismissed;

(B) Count I of the Complaint is dismissed to the extent that it is based on a Defendant's role as a Designated Officer or member of the Board of Directors;

(C) Count II of the Complaint is dismissed in its entirety; and

(D) Plaintiffs' demand for a jury trial is stricken.

The Court grants Plaintiffs 15 days leave to replead their duty-of-prudence claim against Defendant James Dupree.

**IT IS SO ORDERED**.

Signed this 30th day of October 2015.

_____
Hon. Keith P. Ellison
United States District Judge

30